

DISTRICT OF COLUMBIA, ss:

DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, declare and say as follows:

1. I am an Assistant Legal Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests within the Department of State, and I am familiar with the extradition case of Yoo Hyukkee. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and Korea are found in the Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Korea, signed on June 9, 1998, and entered into force December 20, 1999 ("the Treaty"). A copy of the Treaty is attached to this declaration.

3. In accordance with the provisions of the extradition treaty in full force and effect between the United States of America and the Republic of Korea, the Embassy of the Republic of Korea has submitted Diplomatic Note No. KAM 2014-255, dated May 28, 2014, formally requesting the extradition of Yoo Hyukkee. The Embassy of the Republic of Korea subsequently submitted the following diplomatic notes attaching supplemental materials in support of the extradition request: Diplomatic Note No. KAM 2014-315, dated July 14, 2014; Diplomatic Note No. KAM 2015-191, dated April 17, 2015: Diplomatic Note No. KAM 2017-0831, dated August 10, 2017; Diplomatic Note No. KAM 2018-0168, dated February 21, 2018; and Diplomatic Note No. KAM 2019-0424, dated June 20, 2019. Finally, the Embassy of the Republic of Korea has also submitted Diplomatic Note No. KAM 2019-0877, dated September 27, 2019, which did not include additional materials. Copies of the diplomatic notes are attached to this declaration.

4. In accordance with Article 18 of the Treaty, the Government of the United States appears in court in the United States on behalf of, and represents the interests of, the Republic of Korea in any proceeding that arises out of a Korean request for extradition. The Republic of Korea provides the same legal representation in its courts on behalf of the United States with regard to extradition requests made by the United States.

5. The offenses for which extradition is sought are covered by Article 2 of the Treaty.

6. The documents submitted by the Government of the Republic of Korea in support of its extradition request were certified on May 20, 2014, by Paul Boyd, Consul General of the United States Embassy in Seoul, Korea, in accordance with Title 18, United States Code, Section 3190. Mr. Boyd, at the time of his certification, was the principal consular officer of the United States in Korea. The first set of supplemental documents submitted by the Government of the Republic of Korea in support of its extradition request was certified on June 30, 2014, by Paul Boyd, Consul General of the United States Embassy in Seoul, Korea, in accordance with Title 18, United States Code, Section 3190. Mr. Boyd, at the time of his certification, was the principal consular officer of the United States in Korea. The second set of supplemental documents submitted by the Government of the Republic of Korea in support of its extradition request was certified on April 8, 2015, by Roberto Powers, Consul General of the United States Embassy in Seoul, Korea, in accordance with Title 18, United States Code, Section 3190. Mr. Powers, at the time of his certification, was the principal consular officer of the United States in Korea. The third set of supplemental documents submitted by the Government of the Republic of Korea in support of its extradition request was certified on August 2, 2017, by Sherman Grandy, Consul General of the United States Embassy in Seoul, Korea, in accordance with Title 18, United States Code, Section 3190. Mr. Grandy, at the time of his certification, was the principal consular officer of the United States in Korea. The fourth set of supplemental documents submitted by the Government of the Republic of Korea in support of its extradition request was certified on February 2, 2018, by Angela Kerwin, Consul General of the United States Embassy in Seoul, Korea, in accordance with Title 18, United

20000187-1

# United States of America

## DEPARTMENT OF STATE

***To all to whom these presents shall come, Greetings:***

[illegible] fy That Tom Heinemann, whose name is subscribed to the document hereunto annexed, was [illegible] of subscribing the same Assistant Legal Adviser, Office of the Legal Adviser, Department [illegible] a [illegible] nited States of America, and that full faith and credit are due to his acts as such.

***This certificate is not valid if it is removed or altered in any way whatsoever***

In testimony whereof, I, Michael R. Pompeo, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this first day of October, 2019.

Secretary of State

By

Assistant Authentication Officer,
Department of State

*Issued pur [illegible] to CHXIV, [illegible] Sept. 15, [illegible] Stat. 68-6 [illegible] USC 2657, [illegible] C 2651a; 5 [illegible] 301; 28 US [illegible] 3 et. seq.; 8 [illegible] 1443(f); RU [illegible] Federal Rule [illegible] Civil Proced [illegible]*

States Code, Section 3190. Ms. Kerwin, at the time of her certification, was the principal consular officer of the United States in Korea. The fifth set of supplemental documents submitted by the Government of the Republic of Korea in support of its extradition request was certified on June 10, 2019, by Kimberly Furnish, Acting Consul General of the United States Embassy in Seoul, Korea, in accordance with Title 18, United States Code, Section 3190. Ms. Furnish, at the time of her certification, was the principal consular officer of the United States in Korea.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October 1, 2019.

