

## MINISTRY OF JUSTICE
Republic of Korea

Attorney General
United States of America

### Request for Extradition of YOO Hyukkee, KIM Heakyung, KIM Pilbae

I, HWANG Kyo-Ahn, the Korean Minister of Justice,

1. on behalf of the Republic of Korea, hereby request for the extradition of YOO Hyukkee, KIM Heakyung, KIM Pilbae for violating the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (Embezzlement) under the Extradition Treaty between the Republic of Korea and the United States of America, so that this case can be handled in accordance with the relevant law of the Republic of Korea.

2. hereby confirm that the Korean Government certifies this supplementary document on the request for the extradition of the criminal by sealing, signing and impressing the official seal of the Korean Minister of Justice on this document.

Seoul, Republic of Korea

May 19, 2014

HWANG Kyo-Ahn
Minister of Justice
Republic of Korea
*(Sealed: Minister of Justice)*

KIM Joo-Hyun
Deputy Minister of Criminal Affairs Bureau
(Duly authorized by the Minister)

# STATEMENT OF CONFIRMATION

I, JEONG Soon Shin, Prosecutor of the Incheon District Prosecutors' Office ("Incheon DPO") in Korea hereby certify the following in support of the request for the extradition of YOO Hyuk Kee from the United States of America to the Republic of Korea pursuant to the Extradition Treaty between the Republic of Korea and the United States of America, which became effective on December 20, 1999.

## 1. QUALIFICATIONS

1.1. I am a public prosecutor of the Incheon DPO under the Korean Ministry of Justice. After passing the National Bar Examination in 1995, I completed the two-year required program at the Judicial Research and Training Institute, an affiliate of the Supreme Court of Korea. In 1998, I obtained the qualifications to work as a judge, prosecutor, or lawyer in Korea. Since 2001, I have been working as a prosecutor under the appointment of the President of Korea. Based on my training, experience, and position, I clearly understand the criminal code and criminal procedures of Korea. As the prosecutor in charge of investigating this case, I am well aware of the matters of this case.

1.2. Under the Korean law, a prosecutor, who presides over investigation, may choose to either investigate independently or supervise the police as they investigate the case. Once the investigation is completed, the

1

prosecutor exclusively decides on the indictment. Thereafter, the prosecutor is in charge of maintaining the indictment and executing the final judgment of the court. According to the principle of the exclusive power of a prosecutor, the court may proceed with the trial procedures only for the cases indicted by a prosecutor. Furthermore, according to the Korean practice on investigation and indictment, a prosecutor does not indict a suspect without his custody. In this case, however, the suspect has not been indicted as his whereabouts has not been located.

## 2. INFORMATION ON YOO HYUK KEE

2.1. YOO Hyuk Kee is a male citizen of the Republic of Korea who was born in Korea on November 10, 1972. His address in Korea is 616-5 Daemyeong-dong, Nam-gu, Daegu. He has a Korean passport numbered NY1001671. His English name is 'HYUK KEE YOO'.

2.2. Annex 1 is a genuine and exact copy of YOO Hyuk Kee's photograph submitted to the administrative agency for the issuance of his Resident Registration Card.

2.3. YOO Hyuk Kee is a permanent resident of the United States. On August 18, 2013, he departed for France and has not returned to Korea. He is currently presumed to be residing in the U.S.

## 3. PROGRESS OF THE CASE

3.1. Background of Investigation

2

EX-YOO-00081

3.1.1. In the wake of the sinking of the 'Sewol Ferry' off the southwestern island of Jindo, Korea, on April 16, 2014, the Joint Investigation Team of Prosecutors and Police in Mokpo started investigating the captain and the officer of the ferry for their negligence during the operation of the ferry on the date of accident, and also Chonghaejin Marine Company ("Chonghaejin Marine"), the operator of the Sewol ferry, for violating its occupational duty of ship management.

3.1.2. In the above-mentioned investigation process, both the media and those who once worked for Semo Co., Ltd. ("Semo Group"), the holding company of Chonghaejin Marine, determined that the Sewol Ferry accident had been caused not only by the negligence committed by individuals such as the captain but also by structural problems resulting in a 'safety accident typical of underdeveloped countries,' including ① lack of transparency in Chonghaejin Marine and its affiliate companies and ② safety ignorance stemming from the desire of Chonghaejin Marine and its affiliate companies for reckless expansion, and they called for government-wide actions to prevent any future accidents of the same kind.

3.1.3. Under these circumstances, suspicions arose regarding the success of the head of Semo Group, YOO Byung Eyn, who had been arrested and sentenced to four years of imprisonment for habitual fraud against the followers of the church around 1995, but was able to restore his Group, owning around 50 affiliate companies with the total asset value

3

EX-YOO-00082

of approximately KRW 560,000,000,000 not long after he finished serving his sentence. After analyzing open-source information including audit reports and tax settlement documents of Semo Group's affiliate companies, reported to the Financial Supervisory Service, it was discovered that YOO Byung Eyn and his family managed the company without any transparency and in an undisclosed manner through a small number of close aides who had no expertise. Meanwhile, they had allegedly embezzled affiliate companies' assets frequently, and in order to commit such crimes, they had allegedly omitted legal decision-making processes, frequently provided unfair support to the affiliate companies and conducted self-dealings. After discovering the above, a full-scale investigation was launched.

3.2. Proceedings of Investigation

3.2.1. The Special Investigation Team conducted investigation on about 70 people including accountants KIM Chun-gyun and PARK Gwon-jong who audited the affiliate companies; GO Chang-hwan, the CEO of Semo Group; KIM Han-sik, the CEO of Chonghaejin Marine; SONG Guk-bin, the CEO of Dapanda Co., Ltd.; BYEON Gi-chun, the CEO of Chonhaiji Co., Ltd.; LEE Jae-yeong, the CEO of Ahae Co., Ltd.; KIM Gyeong-suk, the CEO of Noreunja Shopping Co., Ltd.; OH Gyeong-seok, the CEO of Hemato Centric Life Research Institute; PARK Seung-il, the auditor for I-One-I Holdings Co., Ltd.; and KIM Dong-hwan, the auditor for Dapanda Co., Ltd. The Special Investigation Team also checked the replies of the

4

affiliate companies to the Korea Financial Intelligence Unit and their transaction records for advisory fees, trademark royalties and payments for photographs made out to YOO Byung Eyn and his family.

3.2.2. As a result, it has been confirmed that YOO Byung Eyn, YOO Dae Kyoon, YOO Hyuk Kee, YOO Chong Somena, KIM Pil Bae, KIM Dong-hwan, PARK Seung-il, GO Chang-hwan, LEE Jae-yeong, and BYEON Gi-chun conspired to have the affiliate companies arbitrarily make payments out of their total sales to YOO Byung Eyn, YOO Chong Somena, YOO Dae Kyoon and YOO Hyuk Kee under various names such as business consulting fees, trademark royalties and payments for the purchase of photographs, and that it caused adverse effects on the yield structure of the affiliate companies.

3.2.3. From April 30, 2014 to May 8, 2014, the Special Investigation Team requested YOO Hyuk Kee to appear at the investigative agency through his attorney SON Byeong-gi three times, but he has failed to appear.

3.2.4. On May 8, 2014, the Special Investigation Team requested the Incheon District Court to issue an arrest warrant for YOO Hyuk Kee and Judge PARK Seong-yong of the above court issued the arrest warrant on the same day. Annex 2 is a genuine and exact copy of the arrest warrant issued by Judge PARK Seong-yong.

3.2.5. Currently, the Korean Office of US Homeland Security Investigations is providing cooperation in the investigation of this case.

EX-YOO-00084

## 4. EXTRADITABLE CRIME AND RELEVANT EVIDENCE

4.1. Extraditable Crime

YOO Hyuk Kee violated Article 3(1)1 and 3(1)2 of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes and Article 355(1) of the Criminal Act(Embezzlement). The details of his crime are as follows.

4.1.1. Holding 19.44% share of I-One-I Holdings Co., Ltd. (hereinafter referred to as 'I-One-I Holdings'), YOO Hyuk Kee has managed its affiliate companies such as Trigon Korea Co., Ltd., Gookje Yeongsang Co., Ltd., Dapanda Co., Ltd., Onzigoo Co., Ltd., Ahae Co., Ltd., Moonjin Media Co., Ltd., Chonhaiji Co., Ltd., Chonghaejin Marine Co., Ltd., Semo Co., Ltd., Clien Co., Ltd., Saemoori Co., Ltd., Hojin Co., Ltd., and Socuri Co., Ltd. Then, around November 28, 2005, YOO Hyuk Kee registered a private company named 'Key Solution' located at 1F 69-3 Cheongdam-dong, Gangnam-gu, Seoul, and acquired 'business consulting fees' personally in conspiracy with the CEOs of affiliate companies even though he did not provide business consulting to each affiliate company.

4.1.2. Around March 2010, at the office of 'Semo' located at 558-10 and 565-3 Sipjeong-dong, Bupyeong-gu, Incheon, YOO Hyuk Kee conspired with CEO GO Chang-hwan of 'Semo' who was keeping the company funds for business purposes to sign a 'Business Consulting Service Contract' stating to the effect that KRW 25,000,000 should be paid by the victim company every month, even though the victim did not require regular business consulting for risk management,

6

EX-YOO-00085

etc. and Key Solution managed by YOO Hyuk Kee was neither capable of offering business consulting service nor did it actually provide practical business consulting. Around that time, YOO Hyuk Kee received KRW 25,000,000 as a consulting fee into his Woori Bank account. Moreover, from then on to March 2014, YOO Hyuk Kee took KRW 25,000,000 every month, thereby embezzling a total of KRW 1,225,000,000 from the victim company.

4.1.3. Around April 2010, at the office of 'Moreal Design' located at 4-4 Samsung-dong, Gangnam-gu, Seoul, YOO Hyuk Kee conspired with CEO YOO Chong Somena of 'Moreal Design' who was keeping the company funds for business purposes to have the victim company pay him KRW 30,000,000 as a 'business consulting fee', even though the victim company did not require regular business consulting for risk management, etc. and Key Solution managed by YOO Hyuk Kee was neither capable of offering business consulting nor did it actually provide business consulting to 'Moreal Design'. Moreover, from then on to December 2013, YOO Hyuk Kee received KRW 20,000,000 or KRW 30,000,000 every month as a 'business consulting fee', thereby embezzling a total of KRW 990,000,000 from the victim company.

4.1.4. Around January 2009, at the office of 'Ahae', YOO Hyuk Kee conspired with CEO LEE Jae-yeong of 'Ahae' who was keeping the company funds for business purposes to draw up a contract stating to the effect that the victim company should pay 0.8%~1.6% of its monthly revenue to the suspect as a royalty payment for its trademark. Beforehand, YOO

EX-YOO-00086

Hyuk Kee registered the trademark of Ahae which had been used by the victim company for about ten years. Then, YOO Hyuk Kee received KRW 9,499,200, and from then on to December 2013, he took and embezzled a total of KRW 5,346,311,045 under the same pretext from the victim company.

4.1.5. Around January 2009, at the office of 'Onnara Shopping', YOO Hyuk Kee conspired with CEO BYEON Gi-chun of victim 'Onnara Shopping' who was keeping the company funds for business purposes to sign an 'Exclusive License Contract' for the trademark of 'Onnara Shopping' registered by the suspect, even though there is no brand value in the name, the trademark registration fee is about KRW 300,000 only and the name is quite replaceable. Then, YOO Hyuk Kee received KRW 8,514,430 from the victim, and from then on to December 2011, YOO Hyuk Kee received and embezzled a total of KRW 328,436,704.

4.1.6. Around January 2008, at the office of 'Chonhaiji', YOO Hyuk Kee conspired with CEO BYEON Gi-chun of 'Chonhaiji' who was keeping the company funds for business purposes to sign a contract stating to the effect that the victim company should pay 1.0%~1.5% of its revenue for using the trademark of 'Chonhaiji' registered by the suspect, even though there is no brand value in the name, the trademark registration fee is about KRW 300,000 only and the name is quite replaceable. Then, YOO Hyuk Kee received KRW 18,898,710 from the victim, and from then on to June 2010, YOO Hyuk Kee received and embezzled a total of KRW

8

EX-YOO-00087

1,235,426,771.

4.1.7. Around February 2011, at the office of 'Chonhaiji', YOO Hyuk Kee conspired with above BYEON Gi-chun to receive KRW 20,000,000 from the victim as an advisory fee even though he did not play any special role concerning the management of the victim company, and from then on to November 2011, YOO Hyuk Kee received monthly payment of KRW 20,000,000, thereby embezzling a total of KRW 200,000,000.

4.1.8. As suspect YOO Hyuk Kee needed a significant sum of money to exhibit photographs taken by his father YOO Byung Eyn at Chateau de Versailles, he decided to withdraw company funds from Chonhaiji. Around March 2013, at the office of 'Chonhaiji', YOO Hyuk Kee conspired with CEO BYEON Gi-chun of 'Chonhaiji' to have KRW 1,656,598,080 paid by the victim to a company in the US named Ahae Press Inc. represented by YOO Hyuk Kee as an advance payment for his father's photographs as if the victim had signed a contract to buy his photographs at a high price, even though his photographs were not proven to be priceless as they were never put up for sale in the auction market other than among followers of his church and affiliate companies. From them on to December 2013, YOO Hyuk Kee received and embezzled a total of KRW 19,862,077,987.

4.2. Relevant Evidence

The evidence is sufficient to prosecute YOO Hyuk Kee pursuant to the Korean criminal laws on charge of

9

EX-YOO-00088

violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement).

4.2.1. Around April 26, 2014, at the Incheon DPO, KIM Chun-gyun made the following statements to prosecutor KIM Jeong-guk: "PARK Seung-il and KIM Dong-hwan established the management structure of affiliate companies for the YOO Byung Eyn family based on the advice received from outside. YOO Hyuk Kee favors PARK Seung-il and even said not to interfere with him in private." "Under the order of YOO Byung Eyn, each affiliate company raises funds using many excuses and the slush funds are transferred to the YOO Byung Eyn family via I-One-I Holdings Co., Ltd. They also restructure the corporate governance so as to better obtain such funds. PARK Seung-il frequently goes abroad with YOO Hyuk Kee because he is in charge of the management of funds in other countries. Every year, affiliate companies pay certain percentages of their revenues to SLPLUS (CEO: YOO Dae Kyoon) for consulting and the use of trademark; Moreal Design (CEO: YOO Chong Somena) for design service; Parrotbill (represented by YOO Byung Eyn) for consulting and the use of trademark; and Key Solution (CEO: YOO Hyuk Kee, the second son of YOO Byung Eyn) for consulting and the use of trademark. Dapanda also had to pay 2~3% of its revenues (approximately KRW 50,000,000,000), negatively affecting its yield structure." "I-One-I Holdings takes on the role of the audit team and collected the funds from affiliate companies. PARK Seung-il contacted the CEO of each

10

EX-YOO-00089

affiliate company and collected money whenever money is needed for YOO Byung Eyn's photograph exhibition, etc."

