

U.S. Department of State

# CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
# EVIDENCE ACCOMPANYING REQUISITIONS IN
# THE UNITED STATES FOR EXTRADITION
# AMERICAN FOREIGN SERVICE

06-30-2014
Place and Date *(mm-dd-yyyy)*

I,    Paul L. Boyd   ,    Consul General
       Name                            Title

the United States of America at    Seoul, Korea

hereby certify that the annexed papers, being    supporting documents

proposed to be used upon an application for the extradition from the United States of America

Hyukkee YOO ,

charged with the crime of    violating the Act on the Aggravated Punishment, etc.

of Specific Economic Crimes (Embezzlement), etc.

alleged to have been committed in    Republic of Korea

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of    Republic of Korea ,

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this    30th    day of    June 2014 .
                                       Month and Year

*Paul L Boyd*
Signature

Paul L. Boyd, Consul General
Type Name and Title of Certifying Officer
of the United States of America.

DS-3
04-2



## MINISTRY OF JUSTICE
### Republic of Korea

미합중국 법무부장관 귀하


## 유혁기에 대한 범죄인인도청구 추가서류


대한민국 법무부장관 본인 황교안은,

1. 대한민국을 대표하여 대한민국정부와 미합중국정부간 범죄인인도조약에 따라, 특정경제범죄가중처벌등에관한법률위반(횡령) 혐의의 유석기가 대한민국의 법률에 의하여 처리될 수 있도록 대한민국에 인도하여 줄 것을 청구합니다.

2. 범죄인 유혁기에 대한 범죄인인도청구를 위한 추가서류로서 본 문서를 봉인한 후 서명하고 대한민국 법무부장관의 관인을 날인함으로써 대한민국정부에 의하여 인증된 서류임을 확인합니다.


대한민국 서울

2014년 6월 24일


대한민국 법무부장관 황교안


대리 국제형사과장 이성규



# 확 인 서

대한민국 인천지방검찰청 검사인 본인, 정순신은 대한민국과 미합중국간에 1999. 12. 20. 발효된 범죄인인도조약에 의거 도피 범죄인 유혁기를 미국으로부터 한국으로 인도받기 위하여 아래 사항을 추가로 확인함

## 1. 사건 배경

1.1. 이 사건 범죄는 기업범죄입니다. 하지만, 정상적인 기업에서는 발생하기 어려운 유형의 범죄이기 때문에, 전형적인 기업범죄를 바라보는 시각으로는 이해하기 어려운 면이 있음

1.2. 따라서, 이 사건을 이해하기 위해서 몇 가지 미리 알아두어야 할 것이 있음

1.2.1. 첫째는, 유혁기의 아버지인 유병언이 현재 대한민국 기독교계에서 이단으로 분류되는 특정 기독교 단체를 창설하였고, 교주인 유병언이 신도들에게 절대적인 권위를 보유하고 있으며, 2010년 이후 유혁기가 사실상 유병언의 지위를 승계하여 그 기독교단체를 이끌고 있다는 점임

1.2.2. 둘째는, 이 사건에 관련된 모든 회사의 임원, 직원, 주주들이 오로지 위 기독교단체의 신도들로 구성되어 있고, 위 기독교단체의 가장 중요한 특징은 신앙생활과 경제활동의 일치를 추구한다는 것입니다. 전국 신도들의 헌금은 한곳으로 모아져 관리되면서 여러 계열사를 새로 인수하거나 사업을 확장하는데 사용되고 있고, 전국의 교회조직이 계열사의 상품을 판매하는 조직을 겸하고 있으며, 신도들은 계열사에서 비교적 낮은 수준의 임금을 받으면서 일을 하고 그 급여 중 일부를 다시 헌금하고 있음

1.2.3. 셋째는, 위 두가지 사정으로 인해 유병언이나 피의자가 모든 계열사의 정점에 있고, 그들이 계열사 임원을 선임할 권한 및 중요 의사결정 권한을 보유하고 이를 행사하고 있는데, 그러한 권한을 공식적으로 보유하거나 행사

EX-YOO-S1-00003

하지 않고, 지주회사인 아이원아이홀딩스 대표이사 김필배의 배후에서 김필배를 조종하여 그러한 권한을 행사하고 있다는 것임

1.2.4. 넷째는, 각 계열사의 이사회나 감사가 그 실질적인 역할을 하지 않고 있고, 외부감사인까지도 유병언 일가에게 절대복종하는 신도이다보니 사실상 견제장치가 전무한 상태라는 점임

1.3. 바로 이러한 특수성으로 인해 각 계열사의 사장 등 임원들이 유병언 및 그 가족들로부터 돈을 달라는 요구를 받게 되면, 이를 거절할 수 없는 환경이 조성되었고, 유병언 및 그 가족들은 계열사로부터 불법적으로 돈을 받을 때 경영자문료, 상표권사용료, 고문료인 것처럼 위장하였으며, 그와 같은 방법을 통해 유병언 일가는 막대한 소득을 올렸는데, 1999년부터 2013년까지 세무당국에 신고된 유씨일가의 개인소득은 아래와 같음

| | 이름(나이) | 신분 | 소득 |
|---|---|---|---|
| 1 | 유병언(74세) | 대한민국에서 도피 중 | 45.5억 |
| 2 | 유섬나(49세) | 유병언의 딸, 프랑스에 범죄인인도절차 진행 중 | 91.9억 |
| 3 | 유대균(45세) | 유병언의 아들, 대한민국에서 도피 중 | 130.0억 |
| 4 | 유혁기(43세) | 유병언의 아들 | 308.6억 |
| 합계 | | | 576억 |

1.4. 수많은 계열사들은 대부분 영소한 규모이고, 그 중 규모가 큰 계열사는 아래와 같은데, 2013년도 기준 회사의 이익규모가 그리 크지 않은 상황에서도, 경영자문료니 상표권사용료니, 고문료 등 명목으로 거액이 지출되는 일은 정상적인 회사에서는 발생할 수 없는 현상임

| 회사 | 업종 | 자산(억) | 부채(억) | 매출(억) | 당기순익(억) |
|---|---|---|---|---|---|
| 청해진해운 | 해운 | 331 | 266 | 320 | 4 |
| 세모 | 건강식품제조 | 521 | 274 | 185 | -14 |

EX-YOO-S1-00004

| 디판디 | 건강식품유통 | 493 | 216 | 430 | 17 |
| 전해지 | 조선 | 1783 | 976 | 1058 | 10 |
| 이해 | 도료 | 495 | 323 | 793 | 25 |