TOM HEINEMANN

Attachments:

1. Copies of Notes
2. Copy of Treaty

L/LEI
DEPARTMENT OF STATE

2014 MAY 29 A 10:26

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 2014-255

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the document relevant to the extradition procedure against Mr. Yoo, Hyukkee, Ms. Kim, Heakyung, Mr. Kim, Pilbae, pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being "Request for Extradition" issued by the Ministry of Justice of Korea and Annexes attached thereto.

The Embassy would appreciate the Department of States relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

May 28, 2014

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON D.C.(6)
대한민국대사관

Enclosure

L/LEI
DEPARTMENT OF STATE

2014 JUL 15 A 9:32

**EMBASSY OF THE REPUBLIC OF KOREA**
**WASHINGTON, D. C.**

KAM 2014-315

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the document relevant to the extradition procedure against Mr. Yoo, Hyukkee pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being 'Supplementary Document on Request for Extradition of Yoo' issued by the Ministry of Justice of Korea.

The Embassy would appreciate the Department of States relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

July 14, 2014 SKL

Enclosure

L/LEI

2015 APR 17 P 3: 15

DEPARTMENT OF STATE

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 2015-191

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the document relevant to the extradition procedure against Mr. Yoo, Hyukkee pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being 'Supplementary Document on Request for Extradition of Yoo' issued by the Ministry of Justice of Korea.

The Embassy would appreciate the Department of States relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

April 17, 2015

EMBASSY OF THE REPUBLIC OF KOREA WASHINGTON D.C. 대한민국대사관

Enclosure

L/LEI

2017 AUG 11 P 3:06

DEPARTMENT OF STATE

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 2017-0831

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the document relevant to the extradition procedure against Mr. YOO, Hyuk Kee pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being 'Supplementary Document on Request for Extradition of YOO' issued by the Ministry of Justice of Korea.

The Embassy would appreciate the Department of States relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

August 10, 2017

Enclosure

L/LEI

2018 FEB 23 A 10:55

DEPARTMENT OF STATE

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 2018-0168

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the document relevant to the extradition procedure against Mr. YOO, Hyuk Kee pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being 'Supplementary Document on Request for Extradition of YOO' issued by the Ministry of Justice of Korea.

The Embassy would appreciate the Department of States relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

February 21, 2018

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON D.C.(6)
대한민국대사관

Enclosure

L/LEI

2019 JUL -1 P 2: 44

DEPARTMENT OF STATE

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 2019-0424

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the document relevant to the extradition procedure against Mr. YOO, Hyuk Kee to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being 'Supplement to Request for Extradition of YOO, Hyuk Kee' issued by the Ministry of Justice of Korea.

The Embassy would appreciate the Department of States relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

June 20, 2019

Enclosure


EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 2019-0877

The Embassy of the Republic of Korea presents its compliments to the Department of the State of the United States of America and has the honor to deliver the letter relevant to the extradition procedure against Mr. YOO, Hyuk Kee pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy of letter that is issued by the Ministry of Justice of Korea.

The Embassy would appreciate the Department of States relaying the enclosed original letter to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurance of its highest consideration.

Washington, DC

September 27, 2019

EMBASSY OF THE REPUBLIC OF KOREA WASHINGTON D.C. 대한민국대사관

Enclosure

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 12962

# EXTRADITION

**Treaty Between the**
**UNITED STATES OF AMERICA**
**and KOREA**

Signed at Washington June 9, 1998

DEPARTMENT OF STATE
UNITED STATES OF AMERICA

EX-YOO-Decl-00012

NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof."