4.2.2. Around April 25, 2014, at the Incheon DPO, GO Chang-hwan made the following statements to prosecutor LEE Jin-ho: "Semo Group paid KRW 250,000,000 in 2010 and KRW 300,000,000 in 2011, 2012, and 2013 to Key Solution (CEO: YOO Hyuk Kee) as business consulting fees, upon request of PARK Seung-il of Key Solution." "I and PARK Seung-il decided on business consulting fee without having estimates from other companies compared and taking into account Key Solution's level of expertise, performance records, reliability, and the need for two-way consulting service, etc."

4.2.3. Around May 1, 2014, at the Incheon DPO, JO Seon-ae made the following statements to prosecutor CHOE won-seok: "Even though the Semo Group's financial statements indicate that its liability was higher than equity and its operating profit was on the decline, the company paid KRW 300,000,000 to Key Solution every year as a consulting service fee, adding up to KRW 1,150,000,000 in four years, which was excessive. Moreover, although the company's performance did not get any better even after having high-priced consulting service, the company did not replace the consulting firm. It was far from normal."

4.2.4. According to the payment records of Ahae, Semo Group, I-One-I Holdings, Dapanda, Moonjin Media, Chonhaiji, Chonghaejin Marine, Onnara Shopping and Moreal Design, each affiliate company made payments to YOO Byung Eyn and

11

EX-YOO-00090

his family.

4.2.5. The statements by KIM Chun-gyun, GO Chang-hwan, and JO Seon-ae were legitimately made in accordance with the procedures pursuant to the Criminal Procedure Act of the Republic of Korea, and documented and maintained at the Incheon DPO in charge of the investigation of this case. The evidence including financial transaction records of the payment statements of Ahae, Semo Group, I-One-I Holdings, Dapanda, Moonjin Media, Chonhaiji, Chonghaejin Marine, Onnara Shopping, and Moreal Design were legitimately gathered in accordance with the procedures pursuant to the Criminal Procedure Act of the Republic of Korea and kept in files together with the above-mentioned statements.

## 5. APPLICABLE LAW OF KOREA

5.1. The applicable laws of Korea for the crime committed by YOO Hyuk Kee violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement) are as follows.

5.1.1. Embezzlement

**Article 355(1) of the *Criminal Act***

A person who, having the custody of another's property, embezzles or refuses to return it, shall be punished by imprisonment for not more than five years or by a fine not exceeding fifteen million won.

5.1.2. Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement)

EX-YOO-00091

**Article 3(1)1 and 3(1)2 of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes**

Any person who commits crimes as prescribed in Article 347 (fraud), 350 (extortion), 351 (limited to the habitual crime as prescribed in Articles 347 and 350), 355 (embezzlement, breach of trust) or 356 (occupational embezzlement, occupational breach of trust) of the Criminal Act, shall, if the value of the goods or profits on property which he gains or has another person gain is five hundred million won or more, be punished additionally as follows:

1. If the amount of profit is five billion won or more, he shall be punished by imprisonment for lifetime or not less than five years;

2. If the amount of profit is not less than five hundred million won but less than five billion won, he shall be punished by imprisonment for a definite term of three or more years;」

5.1.3. A person who commits embezzlement, if the amount of damages is five hundred million won or more, shall be subject to aggravated punishment pursuant to the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes.

5.1.4. Statute of Limitations

Under Article 249(1) of the Korean Criminal Procedure Act, the statute of limitations for crimes subject to lifetime imprisonment is fifteen (15) years. According to Article 253(3) of the Criminal Procedure Act, the statute of

13

EX-YOO-00092

limitations shall be suspended during the period for which the offender stays abroad for the purpose of avoiding criminal punishment. Therefore, the statute of limitations for KIM Pil Bae has not expired yet.

**Article 249(1) of the Criminal Procedure Act**

① The statute of limitations shall expire upon the lapse of the following terms:

1. Twenty-five years for crimes punishable with death penalty;

2. Fifteen years for crimes punishable with imprisonment without prison labor for life or imprisonment for life;

3. Ten years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of ten years or more;

4. Seven years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of less than ten years; and

5. Five years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of less than five years, or suspension of qualifications for a maximum term of not less than ten years, or a fine

**Article 253(3) of the *Criminal Procedure* Act**

The limitation period shall be suspended during the period, for which an offender stays abroad for the purpose of escaping criminal punishment.

EX-YOO-00093

5.2. The aforementioned laws are currently in effect in Korea and were also effective between January 2008 and March 31, 2014 when YOO Hyuk Kee allegedly violated the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement).

## 6. Arrest Warrant

6.1. As set forth above, an arrest warrant has been issued for YOO Hyuk Kee for violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes.

6.2. In cases where it is difficult to prosecute a suspect on the run as it is in this case, the prosecution shall be suspended as a mid-step, and the prosecutor temporarily closes the investigation and seeks to have a warrant of arrest or detention for the suspect. With the arrest warrant issued, the prosecutor locates the whereabouts of the suspect and puts him on the wanted list so as to make the arrest. Therefore, when the prosecution is suspended due to the suspect's unknown whereabouts as in this case, neither prosecution to the court nor trial procedures proceeds so that there are no documents related to the indictment available in the case records.

6.3. Under the Criminal Procedure Act of the Republic of Korea, the prosecutor can request a relevant district judge to issue an arrest warrant to detain a suspect if there is sufficient evidence found during the investigation to believe that the suspect committed the crime; the suspect refuses to yield to a prosecutor's summons to appear; or

EX-YOO-00094

the suspect is likely to refuse such summons.

6.4. The judge will issue an arrest warrant only when it is determined that the request provides reasonable grounds for an arrest (Articles 201 and 201-2 of the *Criminal Procedure Act*). For this reason, the fact that an arrest warrant has been issued reflects that the judge is also convinced there are reasonable grounds to believe that the suspect committed the crime as described in the arrest warrant.

6.5. On May 8, 2014, Judge PARK Seong-yong of the Incheon District Court issued an arrest warrant for YOO Hyuk Kee upon my request. The arrest warrant, which will be valid until March 30, 2029, is a judicial document that grants the right to arrest YOO Hyuk Kee on or prior to March 30, 2029 for violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes. Judge PARK Seong-yong of the Incheon District Court has authority to issue such arrest warrant under the Korean law. The original arrest warrant is kept on the investigation file of this case for the relevant criminal procedures in Korea. I have reviewed the original in person and confirm that Annex 2 is a genuine and exact copy of the arrest warrant.

7. **I hereby certify that the aforementioned are all true to my knowledge. I am submitting this statement of confirmation, being well-aware that I may be punished for falsely producing official documents pursuant to Article 227 of the *Criminal Act* of Korea.**

EX-YOO-00095

May 14, 2014

Respectfully submitted by

Prosecutor JEONG Soon Shin

Incheon District Prosecutors' Office

Annex:

1. A genuine and exact copy of YOO Hyuk Kee's photograph

2. A genuine and exact copy of the arrest warrant for YOO Hyuk Kee

EX-YOO-00096



EX-YOO-00097

# Warrant of Arrest

| Warrant No. | 2014-7383 | Criminal Offense | Violation of the Act on the Aggravated Punishment Etc. of Specific Economic Crimes (Embezzlement) | | |
|---|---|---|---|---|---|
| **Suspect** | Name | YOO Hyuk Kee | Occupation | Others | |
| | Resident Registration # | 721110-1691825 | Nationality | Korean | |
| | Address | | | | |

| Prosecutor | JEONG Soon Shin | Date of Application | 2014. 5. 8.   20:28 |
|---|---|---|---|
| Defense Attorney | | Date of Expiry | 2029. 3. 30 |
| Facts of Crime | See Enclosure | Place of Custody | Incheon District Prosecutors' Office |
| Place of Detention | Incheon Detention Center | | |

| | |
|---|---|
| ■ The suspect failed to attend in accordance with the summons served on him/her without a plausible reason. | As there is sufficient reason to believe that the defendant has committed the offense(s) set out in the attachment and there is ground for his/her arrest, the defendant shall be arrested and brought to court. If this warrant is not enforced on or before the date of expiry, it shall no longer be enforceable and the warrant shall be returned. |
| ☐ The suspect may fail to attend in accordance with the summons served on him/her, without a plausible reason. | |
| ☐ The suspect has no fixed address (for crimes resulting in a fine not exceeding KRW 500,000, detention, or a minor fine). | 2014. 5. 8.  Judge PARK Seong-yong (sealed) |

| Date of Arrest | | Place of Arrest | |
|---|---|---|---|
| Date of Custody | | Place of Custody | |
| Date of Detention | | Place of Detention | |
| Reasons for Failed Execution | | | |
| Office/Title of Person in Charge | | Signature of Person in Charge | |

EX-YOO-00098

# Facts of Crime

## 1. Information on the Suspect

Suspect YOO Hyuk Kee is the son of YOO Byung Eyn who is leading the Evangelical Baptist Church. Holding 19.44% share of I-One-I Holdings Co., Ltd. (hereinafter referred to as 'I-One-I Holdings'), YOO Hyuk Kee has managed its affiliate companies such as Trigon Korea Co., Ltd., Gookje Yeongsang Co., Ltd., Dapanda Co., Ltd., Onzigoo Co., Ltd., Ahae Co., Ltd., Moonjin Media Co., Ltd., Chonhaiji Co., Ltd., Chonghaejin Marine Co., Ltd., Semo Co., Ltd., Clien Co., Ltd., Saemoori Co., Ltd., Hojin Co., Ltd., and Socuri Co., Ltd. Then, around November 28, 2005, YOO Hyuk Kee registered a private company named 'Key Solution' located at 1F 69-3 Cheongdam-dong, Gangnam-gu, Seoul, and then provided business consulting to each affiliate company so as to acquire 'business consulting fees' personally in conspiracy with the CEOs of affiliate companies.

## 2. Facts of Crime

### A. Violation of *the Act on the Aggravated Punishment Etc. of Specific Economic Crimes (Embezzlement)* against victim Semo Co., Ltd. ('Semo')

Around March 2010, at the office of 'Semo' located at 558-10 and 565-3 Sipjeong-dong, Bupyeong-gu, Incheon, suspect YOO Hyuk Kee conspired with CEO GO Chang-hwan of 'Semo' who was keeping the company funds for business purposes to sign a 'Business Consulting Service Contract' stating to the effect that KRW 25,000,000 should be paid by the victim company every month, even though the victim did not require regular business consulting for risk management, etc. and Key Solution managed by YOO Hyuk Kee was neither capable of offering business consulting service nor did it actually provide practical business consulting. Around that time, YOO Hyuk Kee received

EX-YOO-00099

KRW 25,000,000 as a consulting fee into his Woori Bank account. Moreover, from then on to March 2014, YOO Hyuk Kee took KRW 25,000,000 every month as listed in the attached Accounts of Crime (1), thereby embezzling a total of KRW 1,225,000,000 from the victim company.

B. **Violation of** *the Act on the Aggravated Punishment Etc. of Specific Economic Crimes (Embezzlement)* **against victim Moreal Design Inc. ('Moreal Design')**

Around April 2010, at the office of 'Moreal Design' located at 4-4 Samsung-dong, Gangnam-gu, Seoul, suspect YOO Hyuk Kee conspired with CEO YOO Chong Somena of 'Moreal Design' who was keeping the company funds for business purposes to have the victim company pay him KRW 30,000,000 as a 'business consulting fee', even though the victim company did not require regular business consulting for risk management, etc. and Key Solution managed by YOO Hyuk Kee was neither capable of offering business consulting nor did it actually provide business consulting to 'Moreal Design'. Moreover, from then on to December 2013, YOO Hyuk Kee received KRW 20,000,000 or KRW 30,000,000 every month as a 'business consulting fee' as listed in the attached Accounts of Crime (2), thereby embezzling a total of KRW 990,000,000 from the victim company.

C. **Violation of** *the Act on the Aggravated Punishment Etc. of Specific Economic Crimes (Embezzlement)* **against victim Ahae Co., Ltd. ('Ahae')**

Around January 2009, at the office of 'Ahae', suspect YOO Hyuk Kee conspired with CEO LEE Jae-yeong of 'Ahae' who was keeping the company funds for business purposes to draw up a contract stating to the effect that the victim company should pay 0.8%~1.6% of its monthly revenue to the suspect as a royalty payment for its trademark. Beforehand, YOO Hyuk Kee registered the trademark of Ahae which had been used by

EX-YOO-00100

the victim company for about ten years. Then, YOO Hyuk Kee received KRW

9,499,200, and from then on to December 2013, he took and embezzled a total of KRW

5,346,311,045 under the same pretext from the victim company as listed in the attached

Accounts of Crime (3).

D. **Occupational embezzlement against victim Onnara Shopping Co., Ltd. ('Onnara Shopping')**

Around January 2009, at the office of 'Onnara Shopping', suspect YOO Hyuk Kee

conspired with CEO BYEON Gi-chun of victim 'Onnara Shopping' who was keeping the

company funds for business purposes to sign an 'Exclusive License Contract' for the

trademark of 'Onnara Shopping' registered by the suspect, even though there is no brand

value in the name, the trademark registration fee is about KRW 300,000 only and the

name is quite replaceable. Then, YOO Hyuk Kee received KRW 8,514,430 from the

victim, and from then on to December 2011, YOO Hyuk Kee received and embezzled a

total of KRW 328,436,704 as listed in the attached Accounts of Crime (4).

E. **Violation of *the Act on the Aggravated Punishment Etc. of Specific Economic Crimes (Embezzlement)* against victim Chonhaiji Co., Ltd. ('Chonhaiji')**

(1) **Embezzlement of Trademark Royalties**

Around January 2008, at the office of 'Chonhaiji', suspect YOO Hyuk Kee conspired

with CEO BYEON Gi-chun of 'Chonhaiji' who was keeping the company funds for

business purposes to sign a contract stating to the effect that the victim company should

pay 1.0%~1.5% of its revenue for using the trademark of 'Chonhaiji' registered by the

suspect, even though there is no brand value in the name, the trademark registration fee

is about KRW 300,000 only and the name is quite replaceable. Then, YOO Hyuk Kee

received KRW 18,898,710 from the victim, and from then on to June 2010, YOO Hyuk

EX-YOO-00101

Kee received and embezzled a total of KRW 1,235,426,771 as listed in the attached Accounts of Crime (5).

**(2) Embezzlement of Advisory Fees**

Around February 2011, at the office of 'Chonhaiji', suspect YOO Hyuk Kee conspired with above BYEON Gi-chun to receive KRW 20,000,000 from the victim as an advisory fee even though he did not play any special role concerning the management of the victim company, and from then on to November 2011, YOO Hyuk Kee received monthly payment of KRW 20,000,000, thereby embezzling a total of KRW 200,000,000 as listed in the attached Accounts of Crime (6).

**(3) Embezzlement of Advance Payments for Photographs**

As suspect YOO Hyuk Kee needed a significant sum of money to exhibit photographs taken by his father YOO Byung Eyn at Chateau de Versailles, he decided to withdraw company funds from Chonhaiji Co., Ltd.

Around March 2013, at the office of 'Chonhaiji', YOO Hyuk Kee conspired with CEO BYEON Gi-chun of 'Chonhaiji' to have KRW 1,656,598,080 paid by the victim to a company in the US named Ahae Press Inc. represented by YOO Hyuk Kee as an advance payment for his father's photographs as if the victim had signed a contract to buy his photographs at a high price, even though his photographs were not proven to be priceless as they were never put up for sale in the auction market other than among followers of his church and affiliate companies. From them on to December 2013, YOO Hyuk Kee received and embezzled a total of KRW 19,862,077,987 as listed in the attached Accounts of Crime (7).