1.5. 한편, 2011.경부터 유혁기와 유병언은 미국과 프랑스에 각각 AHAEPRESS INC와 AHAEPRESS FRANCE라는 회사를 설립하고, 유병언이 촬영한 사진 파일을 넘겨받아 미국에서 전시회용 사진작품 등을 만든 후, 해외에서 초호화 전시회(이러한 전시회도 신도들의 돈을 가지고 유병언이 루브르 박물관이나 베르사이유 궁전에 거액의 기부를 하여 성사됨)를 개최한 후 이를 대한민국에 있는 계열사인 'HEMATO CENTRIC LIFE'에 고가에 판매하면서, 3년간 순차로 446억원 상당의 선급금을 받아 막대한 이익을 취득하였고, 반면, 'HEMATO CENTRIC LIFE'는 계열사들로부터 출자받거나 금융기관으로부터 대출받은 돈으로 유병언의 사진작품을 대량구입하였다가 그 재무구조가 악화되고, 위 회사에 출자한 다른 계열사의 재무구조와 자금사정도 악화되었음

1.5.1. 대한민국의 미술품 경매시장에서 사진 시장의 규모는 1년에 20억원 이하이고, 유병언이 국내에서 사진작가로 활동한 이력이 전혀 없어서, 그의 사진작품에 대한 수요는 전혀 없는 상태이고, 신도들이나 계열사의 구매력도 이미 소진된 상태이다보니 'HEMATO CENTRIC LIFE'가 수입한 유병언의 사진작품 대부분은 그대로 창고에 보관되어 있는 실정임

1.5.2 무명작가이자 신인작가인 유병언의 사진작품을 그 작가가 원하는 가격에 구입하여 다른 소비자에게 전매하는 사업을 함으로써 이윤을 남기겠다는 발상 자체가 사업모델로서 타당한지 의문인데, 최소한의 시장조사나 외부 자문도 없이 그와 같은 사업을 진행시켜, 3년만에 계열사의 자산 446억원을 유병언 일가에 귀속시킨 사진 사업은, 경영자문료나, 상표권 사용료 등과 마찬가지로 유병언 일가가 계열사의 자산을 횡령하기 위해 허위로 내세운 명목에 불과한 것임

EX-YOO-S1-00005

1.6. 위와 같이 유혁기 및 그 가족들에게 경영자문료, 상표권 사용료 등을 지급한 사실로 인하여 계열사 사장들. 즉, 청해진해운 대표이사 김한식, 세모 대표이사 고창환, 다판다 대표이사 송국빈, 아해 대표이사 이강세, 천해지 대표이사 변기춘이 구속 기소되었고, 대한민국에 있는 유혁기의 부하직원 박승일, 김동환이 구속 기소된 상태이며, 유혁기는 그들 중 대부분과 공범관계에 있는데, 유병언과 아들 유대균과 유혁기는 (주)아이원아이홀딩스를 지주회사로 설립한 후 유대균과 유혁기가 각각 19.44%의 지분, 김혜경이 6.29%의 지분을 보유한 다음, (주)아이원아이홀딩스로 하여금 (주)천해지의 지분 42.18%, (주)아해의 지분 44.82%를 보유하게 하여 (주)천해지, (주)아해를 지배하고, (주)천해지로 하여금 (주)청해진해운의 지분 39.4%를 보유하게 하여 (주)천해지를 통해 (주)청해진해운을 지배하고, 유대균은 (주)다판다의 지분 32%를 보유하고, (주)다판다로 하여금 (주)천해지 지분 18.21%, (주)세모 지분 31%를 보유하게 하여 (주)천해지와 (주)세모를 지배하는 구조를 형성함으로써, 결국 유병언, 유대균, 유혁기가 (주)아이원아이홀딩스, (주)다판다 등을 통해 주요 계열사들의 경영권을 지배하였음

1.6.1. 비록, 유혁기가 각 계열사의 재산처분에 관하여 법률적인 권한을 보유하고 있지는 아니하나, 앞서 설명 드린 것과 같은 사정으로 인해 계열사 대표이사에 대한 막대한 영향력을 행사하고 있는 상황이므로, 유혁기가 계열사 대표이사들에게 지시하여 경영자문료, 상표권사용료, 사진대금 등 명목으로 계열사의 자금을 인출한 후 유혁기가 취득한 행위는 대한민국 형법상 횡령죄에 해당함

1.6.2. 특히 유혁기는 장남 유대균이 주로 예술쪽 분야에 관심을 가지면서 유병언과의 관계가 소원해지자, 유병언의 후계자로 등장하여 김필배, 박승일, 김동환 등과 함께 (주)아이원아이홀딩스를 설립한 다음 위와 같은 복잡한 계열사간 지배구조를 만들어 위와 같은 범행을 주도하였던 것임

EX-YOO-S1-00006

## 2. 유혁기 혐의 입증 자료

2.1. 범죄인인도청구 확인서에 추가하여 유혁기의 범죄에 대한 증거로는 다음과 같은 관련자들의 진술이 있고, 각 회사별 회계자료에 따라 금원을 지급한 내역은 모두 입증됨

2.2. 유병언이 회장인 세모그룹 계열사 (주)세모가 유혁기의 개인사업체 키솔루션에 경영자문료로 합계 1,225,000,000원을 지급하여 횡령한 혐의에 관하여, 아래 2.2.1. ~ 2.2.4.에 의하면 유혁기는 아버지 유병언이 세모그룹의 회장임을 기화로 (주)세모의 대표이사 고창환에게 지시하여 회사 자금을 빼돌리기 위한 수단으로 경영자문계약을 체결하였던 것이고, 자문이라고 볼 수 있는 실체가 없었음이 입증됨

2.2.1. 유혁기의 지시에 따라 유혁기의 개인사업체인 키솔루션의 업무 전반을 총괄하고 자금을 관리한 키솔루션의 자금관리 담당 지배인 박승일은 2014. 5. 8. 인천지방검찰청에서 검사 박광현에게 "키솔루션의 직원은 자신을 포함해 3명에 불과하고, 3명 모두 경영자문과 관련된 학력이나 경력이 없었으며, 경영자문료라는 것은 이를 지급받은 (주)세모, (주)모래알디자인, (주)천해지로부터 불법적으로 자금을 모으기 위한 방법에 불과하였고, 유혁기의 지시에 따른 것이다."라고 진술하였고, 이러한 진술은 아래에서 보는 것과 같이 (주)세모, (주)모래알디자인, (주)천해지가 키솔루션에 경영자문료로 돈을 지급하여 횡령한 혐의 모두에 대한 입증자료이고, 박승일은 유혁기와 이와 같은 횡령죄의 공범 등으로 2014. 5. 9. 구속되어 현재 재판을 받고 있음