## KOREA

### Extradition

*Treaty signed at Washington June 9, 1998;*
*Transmitted by the President of the United States of America to the Senate March 2, 1999 (Treaty Doc. 106-2, 106th Congress, 1st Session);*
*Reported favorably by the Senate Committee on Foreign Relations November 3, 1999 (Senate Executive Report No. 106-13, 106th Congress, 1st Session);*
*Advice and consent to ratification by the Senate November 5, 1999;*
*Ratified by the President December 9, 1999;*
*Ratified by Korea November 25, 1999;*
*Ratifications exchanged at Seoul December 20, 1999;*
*Entered into force December 20, 1999.*

**EXTRADITION TREATY**
**BETWEEN**
**THE GOVERNMENT OF THE UNITED STATES OF AMERICA**
**AND**
**THE GOVERNMENT OF THE REPUBLIC OF KOREA**

EX-YOO-Decl-00015

## TABLE OF CONTENTS

Article 1 .......... Obligation to Extradite
Article 2 .......... Extraditable Offenses
Article 3 .......... Nationality
Article 4 .......... Political and Military Offenses
Article 5 .......... Prior Prosecution
Article 6 .......... Lapse of Time
Article 7 .......... Capital Punishment
Article 8 .......... Extradition Procedures and Required Documents
Article 9 .......... Admissibility of Documents
Article 10 .......... Provisional Arrest
Article 11 .......... Decision and Surrender
Article 12 .......... Temporary and Deferred Surrender
Article 13 .......... Requests for Extradition Made by Several States
Article 14 .......... Seizure and Surrender of Property
Article 15 .......... Rule of Speciality
Article 16 .......... Simplified Extradition
Article 17 .......... Transit
Article 18 .......... Representation and Expenses
Article 19 .......... Consultation
Article 20 .......... Application
Article 21 .......... Ratification, Entry into Force and Termination

**The Government of the United States of America and the Government of the Republic of Korea,**

**Desiring to provide for more effective cooperation between the two states in the prevention and suppression of crime, and to facilitate relations between the two States in the area of extradition by concluding a treaty for the extradition of offenders,**

**Have agreed as follows:**

## ARTICLE 1
## OBLIGATION TO EXTRADITE

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, any person who is wanted in the Requesting State for prosecution, trial, or imposition or execution of punishment for an extraditable offense.

## ARTICLE 2
## EXTRADITABLE OFFENSES

I. An offense shall be au extraditable offense if, at the time of the request, it is punishable nnder the laws in both Contracting States by deprivation of liberty for a period of more than one year, or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of, an offense described in paragrapb 1, provided that the requirements of paragraph 1 are fulfilled.

3. For the purposes of this Article, the totality of the conduct alleged against the person whose extraditiou is sought shall be taken into account, and an offeuse shall be an extraditable offense:

(a) whether or not the laws in the Contractiug States place the offense withiu the same category of offenses or describe the offeuse by the same terminology;

(b) whether or not the constituent elements of the offense differ under the laws in the Contracting States, provided that the offenses under the laws of both States are substantially analogons; and

(c) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the pnrpose of estahlishing jurisdictiou in a United States federal court.

4. If the offeuse was committed outside of the territory of the Requesting State, extradition shall be granted in accordance with this Treaty if the laws of the Requested State provide for punishment of an offense committed outside of its territory in similar circumstances or if the offense has been committed by a national of the Requesting State. If the laws in the Reqnested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition, provided that the requirements of this Treaty are met. Extradition may be refused when the offense for which extradition is sought is regarded under the law of the Requested State as having been committed in whole or in part in its territory and a prosecution iu respect of that offense is pending in the Requested State.

5. If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request even if the latter offense is

punishable by deprivation of liberty for a period of one year or less, provided that all other requirements for extradition are met.

6. When extradition of a person is sought for an offense against a law relating to taxation, customs duties, foreign exchange control, or other revenue matter, extradition may not be refused on the ground that the law of the Requested State does not contain a tax, duty, customs, or exchange regulation of the same kind as the law of the Requesting State.

7. Where the request for extraditiou relates to a person sentenced to deprivation of liberty by a court of the Requesting State for any extraditable offense, extradition may be denied if a period of less than four months remains to be served.

## ARTICLE 3
## NATIONALITY

1. Neither Contracting State shall be bonnd to extradite its own nationals, but the Requested State shall have the power to extradite such person if, in its discretion, it be deemed proper to do so.

2. If extradition is refused solely on the basis of tbe nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its authorities for prosecution.

3. Nationality shall be determined at the time of the commission of the offense for which extradition is requested.

## ARTICLE 4
## POLITICAL AND MILITARY OFFENSES

1. Extradition shall not he granted if the Requested State determines that tbe offense for which extradition is requested is a political offense.