EX-YOO-00102

# ACCOUNTS OF CRIME (1)

| NO. | DATE | PAYER | CEO | RECIPIENT | AMOUNT OF EMBEZZLEMENT (Excluding VAT) | DETAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | 2010-03-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 2 | 2010-04-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 3 | 2010-05-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 4 | 2010-06-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 5 | 2010-07-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 6 | 2010-08-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 7 | 2010-09-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 8 | 2010-11-01 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 9 | 2010-11-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 10 | 2010-12-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 11 | 2011-01-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 12 | 2011-02-28 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 13 | 2011-03-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 14 | 2011-04-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 15 | 2011-05-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 16 | 2011-06-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 17 | 2011-07-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 18 | 2011-08-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 19 | 2011-09-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 20 | 2011-10-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 21 | 2011-11-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 22 | 2011-12-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 23 | 2012-01-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 24 | 2012-02-29 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 25 | 2012-03-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 26 | 2012-04-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 27 | 2012-05-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 28 | 2012-06-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 29 | 2012-07-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 30 | 2012-08-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 31 | 2012-09-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 32 | 2012-10-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 33 | 2012-11-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 34 | 2012-12-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 35 | 2013-01-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 36 | 2013-02-28 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 37 | 2013-03-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 38 | 2013-04-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 39 | 2013-05-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 40 | 2013-06-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 41 | 2013-07-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 42 | 2013-08-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 43 | 2013-09-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 44 | 2013-01-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 45 | 2013-11-30 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 46 | 2013-12-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 47 | 2014-01-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 48 | 2014-02-29 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| 49 | 2014-03-31 | Semo Co., Ltd. | GO Chang-hwan | Key Solution | 25,000,000 | Business Consulting Service Fee | |
| | Total | | | KRW 1,225,000,000 | | | |

# ACCOUNTS OF CRIME (2)

| NO. | DATE | PAYER | CEO | RECIPIENT | AMOUNT OF EMBEZZLEMENT (Excluding VAT) | DETAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | 2010-04-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 2 | 2010-05-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 3 | 2010-06-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 4 | 2010-07-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 5 | 2010-08-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 6 | 2010-09-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 7 | 2010-10-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 8 | 2010-11-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 9 | 2010-12-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 30,000,000 | Business Consulting Service Fee | |
| 10 | 2011-01-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 11 | 2011-02-28 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 12 | 2011-03-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 13 | 2011-04-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 14 | 2011-05-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 15 | 2011-06-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 16 | 2011-07-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 17 | 2011-08-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong- | Key Solution | 20,000,000 | Business Consulting Service Fee | |

EX-YOO-00105

| | | | hwa | | | | |
|---|---|---|---|---|---|---|---|
| 18 | 2011-09-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 19 | 2011-10-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 20 | 2011-11-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20.000,000 | Business Consulting Service Fee | |
| 21 | 2011-12-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 22 | 2012-01-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 23 | 2012-02-29 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 24 | 2012-03-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 25 | 2012-04-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 26 | 2012-05-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 27 | 2012-06-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 28 | 2012-07-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 29 | 2012-08-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 30 | 2012-09-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 31 | 2012-10-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 32 | 2012-11-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 33 | 2012-12-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 34 | 2013-01-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20.000,000 | Business Consulting Service Fee | |

EX-YOO-00106

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 35 | 2013-02-28 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 36 | 2013-03-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 37 | 2013-04-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 38 | 2013-05-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 39 | 2013-06-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 40 | 2013-07-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 41 | 2013-08-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 42 | 2013-09-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 43 | 2013-10-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 44 | 2013-11-30 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| 45 | 2013-12-31 | Moreal Design Inc. | YOO Chong Somena HA Myeong-hwa | Key Solution | 20,000,000 | Business Consulting Service Fee | |
| Total | | | | KRW 990,000,000 | | | |

EX-YOO-00107

# ACCOUNTS OF CRIME (3)

| NO. | DATE | PAYER | CEO | RECIPIENT | AMOUNT OF EMBEZZLEMENT (Excluding VAT) | DETAILS | REMARKS |
|-----|------|-------|-----|-----------|------|---------|---------|
| 1 | 2009-01-30 | Ahae Co., Ltd. | LEE Seong-hwan LEE Jae-yeong | Key Solution | 9,499,200 | Trademark royalty | |
| 2 | 2009-02-27 | Ahae Co., Ltd. | LEE Seong-hwan LEE Jae-yeong | Key Solution | 18,685,600 | Trademark royalty | |
| 3 | 2009-03-31 | Ahae Co., Ltd. | LEE Seong-hwan LEE Jae-yeong | Key Solution | 52,638,400 | Trademark royalty | |
| 4 | 2009-04-30 | Ahae Co., Ltd. | LEE Seong-hwan LEE Jae-yeong | Key Solution | 62,902,300 | Trademark royalty | |
| 5 | 2009-05-30 | Ahae Co., Ltd. | LEE Seong-hwan LEE Jae-yeong | Key Solution | 49,325,900 | Trademark royalty | |
| 6 | 2009-06-30 | Ahae Co., Ltd. | LEE Seong-hwan LEE Jae-yeong | Key Solution | 59,522,800 | Trademark royalty | |
| 7 | 2009-07-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 65,986,900 | Trademark royalty | |
| 8 | 2009-08-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 74,332,910 | Trademark royalty | |
| 9 | 2009-09-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 85,358,950 | Trademark royalty | |
| 10 | 2009-10-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 82,482,640 | Trademark royalty | |
| 11 | 2009-11-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 75,699,660 | Trademark royalty | |
| 12 | 2009-12-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 65,440,520 | Trademark royalty | |
| 13 | 2010-01-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 20,057,030 | Trademark royalty | |
| 14 | 2010-02-27 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 34,552,840 | Trademark royalty | |
| 15 | 2010-03-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 98,678,620 | Trademark royalty | |
| 16 | 2010-04-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 113,957,210 | Trademark royalty | |
| 17 | 2010-05-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 108,965,880 | Trademark royalty | |
| 18 | 2010-06-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 119,595,560 | Trademark royalty | |
| 19 | 2010-07-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 91,733,660 | Trademark royalty | |
| 20 | 2010-08-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 57,267,790 | Trademark royalty | |

EX-YOO-00108

| | | | | | | |
|---|---|---|---|---|---|---|
| 21 | 2010-09-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 68,028,360 | Trademark royalty |
| 22 | 2010-10-29 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 88,509,320 | Trademark royalty |
| 23 | 2010-11-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 92,307,510 | Trademark royalty |
| 24 | 2010-12-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 67,265,320 | Trademark royalty |
| 25 | 2011-01-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 28,770,020 | Trademark royalty |
| 26 | 2011-02-28 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 37,212,960 | Trademark royalty |
| 27 | 2011-03-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 86,113,660 | Trademark royalty |
| 28 | 2011-04-29 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 119,011,700 | Trademark royalty |
| 29 | 2011-05-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 114,268,060 | Trademark royalty |
| 30 | 2011-06-29 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 125,344,540 | Trademark royalty |
| 31 | 2011-07-29 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 97,473,630 | Trademark royalty |
| 32 | 2011-08-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 95,052,150 | Trademark royalty |
| 33 | 2011-09-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 118,644,650 | Trademark royalty |
| 34 | 2011-10-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 117,824,120 | Trademark royalty |
| 35 | 2011-11-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 112,252,300 | Trademark royalty |
| 36 | 2011-12-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 105,125,510 | Trademark royalty |
| 37 | 2012-01-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 32,865,670 | Trademark royalty |
| 38 | 2012-02-29 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 54,586,090 | Trademark royalty |
| 39 | 2012-03-31 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 99,416,630 | Trademark royalty |
| 40 | 2012-04-30 | Ahae Co., Ltd. | LEE Gang-se LEE Jae-yeong | Key Solution | 126,176,930 | Trademark royalty |
| 41 | 2012-05-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 153,315,540 | Trademark royalty |
| 42 | 2012-06-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 152,717,850 | Trademark royalty |
| 43 | 2012-07-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 88,316,150 | Trademark royalty |

EX-YOO-00109

| | | | | | | |
|---|---|---|---|---|---|---|
| 44 | 2012-08-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 71.302.970 | Trademark royalty | |
| 45 | 2012-09-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 109,726.550 | Trademark royalty | |
| 46 | 2012-11-12 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 117,211,055 | Trademark royalty | |
| 47 | 2012-11-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 117.887.270 | Trademark royalty | |
| 48 | 2012-12-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 67,798,940 | Trademark royalty | |
| 49 | 2013-01-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 29,444,940 | Trademark royalty | |
| 50 | 2013-02-28 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 96,207,690 | Trademark royalty | |
| 51 | 2013-03-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 104,114,570 | Trademark royalty | |
| 52 | 2013-04-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 135,741,050 | Trademark royalty | |
| 53 | 2013-05-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 140,537,280 | Trademark royalty | |
| 54 | 2013-06-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 134,883,620 | Trademark royalty | |
| 55 | 2013-07-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 95,969,170 | Trademark royalty | |
| 56 | 2013-08-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 97,998,480 | Trademark royalty | |
| 57 | 2013-09-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 99,694,710 | Trademark royalty | |
| 58 | 2013-10-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 116,803,180 | Trademark royalty | |
| 59 | 2013-11-30 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 131,752,960 | Trademark royalty | |
| 60 | 2013-12-31 | Ahae Co., Ltd. | LEE Jae-yeong HWANG Won-ju | Key Solution | 151,053,570 | Trademark royalty | |
| Total | | | | KRW 5,346,311,045 | | | |

# ACCOUNTS OF CRIME (4)

| NO. | DATE | PAYER | CEO | RECIPIENT | AMOUNT OF EMBEZZLEMENT (Excluding VAT) | DETAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | 2009-01-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 8,514,430 | Trademark royalty | |
| 2 | 2009-02-28 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 8,387,180 | Trademark royalty | |
| 3 | 2009-03-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 10,049.271 | Trademark royalty | |
| 4 | 2009-04-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 8,911.148 | Trademark royalty | |
| 5 | 2009-05-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 8,944,341 | Trademark royalty | |
| 6 | 2009-06-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,369,197 | Trademark royalty | |
| 7 | 2009-07-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,339,334 | Trademark royalty | |
| 8 | 2009-08-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,194,022 | Trademark royalty | |
| 9 | 2009-09-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,251,062 | Trademark royalty | |
| 10 | 2009-10-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 10,081,781 | Trademark royalty | |
| 11 | 2009-11-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,411,741 | Trademark royalty | |
| 12 | 2009-12-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,631,725 | Trademark royalty | |
| 13 | 2010-01-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,077,274 | Trademark royalty | |
| 14 | 2010-02-28 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,646,549 | Trademark royalty | |
| 15 | 2010-03-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,053,410 | Trademark royalty | |
| 16 | 2010-04-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,104,935 | Trademark royalty | |
| 17 | 2010-05-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,336,950 | Trademark royalty | |
| 18 | 2010-06-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 11,248,907 | Trademark royalty | |
| 19 | 2010-07-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 10,724,209 | Trademark royalty | |
| 20 | 2010-08-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 10,668,041 | Trademark royalty | |
| 21 | 2010-09-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,475,317 | Trademark royalty | |
| 22 | 2010-10-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 10,402,170 | Trademark royalty | |
| 23 | 2010-11-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,953,442 | Trademark royalty | |
| 24 | 2010-12-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,386,467 | Trademark royalty | |

EX-YOO-00111

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25 | 2011-01-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 9,152,436 | Trademark royalty | |
| 26 | 2011-02-28 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 5,693,324 | Trademark royalty | |
| 27 | 2011-03-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 8,382,828 | Trademark royalty | |
| 28 | 2011-04-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 6,747,077 | Trademark royalty | |
| 29 | 2011-05-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 7,476,739 | Trademark royalty | |
| 30 | 2011-06-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 7,234,918 | Trademark royalty | |
| 31 | 2011-07-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 7,281,819 | Trademark royalty | |
| 32 | 2011-08-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 6,729,200 | Trademark royalty | |
| 33 | 2011-09-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 7,084,049 | Trademark royalty | |
| 34 | 2011-10-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 6,179,764 | Trademark royalty | |
| 35 | 2011-11-30 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 6,690,886 | Trademark royalty | |
| 36 | 2011-12-31 | Onnara Shopping Co., Ltd. | BYEON Gi-chun | Key Solution | 6,619,761 | Trademark royalty | |
| | Total | | | KRW | 328,436,704 | | |

# ACCOUNTS OF CRIME (5)

| NO. | DATE | PAYER | CEO | RECIPIENT | AMOUNT OF EMBEZZLEMENT (Excluding VAT) | DETAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | 2008-01-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 18,898,710 | Trademark royalty | |
| 2 | 2008-02-29 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 19,065,190 | Trademark royalty | |
| 3 | 2008-03-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 22,695,580 | Trademark royalty | |
| 4 | 2008-04-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 21,061,470 | Trademark royalty | |
| 5 | 2008-05-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 27,193,951 | Trademark royalty | |
| 6 | 2008-06-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 20,423,502 | Trademark royalty | |
| 7 | 2008-07-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 26,326,392 | Trademark royalty | |
| 8 | 2008-08-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 20,492,939 | Trademark royalty | |
| 9 | 2008-09-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 22,261,413 | Trademark royalty | |
| 10 | 2008-10-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 23,884,376 | Trademark royalty | |
| 11 | 2008-11-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 32,453,666 | Trademark royalty | |
| 12 | 2008-12-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 30,486,812 | Trademark royalty | |
| 13 | 2009-01-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 48,111,860 | Trademark royalty | |
| 14 | 2009-02-28 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 50,410,799 | Trademark royalty | |
| 15 | 2009-03-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 60,588,197 | Trademark royalty | |
| 16 | 2009-04-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 58,348,572 | Trademark royalty | |
| 17 | 2009-05-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 54,578,526 | Trademark royalty | |
| 18 | 2009-06-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 64,037,212 | Trademark royalty | |
| 19 | 2009-07-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 59,809,228 | Trademark royalty | |
| 20 | 2009-08-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 53,707,361 | Trademark royalty | |
| 21 | 2009-09-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 63,522,079 | Trademark royalty | |
| 22 | 2009-10-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 58,962,850 | Trademark royalty | |
| 23 | 2009-11-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 64,268,957 | Trademark royalty | |
| 24 | 2009-12-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 57,277,573 | Trademark royalty | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25 | 2010-01-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 52,761,959 | Trademark royalty | |
| 26 | 2010-02-28 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 35,350,717 | Trademark royalty | |
| 27 | 2010-03-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 51,082,683 | Trademark royalty | |
| 28 | 2010-04-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 45,397.219 | Trademark royalty | |
| 29 | 2010-05-31 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 38.288.632 | Trademark royalty | |
| 30 | 2010-06-30 | Chonhaiji Co., Ltd. | SIN Jae-jik | Key Solution | 33,678,446 | Trademark royalty | |
| Total | | | | **KRW** | **1,235,426,771** | | |