2.2.2. (주)세모의 대표이사 고창환은 2014. 4. 25. 인천지방검찰청에서 검사 이진호에게 "(주)세모가 유혁기가 운영하는 키솔루션에 2010년에는 2억5,000만원, 2011년부터 2013년까지 매년 3억원의 경영자문료를 지급한 것은 키솔루션의 박승일의 요청에 의한 것이다.", "금액 책정 과정에서 다른 업체와 비교 견적 등을 받은 사실이 없고, 키솔루션의 전문성, 실적, 신뢰성, 2중 자문의 필요성 등을 고려함이 없이 저와 박승일 둘이서 협의해서 결정을 했습니다."고 진술함

2.2.2.1. 위 고창환은 2014. 5. 6. 인천지방검찰청에서 검사 최원석에게 "키솔루션으로부터 받은 자문 내용은 1년에 1~2회 정도 서류를 통한 경영자문이었고, 정기적으로 고액의 자문료를 지급하면서 받아야 할 내용이 아니었으며, 외부 용역에 맡겨도 될 정도의 수준이었다."고 진술하고, 고창환은 이러한 범죄사실로 2014. 5. 9. 구속되어 현재 재판을 받고 있음

2.2.3. (주)세모의 경영지원팀장 김규석은 2014. 4. 30. 인천지방검찰청에서 검사 최원석에게 "유혁기에게 매월 정기적으로 고액의 자문료를 지급하였지만 1년에 1~2회의 자료를 받은 것에 불과하고 이 또한 인터넷 검색 등을 통해 쉽게 구할 수 있는 자료에 불과하고 그 이외에 따로 자문을 받은 사실이 없다."라고 진술함

2.2.4. (주)세모의 직원 조선애는 2014. 5. 1. 인천지방검찰청에서 검사 최원석에게 "(주)세모의 재무제표상 자본보다 부채가 많은 편이고 계속 영업이익이 감소하고 있었음에도 불구하고 키솔루션에 컨설팅비 명목으로 매년 3억원을 지급하는 등 4년 동안 11억5,000만원을 지급한 것은 유혁기의 지시를 받은 박승일 등의 지시에 의한 것이었고, 특히 고액의 자문료를 지불하고도 회사 경영실적이 향상되지 않았는데 자문업체를 교체하지 않은 것이 정상은 아니었다."고 진술함

2.3. 유병언이 회장인 세모그룹 계열사 (주)모래알디자인이 유혁기의 개인사업체 키솔루션에 경영자문료로 합계 1,225,000,000원을 지급하여 횡령한 혐의에 관하여, 아래 2.2.1. ~ 2.2.4.에 의하면 유혁기는 아버지가 세모그룹의 회장이고, 누나 유섬나가 (주)모래알디자인의 대표이사라는 것을 기화로 (주)모래알디자인의 자금을 빼돌리기 위한 수단으로 경영자문계약을 체결하였던 것이고, 자문이라고 볼 수 있는 실체가 없었음이 입증되었으며, 유섬나는 이러한 횡령 혐의로 프랑스에 범죄인인도청구가 되었고, 프랑스 파리에서 체포되어 현재 인도재판 중에 있음

2.3.1. (주)모래알디자인의 대표이사 하명화는 2014. 5. 14. 인천지방검찰청에서 검사 홍성준에게 "자문계약은 유혁기와 유섬나 남매가 체결하였고, 유혁기에게 매

EX-YOO-S1-00008

월 2,000만원을 자문료로 지급하였지만 자문을 받은 공식적인 서류는 없다."
고 진술함

2.3.2. (주)모래알디자인의 경리 담당 직원 박화순은 2014. 5. 12. 인천지방검찰청에서 검사 홍성준에게 "유혁기가 유선나, 하명화와 자문계약을 체결하였으나, 키솔루션으로부터 자문을 받았는지 여부는 알지 못한다."고 진술함

2.4. 유병언이 회장인 세모그룹 계열사 (주)아해가 유혁기의 개인사업체 키솔루션에 경영자문료로 합계 1,225,000,000원을 지급하여 횡령한 혐의에 관하여, 아래 2.2.1. ~ 2.2.4.에 의하면 유혁기는 아버지 유병언이 세모그룹의 회장임을 기화로 (주)아해의 대표이사 이상환에게 지시하여 회사 자금을 빼돌리기 위한 수단으로 상표권 사용계약을 체결하였던 것이고 정상적인 상표권 사용계약이라고 볼 수 있는 실체가 없었음이 입증됨

2.4.1. 박승일은 2014. 5. 8. 인천지방검찰청에서 검사 박광현에게 "유혁기가 (주)아해의 매출액 1.6%를 상표권 사용료로 받으라고 지시하여, 당시 (주)아해의 대표이사인 이성환에게 유병언의 아들 유혁기의 지시이니 따라야 된다고 하여 계약을 체결하고 상표권 사용료를 지급하였고, 사용료 금액은 통상적인 가치평가 방식이 아닌 유혁기의 일방적인 지시에 따라 책정하였다."고 진술함

2.4.2. (주)아해의 대표이사였던 이성환은 2014. 5. 4. 인천지방검찰청에서 검사 장인호에게 "(주)아해라는 상호는 1998년 당시 직원들과 함께 만든 상호임에도 유혁기가 2009년에 상표권 등록을 했으니 사용료를 달라고 박승일을 통하여 지시하므로 유병언 회장의 아들 유혁기의 지시를 거절할 수 없어 상표권 사용료를 지급하게 되었다."고 진술함

2.5. 온나라쇼핑이 유혁기의 개인사업체 키솔루션에 상표권 사용료로 합계 328,436,704원을 지급하여 횡령한 혐의에 관하여, 이 사건 당시 대표이사인 이호섭(최초 범죄인인도청구서에는 대표이사를 변기춘으로 기재하였으나 이는 오기임을 밝힘)은 수사기관의 출석요청에 응하지 아니한 채 현재까지 연락이 되지 않고 있고, 상표권사용계약서 사본, 온나라쇼핑의 계정별원장 등 회계자료 및 키솔루션이 다른

EX-YOO-S1-00009

업체들로부터 받은 상표권 사용 계약이 실체가 없었다는 점을 고려하면 의하면, 온나라쇼핑이 유혁기에게 상표권사용료를 지급한 부분 또한 정상적인 상표권 사용이 없었음이 입증됨