2. For the purposes of this Treaty, the following offenses shall not he considered to be political offenses:

(a) a murder or other willful violent crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b) an offense for which both Contracting States have the obligation to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution pursuant to a multilateral international agreement, including but not limited to such agreements relating to genocide, terrorism, or kidnapping; and

(c) a conspiracy or attempt to commit, or participation in, any of the foregoing offenses.

3. Surrender shall not he granted if the execntive authority of the Requested State determines:

(a) that the request for surrender, though purporting to he made on account of an offense for which surrender may be granted, was in fact made for the primary purpose of prosecuting or punishing the person sought on account of his race, religion, nationality or political opinion; or

(b) that extradition bas been requested for political purposes.

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

## ARTICLE 5
## PRIOR PROSECUTION

Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested.

## ARTICLE 6
## LAPSE OF TIME

Extradition may be denied under this Treaty when the prosecution or the execution of punishment of the offense for which extradition is requested would have been barred because of the statute of limitations of the Requested State had the same offense been committed in the Requested State. The period during which a person for wbom extradition is sought fled from justice does not count towards the running of the statute of limitations. Acts or circumstances that would suspend the expiration of the statute of limitations of either State shall be given effect by the Requested State, and in this regard the Requesting State sball provide a written statement of the relevant provisions of its statute of limitations, which shall be conclusive.

**ARTICLE 7**
**CAPITAL PUNISHMENT**

1. When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the Requested State may refuse extradition unless:

(a) the offense constitutes murder under the laws in the Requested State; or

(b) the Requesting State provides such assurances as the Requested State considers sufficient that the death penalty will not be imposed or, if imposed, will not be carried out.

2. In instances in which a Requesting State provides an assurance in accordance with paragraph 1, the death penalty, if imposed by the courts of the Requesting State, shall not he carried out.

**ARTICLE 8**
**EXTRADITION PROCEDURES AND REQUIRED DOCUMENTS**

1. All requests for extradition shall be suhmitted in writing through the diplomatic channel.

2. All requests shall be supported by:

(a) documents, statements, or other types of information which describe the identity, including nationality, and probable location of the person sought;

(h) information descrihing the facts of the offense and the procedural history of the case;

(c) the text of the law describing the essential elements of the offense for which extradition is requested;

(d) the text of the law prescribing punishment for the offense;

(e) the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable; and

(f) a statement of the relevant provisions of its statute of limitations on the prosecution or the execution of punishment of the offense.

3. A request for extradition of a person who is sought for prosecution shall also be supported by:

(a) a copy of the warrant or order of arrest issued by a judge or other competent authority;

(b) a copy of the charging docnment, if any; and

(c) such information as would provide reasonable grounds to believe that the person sought has committed the offense for which extradition is requested.

4. A request for extradition relating to a person who has been fonnd guilty of the offense for which extradition is sought shall also be supported by:

(a) a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

(b) information establishing that the person sought is the person to whom the finding of guilt refers;

(c) a copy of the sentence imposed, if the person sought has beeu sentenced, and a statement establishing to what extent the sentence has been carried out; and

(d) in the case of a person who has been found guilty in absentia, the documents reqnired by paragraph 3.

5. If the Requested State considers that the information furnished in support of the request is not sufficient to fulfill the requirements of tbis Treaty, tbat State may request that additional information be furnished within such reasonable time as it specifies.

6. All documents submitted by the Requesting State shall be translated into the language of the Requested State.

## ARTICLE 9
## ADMISSIBILITY OF DOCUMENTS

The documents which accompany an extradition request sball be received and admitted as evidence in the extradition proceedings if:

(a) they are certified by thc principal diplomatic or consnlar officer of the Requested State resident in the Requesting State; or

(b) they are certified or authenticated in any other manuer accepted by the law of the Requested State.

## ARTICLE 10
## PROVISIONAL ARREST

1. In case of urgency, a Contracting State may request the provisional arrest of the person sought pending presentation of the request for extradition. A request for provisional arrest may be transmitted through the diplomatic chanuel or directly between the Department of Justice in the United States and the Ministry of Justice in the Republic of Korea.

2. The application for provisional arrest shall be in writing and contain:

(a) a description of the person sought, including information concerning the person's nationality;

(b) the location of the person sought, if known;

(c) a brief statement of the facts of the case, including, if possible, the time and location of the offense;

(d) a description of the laws violated;

(e) a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

(f) a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4. A person who is provisionally arrested may be discharged from custody upon the expiration of two months from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 8.