# ACCOUNTS OF CRIME (6)

| NO. | DATE | PAYER | CEO | RECIPIENT | AMOUNT OF EMBEZZLEMENT (Excluding VAT) | DETAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | 2011-02-25 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000.000 | Advisory fee | |
| 2 | 2011-03-25 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000.000 | Advisory fee | |
| 3 | 2011-04-21 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20.000.000 | Advisory fee | |
| 4 | 2011-05-24 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000.000 | Advisory fee | |
| 5 | 2011-06-22 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000,000 | Advisory fee | |
| 6 | 2011-07-22 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000,000 | Advisory fee | |
| 7 | 2011-08-24 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000,000 | Advisory fee | |
| 8 | 2011-09-21 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000,000 | Advisory fee | |
| 9 | 2011-10-20 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000,000 | Advisory fee | |
| 10 | 2011-11-22 | Chonhaiji Co., Ltd. | BYEON Gi-chun | YOO Hyuk Kee | 20,000,000 | Advisory fee | |
| | Total | | | | KRW 200,000,000 | | |

EX-YOO-00115

# ACCOUNTS OF CRIME (7)

| NO. | DATE | TITLE OF ACCOUNT | AMOUNT | DETAILS |
|---|---|---|---|---|
| 1 | 2013-03-27 | Advance Payment | 1,656,598,080 | Photographs purchased by AHAE PRESS |
| 2 | 2013-04-23 | Advance Payment | 685,374,652 | Photographs purchased by AHAE PRESS |
| 3 | 2013-04-25 | Advance Payment | 700,000,000 | Photographs purchased by AHAE PRESS |
| 4 | 2013-04-25 | Advance Payment | 299,091,725 | Photographs purchased by AHAE PRESS |
| 5 | 2013-05-24 | Advance Payment | 790,290,933 | Photographs purchased by AHAE PRESS |
| 6 | 2013-05-24 | Advance Payment | 5,000 | Photographs purchased by AHAE PRESS |
| 7 | 2013-05-31 | Advance Payment | 314,315,268 | Photographs purchased by AHAE PRESS |
| 8 | 2013-06-07 | Advance Payment | 1,113,651,704 | Photographs purchased by AHAE PRESS |
| 9 | 2013-06-21 | Advance Payment | 1,000,000,000 | Photographs purchased by AHAE PRESS |
| 10 | 2013-06-21 | Advance Payment | 581,561,566 | Photographs purchased by AHAE PRESS |
| 11 | 2013-07-12 | Advance Payment | 500,539,850 | Photographs purchased by AHAE PRESS |
| 12 | 2013-07-19 | Advance Payment | 626,008,934 | Photographs purchased by AHAE PRESS |
| 13 | 2013-07-19 | Advance Payment | 47,236,932 | Photographs purchased by AHAE PRESS |
| 14 | 2013-07-25 | Advance Payment | 813,514,580 | Photographs purchased by AHAE PRESS |
| 15 | 2013-07-26 | Advance Payment | 111,403,702 | Photographs purchased by AHAE PRESS |
| 16 | 2013-07-26 | Advance Payment | 188,598,824 | Photographs purchased by AHAE PRESS |
| 17 | 2013-07-26 | Advance Payment | 329,814,674 | Photographs purchased by AHAE PRESS |
| 18 | 2013-08-09 | Advance Payment | 979,549,055 | Photographs purchased by AHAE PRESS |
| 19 | 2013-08-09 | Advance Payment | 338,055,955 | Photographs purchased by AHAE PRESS |
| 20 | 2013-08-09 | Advance Payment | 267,759,760 | Photographs purchased by AHAE PRESS |
| 21 | 2013-08-23 | Advance Payment | 1,683,201,831 | Photographs purchased by AHAE PRESS |
| 22 | 2013-09-05 | Advance Payment | 1,095,051,425 | Photographs purchased by AHAE PRESS |
| 23 | 2013-09-24 | Advance Payment | 398,541,155 | Photographs purchased by AHAE PRESS |
| 24 | 2013-09-30 | Advance Payment | 539,051,170 | Photographs purchased by AHAE PRESS |

EX-YOO-00116

| 25 | 2013-10-07 | Advance Payment | 600,060,876 | Photographs purchased by AHAE PRESS |
|----|------------|-----------------|-------------|-------------------------------------|
| 26 | 2013-10-17 | Advance Payment | 515,534,174 | Photographs purchased by AHAE PRESS |
| 27 | 2013-10-28 | Advance Payment | 105,016,992 | Photographs purchased by AHAE PRESS |
| 28 | 2013-10-28 | Advance Payment | 41,979,008 | Photographs purchased by AHAE PRESS |
| 29 | 2013-10-29 | Advance Payment | 212,890,963 | Photographs purchased by AHAE PRESS |
| 30 | 2013-10-29 | Advance Payment | 161,628,542 | Photographs purchased by AHAE PRESS |
| 31 | 2013-10-29 | Advance Payment | 131,338,916 | Photographs purchased by AHAE PRESS |
| 32 | 2013-11-07 | Advance Payment | 88,019,975 | Photographs purchased by AHAE PRESS |
| 33 | 2013-11-07 | Advance Payment | 7,391,280 | Photographs purchased by AHAE PRESS |
| 34 | 2013-11-07 | Advance Payment | 171,855,800 | Photographs purchased by AHAE PRESS |
| 35 | 2013-11-21 | Advance Payment | 156,989,532 | Photographs purchased by AHAE PRESS |
| 36 | 2013-11-21 | Advance Payment | 106,371,948 | Photographs purchased by AHAE PRESS |
| 37 | 2013-11-22 | Advance Payment | 106,441,958 | Photographs purchased by AHAE PRESS |
| 38 | 2013-12-11 | Advance Payment | 370,572,219 | Photographs purchased by AHAE PRESS |
| 39 | 2013-12-11 | Advance Payment | 261,334,030 | Photographs purchased by AHAE PRESS |
| 40 | 2013-12-11 | Advance Payment | 63,930,030 | Photographs purchased by AHAE PRESS |
| 41 | 2013-12-11 | Advance Payment | 40,706,030 | Photographs purchased by AHAE PRESS |
| 42 | 2013-12-16 | Advance Payment | 21,670,030 | Photographs purchased by AHAE PRESS |
| 43 | 2013-12-23 | Advance Payment | 894,982,649 | Photographs purchased by AHAE PRESS |
| 44 | 2013-12-24 | Advance Payment | 744,156,260 | Photographs purchased by AHAE PRESS |
| Total   KRW 19,862,077,987 | | | | |

EX-YOO-00117

# STATEMENT OF CONFIRMATION

I, JEONG Soon Shin, Prosecutor of the Incheon Central District Prosecutors' Office ("Incheon DPO") in Korea hereby certify the following in support of the request for the extradition of KIM Heakyung from the United States of America to the Republic of Korea pursuant to the Extradition Treaty between the Republic of Korea and the United States of America, which became effective on December 20, 1999.

## 1. QUALIFICATIONS

1.1. I am a public prosecutor of the Incheon DPO under the Korean Ministry of Justice. After passing the National Bar Examination in 1995, I completed the two-year required program at the Judicial Research and Training Institute, an affiliate of the Supreme Court of Korea. In 1998, I obtained the qualifications to work as a judge, prosecutor, or lawyer in Korea. Since 2001, I have been working as a prosecutor under the appointment of the President of Korea. Based on my training, experience, and position, I clearly understand the criminal code and criminal procedures of Korea. As the prosecutor in charge of investigating this case, I am well aware of the matters of this case.

1.2. Under the Korean law, a prosecutor, who presides over investigation, may choose to either investigate independently or supervise the police as they investigate the case. Once the investigation is completed, the

EX-YOO-00118

prosecutor exclusively decides on the indictment. Thereafter, the prosecutor is in charge of maintaining the indictment and executing the final judgment of the court. According to the principle of the exclusive power of a prosecutor, the court may proceed with the trial procedures only for the cases indicted by a prosecutor. Furthermore, according to the Korean practice on investigation and indictment, a prosecutor does not indict a suspect without her custody. In this case, however, the suspect has not been indicted as her whereabouts has not been located.

## 2. INFORMATION ON KIM HEAKYUNG

2.1. KIM Heakyung is a female citizen of the Republic of Korea who was born in Korea on December 10, 1962. Her address in Korea is 1000 Hyeondeok-ro Hyeondeok-myeon, Pyeongtaek-si, Gyeonggi-do. She holds a Korean passport numbered M97023769. Her name in English is 'HEAKYUNG KIM'.

2.2. Annex 1 is a genuine and exact copy of KIM Heakyung's photograph, submitted to the administrative agency for the issuance of her Resident Registration Card.

2.3. On March 27, 2014, KIM Heakyung left for the United States and has not come back to Korea. It has been confirmed that she currently resides in the United States.

## 3. PROGRESS OF THE CASE

3.1. Background of Investigation

2

3.1.1. In the wake of the sinking of the 'Sewol Ferry' off the southwestern island of Jindo, Korea, on April 16, 2014, the Joint Investigation Team of Prosecutors and Police in Mokpo started investigating the captain and the officer of the ferry for their negligence during the operation of the ferry on the date of accident, and also Chonghaejin Marine Company ("Chonghaejin Marine"), the operator of the Sewol ferry, for violating its occupational duty of ship management.

3.1.2. In the above-mentioned investigation process, both the media and those who once worked for Semo Co., Ltd. ("Semo Group"), the holding company of Chonghaejin Marine, determined that the Sewol Ferry accident had been caused not only by the negligence committed by individuals such as the captain but also by structural problems resulting in a 'safety accident typical of underdeveloped countries,' including ① lack of transparency in Chonghaejin Marine and its affiliate companies and ② safety ignorance stemming from the desire of Chonghaejin Marine and its affiliate companies for reckless expansion, and they called for government-wide actions to prevent any future accidents of the same kind.

3.1.3. Under these circumstances, suspicions arose regarding the success of the head of Semo Group, YOO Byung Eyn, who had been arrested and sentenced to four years of imprisonment for habitual fraud against the followers of the church around 1995, but was able to restore his Group, owning around 50 affiliate companies with the total asset value

3

of approximately KRW 560,000,000,000 not long after he finished serving his sentence. After analyzing open-source information including audit reports and tax settlement documents of Semo Group's affiliate companies, reported to the Financial Supervisory Service, it was discovered that YOO Byung Eyn and his family managed the company without any transparency and in an undisclosed manner through a small number of close aides who had no expertise. Meanwhile, they had allegedly embezzled affiliate companies' assets frequently, and in order to commit such crimes, they had allegedly omitted legal decision-making processes, frequently provided unfair support to the affiliate companies and conducted self-dealings. After discovering the above, a full-scale investigation was launched.

3.2. Proceedings of Investigation

3.2.1. The Special Investigation Team conducted investigation on about 70 people including accountants KIM Chun-gyun and PARK Gwon-jong who audited the affiliate companies; GO Chang-hwan, the CEO of Semo Group; KIM Han-sik, the CEO of Chonghaejin Marine; SONG Guk-bin, the CEO of Dapanda Co., Ltd.; BYEON Gi-chun, the CEO of Chonhaiji Co., Ltd.; LEE Jae-yeong, the CEO of Ahae Co., Ltd.; KIM Gyeong-suk, the CEO of Noreunja Shopping Co., Ltd.; OH Gyeong-seok, the CEO of Hemato Centric Life Research Institute; PARK Seung-il, the auditor for I-One-I Holdings Co., Ltd.; and KIM Dong-hwan, the auditor for Dapanda Co., Ltd. The Special Investigation Team also checked the replies of the

4

EX-YOO-00121

affiliate companies to the Korea Financial Intelligence Unit; their transaction records for advisory fees, trademark royalties and payments for photographs made out to YOO Byung Eyn and his family; and the current record of real estates possessed by KIM Heakyung.

3.2.2. As a result, it has been confirmed that KIM Heakyung purchased real estates, on 90 different occasions, using the money of Evangelical Baptist Church which was kept by KIM Heakyung.

3.2.3. From April 30, 2014 to May 8, 2014, the Special Investigation Team requested KIM Heakyung to appear at the investigative agency through her mother CHOI Yeong-soon three times, but she has failed to appear.

3.2.4. Accordingly, on May 8, 2014, the Special Investigation Team requested the Incheon District Court to issue an arrest warrant for KIM Heakyung, and Judge PARK Seong-yong of the above court issued the arrest warrant on the same day. Annex 2 is a genuine and exact copy of the arrest warrant issued by Judge PARK Seong-yong.

3.2.5. Currently, the Korean Office of US Homeland Security Investigations is providing cooperation in the investigation of this case.

## 4. EXTRADITABLE CRIME AND RELEVANT EVIDENCE

4.1. Extraditable Crime

KIM Heakyung violated Article 3(1)-1 of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes, and Article 355(1) (embezzlement) of the Criminal Act. The details of crime are as follows.

5

4.1.1. Suspect KIM Heakyung is close to YOO Byung Eyn who is leading the 'Evangelical Baptist Church.' KIM Heakyung holds 6.29% share of I-One-I Holdings Co., Ltd. (hereinafter 'I-One-I Holdings') which is the holding company of 'Semo Group', and 24.4% share of Dapanda Co., Ltd. (hereinafter 'Dapanda') which is one of major affiliate companies. She has served as the CEO of Hankook Pharmaceutical Co., Ltd. (hereinafter 'Hankook Pharmaceutical'), and has managed offerings collected from believers in the 'Evangelical Baptist Church' across the country.

4.1.2. On January 13, 2000, at an unknown place in Seoul, KIM Heakyung purchased 3,669m² of land located at 411 Hyojado-ri, Ocheon-myeon, Boryeong-si, Chungcheongnam-do in her name, and withdrew about KRW 14,235,720 (based on the official land value) from victim Evangelical Baptist Church, to use the money as a payment for the land, thereby embezzling the above amount of money. In addition, from then on to April 3, 2014, KIM Heakyung embezzled a total of KRW 23,573,205,277 (based on the official land value) from the victim on 90 different occasions by using the money to acquire real estates in her name.

4.2. Relevant Evidence

The evidence is sufficient to prosecute KIM Heakyung on charge of violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement).

4.2.1. On April 25, 2014, at the Incheon DPO, LEE Cheong made the following statements to prosecutor CHOI Won-seok:

EX-YOO-00123

"KIM Myung-jeom receives cash from YOO Byung Eyn's affiliate companies and delivers it to KIM Heakyung who is close with YOO Byung Eyn. JEONG In-sook, an employee of Hankook Pharmaceutical, gives offerings collected from believers in the 'Evangelical Baptist Church' across the country to KIM Heakyung."

4.2.2. On April 29, 2014, at the Incheon DPO, KIM Gyu-seok made the following statements to prosecutor CHOI Won-seok:

"As an employee in charge of finance of Semo Group, I paid KRW 1,500,000,000 so as to have the business right of Korea Pharmaceutical (CEO: KIM Heakyung) transferred, under the direction of GO Chang-hwan, but the business right has not been transferred."

4.2.3. On May 6, 2014, at the Incheon DPO, GO Chang-hwan made the following statements to prosecutor CHOI Won-seok:

"KIM Heakyung and YOO Byung Eyn have a very close relationship. KRW 1,500,000,000 was paid so as to obtain the business right of Hankook Pharmaceutical (CEO: KIM Heakyung), but it has not been transferred."