2.6. 유병언이 회장인 세모그룹 계열사 (주)천해지가 유혁기의 개인사업체 키솔루션에 상표권 사용료로 합계 1,235,426,771원을 지급하여 횡령한 혐의, (주)천해지가 유혁기의 개인사업체 키솔루션에 자문료 명목으로 합계 2억원을 지급하여 횡령한 혐의에 대하여 아래 2.6.1.에 의하면, 유혁기는 아버지 유병언이 세모그룹의 회장임을 기화로 (주)천해지의 대표이사 변기춘에게 지시하여 회사 자금을 빼돌리기 위한 수단으로 상표권 사용계약, 자문계약을 체결하였던 것이고 정상적인 상표권 사용, 정상적인 자문의 실체가 없었음이 입증됨

2.6.1. (주)천해지의 대표이사 변기춘은 2014. 5. 6. 인천지방검찰청에서 검사 김영철에게 "유병언 회장이 저를 천해지에 입사하게 해주었기 때문에 그의 아들인 유혁기의 요구대로 상표권 사용료를 줄 수밖에 없었고, 형식만 상표권 사용료일 뿐 실제로는 유혁기가 (주)천해지의 자금을 개인적으로 빼돌리기 위한 수단에 불과하였으며, 2010년 4월에서 5월 사이에 국세청에서 유혁기는 (주)천해지의 특수관계인이므로[(주)아이원아이홀딩스의 대주주이고, (주)아이원아이홀딩스는 (주)천해지의 지분 42.81%를 보유하고 있다는 점], (주)천해지가 상호와 로고의 사용료로 유혁기에게 지급한 돈을 비용으로 인정할 수 없다며 과세를 하므로 더 이상 상표권 사용료의 형식으로 돈을 줄 수 없게 되자, 2011년 2월부터는 자문료의 형식으로 매월 2,000만원을 유혁기에게 주게 되었다."라고 진술함

2.7. 유병언이 회장인 세모그룹 계열사 (주)천해지가 유혁기가 대표인 아해프레스 INC에 사진 구입 선급금 명목으로 합계 19,862,077,987원을 지급하여 횡령한 혐의에 대하여, 아래 2.7.1. ~ 2.7.2.에 의하면 유혁기는 아버지 유병언이 세모그룹 회장임을 기화로 프랑스 베르사유 궁전에서 열리는 유병언 개인 사진전 자금을 마련하기 위해 (주)천해지 대표이사 변기춘에게 세모그룹의 다른 회사들로부터 유상증자금 명목 등으로 돈을 모은 다음 사진 구입을 위한 선급금

EX-YOO-S1-00010

명목으로 아해프레스INC로 빼돌리라고 지시한 사실이 입증됨

2.7.1. 박승일은 2014. 5. 14. 인천지방검찰청에서 검사 박광현에게 "유혁기가 유병언의 사진을 상업화하자고 하면서 세모그룹 계열사 사장들에게 유상증자 등의 방법으로 자금을 마련하여 지원하라고 지시하였고, 계열사 사장들은 유혁기가 유병언의 아들이므로 이러한 지시를 들어줄 수밖에 없었다."라고 진술함

2.7.2. (주)천해지의 대표이사 변기훈은 2014. 5. 6. 인천지방검찰청에서 검사 김영철에게 "유혁기가 세모그룹 계열사들로부터 자금을 모아서 유병언 사진의 베르사유 궁전 전시회 비용을 마련하라고 지시하였고, 세모그룹 계열사 (주)다판다, (주)문진미디어, (주)온지구, (주)세모로부터 유상증자금 명목으로 11,024,000,000원을 받고, (주)아해로부터의 차입금 2,800,000,000원을 신주청약증거금으로 대체하고, (주)천해지의 회사 자금과 함께 합계 19,862,077,987원을 유병언의 사진을 구입하는 선급금 형식으로 아해프레스INC에 지급하였는데, 예술사진을 구입하는 명목으로 돈을 지급하면서도 어떤 작품이 있는지, 어떤 작품을 구입할지 여부를 정하지 않았으며 계열사 사장들은 유혁기의 지시에 따르지 않을 수가 없었다."고 진술하고, 변기훈은 이러한 범죄사실로 2014. 5. 9. 구속되어 현재 재판을 받고 있음

2.8. 유혁기가 횡령한 돈의 사용처에 대하여, 박승일은 2014. 5. 8. 인천지방검찰청에서 검사 박광현에게 "유혁기는 계열사로부터 받은 자문료, 상표권 사용료를 대부분 해외로 송금하거나 부동산을 구입하라고 지시하였고, 유혁기 명의로 서울 강남에 있는 고급 사무실과 고급 아파트를 구입하고, 세모그룹의 지주회사 아이원아이홀딩스 주식을 구입하였으며 유혁기의 해외 계좌로 돈을 수시로 송금하였다."고 진술함

## 3. 공범 관계 적용 법률

3.1. 대한민국 형법 제355조 제1항의 횡령죄가 성립하기 위하여는 주체가 타인의 재산을 보관하는 지위에 있어야 하므로 원칙적으로 이 사건은 세모그룹 각 계열사의 대표이사들이 횡령죄의 주체가 됨

3.2. 이에 대하여 대한민국 형법 제33조에 의하면, 일정한 신분이 있어야 범죄가 성립하는 경우에도 신분 없는 자를 형법 제30조의 공동정범으로 처벌할 수 있음

### 형법 제33조

『신분관계로 인하여 성립될 범죄에 가공한 행위는 신분관계가 없는 자에게 도 전3조의 규정을 적용한다. 단, 신분관계로 인하여 형의 경중이 있는 경우에는 중한 형으로 벌하지 아니한다.』

### 형법 제30조

『2인 이상이 공동하여 죄를 범한 때에는 각자를 그 죄의 정범으로 처벌한다.』

3.3. 따라서 비록 유혁기는 스스로 횡령죄의 주체가 될 수 없지만, 횡령죄의 주체가 되는 계열사 사장들과 공동정범으로 처벌됨

3.4. (주)세모 자금을 횡령한 혐의에 대하여는 대표이사 고창환, (주)모래알디자인 자금을 횡령한 혐의에 대하여는 대표이사 유섬나, (주)아해 자금을 횡령한 혐의에 대하여는 대표이사 이재영, (주)온나라쇼핑 자금을 횡령한 혐의에 대하여는 대표이사 변기춘, (주)천해지 자금을 횡령한 혐의에 대하여는 대표이사 변기춘과 각각 공동정범으로 처벌됨

## 4. 범죄인인도청구서 첨부 사진이 유혁기라는 사실

4.1. 이 사건으로 구속기소 되어 재판을 받고 있는 (주)천해지 대표이사 변기춘, 키솔

루션의 직원이자 아이원아이홀딩스 이사였던 박승일은 인천지방검찰청에서 검사 홍상철에게 첨부한 사진이 자신이 알고 있는 유혁기가 맞다고 진술하였고, 자필로 확인서를 작성하였음

5. 본인은 위 기재한 사실이 모두 진실임을 확인하며, 고의로 허위 사실을 기재하였을 경우 대한민국 형법 제227조에 따라 허위공문서작성죄로 처벌받을 수 있다는 사실을 인식하면서 본 확인서를 작성하였음.