5. The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

**ARTICLE 11**
**DECISION AND SURRENDER**

1. The Requested State shall promptly notify the Requesting State, in writing through the diplomatic channel, of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. In cases in which decisions are made by judicial authorities, the Requested State shall, upon reqnest, provide copies of pertinent judicial decisions.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person songht.

4. If the person sought is not removed from the territory of the Requested State within the time prescribed by the law of that State, that person may be discharged from custody, and the Requested State may subsequently refuse extradition for the same offense.

**ARTICLE 12**
**TEMPORARY AND DEFERRED SURRENDER**

1. If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State for an offense other than that for which extradition is requested, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Contracting States.

2. The Requested State may postpone the extraditiou proceedings against a person who is serving a sentence in that State for an offense other than that for which extradition is requested or who is heing prosecuted in that State. The postponement may continue until the prosecution of the person sought has been coneluded or until such person has served any sentence imposed.

**ARTICLE 13**
**REQUESTS FOR EXTRADITION MADE BY SEVERAL STATES**

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall

determine to which State it will surrender the person. In making its decision, the Requested State shall consider all relevant factors, including but not limited to:

(a) whether the requests were made pursuant to treaty;

(b) the time and place where each offense was committed;

(c) the respective interests of the Requesting States;

(d) the gravity of the offeuses;

(e) the nationality of the victim;

(f) the possibility of further extradition between the Requesting States; and

(g) the respective dates of the requests.

## ARTICLE 14
## SEIZURE AND SURRENDER OF PROPERTY

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2. The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned free of charge to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3. The rights of third parties in such property shall be duly respected.

## ARTICLE 15
## RULE OF SPECIALITY

1. A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

(a) the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

(b) an offense committed after the extradition of the person; or

(c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment for an offense;

For the purpose of this subparagraph:

(i) the Requested State may require the submission of the documents called for in Article 8;

(ii) a legal record of statements made by the extradited person with respect to the offense, if any, shall be submitted to the Requested State; and

(iii) the person extradited may be detained by the Requesting State for such period of time as the Requested State may authorize, while the request is being processed.

2. A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to his surrender unless the surrendering State consents.

3. Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b) that person does not leave the territory of the Requesting State within 25 days of the day on which that person is free to leave.

## ARTICLE 16
## SIMPLIFIED EXTRADITION

If the person sought consents to surrender to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings, to the extent permitted under its law. In such cases, Article 15 of this Treaty shall not apply.

## ARTICLE 17
## TRANSIT

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be transmitted through the diplomatic channel or directly between the Department of Justice in the United States and the Ministry of Justice in the Republic of Korea. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2.      Authorization to transit shall not be required when air transport is used and no landing is scheduled in the territory of the State of transit. If an unscheduled landing occurs in the territory of that party, it may require the other party to furnish a request for transit as provided in paragraph 1 of this Article. The State of transit shall detain the person to be transported until the transportation is continued provided that the request is received within ninety-six (96) hours of the unscheduled landing.

3.      Permission for the transit of a person surrendered shall include authorization for accompanying officials to obtain assistance from authorities in the State of transit in maintaining custody.

4.      Where a person is being held in custody pursuant to paragraph 3 of this Article, the Contracting State in whose territory the person is being held may direct that the person be released if transportation is not continued within a reasonable time.

## ARTICLE 18
## REPRESENTATION AND EXPENSES

1.      The Requested State shall advise, assist, appear in court on behalf of the Requesting State, and represent the interests of the Requesting State, in any proceedings arising out of a request for extradition.

2.      The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered from the Requested State to the Requesting State. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3.      Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought under this Treaty.

## ARTICLE 19
## CONSULTATION

1.      The Contracting States shall consult, at the request of either, concerning the interpretation and the application of this Treaty.

2.      The United States Department of Justice and the Republic of Korea Ministry of Justice may consult with each other directly in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

## ARTICLE 20
## APPLICATION

This Treaty shall apply to offenses committed before as well as after the date it enters into force.

## ARTICLE 21
## RATIFICATION, ENTRY INTO FORCE AND TERMINATION

1. This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged as soou as possible.

2. This Treaty shall enter into force upon the exchange of the instruments of ratification.

3. Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and tbe termination shall he cffective six months after the date of sucb notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments have signed this Treaty.

DONE at Washington, in duplicate, this 9th day of June, 1998, in the English and Korean languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:

Madeleine Albright

FOR THE GOVERNMENT OF THE REPUBLIC OF KOREA:

[signature]