4.2.4. According to the financial transaction records of KIM Heakyung, from January 7, 2009 to June 21, 2013, a total of KRW 1,928,000,000 had been deposited and KRW 1,376,000,000 in cash had been withdrawn during the same period. The records of real estates owned by KIM Heakyung show that up to recently, she had acquired real estate worth about KRW 23,500,000,000 on 90 different occasions.

4.2.5. The above statements by LEE Cheong, KIM Gyu-seok, and GO Chang-hwan were legitimately made in accordance with the

7

EX-YOO-00124

procedures pursuant to the Criminal Procedure Act of the Republic of Korea, and documented and maintained at the Incheon DPO in charge of the investigation of this case. Relevant evidence such as KIM Heakyung's financial transaction records and the records of real estate was collected legally in accordance with the procedures pursuant to the Criminal Procedure Act of the Republic of Korea, and kept in files together with the above-mentioned statements.


## 5. APPLICABLE LAW OF KOREA

5.1. The applicable laws of Korea for the crime committed by KIM Heakyung violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement) are as follows.

5.1.1. Embezzlement

**Article 355(1) of the Criminal Act**

A person who, having the custody of another's property, embezzles or refuses to return it, shall be punished by imprisonment for not more than five years or by a fine not exceeding fifteen million won.


5.1.2. Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement)

**Article 3(1)1 of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes**

Any person who commits crimes as prescribed in Article 347 (fraud), 350 (extortion), 351 (limited to the habitual

8

crime as prescribed in Articles 347 and 350), 355 (embezzlement, breach of trust) or 356 (occupational embezzlement, occupational breach of trust) of the Criminal Act, shall, if the value of the goods or profits on property which he gains or has another person gain is five hundred million won or more, be punished additionally as follows:

1. If the amount of profit is five billion won or more, he shall be punished by imprisonment for lifetime or not less than five years;

5.1.3. A person who commits embezzlement, if the amount of damages is five hundred million won or more, shall be subject to aggravated punishment pursuant to the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes.

5.1.4. Statute of Limitations

Under Article 249(1) of the Korean Criminal Procedure Act, the statute of limitations for crimes subject to lifetime imprisonment is fifteen (15) years for crimes punishable by imprisonment for life. According to Article 253(3) of the Criminal Procedure Act, the statute of limitations shall be suspended during the period for which the offender stays abroad for the purpose of avoiding criminal punishment. Therefore, the statute of limitations for KIM Heakyung has not expired yet.

**Article 249(1) of the *Criminal Procedure Act***

EX-YOO-00126

① The statute of limitations shall expire upon the lapse of the following terms:

1. Twenty-five years for crimes punishable with death penalty;

2. Fifteen years for crimes punishable with imprisonment without prison labor for life or imprisonment for life;

3. Ten years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of ten years or more;

4. Seven years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of less than ten years; and

5. Five years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of less than five years, or suspension of qualifications for a maximum term of not less than ten years, or a fine

**Article 253(3) of the Criminal Procedure Act**

The limitation period shall be suspended during the period, for which an offender stays abroad for the purpose of escaping criminal punishment.

5.2. The aforementioned laws are currently in effect in Korea and were also effective between January 2008 and March 31, 2014 when KIM Heakyung allegedly violated the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement).

10

EX-YOO-00127

# 6. ARREST WARRANT SYSTEM IN THE REPUBLIC OF KOREA

6.1. As set forth above, an arrest warrant has been issued for KIM Heakyung for violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement).

6.2. In cases where it is difficult to prosecute a suspect on the run as it is in this case, the prosecution shall be suspended as a mid-step, and the prosecutor temporarily closes the investigation and seeks to have a warrant of arrest or detention for the suspect. With the arrest warrant issued, the prosecutor locates the whereabouts of the suspect and puts him on the wanted list so as to make the arrest. Therefore, when the prosecution is suspended due to the suspect's unknown whereabouts as in this case, neither prosecution to the court nor trial procedures proceeds so that there are no documents related to the indictment available in the case records.

6.3. Under the Criminal Procedure Act of the Republic of Korea, the prosecutor can request a relevant district judge to issue an arrest warrant to detain a suspect if there is sufficient evidence found during the investigation to believe that the suspect committed the crime; the suspect refuses to yield to a prosecutor's summons to appear; or the suspect is likely to refuse such summons.

6.4. The judge will issue an arrest warrant only when it is determined that the request provides reasonable grounds for an arrest (Articles 201 and 201-2 of the *Criminal Procedure Act*). For this reason, the fact that an arrest

EX-YOO-00128

warrant has been issued reflects that the judge is also convinced there are reasonable grounds to believe that the suspect committed the crime as described in the arrest warrant.

6.5. On May 8, 2014, Judge PARK Seong-yong of the Incheon District Court issued an arrest warrant for KIM Heakyung upon my request. The arrest warrant, which will be valid until April 2, 2029, is a judicial document that grants the right to arrest KIM Heakyung on or prior to April 2, 2029 for violating the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes. Judge PARK Seong-yong of the Incheon District Court has authority to issue such arrest warrant under the Korean law. The original arrest warrant is kept on the investigation file of this case for the relevant criminal procedures in Korea. I have reviewed the original in person and confirm that Annex 2 is a genuine and exact copy of the arrest warrant.

7. **I hereby certify that the aforementioned are all true to my knowledge. I am submitting this statement of confirmation, being well-aware that I may be punished for falsely producing official documents pursuant to Article 227 of the *Criminal Act* of Korea.**

May 14, 2014

Respectfully submitted by

Prosecutor JEONG Soon Shin

Incheon District Prosecutors' Office

EX-YOO-00129

Annex:

1. A genuine and exact copy of KIM Heakyung's photograph
2. A genuine and exact copy of the arrest warrant for KIM Heakyung

EX-YOO-00130



# Warrant of Arrest

Incheon District Court

| Warrant No. | 2014-7382 | Criminal Offense | Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement) |
|---|---|---|---|
| **Suspect** | **Name** | KIM Heakyung | **Occupation** | Others |
| | **Resident Registration #** | 621210-2567913 | **Nationality** | Korean |
| | **Address** | | | |

| Prosecutor | JEONG Soon Shin | Date of Application | 2014.5.8. 20:28 |
|---|---|---|---|
| **Defense Attorney** | | **Date of Expiry** | 2029.4.2. |
| **Facts of Crime** | See Enclosure | **Place of Custody** | Incheon District Prosecutors' Office |
| **Place of Detention** | Incheon Detention Center | | |

■ The suspect failed to attend in accordance with the summons served on him/her without a plausible reason.

☐ The suspect may fail to attend in accordance with the summons served on him/her, without a plausible reason.

☐ The suspect has no fixed address (for crimes resulting in a fine not exceeding KRW 500,000, detention, or a minor fine).

As there is sufficient reason to believe that the defendant has committed the offense(s) set out in the attachment and there is ground for his/her arrest, the defendant shall be arrested and brought to court. If this warrant is not enforced on or before the date of expiry, it shall no longer be enforceable and the warrant shall be returned.

2014. 5.8.

Judge   PARK Seong-yong (*sealed*)

| Date of Arrest | 20 . . : | Place of Arrest | |
|---|---|---|---|
| **Date of Custody** | 20 . . : | **Place of Custody** | |
| **Date of Detention** | 20 . . : | **Place of Detention** | |
| **Reasons for Failed Execution** | | | |
| **Office/Title of Person in Charge** | | **Signature of Person in Charge** | |

EX-YOO-00132

# Facts of Crime

## 1. Information on the Suspect

Suspect KIM Heakyung is close to YOO Byung Eyn who is leading the 'Evangelical Baptist Church.' KIM Heakyung holds 6.29% share of I-One-I Holdings Co., Ltd. (hereinafter 'I-One-I Holdings') which is the holding company of 'Semo Group', and 24.4% share of Dapanda Co., Ltd. (hereinafter 'Dapanda') which is one of major affiliate companies. She has served as the CEO of Hankook Pharmaceutical Co., Ltd. (hereinafter 'Hankook Pharmaceutical'), and has managed offerings collected from believers in the 'Evangelical Baptist Church' across the country.

## 2. Facts of Crime

On January 13, 2000, at an unknown place in Seoul, KIM Heakyung purchased $3,669m^2$ of land located at 411 Hyojado-ri, Ocheon-myeon, Boryeong-si, Chungcheongnam-do in her name, and withdrew about KRW 14,235,720 (based on the official land value) from victim Evangelical Baptist Church, to use the money as a payment for the land, thereby embezzling the above amount of money. In addition, from then on to April 3, 2014, KIM Heakyung embezzled a total of KRW 23,573,205,277 (based on the official land value) from the victim on 90 different occasions by using the money to acquire real estates in her name, as listed in the attached Accounts of Crime (1).

EX-YOO-00133

# ACCOUNTS OF CRIME (1)

| No | Date | Location | Lot No | Area | Title Holder | Amount of Embezzlement (official land value as of the acquisition date) | Remarks (official land value per pyeong) |
|---|---|---|---|---|---|---|---|
| 1 | 20000113 | Hyojado-ri, Ocheon-myeon, Boryeong-si, Chungcheongnam-do | 411 | 3669 | KIM Heakyung | 14,235,720 | 3,880 |
| 2 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 3 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 4 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 5 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 6 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 7 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 8 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 9 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 10 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 11 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 12 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 13 | 20071214 | Yeoksam-dong, Gangnam-gu, Seoul | 601-21 | 301.2 | KIM Heakyung | 1,159,620,000 | 3,850,000 |
| 14 | 20040728 | Anjung-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | 101-6 | 658 | KIM Heakyung | 78,302,000 | 119,000 |
| 15 | 20040728 | Anjung-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | 101-7 | 1124 | KIM Heakyung | 240,536,000 | 214,000 |
| 16 | 20040225 | Anjung-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 81-1 | 7364 | KIM Heakyung | 927,864,000 | 126,000 |
| 17 | 20040827 | Anjung-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 83-6 | 992 | KIM Heakyung | 101,184,000 | 102,000 |
| 18 | 20140402 | Hyeonhwa-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 346-1 | 3967 | KIM Heakyung | 817,202,000 | 206,000 |
| 19 | 20111208 | Hyeonhwa-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 369 | 1651 | KIM Heakyung | 652,145,000 | 395,000 |
| 20 | 20111208 | Hyeonhwa-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 369-1 | 1691 | KIM Heakyung | 750,804,000 | 444,000 |
| 21 | 20130904 | Hyeonhwa-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 377-7 | 1653 | KIM Heakyung | 206,625,000 | 125,000 |
| 22 | 20100917 | Hyeonhwa-ri, Anjung-eup, Pyeongtaek-si, Gyeonggi-do | San 377-8 | 1653 | KIM Heakyung | 198,360,000 | 120,000 |
| 23 | 20090817 | Manho-ri, Poseung-eup, Pyeongtaek-si, Gyeonggi-do | 271-21 | 1261 | KIM Heakyung | 535,925,000 | 425,000 |
| 24 | 20090817 | Manho-ri, Poseung-eup, Pyeongtaek-si, Gyeonggi-do | 284-4 | 1321 | KIM Heakyung | 167,767,000 | 127,000 |
| 25 | 20020822 | Manho-ri, Poseung-eup, Pyeongtaek-si, Gyeonggi-do | 284-8 | 662 | KIM Heakyung | 99,962,000 | 151,000 |
| 26 | 20120531 | Hwayang-ri, Hyeondeok-myeon, | 821-1 | 1042 | KIM Heakyung | 182,350,000 | 175,000 |

| | | Pyeongtaek-si, Gyeonggi-do | | | | | |
|---|---|---|---|---|---|---|---|
| 27 | 20120531 | Hwayang-ri, Hyeondeok-myeon, Pyeongtaek-si, Gyeonggi-do | 821-2 | 646 | KIM Heakyung | 57,041,800 | 88,300 |
| 28 | 20120531 | Hwayang-ri, Hyeondeok-myeon, Pyeongtaek-si, Gyeonggi-do | 821-3 | 18 | KIM Heakyung | 545,400 | 30,300 |
| 29 | 20040225 | Ingwang-ri, Hyeondeok-myeon, Pyeongtaek-si, Gyeonggi-do | 183-2 | 564 | KIM Heakyung | 42,130,800 | 74,700 |
| 30 | 20040225 | Ingwang-ri, Hyeondeok-myeon, Pyeongtaek-si, Gyeonggi-do | 185-7 | 842 | KIM Heakyung | 59,276,800 | 70,400 |
| 31 | 20040225 | Ingwang-ri, Hyeondeok-myeon, Pyeongtaek-si, Gyeonggi-do | San 85-13 | 1983 | KIM Heakyung | 139,603,200 | 70,400 |
| 32 | 20120604 | Deongmok-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 853-1 | 376 | KIM Heakyung | 20,680,000 | 55,000 |
| 33 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 974-3 | 4953 | KIM Heakyung | 296,684,700 | 59,900 |
| 34 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 1290-7 | 992 | KIM Heakyung | 40,572,800 | 40,900 |
| 35 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 499-2 | 7091 | KIM Heakyung | 520,479,400 | 73,400 |
| 36 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 502-4 | 492 | KIM Heakyung | 32,422,800 | 65,900 |
| 37 | 20120605 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 502-7 | 541 | KIM Heakyung | 46,526,000 | 86,000 |
| 38 | 20120605 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 502-9 | 70 | KIM Heakyung | 5,474,000 | 78,200 |
| 39 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 502-12 | 4584 | KIM Heakyung | 302,085,600 | 65,900 |
| 40 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 502-13 | 170 | KIM Heakyung | 11,985,000 | 70,500 |
| 41 | 20120604 | Daean-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | San 6-1 | 2757 | KIM Heakyung | 218,078,700 | 79,100 |
| 42 | 20130904 | Jangsu-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | 430-2 | 5250 | KIM Heakyung | 436,800,000 | 83,200 |
| 43 | 20130904 | Jangsu-ri, Hyeondeo-myeon, Pyeongtaek-si, Gyeonggi-do | San 101-3 | 296 | KIM Heakyung | 24,272,000 | 82,000 |
| 44 | 20091222 | Gomae-dong, Gilheung-gu, Yongin-si, Gyeonggi-do | 263-6 | 1398 | KIM Heakyung | 915,690,000 | 655,000 |
| 45 | 20091222 | Songgal-ri, Hobeop-myeon, Icheon-si, Gyeonggi-do | San 67 | 21419 | KIM Heakyung | 259,169,900 | 12,100 |
| 46 | 20091222 | Songgal-ri, Hobeop-myeon, Icheon-si, Gyeonggi-do | San 67-2 | 323 | KIM Heakyung | 3,714,500 | 11,500 |
| 47 | 20091222 | Songgal-ri, Hobeop-myeon, Icheon-si, Gyeonggi-do | San 68-1 | 6849 | KIM Heakyung | 78,763,500 | 11,500 |
| 48 | 20091222 | Songgal-ri, Hobeop-myeon, Icheon-si, Gyeonggi-do | San 68-2 | 8231 | KIM Heakyung | 88,894,800 | 10,800 |
| 49 | 20091222 | Songgal-ri, Hobeop-myeon, Icheon-si, Gyeonggi-do | San 68-4 | 262 | KIM Heakyung | 3,013,000 | 11,500 |
| 50 | 20091222 | Songgal-ri, Hobeop-myeon, Icheon-si, Gyeonggi-do | San 69-1 | 20629 | KIM Heakyung | 218,667,400 | 10,600 |
| 51 | 20030821 | Majeon-ri, Samjuk-myeon, Anseong-si, Gyeonggi-do | 24-13 | 193 | KIM Heakyung | 16,984,000 | 88,000 |
| 52 | 20030821 | Majeon-ri, Samjuk-myeon, Anseong-si, Gyeonggi-do | 24-15 | 1242 | KIM Heakyung | 109,296,000 | 88,000 |
| 53 | 20030821 | Majeon-ri, Samjuk-myeon, Anseong-si, Gyeonggi-do | 24-21 | 897 | KIM Heakyung | 78,936,000 | 88,000 |