2014. 6. 19.

인 천 지 방 검 찰 청  검 사  정순신 (인)

첨부 1. 변기춘의 자필 진술서, 유혁기 사진 2부

2. 박승일의 자필 진술서, 유혁기 사진 1부

EX-YOO-S1-00013

# 확 인 서

1. 저는 (주)천해지의 대표이사이고, 이 사건으로 구속되어 현재 법원에서 재판을 받고 있는 변기춘 입니다.

2. 저는 초등학교 1학년 때부터 유혁기다 함께 기독교복음침례회 교회를 다니면서 유혁기를 잘 알고 지냈고, 제가 (주)천해지 대표이사로 재직하면서 유혁기로부터 직접 업무지시를 받기도 했습니다.

3. 검사님께서 저에게 보여준 사진 속의 인물은 제가 알고 있는 유혁기인이 분명합니다.

2014. 6. 15

변 기춘

EX-YOO-S1-00014



EX-YOO-S1-00015



EX-YOO-S1-00016

# 확 인 서

1. 저는 유혁기의 개인사업체 키솔루션의
   직원으로 근무하였다가 이 사건으로
   구속되어 법원에서 재판을 받고
   있는 박승일 입니다.

2. 저는 키솔루션에서 근무하며 유혁기로부터
   직접 업무지시를 받았기 때문에 유혁기에
   대해서 잘 알고 있습니다.

3. 검사님께서 저에게 보여준 사진속의 인물은
   제가 알고 있는 유혁기임이 분명합니다.

                              2014. 6. 18
                          박 승 일

EX-YOO-S1-00017




EX-YOO-S1-00018



MINISTRY OF JUSTICE
Republic of Korea

Attorney General
Department of Justice
United States of America

## Supplemental Record of Case for YOO Hyukkee

On behalf of the Korean Government, I, HWANG Kyo-Ahn, the Korean Minister of Justice,

1. hereby request, pursuant to the Extradition Treaty between the Government of the Republic of Korea and the Government of the United States of America, the extradition of YOO Hyukkee who is accused of violating *the Act on the Aggravated Punishment, etc. of Specific Economic Crimes(Embezzlement)* so that this case can be prosecuted in accordance with the relevant laws of the Republic of Korea.

2. hereby confirm that the Korean Government certifies this supplemental document for the extradition of YOO Hyukkee by sealing, signing and impressing the official seal of the Korean Minister of Justice on this document.

Seoul, Republic of Korea

June 24, 2012

HWANG Kyo-Ahn
Minister
(Seal of the Minister of Justice)

LEE Sung-kyu
Director, International Criminal Affairs Division
(Duly Authorized by the Minister)

*Lee, Sungkyu*

EX-YOO-S1-00019

# STATEMENT OF CONFIRMATION

I, JEONG Soon Shin, Prosecutor of the Incheon District Prosecutors' Office ("Incheon DPO") in Korea hereby certify the following supplementary document in support of the request for the extradition of YOO Hyuk Kee from the United States of America to the Republic of Korea pursuant to the Extradition Treaty between the Republic of Korea and the United States of America, which became effective on December 20, 1999.

## 1. BACKGROUND INFORMATION

1.1. The crime in this case is corporate crime. However, it is different from typical corporate crime committed by a normal company, so there are some aspects that you cannot understand if you view this case from a typical point of perspective for corporate crime.

1.2. Therefore, you need to know a few things in order to understand this case.

1.2.1. First, YOO Byung Eyn, the father of YOO Hyuk Kee, created a certain Christian group which is regarded as a heresy within Christian circles of Korea and has an absolute power over its followers as the cult leader. After 2010, YOO Hyuk Kee succeeded his father for practical purposes and is currently leading the religious group.

1.2.2. Second, executives, employees and shareholders of every single company involved in this case are all followers of the above religious cult. One of the most notable facts

1

about this group is that it seeks to square economic activities with religion. Offerings are collected from followers all over the country and managed all together so as to be used for acquisition of a new company or expansion of business. The church organizations scattered throughout the country act as dealers that sell products of affiliate companies where followers work for a relatively low wage from which they make an offering giving away part of their already low income to the church.

1.2.3. Third, while YOO Byung Eyn and YOO Hyuk Kee are at the top of all affiliate companies, thereby having and exercising decision-making rights such as the right to appoint board members, they do not claim or exercise such rights in public, instead they pull the strings of KIM Pil Bae, the CEO of I-One-I Holdings (the holding company) and exercise the rights through KIM Pil Bae.

1.2.4. Fourth, the boards of directors and auditors of affiliate companies do not function well and even external auditors are followers who unquestionably obey the Yoo family, leaving the companies with no restraints.

1.3. Due to the distinctive nature of this case, CEOs and other executives of affiliate companies, once asked for money by YOO Byung Eyn and his family, could not resist. When getting such money illegally from affiliate companies, YOO Byung Eyn and his family disguised the money as business consulting fees, trademark licensing fees or advisory fees. Even though the Yoo family accumulated a fortune in the aforementioned way, individual income of

2

each family member reported to the tax authority from 1999
to 2013 is as below:

| | Name (Age) | Current Status | Income (KRW billion) |
|---|---|---|---|
| 1 | YOO Byung Eyn (74) | Still at large in Korea | 4.55 |
| 2 | YOO Chong Somena (49) | YOO Byung Eyn's daughter, extradition hearing underway in France | 9.19 |
| 3 | YOO Dae Kyoon (45) | YOO Byung Eyn's son, still at large in Korea | 13 |
| 4 | YOO Hyuk Kee (43) | YOO Byung Eyn's son | 30.86 |
| Total | | | 57.6 |

1.4.  Most of the affiliate companies are small in size and the
companies listed below are bigger than others. The
companies paid out handsomely for business consulting fees,
trademark licensing fees or advisory fees while they
recorded modest profits in 2013. Such a thing never
happens in an ordinary company.