EX-YOO-00135

| 54 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-9 | 918 | KIM Heakyung | 27,264,600 | 29,700 |
| 55 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-15 | 343 | KIM Heakyung | 10,187,100 | 29,700 |
| 56 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-23 | 330 | KIM Heakyung | 2,722,500 | 8,250 |
| 57 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-41 | 28 | KIM Heakyung | 69,160 | 2,470 |
| 58 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-43 | 582 | KIM Heakyung | 23,047,200 | 39,600 |
| 59 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-47 | 109 | KIM Heakyung | 3,237,300 | 29,700 |
| 60 | 20001013 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-52 | 5950 | KIM Heakyung | 174,930,000 | 29,400 |
| 61 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-53 | 33 | KIM Heakyung | 81,510 | 2,470 |
| 62 | 20001013 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-54 | 1050 | KIM Heakyung | 7,087,500 | 6,750 |
| 63 | 20030220 | Jeonsu-ri, Gangha-myeon, Yangpyeong-gun, Gyeonggi-do | 31-55 | 136 | KIM Heakyung | 4,039,200 | 29,700 |
| 64 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1519 | 1332 | KIM Heakyung | 3,463,200 | 2,600 |
| 65 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1520 | 4060 | KIM Heakyung | 1,429,120 | 352 |
| 66 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1521 | 1101 | KIM Heakyung | 9,523,650 | 8,650 |
| 67 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1522 | 2579 | KIM Heakyung | 6,163,810 | 2,390 |
| 68 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1523 | 585 | KIM Heakyung | 1,521,000 | 2,600 |
| 69 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1524 | 450 | KIM Heakyung | 1,170,000 | 2,600 |
| 70 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1525 | 1821 | KIM Heakyung | 16,589,310 | 9,110 |
| 71 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1525-1 | 966 | KIM Heakyung | 2,608,200 | 2,700 |
| 72 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1526 | 6172 | KIM Heakyung | 2,110,824 | 342 |
| 73 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1526-1 | 1021 | KIM Heakyung | 9,587,190 | 9,390 |
| 74 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1526-2 | 40818 | KIM Heakyung | 14,653,662 | 359 |
| 75 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1527 | 2166 | KIM Heakyung | 5,631,600 | 2,600 |
| 76 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1530 | 10500 | KIM Heakyung | 27,300,000 | 2,600 |
| 77 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1535 | 1980 | KIM Heakyung | 5,148,000 | 2,600 |
| 78 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1538 | 28460 | KIM Heakyung | 73,996,000 | 2,600 |
| 79 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | 1544 | 1008 | KIM Heakyung | 2,620,800 | 2,600 |
| 80 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | San 650 | 3471 | KIM Heakyung | 458,172 | 132 |
| 81 | 20080725 | Daegi-ri, Wangsan-myeon, Gangneung-si, Gangwon-do | San 651-1 | 19789 | KIM Heakyung | 2,592,359 | 131 |
| 82 | 20121204 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 653-6 | 1257 | KIM Heakyung | 21,117,600 | 16,800 |
| 83 | 20121204 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 653-7 | 826 | KIM Heakyung | 11,564,000 | 14,000 |

| 84 | 20121204 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 654 | 1119 | KIM Heakyung | 15,666,000 | 14,000 |
| 85 | 20121204 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 656-1 | 312 | KIM Heakyung | 4,524,000 | 14,500 |
| 86 | 20140403 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 800 | 645 | KIM Heakyung | 20,640,000 | 32,000 |
| 87 | 20140403 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 801 | 1610 | KIM Heakyung | 51,520,000 | 32,000 |
| 88 | 20140403 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 802 | 1683 | KIM Heakyung | 35,006,400 | 20,800 |
| 89 | 20140403 | Yugyo-ri, Samhyang-eup, Muan-gun, Jeollanam-do | 803 | 1590 | KIM Heakyung | 31,800,000 | 20,000 |
| 90 | 20101027 | Dopyeong-ri, Hyeondong-myeon, Cheongsong-gun, Gyeongbuk | San 79-1 | 180595 | KIM Heakyung | 25,644,490 | 142 |
| Total | | | | | **KRW 23,573,205,277** | | |

EX-YOO-00137

# STATEMENT OF CONFIRMATION

I, JEONG Soon Shin, Prosecutor of the Incheon District Prosecutors' Office ("Incheon DPO") in Korea hereby certify the following in support of the request for the extradition of KIM Pil Bae from the United States of America to the Republic of Korea pursuant to the Extradition Treaty between the Republic of Korea and the United States of America, which became effective on December 20, 1999.

## 1. QUALIFICATIONS

1.1. I am a public prosecutor of the Incheon DPO under the Korean Ministry of Justice. After passing the National Bar Examination in 1995, I completed the two-year required program at the Judicial Research and Training Institute, an affiliate of the Supreme Court of Korea. In 1998, I obtained the qualifications to work as a judge, prosecutor, or lawyer in Korea. Since 2001, I have been working as a prosecutor under the appointment of the President of Korea. Based on my training, experience, and position, I clearly understand the criminal code and criminal procedures of Korea. As the prosecutor in charge of investigating this case, I am well aware of the matters of this case.

1

EX-YOO-00138

1.2. Under the Korean law, a prosecutor, who presides over investigation, may choose to either investigate independently or supervise the police as they investigate the case. Once the investigation is completed, the prosecutor exclusively decides on the indictment. Thereafter, the prosecutor is in charge of maintaining the indictment and executing the final judgment of the court. According to the principle of the exclusive power of a prosecutor, the court may proceed with the trial procedures only for the cases indicted by a prosecutor. Furthermore, according to the Korean practice on investigation and indictment, a prosecutor does not indict a suspect without his custody. In this case, however, the suspect has not been indicted as his whereabouts has not been located.

## 2. INFORMATION ON KIM PIL BAE

2.1. KIM Pil Bae is a male citizen of the Republic of Korea who was born in the Republic of Korea on February 9, 1938. His address in Korea is #1301-102, 37-0 Dokseodang-ro 40-gil, Seongdong-gu, Seoul. He holds a Korean passport numbered M31932534 and his English name is PIL BAE KIM.

EX-YOO-00139

2.2. Annex 1 is a genuine and exact copy of KIM Pil Bae's photograph submitted to the administrative agency for the issuance of his Resident Registration Card.

2.3. On April 19, 2014, KIM Pil Bae departed for the US but has not returned to the Republic of Korea. It has been confirmed that he currently resides in the US.

## 3. PROGRESS OF THE CASE

3.1. Background of Investigation

3.1.1. In the wake of the sinking of the 'Sewol Ferry' off the southwestern island of Jindo, Korea, on April 16, 2014, the Joint Investigation Team of Prosecutors and Police in Mokpo started investigating the captain and the officer of the ferry for their negligence during the operation of the ferry on the date of accident, and also Chonghaejin Marine Company ("Chonghaejin Marine"), the operator of the Sewol ferry, for violating its occupational duty of ship management.

3.1.2. In the above-mentioned investigation process, both the media and those who once worked for Semo Co., Ltd. ("Semo Group"), the holding company of Chonghaejin Marine, determined that the Sewol Ferry accident had been caused not only by the negligence committed by individuals such as the captain but also by structural problems resulting

3

in a 'safety accident typical of underdeveloped countries,' including ① lack of transparency in Chonghaejin Marine and its affiliate companies and ② safety ignorance stemming from the desire of Chonghaejin Marine and its affiliate companies for reckless expansion, and they called for government-wide actions to prevent any future accidents of the same kind.

3.1.3. Under these circumstances, suspicions arose regarding the success of the head of Semo Group, YOO Byung Eyn, who had been arrested and sentenced to four years of imprisonment for habitual fraud against the followers of the church around 1995, but was able to restore his Group, owning around 50 affiliate companies with the total asset value of approximately KRW 560,000,000,000 not long after he finished serving his sentence. After analyzing open-source information including audit reports and tax settlement documents of Semo Group's affiliate companies, reported to the Financial Supervisory Service, it was discovered that YOO Byung Eyn and his family managed the company without any transparency and in an undisclosed manner through a small number of close aides who had no expertise. Meanwhile, they had allegedly embezzled affiliate companies' assets frequently, and in order to commit such crimes, they had allegedly omitted legal decision-making

4

processes, frequently provided unfair support to the affiliate companies and conducted self-dealings. After discovering the above, a full-scale investigation was launched.

3.2. Proceedings of Investigation

3.2.1. The Special Investigation Team conducted investigation on about 70 people including accountants KIM Chun-gyun and PARK Gwon-jong who audited the affiliate companies; GO Chang-hwan, the CEO of Semo Group; KIM Han-sik, the CEO of Chonghaejin Marine; SONG Guk-bin, the CEO of Dapanda Co., Ltd.; BYEON Gi-chun, the CEO of Chonhaiji Co., Ltd.; LEE Jae-yeong, the CEO of Ahae Co., Ltd.; KIM Gyeong-suk, the CEO of Noreunja Shopping Co., Ltd.; OH Gyeong-seok, the CEO of Hemato Centric Life Research Institute; PARK Seung-il, the auditor for I-One-I Holdings Co., Ltd.; and KIM Dong-hwan, the auditor for Dapanda Co., Ltd. The Special Investigation Team also checked the replies of the affiliate companies to the Korea Financial Intelligence Unit and their transaction records for advisory fees, trademark royalties and payments for photographs made out to YOO Byung Eyn and his family.

3.2.2. As a result, it has been confirmed that YOO Byung Eyn, YOO Dae Kyoon, YOO Hyuk Kee, YOO Chong Somena, KIM Pil Bae, KIM Dong-hwan, PARK Seung-il, GO Chang-hwan, LEE Jae-yeong,

5

EX-YOO-00142

and BYEON Gi-chun conspired to have the affiliate companies arbitrarily make payments out of their total sales to YOO Byung Eyn, YOO Chong Somena, YOO Dae Kyoon and YOO Hyuk Kee under various names such as business consulting fees, trademark royalties and payments for the purchase of photographs, and that it caused adverse effects on the yield structure of the affiliate companies.

3.2.3. From April 30, 2014 to May 8, 2014, the Special Investigation Team directly handed over the summons to KIM Yeon-su, the daughter of KIM Pil Bae who currently resides in the US, requesting KIM Pil Bae to respond to the summons three times, but he has failed to appear.

3.2.4. On May 8, 2014, the Special Investigation Team requested the Incheon District Court to issue an arrest warrant for KIM Pil Bae, and Judge PARK Seong-yong of the above-mentioned court issued the arrest warrant on the same day. Annex 2 is a genuine and exact copy of the arrest warrant issued by Judge PARK Seong-yong.

3.2.5. Currently, the Korean Office of US Homeland Security Investigations is providing cooperation in the investigation of this case.

## 4. EXTRADITABLE CRIME AND RELEVANT EVIDENCE

4.1. Extraditable Crime

EX-YOO-00143

KIM Pil Bae violated Article 3(1)1 of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes, and Article 355(1) of the Criminal Act (embezzlement). The details of his crime are as follows.

4.1.1. From September 21, 2000 to March 18, 2014, KIM Pil Bae served as the CEO of victim Dapanda Co., Ltd. (hereinafter 'Dapanda') which specializes in 'commodity (cosmetics, food and pharmaceutical products, etc.) brokerage'. He was also the CEO of I-One-I Holdings Co., Ltd. (hereinafter 'I-One-I Holdings'), which is the holding company of 'Dapanda', and was in overall charge of financial affairs of the victim company along with Co-CEO SONG Guk-bin of 'Dapanda' (currently under investigation while held in custody). In order to raise slush funds for its largest shareholder YOO Byung Eyn and his family, KIM Pil Bae conspired with SONG Guk-bin to embezzle a total of KRW 7,199,783,200 from victim 'Dapanda'. The details of crime are specified below in the following paragraphs from 4.1.2. to 4.1.5.

4.1.2. Around December 1, 2007, at the office of 'Dapanda' located at 798-3 Yeoksam-dong, Gangnam-gu, Seoul, KIM Pil Bae signed a 'Business Consulting Service Contract' obligating the victim company to make a monthly payment of KRW 7,000,000 to 'I-One-I Holdings',

7

EX-YOO-00144

even though he was aware that the victim company did not require regular business consulting service for risk management, etc. and 'I-One-I Holdings' was not capable of offering practical consulting service to the victim company. Around that time, KIM Pil Bae not only wire-transferred KRW 7,000,000 from the victim company to the Woori Bank account held by I-One-I Holdings as a business consulting fee but also from that time on until March 2014, wire-transferred KRW 7,000,000 to 'I-One-I Holdings' every month, thereby embezzling a total of KRW 499,545,440 out of the victim's money that he held for business purposes.

4.1.3. Around January 3, 2011, at the office of 'Dapanda', KIM Pil Bae signed an 'Appointment of Advisor Contract' with YOO Byung Eyn to provide him with a monthly payment of KRW 15,000,000, even though he was aware that YOO Byung Eyn did not play any special role concerning the management of the victim company. Around that time, KIM Pil Bae not only wire-transferred KRW 15,000,000 from the victim company to the Woori Bank account held by YOO Byung Eyn as a business advisory fee but also from that time on until March 2014, wire-transferred KRW 15,000,000 to YOO Byung Eyn every month, thereby embezzling a total of

8

EX-YOO-00145

KRW 570,000,000 out of the victim's money that he held for business purposes.

4.1.4. Around September 2000, at the office of 'Dapanda', KIM Pil Bae signed an 'Trademark Exclusive License Contract' with YOO Dae Kyoon (0.75% of the monthly revenue), even though there is no brand value in the name 'Dapanda' that YOO Dae Kyoon registered, the trademark registration fee is about KRW 300,000 only and the name is quite replaceable with other names. Around that time, KIM Pil Bae not only wire-transferred KRW 201,125,000 from the victim company to the Woori Bank account held by YOO Dae Kyoon but also from that time on until April 2014, wire-transferred trademark royalties to YOO Dae Kyoon, thereby embezzling a total of KRW 1,879,571,760 out of the victim's money that he held for business purposes.