(Unit:    KRW
billion)

| Company | Business | Asset | Liability | Revenue | Net Profit |
|---|---|---|---|---|---|
| Chonghaejin Marine | Marine transport | 33.1 | 26.6 | 32 | 0.4 |
| Semo | Health supplements manufacturing | 52.1 | 27.4 | 18.5 | -1.4 |
| Dapanda | Health supplements distribution | 49.3 | 21.6 | 43 | 1.7 |
| Chonhaiji | Shipbuilding | 178.3 | 97.6 | 105.8 | 1 |

3

| Ahae | Paint | 49.5 | 32.3 | 79.3 | 2.5 |
| --- | --- | --- | --- | --- | --- |

1.5.  From around 2011, YOO Hyuk Kee and YOO Byung Eyn established companies named Ahaepress Inc. and Ahaepress France in the United States and France respectively so as to have photographs taken by YOO Byung Eyn compiled for exhibition in the U.S. and hold an extravagant exhibition abroad (YOO Byung Eyn held the exhibitions in Louvre Museum and Chateau de Versailles by making generous financial contributions with the money collected from his followers). Then, they sold the photographs to an affiliate company named 'Hemato Centric Life' based in Korea at high prices, thereby amassing about KRW 44,600,000,000 of advanced payments in three years. In the meantime, Hemato Centric Life bought YOO Byung Eyn's photographs in quantity with the money invested by other affiliate companies or borrowed from banks and made its financial structure weaker, resulting in poor financial condition of other affiliate companies which had invested in the above company.

1.5.1. There is no demand for YOO Byung Eyn's photographs in the photograph market at art auctions in Korea which is worth less than KRW 2,000,000,000 a year and YOO Byung Eyn has no professional background as a photographer in Korea. Moreover, followers and affiliate companies have already run out of purchasing power. For these reasons, most of his photographs bought by Hemato Centric Life sit dormant in a warehouse.

1.5.2. The company's business model is questionable as it purchased photographs taken by an unknown photographer for

4

an asking price so as to make profit from selling those photographs to customers. What is worse, the company pursued such business without having conducted a market research or seeking advice from outside experts and paid whopping KRW 44,600,000,000 to the Yoo family in just three years. It is obvious, therefore, that the Yoo family took advantage of this business model to embezzle money from the affiliate company, just as they did with business consulting fees and trademark licensing fees.

1.6. CEOs of affiliate companies including KIM Han-sik (CEO of Chonghaejin Marine), GO Chang-hwan (CEO of Semo Group), SONG Guk-bin (CEO of Dapanda), LEE Gang-se (CEO of Ahae), and BYEON Gi-chun (CEO of Chonhaiji) have been all indicted with detention on charge of giving money to YOO Hyuk Kee and his family under the pretext of business consulting fees, trademark licensing fees, etc. YOO Hyuk Kee has accomplice relations with most of the above persons. After YOO Byung Eyn, and his sons, YOO Dae Kyoon and YOO Hyuk Kee founded the holding company named I-One-I Holdings, they took control of major affiliate companies through I-One-I Holdings and Dapanda as follows:

YOO Dae Kyoon and YOO Hyuk Kee owned 19.44% of I-One-I Holdings shares respectively while KIM Heakyung owned 6.29% of the company, and then they had I-One-I Holdings retain 42.18% of Chonhaiji and 44.82% of Ahae, thereby dominating the companies. They also had Chonhaiji own 39.4% of Chonghaejin Marine, thereby dominating the company. YOO Dae Kyoon held 32% of Dapanda and had Dapanda own 18.21%

5

of Chonhaiji and 31% of Semo, thereby dominating the two companies.

1.6.1. Even though YOO Hyuk Kee does not have any legal right to the properties of affiliate companies, he has powerful influence over the CEOs of affiliate companies as mentioned above and demanded money from them under the pretext of business consulting fees, trademark licensing fees, payments for photographs, etc. so as to withdraw money from affiliate companies and keep the money. Such an act falls under the category of embezzlement under the Criminal Act in Korea.

1.6.2. In particular, YOO Hyuk Kee became the heir of YOO Byung Eyn as his older brother YOO Dae Kyoon indulged in art and drifted apart from his father, and took the lead in the aforementioned crimes by establishing I-One-I Holdings and forming a complicated structure among affiliate companies as set forth above together with KIM Pil Bae, PARK Seung-il, KIM Dong-hwan, etc.

## 2. RELEVANT EVIDENCE FOR CHARGE OF YOO HYUK KEE

2.1. Supplementary evidence to the previous extradition request includes the following statements by relevant persons. In addition, each company's accounting documents show detailed records of payments.

2.2. Semo Co., Ltd., which is an affiliate company of Semo Group where YOO Byung Eyn served as Chairman, allegedly paid a total of KRW 1,225,000,000 as business consulting fees to Key Solution which is a sole proprietorship of YOO

6

Hyuk Kee, thereby embezzling the same amount of money. As shown in paragraphs 2.2.1.~2.2.4., YOO Hyuk Kee, taking advantage of the fact that his father YOO Byung Eyn is the Chairman of Semo Group, ordered GO Chang-hwan, the CEO of Semo to sign a business consulting service contract as a means to embezzle money from the company, and it has been proven that no actual consultation service was provided.

2.2.1. On May 8, 2014, at the Incheon DPO, PARK Seung-il, who was in charge of general affairs and financial matters of Key Solution under the direction of YOO Hyuk Kee, made the following statements to prosecutor PARK Gwang-hyeon: "There are only three employees including me in Key Solution, but none of us have any academic or professional background in business consulting. A business consulting fee was merely a means to collect money illegally from Semo, Moreal Design, and Chonhaiji. YOO Hyuk Kee was behind all this." This statement proves the allegation that Semo, Moreal Design, and Chonhaiji paid business consulting fees to Key Solution and embezzled the money. On May 9, 2014, PARK Seung-il was indicted with detention for embezzlement as an accomplice to YOO Hyuk Kee and is currently on trial.

2.2.2. On April 25, 2014, at the Incheon DPO, GO Chang-hwan, the CEO of Semo, made the following statements to prosecutor LEE Jin-ho: "Semo Group paid KRW 250,000,000 in 2010 and KRW 300,000,000 in 2011, 2012, and 2013 to Key Solution (CEO: YOO Hyuk Kee) as business consulting fees, upon request of PARK Seung-il of Key Solution." "I and

7

PARK Seung-il decided on a business consulting fee without having estimates from other companies compared and without taking into account Key Solution's level of expertise, performance records, reliability, and the need for double consulting service, etc."

2.2.2.1. On May 6, 2014, at the Incheon DPO, above GO Chang-hwan made the following statements to prosecutor CHOE Won-seok: "Key Solution provided business consulting services once or twice a year in writing. The consulting service did not deserve a large amount of consulting fees, and could have been obtained by outsourced services." On May 9, 2014, GO Chang-hwan was arrested for the aforementioned facts of crime and is currently on trial.