4.1.5. Around April 2009, at the office of 'Dapanda', KIM Pil Bae signed a 'Design Development Service Contract' that calls for a monthly payment of KRW 80,000,000 to be made to Moreal Design Inc. (CEO: YOO Chong Somena; hereinafter 'Moreal Design') even though he was aware that 'Dapanda' had tens of branch offices and local distributors that sell its products from door to door so that there was no need for sales preparations or

9

assistance except for large-scale annual or bi-annual sales promotions hosted by the head office. Then, KIM Pil Bae not only wire-transferred KRW 80,000,000 from the victim company to the Nonghyup Bank account held by YOO Chong Somena as a service fee but also from January 2004 on until December 2013, wire-transferred payments for design consulting service to YOO Chong Somena, thereby embezzling a total of KRW 4,170,666,000 out of the victim's money that he held for business purposes.

4.2. Relevant Evidence

The evidence is sufficient to indict KIM Pil Bae on charge of violating the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (embezzlement) under the Criminal Act of the Republic of Korea.

4.2.1. On April 26, 2014, at the Incheon DPO, KIM Chun-gyun made the following statements to prosecutor KIM Jeong-guk: "PARK Seung-il and KIM Dong-hwan established the management structure of affiliate companies for the YOO Byung Eyn family based on the advice received from outside. YOO Hyuk Kee favors PARK Seung-il and even said not to interfere with him in private." "Under the order of YOO Byung Eyn, each affiliate company raises funds using many excuses and the slush funds are transferred to the YOO Byung Eyn family via I-One-I Holdings Co., Ltd. They also

EX-YOO-00147

restructure the corporate governance so as to better obtain such funds. PARK Seung-il frequently goes abroad with YOO Hyuk Kee because he is in charge of the management of funds in other countries. Every year, affiliate companies pay certain percentages of their revenues to SLPLUS (CEO: YOO Dae Kyoon) for consulting and the use of trademark; Moreal Design (CEO: YOO Chong Somena) for design service; Parrotbill (represented by YOO Byung Eyn) for consulting and the use of trademark; and Key Solution (CEO: YOO Hyuk Kee, the second son of YOO Byung Eyn) for consulting and the use of trademark. Dapanda also had to pay 2~3% of its revenues (approximately KRW 50,000,000,000), negatively affecting its yield structure." "I-One-I Holdings takes on the role of the audit team and collected the funds from affiliate companies. PARK Seung-il contacted the CEO of each affiliate company and collected money whenever money is needed for YOO Byung Eyn's photograph exhibition, etc."

4.2.2. On April 30, 2014, at the Incheon DPO, BYEON Gi-chun made the following statements to prosecutor LEE Jin-ho:

"YOO Hyuk Kee and KIM Pil Bae gave orders to affiliate companies, and KIM Pil Bae, KIM Han-sik, PARK Seung-il and KIM Dong-hwan conducted audits on affiliate companies and reported the results to YOO Byung Eyn."

11

EX-YOO-00148

4.2.3. On April 29, 2014, at the Incheon DPO, YIM Jong-wuk made the following statements to prosecutor HONG Seong-jun:

"I worked as an accounting clerk at Dapanda and made payments to YOO Byung Eyn, YOO Dae Kyoon and YOO Chong Somena in the names of advisory fees, trademark royalties and service fees, as directed by KIM Pil Bae."

4.2.4. On May 3, 2014, at the Incheon DPO, LEE Seong-hwan made the following statements to prosecutor JANG In-ho:

"It is true that Dapanda paid advisory fees and trademark royalties to Moreal Design and I-One-I Holdings, but I just followed KIM Pil Bae's directions without having knowledge of any details."

4.2.5. On May 4, 2014, at the Incheon DPO, LEE Yeong-tae made the following statements to prosecutor HONG Seong-jun:

"Under the directions of KIM Pil Bae, I subcontracted Moreal Design and paid KRW 80,000,000 every month when Dapanda sold products, but Moreal Design did nothing about design."

4.2.6. In the financial transaction records of I-One-I Holdings, Dapanda, Moreal Design, YOO Byung Eyn and YOO Dae Kyoon, it was found that Dapanda had paid advisory fees, trademark royalties and service fees to YOO Byung Eyn and the affiliate companies owned by his family.

4.2.7. The aforementioned statements by BYEON Gi-chun, YIM Jong-

EX-YOO-00149

wuk, LEE Seong-hwan and LEE Yeong-tae were legitimately made in accordance with the procedures pursuant to the Criminal Procedure Act of the Republic of Korea, and documented and maintained at the Incheon DPO in charge of the investigation of this case. The evidence including financial transaction records of I-One-I Holdings, Dapanda, Moreal Design, YOO Byung Eyn and YOO Dae Kyoon were legitimately gathered in accordance with the procedures pursuant to the Criminal Procedure Act of the Republic of Korea and kept in files together with the above-mentioned statements.

## 5. APPLICABLE LAW OF KOREA

5.1. The applicable laws of Korea for the crime committed by KIM Pil Bae violating the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (embezzlement) are as follows.

5.1.1. Embezzlement

**Article 355(1) of the Criminal Act**

A person who, having the custody of another's property, embezzles or refuses to return it, shall be punished by imprisonment for not more than five years or by a fine not exceeding fifteen million won.

5.1.2. Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement)

**Article 3(1)1 of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes**

13

EX-YOO-00150

A person who commits crimes as prescribed in Articles 347 (fraud), 350 (extortion), 351 (limited to the habitual crime as prescribed in Articles 347 and 350), 355 (embezzlement, breach of trust) or 356 (occupational embezzlement, occupational breach of trust) of the Criminal Act, shall, if the value of the goods or profits on property which he gains or has another person gain is five hundred million won or more, be punished additionally as follows:

1. If the amount of profit is five billion won or more, he shall be punished by imprisonment for lifetime or not less than five years;

A person who commits embezzlement, if the amount of damages is five hundred million won or more, shall be subject to aggravated punishment pursuant to the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes.

5.1.3. Statute of Limitations

Under Article 249(1) of the Korean Criminal Procedure Act, the statute of limitations for crimes subject to lifetime imprisonment is fifteen (15) years. According to Article 253(3) of the Criminal Procedure Act, the statute of limitations shall be suspended during the period for which the offender stays abroad for the purpose of avoiding criminal punishment. Therefore, the statute of limitations for KIM Pil Bae has not expired yet.

**Article 249(1) of the Criminal Procedure Act**

① The statute of limitations shall expire upon the lapse of the following terms:

1. Twenty-five (25) years for crimes punishable by death penalty;

14

EX-YOO-00151

2. Fifteen (15) years for crimes punishable by imprisonment for life without prison labor or imprisonment for life;

3. Ten (10) years for crimes punishable by imprisonment or imprisonment without prison labor for a period of ten (10) years or more;

4. Seven (7) years for crimes punishable by imprisonment or imprisonment without prison labor for a period not exceeding ten (10) years; and

5. Five (5) years for crimes punishable by imprisonment or imprisonment without prison labor for a period not exceeding five (5) years, suspension of qualifications for a period of ten (10) years or more, or a fine

**Article 253(3) of the Criminal Procedure Act**

The statute of limitations shall be suspended during the period, for which the offender stays abroad for the purpose of avoiding criminal punishment.

5.2. The aforementioned laws are currently in effect in the Republic of Korea and were also effective between January 4, 2008 and March 31, 2014 when KIM Pil Bae allegedly violated the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (embezzlement).

# 6. ARREST WARRANT SYSTEM IN THE REPUBLIC OF KOREA

6.1. As set forth above, an arrest warrant has been issued for KIM Pil Bae for the violation of the Act on the Aggravated Punishment, etc. of Specific Economic Crimes (embezzlement).

15

EX-YOO-00152

6.2. In cases where it is difficult to prosecute a suspect on the run as it is in this case, the prosecution shall be suspended as a mid-step, and the prosecutor temporarily closes the investigation and seeks to have a warrant of arrest or detention for the suspect. With the arrest warrant issued, the prosecutor locates the whereabouts of the suspect and puts him on the wanted list so as to make the arrest. Therefore, when the prosecution is suspended due to the suspect's unknown whereabouts as in this case, neither prosecution to the court nor trial procedures proceeds so that there are no documents related to the indictment available in the case records.

6.3. Under the Criminal Procedure Act of the Republic of Korea, the prosecutor can request a relevant district judge to issue an arrest warrant to detain a suspect if there is sufficient evidence found during the investigation to believe that the suspect committed the crime; the suspect refuses to yield to a prosecutor's summons to appear; or the suspect is likely to refuse such summons.

6.4. The judge will issue an arrest warrant only when it is determined that the request provides reasonable grounds for an arrest (Articles 201 and 201-2 of the Criminal Procedure Act). For this reason, the fact that an arrest warrant has been issued reflects that the judge is also

16

convinced there are reasonable grounds to believe that the suspect committed the crime as described in the arrest warrant.

6.5. On May 8, 2014, Judge PARK Seong-yong at the Incheon District Court issued an arrest warrant for KIM Pil Bae upon prosecutor JEONG Soon Shin's request. The arrest warrant, which will be valid until March 10, 2029, is a judicial document that grants the right to arrest KIM Pil Bae on or prior to March 10, 2029 for the violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (embezzlement). Judge PARK Seong-yong has authority to issue such arrest warrant under the Korean law. The original arrest warrant is kept on the investigation file of this case for the relevant criminal procedures in Korea. I have reviewed the original in person and confirm that Annex 2 is a genuine and exact copy of the arrest warrant.

7. I hereby certify that the aforementioned are all true to my knowledge. I am submitting this statement of confirmation, being well-aware that I may be punished for falsely producing official documents pursuant to Article 227 of the Criminal Act of Korea.

May 14, 2014

17

EX-YOO-00154

Respectfully submitted by

Prosecutor JEONG Soon Shin

Incheon District Prosecutors' Office


Annex:

1. A genuine and exact copy of KIM Pil Bae's photograph

2. A genuine and exact copy of the arrest warrant for KIM

Pil Bae

EX-YOO-00155



# Warrant of Arrest

Incheon District Court

| Warrant No. | **2014-7385** | **Criminal Offense** | Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Embezzlement) | | |
|---|---|---|---|---|---|
| **Suspect** | **Name** | KIM Pil Bae | | **Occupation** | Others |
| | **Resident Registration #** | 380209-1063620 | | **Country of Citizenship** | Korean |
| | **Address** | | | | |

| Prosecutor | JEONG Soon Shin | Date of Application | 2014. 5. 8.    20:28 |
|---|---|---|---|
| **Defense Attorney** | | **Date of Expiry** | 2029.  3.  10. |
| **Facts of Crime** | See Enclosure | **Place of Custody** | Incheon District Prosecutors' Office |
| **Place of Detention** | Incheon Detention Center | | |

| | |
|---|---|
| ■ The suspect failed to attend in accordance with the summons served on him/her without a plausible reason. | As there are sufficient reasons to believe that the suspect has committed the offense(s) set out in the attachment and there are grounds for his/her arrest, the suspect shall be arrested and brought to court. If this warrant is not enforced on or before the date of expiry, it shall no longer be enforceable. If the warrant expires or there exists no more need to arrest the suspect, the warrant shall be returned. |
| ☐ The suspect may fail to attend in accordance with the summons served on him/her, without a plausible reason. | |
| ☐ The suspect has no fixed address (for crimes resulting in a fine not exceeding KRW 500,000, detention, or a minor fine). | 2014.  5.  8.<br><br>Judge PARK Seong-yong *(sealed)* |

| Date of Arrest | 20  .  .  : | Place of Arrest | |
|---|---|---|---|
| **Date of Custody** | 20  .  .  : | **Place of Custody** | |
| **Date of Detention** | 20  .  .  : | **Place of Detention** | |
| **Reasons for Failed Execution** | | | |
| **Office/Title of Person in Charge** | | **Signature of Person in Charge** | |

# Facts of Crime

## 1. Information on the Suspect

From September 21, 2000 to March 18, 2014, suspect KIM Pil Bae served as the CEO of victim Dapanda Co., Ltd. (hereinafter 'Dapanda') which specializes in 'commodity (cosmetics, food and pharmaceutical products, etc.) brokerage', he is also the CEO of I-One-I Holdings Co., Ltd. (hereinafter 'I-One-I Holdings'), which is the holding company of 'Dapanda', and is in overall charge of financial affairs of the victim company along with Co-CEO SONG Guk-bin of 'Dapanda' (currently under investigation while held in custody).   In order to raise slush funds for its largest shareholder YOO Byung Eyn and his family, KIM Pil Bae conspired with SONG Guk-bin to embezzle a total of KRW 7,199,783,200 from victim 'Dapanda' as follows:

## 2. Facts of Crime

### (A) Payment for Business Consulting Fees to I-One-I Holdings Co., Ltd.

Around December 1, 2007, at the office of 'Dapanda' located at 798-3 Yeoksam-dong, Gangnam-gu, Seoul, suspect KIM Pil Bae signed a 'Business Consulting Service Contract' obligating the victim company to make a monthly payment of KRW 7,000,000 to 'I-One-I Holdings', even though he was aware that the victim company did not require regular business consulting service and 'I-One-I Holdings' was not capable of offering practical consulting service to the victim company.   Around that time, KIM Pil Bae not only wire-transferred KRW 7,000,000 from the victim company to the Woori Bank account held by I-One-I Holdings as a business consulting fee but also from that time on until March 2014, wire-transferred KRW 7,000,000 to 'I-One-I Holdings' every month as set forth in the attached Accounts of Crime (1), thereby embezzling a total of KRW 499,545,440 out of the victim's money that he held for business purposes..

EX-YOO-00158

**(B) Payment for Business Advisory Fees to YOO Byung Eyn**

Around January 3, 2011, at the office of 'Dapanda', suspect KIM Pil Bae signed an 'Appointment of Advisor Contract' with YOO Byung Eyn to provide him with a monthly payment of KRW 15,000,000, even though he was aware that YOO Byung Eyn did not play any special role concerning the management of the victim company.   Around that time, KIM Pil Bae not only wire-transferred KRW 15,000,000 from the victim company to the Woori Bank account held by YOO Byung Eyn as a business advisory fee but also from that time on until March 2014, wire-transferred KRW 15,000,000 to YOO Byung Eyn every month as set forth in the attached Accounts of Crime (2), thereby embezzling a total of KRW 570,000,000 out of the victim's money that he held for business purposes.

**(C) Payment for Trademark Royalties to YOO Dae Kyoon**

Around September 2000, at the office of 'Dapanda', suspect KIM Pil Bae signed an 'Trademark Exclusive License Contract' with YOO Dae Kyoon (0.75% of the monthly revenue), even though there is no brand value in the name 'Dapanda' that YOO Dae Kyoon registered, the trademark registration fee is about KRW 300,000 only and the name is quite replaceable with other names.   Around that time, KIM Pil Bae not only wire-transferred KRW 201,125,000 from the victim company to the Woori Bank account held by YOO Dae Kyoon but also from that time on until April 2014, wire-transferred trademark royalties to YOO Dae Kyoon as set forth in the attached Accounts of Crime (3), thereby embezzling a total of KRW 1,879,571,760 out of the victim's money that he held for business purposes.