2.2.3. On April 30, 2014, at the Incheon DPO, KIM Gyu-seok, who leads the Management Support Team of Semo, made the following statements to prosecutor CHOE Won-seok: "YOO Hyuk Kee was paid a large amount of consulting fee every month, but he provided business consulting service only once or twice a year. The business consulting that he provided could have been easily found on the internet, and no other consulting service was provided."

2.2.4. On May 1, 2014, at the Incheon DPO, JO Seon-ae, an employee of Semo made the following statements to prosecutor CHOE Won-seok: "Even though the Semo's financial statements indicate that its liability was higher than equity and its operating profit was on the decline, the company paid KRW 300,000,000 to Key Solution every year as a consulting service fee, adding up to KRW

8

1,150,000,000 in four years, which was excessive, because PARK Seung-il and others told the company to do so under the direction of YOO Hyuk Kee. Moreover, although the company's performance did not get any better even after having such high-priced consulting services, the company did not replace the consulting firm. It was far from normal."

2.3.  Moreal Design, which is an affiliate company of Semo Group where YOO Byung Eyn served as Chairman, allegedly paid a total of KRW 1,225,000,000 as business consulting fees to Key Solution which is a sole proprietorship of YOO Hyuk Kee, thereby embezzling the same amount of money. As shown in paragraphs 2.3.1.~2.3.4., YOO Hyuk Kee, taking advantage of the fact that his father YOO Byung Eyn is the Chairman of Semo Group and his elder sister YOO Chong Somena is the CEO of Moreal Design, signed a business consulting service contract as a means to embezzle money from Moreal Design, and it has been proven that no actual consulting service was provided. An extradition request for YOO Chong Somena has been made to France. She was arrested in Paris, France, and is currently on extradition hearing.

2.3.1.  On May 14, 2014, at the Incheon DPO, HA Myeong-hwa, the CEO of Moreal Design, made the following statements to prosecutor HONG Seong-jun: "YOO Hyuk Kee and YOO Chong Somena signed the business consulting service agreement and YOO Hyuk Kee was paid KRW 20,000,000 every month.

9

EX-YOO-S1-00028

However, there is no official record showing that the company received consulting services."

2.3.2. On May 12, 2014, at the Incheon DPO, PARK Hwa-sun, an employee in charge of accounting in Moreal Design made the following statements to prosecutor HONG Seong-jun: "YOO Hyuk Kee signed a consulting service contract with YOO Chong Somena and HA Myeong-hwa. But I do not know whether Key Solution provided consulting services."

2.4. Ahae Co., Ltd., which is an affiliate company of Semo Group where YOO Byung Eyn served as Chairman, allegedly paid a total of KRW 1,225,000,000 as business consulting fees to Key Solution which is a sole proprietorship of YOO Hyuk Kee, thereby embezzling the same amount of money. As shown in paragraphs 2.4.1.~2.4.4., YOO Hyuk Kee, taking advantage of the fact that his father YOO Byung Eyn is the Chairman of Semo Group, ordered LEE Sang-hwan, the CEO of Ahae to sign a trademark license contract as a means to embezzle money from the company, and it has been proven that no actual activities under the trademark license contract were found.

2.4.1. On May 8, 2014, at the Incheon DPO, PARK Seung-il made the following statements to prosecutor PARK Gwang-hyeon: "YOO Hyuk Kee ordered me to receive 1.6% of revenue from Ahae as a royalty payment for its trademark, so I told LEE Seong-hwan, the CEO of Ahae, that we should follow the order of YOO Hyuk Kee since he is the son of YOO Byung Eyn. We signed a contract and the company paid trademark royalties. The royalty payment was decided not based on a

10

EX-YOO-S1-00029

general way of estimation, but based on YOO Hyuk Kee's unilateral direction."

2.4.2. On May 4, 2014, at the Incheon DPO, LEE Seong-hwan, the CEO of Ahae, made the following statements to prosecutor JANG In-ho: "The company's employees got together to create the company name Ahae in 1998, but YOO Hyuk Kee ordered through PARK Seung-il to make royalty payments as he registered the trademark in 2009. They could not resist because YOO Hyuk Kee is the son of Chairman YOO Byung Eyn so that they started paying him trademark royalties."

2.5. Onnara Shopping allegedly paid a total of KRW 328,436,704 to Key Solution which is a sole proprietorship of YOO Hyuk Kee as trademark royalties. LEE Ho-seop, the CEO of the company at the time when the crime was committed (in the previous request for extradition, BYEON Gi-chun was mistakenly mentioned as the CEO of the company), failed to respond to the summons served on him by the investigative authority and has been out of contact up until now. A copy of the trademark license contract, accounting documents of Onnara Shopping such as ledgers for accounts, and the fact that no actual activities under the trademark license contract between Key Solution and other companies were found prove that Onnara Shopping made the royalty payments to YOO Hyuk Kee although there was no use of trademark in a normal way.

2.6. Chonhaiji Co., Ltd., which is an affiliate company of Semo Group where YOO Byung Eyn served as Chairman, allegedly paid KRW 1,235,426,771 and KRW 200,000,000 to

11

EX-YOO-S1-00030

Key Solution which is a sole proprietorship of YOO Hyuk Kee as trademark royalties and business consulting fees respectively, thereby embezzling the same amount of money from the company. As shown in paragraph 2.6.1., YOO Hyuk Kee, taking advantage of the fact that his father YOO Byung Eyn is the Chairman of Semo Group, ordered BYEON Gi-chun, the CEO of Chonhaiji to sign a trademark license contract and a business consulting service contract as a means to embezzle money from the company, and it has been proven that no actual records about the use of trademark and the business consulting services were found.

2.6.1. On May 6, 2014, at the Incheon DPO, BYEON Gi-chun made the following statements to prosecutor KIM Yeong-cheol: "Chairman YOO Byung Eyn gave me a job at Chonhaiji, and so I had no other choice but to pay trademark royalties as requested by his son YOO Hyuk Kee. The trademark royalty payment was in name only. It was actually a means to embezzle money from Chonhaiji. The company was no longer able to pay money under the pretext of trademark royalties as the National Tax Service decided around April or May 2010 that YOO Hyuk Kee, having special relationship with the company (the major shareholder of I-One-I Holdings which owns 42.81% of Chonhaiji's shares), could not be paid trademark royalties by Chonhaiji and such payments should be taxed. Then in February 2011, the company started paying YOO Hyuk Kee KRW 20,000,000 a month under the pretext of consulting fees."