**(D) Payment for Design Consulting Fees to YOO Chong Somena**

Around April 2009, at the office of 'Dapanda', suspect KIM Pil Bae signed a 'Design Development Service Contract' that calls for a monthly payment of KRW 80,000,000 to be made to Moreal Design Inc. (CEO: YOO Chong Somena; hereinafter 'Moreal

EX-YOO-00159

Design') even though he was aware that 'Dapanda' had tens of branch offices and local distributors that sell its products from door to door so that there was no need for sales preparations or assistance except for large-scale annual or bi-annual sales promotions hosted by the head office; and then, KIM Pil Bae not only wire-transferred KRW 80,000,000 from the victim company to the Nonghyup Bank account held by YOO Chong Somena as a service fee but also from January 2004 on until December 2013, wire-transferred payments for consulting service to YOO Chong Somena as set forth in the attached Accounts of Crime (4), thereby embezzling a total of KRW 4,170,666,000 out of the victim's money that he held for business purposes.

### (E) Payment for Transfer of Trademarks Registered by YOO Byung Eyn

Around April 9, 2010, at the aforementioned office of Dapanda, suspect KIM Pil Bae drew up 'Trademark Transfer Contracts' for 12 trademarks registered by YOO Byung Eyn such as 'Wiromansseo Ollaganeun Geul' and 'Nae Nuwun Deulpaneseo', even though there is no financial value in the trademarks. Then, KIM Pil Bae paid KRW 80,000,000, thereby embezzling KRW 80,000,000 out of the victim's money that he held for business purposes.

EX-YOO-00160

# ACCOUNTS OF CRIME (1)

| NO. | DATE | PAYER | CEO | RECIPIENT | DAMAGES (Excluding VAT) | DETAILS | REMARKS |
|-----|------|-------|-----|-----------|-------------------------|---------|---------|
| 1 | 2007-12-24 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 2 | 2008-01-16 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 3 | 2008-02-15 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 4 | 2008-03-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 5 | 2008-04-02 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 6 | 2008-05-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 7 | 2008-06-03 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 8 | 2008-07-01 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 9 | 2008-08-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 10 | 2008-09-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 11 | 2008-10-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 12 | 2008-11-03 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 13 | 2008-12-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 14 | 2009-01-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 15 | 2009-02-16 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 16 | 2009-03-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 17 | 2009-04-02 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 18 | 2009-05-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 19 | 2009-06-02 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 20 | 2009-07-01 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 21 | 2009-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 22 | 2009-09-04 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 23 | 2009-10-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 24 | 2009-11-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 25 | 2009-12-01 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |

EX-YOO-00161

| | | | | I-One-I | | Business | |
|---|---|---|---|---|---|---|---|
| 26 | 2010-01-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | Holdings Co., Ltd. | 6,363,636 | Consulting Service | |
| 27 | 2010-02-02 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 28 | 2010-03-03 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 29 | 2010-04-02 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 30 | 2010-05-03 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 31 | 2010-06-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 32 | 2010-07-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 33 | 2010-08-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 34 | 2010-09-02 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 35 | 2010-10-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 36 | 2010-11-04 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 37 | 2010-12-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 38 | 2011-01-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 39 | 2011-02-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 40 | 2011-03-09 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 6,363,636 | Business Consulting Service | |
| 41 | 2011-04-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 42 | 2011-05-09 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 43 | 2011-06-09 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 44 | 2011-07-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 45 | 2011-08-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 46 | 2011-09-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 47 | 2011-10-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 48 | 2011-11-21 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 49 | 2011-12-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 50 | 2012-01-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 51 | 2012-02-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |
| 52 | 2012-03-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service | |

EX-YOO-00162

| | | | | | | |
|---|---|---|---|---|---|---|
| 53 | 2012-04-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 54 | 2012-05-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 55 | 2012-06-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 56 | 2012-07-12 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 57 | 2012-08-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 58 | 2012-09-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 59 | 2012-10-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 60 | 2012-11-09 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 61 | 2012-12-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 62 | 2013-01-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 63 | 2013-02-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 64 | 2013-03-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 65 | 2013-04-04 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 66 | 2013-05-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 67 | 2013-06-05 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 68 | 2013-07-18 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 69 | 2013-08-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 70 | 2013-09-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 71 | 2013-10-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 72 | 2013-11-08 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 73 | 2013-12-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 74 | 2014-02-06 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| 75 | 2014-03-07 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | I-One-I Holdings Co., Ltd. | 7,000,000 | Business Consulting Service |
| Total | | | | KRW 499,545,440 | | |

EX-YOO-00163

# ACCOUNTS OF CRIME (2)

| NO. | DATE | PAYER | CEO | RECIPIENT | DAMAGES (Excluding VAT) | DATAILS | REMARKS |
|-----|------|-------|-----|-----------|------------------------|---------|---------|
| 1 | 2011-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 60,000,000 | Advisory Fee | |
| 2 | 2011-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 60,000,000 | Advisory Fee | |
| 3 | 2011-12-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 60,000,000 | Advisory Fee | |
| 4 | 2012-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 5 | 2012-02-29 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 6 | 2012-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 7 | 2012-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 8 | 2012-05-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 9 | 2012-06-29 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 10 | 2012-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 11 | 2012-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 12 | 2012-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 13 | 2012-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 14 | 2012-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 15 | 2012-12-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 16 | 2013-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 17 | 2013-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 18 | 2013-03-29 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 19 | 2013-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 20 | 2013-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 21 | 2013-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 22 | 2013-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 23 | 2013-08-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 24 | 2013-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 25 | 2013-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 26 | 2013-11-29 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 27 | 2013-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |

EX-YOO-00164

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2014-02-10 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| 29 | 2014-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | PARROTBILL | 15,000,000 | Advisory Fee | |
| Total | | | | KRW 570,000,000 | | | |

EX-YOO-00165

# ACCOUNTS OF CRIME (3)

| NO. | DATE | PAYER | CEO | RECIPIENT | DAMAGES (Excluding VAT) | DATAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | Around 2002 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 201,125,000 | Trademark Royalty | |
| 2 | Around 2003 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 172,719,000 | Trademark Royalty | |
| 3 | Around 2004 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 164,324,000 | Trademark Royalty | |
| 4 | 2005-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,306,570 | Trademark Royalty | |
| 5 | 2005-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,064,260 | Trademark Royalty | |
| 6 | 2005-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,058,590 | Trademark Royalty | |
| 7 | 2005-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,684,490 | Trademark Royalty | |
| 8 | 2005-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 51,279,140 | Trademark Royalty | |
| 9 | 2005-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 15,193,660 | Trademark Royalty | |
| 10 | 2005-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,364,000 | Trademark Royalty | |
| 11 | 2005-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,032,640 | Trademark Royalty | |
| 12 | 2005-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,258,220 | Trademark Royalty | |
| 13 | 2005-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 12,440,500 | Trademark Royalty | |
| 14 | 2005-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 27,230,780 | Trademark Royalty | |
| 15 | 2005-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 14,085,750 | Trademark Royalty | |
| 16 | 2006-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,893,280 | Trademark Royalty | |
| 17 | 2006-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,009,730 | Trademark Royalty | |
| 18 | 2006-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,423,490 | Trademark Royalty | |
| 19 | 2006-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 12,345,840 | Trademark Royalty | |
| 20 | 2006-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 51,202,620 | Trademark Royalty | |
| 21 | 2006-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 16,053,750 | Trademark Royalty | |
| 22 | 2006-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,056,100 | Trademark Royalty | |
| 23 | 2006-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 4,278,750 | Trademark Royalty | |
| 24 | 2006-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 18,061,300 | Trademark Royalty | |
| 25 | 2006-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 16,136,200 | Trademark Royalty | |
| 26 | 2006-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 27,123,660 | Trademark Royalty | |
| 27 | 2006-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 14,009,530 | Trademark Royalty | |

EX-YOO-00166

| | 2007-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,299,960 | Trademark Royalty | |
|---|---|---|---|---|---|---|---|
| 29 | 2007-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,826,740 | Trademark Royalty | |
| 30 | 2007-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,653,760 | Trademark Royalty | |
| 31 | 2007-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,570,790 | Trademark Royalty | |
| 32 | 2007-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 26,391,010 | Trademark Royalty | |
| 33 | 2007-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 25,950,290 | Trademark Royalty | |
| 34 | 2007-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,663,490 | Trademark Royalty | |
| 35 | 2007-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,038,300 | Trademark Royalty | |
| 36 | 2007-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,536,150 | Trademark Royalty | |
| 37 | 2007-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,726,070 | Trademark Royalty | |
| 38 | 2007-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,895,440 | Trademark Royalty | |
| 39 | 2007-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,088,730 | Trademark Royalty | |
| 40 | 2008-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 12,153,580 | Trademark Royalty | |
| 41 | 2008-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,259,250 | Trademark Royalty | |
| 42 | 2008-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,732,640 | Trademark Royalty | |
| 43 | 2008-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,783,200 | Trademark Royalty | |
| 44 | 2008-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 32,223,400 | Trademark Royalty | |
| 45 | 2008-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 33,200,100 | Trademark Royalty | |
| 46 | 2008-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 12,585,200 | Trademark Royalty | |
| 47 | 2008-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,737,000 | Trademark Royalty | |
| 48 | 2008-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,285,800 | Trademark Royalty | |
| 49 | 2008-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 13,589,300 | Trademark Royalty | |
| 50 | 2008-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,944,100 | Trademark Royalty | |
| 51 | 2008-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,803,300 | Trademark Royalty | |
| 52 | 2009-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,644,900 | Trademark Royalty | |
| 53 | 2009-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,370,700 | Trademark Royalty | |
| 54 | 2009-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,177,300 | Trademark Royalty | |
| 55 | 2009-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 15,194,700 | Trademark Royalty | |
| 56 | 2009-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 24,484,700 | Trademark Royalty | |
| 57 | 2009-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 26,799,300 | Trademark Royalty | |

EX-YOO-00167

| | 2009-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,792,000 | Trademark Royalty | |
|---|---|---|---|---|---|---|---|
| 59 | 2009-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,084,100 | Trademark Royalty | |
| 60 | 2009-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 15,887,300 | Trademark Royalty | |
| 61 | 2009-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,802,500 | Trademark Royalty | |
| 62 | 2009-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,918,500 | Trademark Royalty | |
| 63 | 2009-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,395,500 | Trademark Royalty | |
| 64 | 2010-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,801,000 | Trademark Royalty | |
| 65 | 2010-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,850,700 | Trademark Royalty | |
| 66 | 2010-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,595,600 | Trademark Royalty | |
| 67 | 2010-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,401,000 | Trademark Royalty | |
| 68 | 2010-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 17,967,200 | Trademark Royalty | |
| 69 | 2010-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 27,702,900 | Trademark Royalty | |
| 70 | 2010-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,754,900 | Trademark Royalty | |
| 71 | 2010-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,560,100 | Trademark Royalty | |
| 72 | 2010-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,163,800 | Trademark Royalty | |
| 73 | 2010-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,554,100 | Trademark Royalty | |
| 74 | 2010-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,864,200 | Trademark Royalty | |
| 75 | 2010-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,094,700 | Trademark Royalty | |
| 76 | 2011-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,320,400 | Trademark Royalty | |
| 77 | 2011-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,563,800 | Trademark Royalty | |
| 78 | 2011-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,989,800 | Trademark Royalty | |
| 79 | 2011-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 10,001,200 | Trademark Royalty | |
| 80 | 2011-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 22,827,700 | Trademark Royalty | |
| 81 | 2011-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 18,034,200 | Trademark Royalty | |
| 82 | 2011-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 4,462,300 | Trademark Royalty | |
| 83 | 2011-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,423,500 | Trademark Royalty | |
| 84 | 2011-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,823,300 | Trademark Royalty | |
| 85 | 2011-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 11,656,900 | Trademark Royalty | |
| 86 | 2011-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,929,700 | Trademark Royalty | |
| 87 | 2011-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,463,100 | Trademark Royalty | |

EX-YOO-00168

| | Date | | | | | | |
|---|---|---|---|---|---|---|---|
| | 2012-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 6,883,000 | Trademark Royalty | |
| 89 | 2012-02-29 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,087,000 | Trademark Royalty | |
| 90 | 2012-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,447,900 | Trademark Royalty | |
| 91 | 2012-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,262,100 | Trademark Royalty | |
| 92 | 2012-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 29,241,100 | Trademark Royalty | |
| 93 | 2012-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 30,682,600 | Trademark Royalty | |
| 94 | 2012-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,830,400 | Trademark Royalty | |
| 95 | 2012-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,237,900 | Trademark Royalty | |
| 96 | 2012-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,990,600 | Trademark Royalty | |
| 97 | 2012-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 9,395,500 | Trademark Royalty | |
| 98 | 2012-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,452,700 | Trademark Royalty | |
| 99 | 2012-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 4,746,800 | Trademark Royalty | |
| 100 | 2013-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,036,900 | Trademark Royalty | |
| 101 | 2013-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,484,600 | Trademark Royalty | |
| 102 | 2013-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,233,800 | Trademark Royalty | |
| 103 | 2013-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,916,600 | Trademark Royalty | |
| 104 | 2013-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 27,879,000 | Trademark Royalty | |
| 105 | 2013-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 28,853,000 | Trademark Royalty | |
| 106 | 2013-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 3,280,400 | Trademark Royalty | |
| 107 | 2013-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 4,723,200 | Trademark Royalty | |
| 108 | 2013-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 3,318,900 | Trademark Royalty | |
| 109 | 2013-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 8,013,700 | Trademark Royalty | |
| 110 | 2013-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 7,471,000 | Trademark Royalty | |
| 111 | 2013-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,376,300 | Trademark Royalty | |
| 112 | 2014-02-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,214,230 | Trademark Royalty | |
| 113 | 2014-03-11 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | SLPLUS | 5,456,480 | Trademark Royalty | |
| Total | | | | | KRW 1,879,571,760 | | |

EX-YOO-00169

# ACCOUNTS OF CRIME (4)

| NO. | DATE | PAYER | CEO | RECIPIENT | DAMAGES (Excluding VAT) | DETAILS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | Around 2004 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 45,000,000 | Design Consulting Service Fee | |
| 2 | Around 2005 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 60,000,000 | Design Consulting Service Fee | |
| 3 | Around 2006 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 60,000,000 | Design Consulting Service Fee | |
| 4 | Around 2007 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 60,000,000 | Design Consulting Service Fee | |
| 5 | Around 2008 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 60,000,000 | Design Consulting Service Fee | |
| 6 | Around 2009 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 18,666,000 | Design Consulting Service Fee | |
| 7 | 2009-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 8 | 2009-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 9 | 2009-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 10 | 2009-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 11 | 2009-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 12 | 2009-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 13 | 2009-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 14 | 2009-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 15 | 2009-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 3,000,000 | Design Consulting Service Fee | |
| 16 | 2010-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 17 | 2010-02-28 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 18 | 2010-03-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 19 | 2010-04-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 20 | 2010-05-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 21 | 2010-06-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 22 | 2010-07-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 23 | 2010-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 24 | 2010-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 25 | 2010-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 26 | 2010-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 27 | 2010-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 28 | 2011-01-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |

EX-YOO-00170

| | | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
|---|---|---|---|---|---|---|---|
| | 2013-08-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 60 | 2013-09-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 61 | 2013-10-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 62 | 2013-11-30 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| 63 | 2013-12-31 | Dapanda Co., Ltd. | KIM Pil Bae SONG Guk-bin | MOREAL DESIGN | 80,000,000 | Design Consulting Service Fee | |
| Total | | | | | **KRW 4,170,666,000** | | |

EX-YOO-00171