12

EX-YOO-S1-00031

2.7. Chonhaiji, which is an affiliated company of Semo Group where YOO Byung Eyn served as Chairman, allegedly paid a total of KRW 19,862,077,987 to Ahaepress Inc. (CEO: YOO Hyuk Kee) as an advanced payment for photographs. As shown in paragraphs 2.7.1.~2.7.2., YOO Hyuk Kee, taking advantage of the fact that his father YOO Byung Eyn is the Chairman of Semo Group, ordered BYEON Gi-chun (the CEO of Chonhaiji) to collect money from other affiliate companies of Semo Group in the form of paid-in capital increase, etc. so as to raise funds for YOO Byung Eyn's exhibition to be held at Chateau de Versailles, and to transfer the money to Ahaepress Inc. so as to use the money as advanced payments for photographs.

2.7.1. On May 14, 2014, at the Incheon DPO, PARK Seung-il made the following statements to prosecutor PARK Gwang-hyeon: "YOO Hyuk Kee ordered the CEOs of affiliate companies of Semo Group to raise money in the form of paid-in capital increase, etc. telling them to sell YOO Byung Eyn's photographs. The CEOs had no other choice but to obey because YOO Hyuk Kee is the son of YOO Byung Eyn."

2.7.2. On May 6, 2014, at the Incheon DPO, BYEON Gi-chun, the CEO of Chonhaiji, made the following statements to prosecutor KIM Yeong-choel: "YOO Hyuk Kee ordered the affiliate companies of Semo Group to raise funds for YOO Byung Eyn's photo exhibition to be held at Chateau de Versailles. He collected KRW 11,024,000,000 from Dapanda, Moonjin Media, Onzigoo and Semo which are the affiliate companies of Semo Group under the pretext of paid-in

13

EX-YOO-S1-00032

capital increase; converted Ahae's loan amounting to KRW 2,800,000,000 to new stock subscription payments; paid KRW 19,862,077,987 to Ahaepress Inc. as an advanced payment for YOO Byung Eyn's photograph using the aforementioned money and the money of Chonhaiji. When using the money to buy artistic photographs, they did neither know what photographs there were nor decide which photographs they would buy. The CEOs of the affiliate companies had no other choice but to follow YOO Hyuk Kee's order." On May 9, 2014, BYEON Gi-chun was arrested for the above facts of crime and is currently on trial.

2.8. On May 8, 2014, at the Incheon DPO, PARK Seung-il made the following statements to prosecutor PARK Gwang-hyeon as to where YOO Hyuk Kee used the embezzled money: "YOO Hyuk Kee ordered me to transfer the money overseas or use the most of the consulting fees and trademark royalties paid by affiliate companies for buying real estate. He purchased luxurious offices and apartments in Gangnam, Seoul, under the name of YOO Hyuk Kee; bought shares of I-One-I Holdings, the holding company of Semo Group; and frequently wired the money into YOO Hyuk Kee's overseas bank accounts."

## 3. APPLICABLE LAW FOR CONSPIRACY

3.1. In order to establish the crime of embezzlement pursuant to Article 355(1) of the Criminal Act, the person must be in a position of having the custody of another's property.

14

Therefore, each CEO of affiliate companies under Semo Group is a principal offender of embezzlement in this case.

3.2. However, Article 33 of the Criminal Act states a person may be punished as a co-principal although the person is not in such a position as aforementioned.

**Article 33 of the Criminal Act**

To a person who collaborates in the commission of a crime in which person's status is an element, the provisions of the preceding three Articles shall apply even though that person lacks such status: Provided, That when the severity of a punishment varies with the accused's status, the heavier punishment shall not be imposed on that person who lacks such status.

**Article 30 of the Criminal Act**

When two or more persons have jointly committed a crime, each of them shall be punished as a principal offender for the crime committed.

3.3. Although YOO Hyuk Kee is not the one who committed embezzlement, he may be punished as a co-principal with the CEOs of affiliate companies who actually embezzled the money.

3.4. He is punishable as a co-principal with CEO GO Chang-hwan for embezzlement from Semo; CEO YOO Chong Somena for embezzlement from Moreal Design; CEO LEE Jae-yeong for embezzlement from Ahae; and CEO BYEON Gi-chun for embezzlement from Onnara Shopping and Chonhaiji.

## 4. Identification of YOO Hyuk Kee on

15

EX-YOO-S1-00034

4.1.  At the Incheon DPO, BYEON Gi-chun (the CEO of Chonhaiji)
and PARK Seung-il  (the employee of Key Solution and
director of I-One-I Holdings), who have been indicted and
are currently on trial, told prosecutor HONG Sang-cheol
that the person in the photograph attached is YOO Hyuk Kee
whom they know and made a statement in their own
handwriting.

5.  **I hereby certify that the aforementioned are all true to my
knowledge. I am submitting this statement of confirmation,
being well-aware that I may be punished for falsely
producing official documents pursuant to Article 227 of the
Criminal Act of Korea.**

2014.  6. 19


Respectfully submitted by

Prosecutor JEONG Soon Shin *(signed and sealed)*

Incheon District Prosecutors' Office


ANNEX:

1.  Two genuine and exact copies of BYEON Gi-chun's handwritten
statement and YOO Hyuk Kee's photograph
2.  One genuine and exact copy of PARK Seung-il's handwritten
statement and YOO Hyuk Kee's photograph

EX-YOO-S1-00035

# STATEMENT

1. I am BYEON Gi-chun, the CEO of Chonhaiji Co., Ltd., who has been indicted for this case and is currently on trial.

2. I know YOO Hyuk Kee very well because we went to the Evangelical Baptist Church together since I was a first grader of elementary school.

3. The person in the photograph shown by the prosecutor is surely YOO Hyuk Kee whom I know.

June 15, 2014

BYEON Gi-chun *(fingerprinted)*

EX-YOO-S1-00036



Photograph of YOO Hyuk Kee

EX-YOO-S1-00037



EX-YOO-S1-00038



Photograph of YOO Hyuk Kee

EX-YOO-S1-00039




EX-YOO-S1-00040

# STATEMENT

1. I am PARK Seung-il who worked as an employee of Key Solution which is a sole proprietorship of YOO Hyuk Kee, and I have been arrested for this case and am currently on trial.

2. I know YOO Hyuk Kee very well because I received orders directly from YOO Hyuk Kee when I worked for Key Solution.

3. The person in the photograph shown by the prosecutor is surely YOO Hyuk Kee whom I know.

June 18, 2014

PARK Seung-il *(fingerprinted)*

EX-YOO-S1-00041



Photograph of YOO Hyuk Kee

EX-YOO-S1-00042


