U.S. Department of State

# CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
# EVIDENCE ACCOMPANYING REQUISITIONS IN
# THE UNITED STATES FOR EXTRADITION
# AMERICAN FOREIGN SERVICE



08-2-2017
Place and Date *(mm-dd-yyyy)*

I, _____ Sherman Grandy _____ , _____ Consul General _____
Name                 Title

the United States of America at _____ Seoul, Korea _____

hereby certify that the annexed papers, being _____ supporting documents _____

proposed to be used upon an application for the extradition from the United States of America
_____ Hyuk Kee YOO _____ ,

charged with the crime of _____ embezzlement, etc. _____

alleged to have been committed in _____ Republic of Korea _____

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of _____ Republic of Korea _____

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

the _____ 2nd _____ day of _____ August 2017 _____.
Month and Year

_____ Sherman S. Grandy _____
Signature

Sherman Grandy, Consul General
Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2007

EX-YOO-S3-00001



**Ministry of Justice**
Republic of Korea

Attorney General
Department of Justice
United States of America

## Supplement to Request for Extradition of YOO Hyuk Kee

I, Park, Sang Ki, the Korean Minister of Justice,

1. on behalf of the Korean government, hereby request for the extradition of YOO Hyuk Kee who is investigated on charge of embezzlement, etc. under the Treaty on Extradition between the Republic of Korea and the United States of America, so that this case can be prosecuted in accordance with the relevant laws of the Republic of Korea.

2. hereby confirm that the Korean government certifies this supplementary document on the request for the extradition of the criminal by sealing, signing and impressing the official seal of the Korean Minister of Justice on this document.

Seoul, Republic of Korea

July 31, 2017

Park, Sang Ki
Minister of Justice
Republic of Korea
(Sealed by Minister of Justice) 

LEE Changsoo
Director, International Criminal Affairs Division
(Duly authorized by the Minister)



# SUPPLEMENTARY STATEMENT OF CONFIRMATION

I, KIM Hyeong-geun, Prosecutor at the Incheon District Prosecutors' Office in Korea hereby certify the following in support of the request for the extradition of YOO Hyuk Kee from the United States of America to the Republic of Korea, pursuant to the Extradition Treaty between the Republic of Korea and the United States of America which took effect in December 20, 1999.

## 1.   QUALIFICATIONS

1.1. I am a public prosecutor of the Incheon District Prosecutors' Office ("Incheon DPO") under the Korean Ministry of Justice. After passing the National Bar Examination in 1997, I completed the required two-year course at the Judicial Research and Training Institute under the Supreme Court of Korea and obtained qualifications to work as a judge, prosecutor or lawyer in 2000. I have been working as a prosecutor since February 2002, under the appointment of the President of Korea. Based on my training, experience and position, I fully understand the criminal law and procedures of Korea. As a prosecutor in charge of investigating this case succeeding Prosecutor JEONG Soon Shin, who was previously in charge of this case and sent a request to extradite YOO Hyuk Kee in April 2015, I am well aware of the matters of this case as I have reviewed the statements made by the victims and

1

those involved in this case, investigation reports and evidence.

1.2. Under the Korean law, a prosecutor who presides over investigations may choose to either investigate independently or supervise the police as they investigate a case. Once the investigation is completed, the prosecutor exclusively decides whether or not to indict the case. After the indictment, the prosecutor supports and maintains the prosecution and executes the final judgment of the court. According to the principle of the exclusive power of prosecutors, the court may proceed with trial procedures only for cases that have been indicted by a prosecutor. In this case, there is clear and sufficient evidence to indict the suspect regardless of his statement. However, according to the Korean practice on investigations and indictments, prosecutors do not indict a suspect on the run. It is for this reason that JEONG Soon Shin, then-prosecutor who took charge of the investigation of this case, made a request to extradite YOO Hyuk Kee in April 2015. I, as the prosecutor who has taken over this case, hereby certify the following upon the supplementary request from the U.S.

2. **EACH COUNT OF EMBEZZLEMENT**

2.1. Paragraph 4.1.1. of the initial Statement of Confirmation is about the background of YOO Hyuk Kee's crimes, such as his identity and the criminal methods he used to commit embezzlement. Details of each count, with which YOO Hyuk

2

Kee will be charged after he is extradited, are described in paragraphs 4.1.2. through 4.1.8. of the initial Statement of Confirmation.

2.2. Details of each count are as follows.

2.2.1. YOO Hyuk Kee owned 19.44% of the shares outstanding of I-One-I Holdings Co., Ltd. ("I-One-I Holdings") and operated its affiliate companies, including Trigon Korea Co., Ltd., Kukje Pictures Co., Ltd., Dapanda Co., Ltd. ("Dapanda"), Onzigoo Co., Ltd. ("Onzigoo"), Ahae Co., Ltd. ("Ahae"), Moonjin Media Co., Ltd. ("Moonjin Media"), Chonhaiji, Co., Ltd. ("Chonhaiji"), Cheonghaijin Marine Co., Ltd. ("Cheonghaijin Marine"), Semo Co., Ltd. ("Semo"), Clian Co., Ltd, Saemuri Co., Ltd, Hojin Co., Ltd., and Sokuri Trading Co., Ltd. In or around March 2010, at Semo's office located at 565-3, 558-10 Sipjeong-dong, Bupyeong-gu, Incheon, YOO Hyuk Kee conspired with GO Chang-hwan, Semo's CEO, and signed a management consulting services contract through which YOO Hyuk Kee received KRW 25,000,000 from the victim company, Semo, in return for providing management consulting services. However, Semo was not in need of such services and Key Solution, a company operated by YOO Hyuk Kee, neither provided nor had the ability to provide such services to Semo. From the point of signing the contract until March 2014, YOO Hyuk Kee received KRW 25,000,000 every month, which is KRW 1,225,000,000 in total, from Semo into his Woori Bank account thereby embezzling the money.

2.2.2. In or about April 2010 in the office of Moreal Design Co.,

3

Ltd. ("Moreal Design") located at 4-4 Samseong-dong, Gangnam-gu, Seoul, YOO Hyuk Kee conspired with YOO Chong Somena, who had authority over Moreal Design's funds, and received KRW 30,000,000 on the pretext of a management consulting fee. Until December 2013, he received KRW 20,000,000 or KRW 30,000,000 every month, KRW 990,000,000 in total, even though it was not necessary for the victim company Moreal Design to receive management consultations on a regular basis. Also, YOO Hyuk Kee's company, Key Solution, neither provided nor had the ability to provide such services to Moreal Design. In this manner, YOO Hyuk Kee embezzled the money.

2.2.3. In or about January 2009 in the office of Ahae, YOO Hyuk Kee conspired with LEE Jae-young, who had authority over Ahae's funds, and signed a trademark licensing agreement stating that Ahae would pay licensing fees of about 0.8% to 1.6% of Ahae's revenue after YOO Hyuk Kee registered the name of the company, "Ahae," as a trademark. The victim company, however, had been using the name for the company for about 10 years. At the point of signing the contract, YOO Hyuk Kee received KRW 9,499,200 and until December 2013, he received a total of KRW 5,346,311,045 from Ahae thereby embezzling the money.

2.2.4. In or about January 2009 in the office of Onnara Shopping Co., Ltd. ("Onnara Shopping"), YOO Hyuk Kee conspired with BYEON Gi-chun who had authority over Onnara Shopping's funds and signed a trademark licensing agreement through which YOO Hyuk Kee received KRW 8,514,430 at the point of

4

signing, and a total of KRW 328,436,704 until December 2011 from the victim company Onnara, even though the company name "Onnara Shopping" did not have any brand value and was an easily replaceable name, while a trademark registration cost only about KRW 300,000.

2.2.5. In or about January 2008 in the office of Chonhaiji, YOO Hyuk Kee conspired with BYEON Gi-chun who had authority over Chonhaiji's funds and signed a trademark licensing agreement stating that Cheonhaiji would pay a licensing fee of 1.0% to 1.5% of Chonhaiji's revenue. YOO Hyuk Kee received KRW 18,898,710 at the point of signing the contract, and a total of KRW 1,235,426,771 until June 2010, even though the company name "Chonhaiji" did not have any brand value and was an easily replaceable name, while a trademark registration cost only about KRW 300,000.

2.2.6. In or about February 2011 in the office of Chonhaiji, YOO Hyuk Kee received KRW 20,000,000 from Chonhaiji in the name of consultation fees even though YOO Hyuk Kee did not provide any advice to Chonhaiji. Until November 2011, YOO Hyuk Kee received KRW 20,000,000 every month and embezzled KRW 200,000,000 in total from Chonhaiji.

2.2.7. YOO Hyuk Kee needed large amounts of money to hold an exhibition of photographs taken by his father, YOO Byeong Eyn, at the Palace of Versailles in France. For this reason, he conspired with BYEON Gi-chun, Chonhaiji CEO, to use Chonhaiji's money. On the pretext of purchasing YOO Byeong Eyn's photographs at a high price, Chonhaiji offered large amounts of money to Ahae Press Inc., the U.S.

5

branch of Ahae Co., Ltd., where YOO Hyuk Kee was CEO. Including KRW 1,656,598,080 that he received at the point of signing the purchase agreement in March 2013, YOO Hyuk Kee received KRW 19,862,077,987 in total from Chonhaiji, the victim company, until December 2013. However, the prices of YOO Byeong Eyn's works were not very high and could not be priced accurately because they had never been sold in the market before.

2.3. The victims of each count described in paragraphs 2.2.1. through 2.2.7. are different companies. The victim in paragraph 2.2.1. is Semo, that in 2.2.2. is Moreal Design, that in 2.2.3. is Ahae, that in 2.2.4. is Onnara Shopping and that in 2.2.5. through 2.2.7. is Chonhaiji. According to court precedents in Korea, a criminal who commits multiple embezzlement offenses is charged with one count per victim if the criminal committed the offenses under a single criminal intent and used the same criminal methods. Therefore, if there are more than one victim, the criminal shall be charged with multiple counts and those counts shall be considered as concurrent crimes. If there are more than one criminal method used for committing the crimes, the criminal shall be charged with multiple counts and the charges shall be considered as concurrent crimes, as well, even though there was only one victim. In this case, each criminal act described in each of the paragraphs 2.2.1. through 2.2.7. shall be deemed a single count and these counts will be considered as concurrent crimes. Based on this principle, YOO Hyuk Kee is facing

6

EX-YOO-S3-00008

seven counts of embezzlement.

2.4. Under the *Criminal Procedure Act* of the Republic of Korea, a prosecutor can request a relevant district judge to issue an arrest warrant if there are sufficient grounds to believe that the suspect committed a crime. The court has issued an arrest warrant because there are reasonable grounds to believe that YOO Hyuk Kee committed the above crimes. If there are any parts left unclear about each count, please point them out to us so that we can further elaborate on that point.

## 3.    ADDITIONAL EVIDENCE OF TAX EVASION

3.1. KIM Pil-bae and LEE Gang-se are co-principals in YOO Hyuk Kee's tax evasion. Prosecution against YOO Hyuk Kee has been suspended as his whereabouts are unknown, and prosecution against KIM Pil-bae and LEE Gang-se has also been suspended because they can be punished only after the investigation into YOO Hyuk Kee, their co-principal, is complete. In Korea, when it is difficult to find whether or not a suspect is convicted of the alleged charges due to unknown whereabouts of at least one of the suspect's co-principals, prosecution against the suspect can also be suspended until the suspect's co-principal is located.

3.2. KIM Pil-bae and LEE Gang-se were convicted of tax evasion and the method of their convicted crimes was similar to that of the crime they committed together with YOO Hyuk Kee.

3.3. KIM Pil-bae and LEE Gang-se was found guilty of submitting

7

false sum tables of tax invoices to the tax office, falsely claiming as if they paid YOO Byeong Eyn (YOO Hyuk Kee's father) for his consultation services, and evaded corporate taxes of about KRW 39,600,000. Therefore, the fact itself that KIM Pil-bae and LEE Gang-se submitted false tax forms and evaded corporate taxes for YOO's family has already been proven by the court in Korea.

3.4. In the judgement rendered on KIM Pil-bae by the High Court on the violation of the *Punishment of Tax Offenses Act*, the court said that KIM Pil-bae conspired with YOO's family, including YOO Hyuk Kee, and as a result, YOO's family took large amounts of inappropriate pecuniary advantage. (Judgement 2015NO592, 2015NO1112 by the Seoul High Court on July 3, 2015.) In other words, KIM Pil-bae and LEE Gang-se evaded taxes by submitting a false sum table of tax invoices for YOO's family. The tax evasion allegedly committed by KIM Pil-bae and LEE Gang-se in conspiracy with YOO Hyuk Kee is also related to the case in which KIM and LEE was found guilty in violation of the *Punishment of Tax Offenses Act.*

3.5. The Korean court issued an arrest warrant for YOO Hyuk Kee for the violation of the *Aggravated Punishment, etc. of Specific Economic Crimes* (Tax Evasion) as the court in Korea deemed this alleged crime to have been sufficiently proven based on the co-principals' statements, as described in the previous Statement of Confirmation. Given the fact, particularly, that KIM Pil-bae and LEE Gang-se was convicted of violation of the *Punishment of Tax*

8

*Offenses Act* in a separate case in which they conspired with YOO's family, it can be said that the statements by the co-principals are sufficiently reliable.

3.6. I understand there can be differences between Korean and U.S. law, as well as differences in the required degree of evidence. If there are any parts where you consider additional evidence is required under the U.S. law, please let us know so that we can send another statement of confirmation or further submit additional materials to clarify the matter.

I hereby certify that the aforementioned are all true and correct to the best of my knowledge. I am submitting this statement of confirmation, being well-aware that I may be punished for falsely producing official documents pursuant to Article 227 of the *Criminal Act* of Korea.

2016. 11. 18.

Respectfully submitted by
Prosecutor KIM Hyeong-geun
Incheon District Prosecutors' Office

Attachment 1. Judgements by the District Court, High Court and Supreme Court on KIM Pil-bae and LEE Gang-se's violation

9

EX-YOO-S3-00011

of the *Punishment of Tax Offenses Act*

EX-YOO-S3-00012

# INCHOEN DISTRICT COURT

# JUDGEMENT

**CASE**      2014GODAN9347, 9348 (Joint), 9349 (Joint), 9350 (Joint) Violation of the *Punishment of Tax Offences Act*

**DEFENDANT**  JS Chem Corporation (formerly: Ahae Co., Ltd.)

Address: 192 Wanjusandan5-ro, Bongdong-eup, Wanju-gun, Jeollabuk-do

CEO: KIM Yong-hyun

**PROSECUTOR**  JEONG Soon Shin (Indictment), LEE Tae-il (Trial)

**JUDGEMENT**  March 25, 2015

## DISPOSITION

Defendant shall be fined KRW 110,000,000.

Defendant shall be ordered to make provisional payment of above fine.

## REASONING

### FACTS OF CRIME

KIM Pil Bae was CEO of I-One-I Holdings Co., Ltd. ("I-One-I Holdings"), a holding company in the Semo Group ("Semo",) from about October 2007 to about March 2014. He also served as Vice President of I-One-I Holdings during the same period, having control over and giving directions to its affiliate companies. From about September 2000 to about March 2014, he served as CEO of Dapanda Co., Ltd. ("Dapanda"), one of the affiliates, and from about May 2005 to about March 2014, he served as CEO of Moonjin Media Co., Ltd. ("Moonjin Media"), another affiliate. LEE Gang-se was CEO of JS Chem Corporation ("JS

EX-YOO-S3-00013

Chem") from July 2, 2009 to May 29, 2012. LEE Gang-se was sentenced to two years of imprisonment and was granted a stay of execution for three years by the Incheon District Court on November 5, 2014, for his violation of the *Act on the Aggravated Punishment, Etc. of Specific Economic Crimes* (embezzlement) and his sentence was finalized on November 13, 2014. LEE Jae-yeong was CEO of JS Chem from May 29, 2012. LEE Jae-yeong was sentenced to two years of imprisonment and was granted a stay of execution for three years by the Incheon District Court on November 5, 2014, for violating the *Act on the Aggravated Punishment, Etc. of Specific Economic Crimes* (embezzlement) and his sentence was finalized on November 13, 2014. JS Chem is a company that manufactures and sells paint.

## 1. LEE Gang-se and KIM Pil Bae

### A. Submitting false tables of tax invoices

KIM Pil Bae and YOO Byung Eyn conspired to receive money from Semo Group affiliates so that YOO Byung Eyn could use the money for his personal use. KIM Pil Bae suggested LEE Gang-se, saying, "We can give some money to YOO Byung Eyn on the pretext of consultation fees." LEE Gang-se accepted this suggestion, and in or about January 2011, signed a contract appointing YOO Byung Eyn as a company advisor in order to provide him with KRW 15,000,000 every month, even though he knew that YOO Byung Eyn would not provide any advice for the company management on a regular basis or even on special occasions. After setting the grounds for providing money to YOO Byung Eyn, LEE Gang-se wired KRW 15,000,000 to YOO Byung Eyn's Woori Bank account every month, from the point of signing the contract to about May 2012, transferring KRW 240,000,000 in total to YOO Byung Eyn's account on 16 separate occasions.

In addition, on or about January 27, 2012, the defendants conspired with YOO Byung

Eyn again and submitted a table of tax invoices for 2011/2H, pretending as if they paid YOO Byung Eyn's company, called Vinous-throated Parrotbill, KRW 180,000,000 as consultation fees in 2011, even though they did not receive any regular or special advice from YOO Byung Eyn. Until around April 25, 2012, the defendants conspired with YOO Byung-eyn and submitted two false sum tables of tax invoices to the tax office, falsely claiming a total of KRW 225,000,000 as company expenditures as seen in the first and second item of the List of Crimes (7).

B. Tax evasion

As above, the defendants and YOO Byung Eyn conspired to produce false tables of tax invoices as if JS Chem received consulting services worth KRW 180,000,000 from YOO Byung Eyn's Vinous-throated Parrotbill in 2011, and submitted the false tables to the tax office. The defendants, then, under reported on the standard of assessment for the corporate taxes of JS Chem, and did not pay the under-reported taxes after passing a government audit until the tax payment deadline passed on or about April 3, 2012. The defendants, in this manner, evaded corporate taxes worth KRW 39,600,000 by fraud or other improper means, which can be seen in the first item of the List of Crimes (8).


## 2. LEE Jae-yeong, KIM Pil Bae

A. Submitting false tables of tax invoices

On or about May 31, 2012, in the company office, LEE Jae-yeong who had just taken office as CEO of JS Chem, maintained the aforementioned consulting services contract with YOO Byung Eyn (in the name of Vinous-throated Parrotbill, his business,) upon the request of YOO Byung Eyn and KIM Pil Bae as above, so that YOO Byung Eyn could continue to be paid. From the above time until March 31, 2014, LEE Jae-

yeong wired KRW 15,000,000 every month on the pretext of consultation fees to YOO Byung Eyn's Woori Bank account on 23 separate occasions (a total of KRW 345,000,000.)

In addition, on or about July 24, 2012, the defendants conspired with YOO Byung Eyn again and submitted a false table of tax invoices for 2011/1H, pretending as if they paid KRW 45,000,000 to YOO Byung Eyn's company called Vinous-throated Parrotbill for its consultation services in April, May and June 2012, even though they did not receive any regular or special advice from YOO Byung Eyn. From the above time until January 23, 2014, the defendants conspired with YOO Byung Eyn and submitted false tables of tax invoices to the tax office on seven occasions, falsely claiming a total of KRW 315,000,000 as company expenditures, which can be seen in the third to ninth item of the List of Crimes (7).

B. Tax evasion

As above, the defendants and YOO Byung Eyn conspired to produce false tables of tax invoices as if JS Chem received consulting services worth KRW 180,000,000 from YOO Byung Eyn's Vinous-throated Parrotbill in 2012, and they submitted the false tax forms to the tax office. The defendants, then, under reported on the standard of assessment of JS Chem's corporate taxes, and did not pay the under-reported taxes after passing a government audit until the tax payment deadline passed on or about April 2, 2013. From the above time until April 1, 2014, the defendants, in this manner, evaded corporate taxes worth KRW 72,000,000 by fraud or other improper means on two occasions, which can be seen in the second and third items of the List of Crimes (8).

3. **JS Chem Corporation**

At the above time and location as in the paragraphs 1 and 2, LEE Gang-se and LEE Jae-

yeong, CEOs of JS Chem, submitted false tables of tax invoices to the tax office, falsely claiming a total of KRW 540,000,000 as company expenditures, as described in the List of Crimes (7), and evaded corporate taxes of about KRW 111,600,000, as described in the List of Crimes (8).

## SUMMARY OF EVIDENCE

1. Each statement made by KIM Pil Bae, LEE Jae-yeong, LEE Gang-se and JS Chem Corporation to the court

1. Interrogation report on LEE Jae-yeong by the prosecution

1. A copy of interrogation report on LEE Gang-se and KIM Pil Bae by the prosecution

1. JO Seong-in's deposition made to the prosecution

1. Tax evasion report, consulting services agreement, board meeting minutes, remittance statement, sum tables of tax invoices

## APPLICABLE LAW

1. Applicable Law and Determination of Sentence

   Article 18, Article 10(3)3 of the *Punishment of Tax Offences Act* (submitting sum tables of tax invoices after entering them falsely)

   Article 18, full clause of Article 3(1) of the *Punishment of Tax Offences Act* (Tax Evasion)

2. Aggravated Sentencing for Concurrent Crimes

   First part of Article 37, Article 20 of the *Punishment of Tax Offences Act*

3. Order for Provisional Payment

   Article 334(1) of the *Criminal Procedure Act*

## SENTENCING REASONS

Defendants submitted false tax invoices to the tax office after sending YOO Byung Eyn money, pretending as if they paid YOO Byung Eyn for his consultation services, and evaded corporate taxes.   Their acts are considered to be serious in nature.

However, given that the defendants are repenting, that this case is only dealing with taxation as part of the embezzlement and breach of trust crimes of which codefendants KIM Pil Bae, LEE Gang-se and LEE Jae-yeong were already convicted, and that JS Chem is in the process of corporate rehabilitation and is paying taxes evaded following a deferred payment schedule, along with in consideration of their criminal intent, backgrounds and post-crime circumstances, the court shall adjudicate upon this case as seen above in the disposition.

Judge LEE Bong-rak          _____

## List of Crimes (7) - Ahae

| No. | Customer | Type | Taxation Period | Invoice (pg) | Value of Supply (KRW) | Tax Amount (KRW) | Submission Date |
|---|---|---|---|---|---|---|---|
| 1 | Vinous-throated Parrotbill | Purchase | Fixed 2011/2H | 3 | 180,000,000 | 18,000,000 | 2012.1.27. |
| 2 | Vinous-throated Parrotbill | Purchase | Scheduled 2012/1H | 3 | 45,000,000 | 4,500,000 | 2012.4.25. |
| 3 | Vinous-throated Parrotbill | Purchase | Fixed 2012/1H | 3 | 45,000,000 | 4,500,000 | 2012.7.24 |
| 4 | Vinous-throated Parrotbill | Purchase | Scheduled 2012/2H | 3 | 45,000,000 | 4,500,000 | 2012.10.24. |
| 5 | Vinous-throated Parrotbill | Purchase | Fixed 2012/2H | 3 | 45,000,000 | 4,500,000 | 2013.1.24. |
| 6 | Vinous-throated Parrotbill | Purchase | Scheduled 2013/1H | 3 | 45,000,000 | 4,500,000 | 2013.4.24. |
| 7 | Vinous-throated Parrotbill | Purchase | Fixed 2013/1H | 3 | 45,000,000 | 4,500,000 | 2013.7.25. |
| 8 | Vinous-throated Parrotbill | Purchase | Scheduled 2013/2H | 3 | 45,000,000 | 4,500,000 | 2013.10.23 |
| 9 | Vinous-throated Parrotbill | Purchase | Fixed 2013/2H | 3 | 45,000,000 | 4,500,000 | 2014.1.23 |
| total | | | | | 540,000,000 | | |

## List of Crimes (8) – Ahae

| No. | Taxation item | Taxation Period | Standard of assessment (KRW) | Amount of tax evaded (KRW) |
|---|---|---|---|---|
| 1 | Corporate tax | 2011 | 180,000,000 | 39,600,000 |
| 2 | Corporate tax | 2012 | 180,000,000 | 36,000,000 |
| 3 | Corporate tax | 2013 | 180,000,000 | 36,000,000 |
| Total | | | | 111,600,000 |

# SEOUL HIGH COURT

# 6TH CRIMINAL DEPARTMENT

# JUDGMENT

| | |
|---|---|
| **CASE** | 2015NO592  Violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (Embezzlement), Violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (Breach of Trust), Occupational Embezzlement, Occupational Breach of Trust |
| | 2015NO1112 (Joint)   Violation of the *Punishment of Tax Offences Act* |
| **DEFENDANTS** | KIM Pil Bae (380209-1063620), unemployed |
| | Address:   #1301-102 (Oksu-dong, Eoulim the River APT) 37-0 |
| | Dokseodang-ro 40-gil, Seongdong-gu, Seoul |
| | Registered domicile: 264 Haksan-ri, Oksan-myeon, Buyeo-gun, Chungcheongnam-do |
| **APPELLANT** | Defendant, Prosecutors |
| **PROSECUTORS** | PARK Gwang-hyeon, JEONG Soon Shin (Indictment), JANG In-ho (Trial) |
| **DEFENSE COUNSEL** | Attorney NAM Won-sang |
| | Lawfirm BAE, KIM and LEE LLC |
| | Attorney SONG Woo-cheol, GO Gyeong-nam, OH Myeong-eun |

EX-YOO-S3-00020

| | |
|---|---|
| **JUDGEMENT BY THE LOWER COURT** | Judgment 2014GOHAP907 by the Incheon District Court |
| | on January 29, 2015 |
| | Judgement 2014GODAN9347, 9348 (Joint), 9349 (Joint), |
| | 9350 (Joint) by the Incheon District Court on March 20, 2015 |
| **PRONOUNCEMENT OF JUDGMENT** | July 3, 2015 |

# DISPOSITION

The entire judgments made on the defendant by the lower courts shall be reversed.

Defendant shall be sentenced to imprisonment for four years.

# REASONING

## 1. Summary of Grounds for Appeal

The sentences imposed on the defendant by the first lower court (imprisonment for five years) and by the second lower court (imprisonment for one year and stay of execution for two years) are too heavy to be proper (claimed the defendant.) The sentence imposed on the defendant by the second lower court is too light to be proper (claimed the prosecutors.)

## 2. *Ex Officio* Judgment

The defendant was sentenced to imprisonment for five years in the first lower court and was sentenced to imprisonment for one year with a stay of execution for two years in the second lower

EX-YOO-S3-00021

court. The defendant appealed against the first and the second lower court's decision and the prosecutors appealed against the second lower court's decision. This court decided to review two appeals together on the grounds that charges reviewed by the first and the second lower courts are concurrent crimes defined in the first part of Article 37 of the *Criminal Act*, and that for such concurrent crimes, a single punishment shall be imposed in accordance with Article 38(1) of the *Criminal Act*. Hence, all of the lower court's decisions on the defendant shall be reversed.

## 3. Conclusion

As such, there are reasons to decide *ex officio* on the lower court's judgements against the defendant. Therefore, this court reverses all such judgements against the defendant in accordance with Article 364(2) of the *Criminal Procedure Act* and will adjudicate again as follows, dismissing claims concerning improper sentencing made by the defendant and the prosecutors.

## Facts of Crime and Summary of Evidence

Since the facts of crime and summary of evidence are the same as described in the lower court's judgments, this court quotes the lower court's judgments for the parts, pursuant to Article 369 of the *Criminal Procedure Act*.

## Applicable Law

1. Applicable Law and Determination of Sentence for Each Count

    O   Paying consultation fees to YOO Byung Eyn

EX-YOO-S3-00022

- From I-One-I Holdings Co., Ltd. ("I-One-I Holdings"): Article 356, Article 355(1) and Article 30 of the *Criminal Act* (applied inclusively, imprisonment for a limited term determined)

- From other victim companies: Article 3(1)2 of the *Act on the Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(1) and Article 30 of the *Criminal Act* (applied inclusively to each victim company)

O Paying trademark licensing fees to YOO Dae Kyoon: Article 3(1)2 of the *Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(1) and Article 30 of the *Criminal Act* (applied inclusively)

O Paying license transfer fees to YOO Byung Eyn: Article 356, Article 355(1) and Article 30 of the *Criminal Act* (imprisonment for a limited term determined)

O Paying design consultation fees to Moreal Design Inc.("Moreal Design"): Article 3(1)2 of the *Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(2) and Article 30 of the *Criminal Act* (applied inclusively)

O Having management consultation fees paid to I-One-I Holdings

- Having management consulting fees paid to I-One-I Holdings by Dapanda Co., Ltd. ("Dapanda") and Moonjin Media Co., Ltd. ("Moonjin Media"): Article 3(1)2 of the *Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(2) and Article 30 of the *Criminal Act* (applied inclusively to each victim company)

EX-YOO-S3-00023

- Having management consultation fees paid to I-One-I Holdings by other victim companies: Article 356, Article 355(2), Article 30 of the Criminal Act respectively (applied inclusively to each victim company, respectively imprisonment determined)

O Purchase of photographs from and investment into Hemato Centric Life Institute: Article 3(1)2 of the *Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(2) and Article 30 of the *Criminal Act* (applied inclusively to each victim company)

O Purchase of photographs from and investment into Chonhaiji Co., Ltd.("Chonhaiji")

- Dapanda's investment into Chonhaiji: Article 3(1)1 of the *Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(2) and Article 30 of the *Criminal Act* (applied inclusively, imprisonment for a limited term determined)

- Other victim companies' investment into Chonhaiji, Moonjin Media's purchase of photographs and investment in Chonhaiji: Article 3(1)2 of the *Aggravated Punishment, etc. of Specific Economic Crimes*, Article 356, Article 355(2) and Article 30 of the *Criminal Act* (applied inclusively to each victim company)

O Tax evasion: Article 10(3)3 of the *Punishment of Tax Offences Act*, Article 30 of the *Criminal Act* (submitting false tables of tax invoices), full clause of Article 3(1) of *Punishment of Tax Offences Act*, Article 30 of *the Criminal Act* (tax evasion), imprisonment for a limited term determined

1. Statutory Mitigation (mitigated by self-denunciation)

EX-YOO-S3-00024

Article 52(1), Article 55(1)3 of the *Criminal Act*

1. Aggravated Sentencing for Concurrent Crimes

The first half clause of Article 37, Article 38(1)2, and Article 50 of the *Criminal Act* [A maximum sentence will be imposed on Dapanda's investment into Chonhaiji—on the violation of the *Aggravated Punishment, etc. of Specific Economic Crimes* (breach of trust)—among other counts and the sentences will run concurrently.]

**Grounds for Sentencing**

A. YOO's family, including YOO Byung Eyn, YOO Hyuk Kee, YOO Dae Kyoon and YOO Chong Somena, in conspiracy with the defendant, BYEON Gi-chun and GO Chang-hwan, misappropriated company funds of Semo's affiliates in order to fund YOO Byung Eyn's photography projects, which were not proven to be commercially viable, or in order for the YOO's family to use the money for personal purposes on the pretext of advisory service fees, management consultation fees, trademark licensing fees and design consultation fees.

Even though he was responsible for managing company assets as CEO at Moonjin Media and Dapanda and also at I-One-I Holdings, holding company of the above affiliates, the defendant conspired with CEOs of the affiliates to commit the above crime. The total value of money that the defendant illegally misappropriated for YOO's photography projects

EX-YOO-S3-00025

amounts to KRW 33,249,479,325[1]. In addition, the defendant submitted to the tax office tables of tax invoices, as if he wired money to YOO Byung Eyn in return for YOO Byung Eyn's advisory services, and thus evaded corporate taxes.

As members of a limited company cannot be held liable for the company's debt or liabilities, CEO of such a limited company has an obligation to set aside capital in the case of debt or liabilities. Such obligations are not only important for the company itself, but also relate to the interest of society as a whole. Given that the defendant's crimes affected the victim companies' businesses, and that YOO's family took large amounts of pecuniary advantage, it is reasonable that the defendant faces severe punishment.

B. At the same time, however, the following circumstances favorable to the defendant shall be considered in deciding the sentence for the defendant's conviction.

The defendant is a retired teacher who worked for 35 years. He became CEO of I-One-I Holdings and other affiliates following orders from YOO Byung Eyn, who was the leader of the religieous organization[2] in which he believed. The defendant and other executives and

---

[1] In the third trial of this court, the defense counsel claimed that the defendant cannot be a co-principal of breach of trust. As for the facts of crime described in Counts A-1)-2, C-3, D-3 through D-7, the defense counsel claimed, the defendant's position cannot be seen as a trustee, and because he simply delivered YOO Byung Eyn's orders, he neither assisted nor actively engaged in committing breach of trust in this case. However, this claim was not made during the legitimate period for submission of the reasons of appeal. Furthermore, this court finds *ex officio* that the defendant engaged in the stage of conspiracy and committing the crime given that the defendant would have delivered YOO Byung Eyn's orders by convening meetings of affiliate CEOs or in other ways because he was CEO of I-One-I Holdings, the holding company that had control over its affiliates. Therefore, it cannot be deemed that the lower court's judgement has any mistake of facts or errors in law.

[2] The defendant believed in Evangelical Baptist Church established based on YOO Byung Eyn's father-in-law KWON Sin-chan's creed. As a successor of KWON Sin-chan, YOO Byung Eyn emphasized a sense of community and unity among believers and practice of religion in everyday life. He made a "Community of Companies" and recommended his followers to work for the companies.

- 7 -

EX-YOO-S3-00026

employees had an unusual relationship, bound by the same quasi-religion, different from most other company environments. The decision-making process was unusually opaque and believers tended to blindly follow the religious leader's decisions. Also, YOO's family, including YOO Dae Kyoon and YOO Hyuk Kee, owned most of the shares outstanding in I-One-I Holdings. Given the above circumstances, even though he was the company CEO, it would have been very difficult for the defendant to disobey YOO Byung Eyn, the religious leader, and his family[3].

All gains from this crime belonged to YOO's family and the defendant does not seem to have obtained any gains from these crimes. The defendant gave up 10,400 shares of Dapanda and LEE Sun-ja, his wife, gave up her 50,000 shares of Moonjin Media. As of March 17, 2014, the defendant had already resigned from the position of CEO of Dapanda, Moonjin Media, and I-One-I Holdings.

YOO Byung Eyn, the major culprit and the mastermind behind this case, died while at large and YOO Hyuk-kee, the operator of Ahae Press Inc. who enjoyed actual benefits from the embezzlement, has fled from the police investigation.

However, the defendant voluntarily returned to Korea on November 25, 2014, and was present at the investigation as his arrest warrant was issued and the investigation into YOO's

---

[3] On May 22, 2015, BYEON Gi-chun, Chonhaiji's CEO and GO Chang-hwan, Semo's CEO were sentenced to imprisonment for three years, two years and six months, respectively (2014NO3604, 2015NO1194 by Seoul High Court.) The defendant was the CEO of I-One-I Holdings and delivered YOO Byung Eyn's orders but doesn't seem to have had the authority to make his own decisions on "Community of Companies." Therefore, his charge is no different from that of BYEON Gi-chun and GO Chang-hwan.

EX-YOO-S3-00027

family began.   The defendant submitted a letter of self-denunciation, saying, "I am willing to tell everything about the case on which the prosecution has been suspended and accept any appropriate punishment."   The defendant responded to all questions by the investigative authority.   The defendant, thereafter, has shown repentance while in custody for several months.

Also, the companies that were victimized by the defendant's embezzlement and breach of trust, submitted a request to not punish the defendant.   Furthermore, the codefendants in the second lower court's judgement, Moonjin Media, I-One-I Holdings and Dapanda, have all paid their evaded taxes.

In addition, considering the fact that the defendant is a first-time offender, who is suffering from diabetes due to his old age, with other factors such as his personality and characters, environments, motive, means and methods of this crime and its post-crime circumstances, this court shall adjudicate upon this case in accordance with the disposition.

| | | |
|---|---|---|
| Presiding Judge | KIM Sang-hwan | _____ |
| Judge | KIM Seong-su | _____ |
| Judge | KIM Sang-woo | _____ |

EX-YOO-S3-00028

# SUPREME COURT
## 1ST DEPARTMENT
# JUDGMENT

| | |
|---|---|
| **CASE** | 2015DO11034 A. Violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (Embezzlement) |
| | B. Violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (Breach of Trust) |
| | C. Occupational Embezzlement |
| | D. Occupational Breach of Trust |
| | E. Violation of the *Punishment of Tax Offences Act* |
| **DEFENDANTS** | KIM Pil Bae (380209-1063620), unemployed |
| | Address: #1301/102 37, Dokseodang-ro, 40-gil, Seongdong-gu, Seoul (Oksu-dong, Eoulim the River APT) |
| | Registered Domicile: 264 Haksan-ri, Oksan-myeon, Buyeo-gun, Chungnam |
| **APPELANT** | Defendant |
| **DEFENSE COUNSEL** | CHOI Chung-man (Court-appointed) |
| **JUDGEMENT BY LOWER COURT** | Judgment 2015NO592, 1112 (Joint) made by Seoul High Court on July 3, 2015 |
| **DATE OF JUDGMENT** | October 15, 2015 |

## DISPOSITION

The appeal shall be dismissed.

EX-YOO-S3-00029

# REASONING

The grounds for appeal shall be examined as follows.

This court has reviewed the reasons of the judgment made by the lower court based on the evidence legitimately upheld by the lower courts, and considers that the lower court's decision of conviction on the following charges was proper: i) violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (embezzlement) agasint Ahae Co., Ltd. ("Ahae"); ii) occupational breach of trust at I-One-I Holdings Co., Ltd. against Chonhaiji Co., Ltd. ("Chonhaiji"), Ahae, Cheonghaejin Marine Co., Ltd. ("Cheonghaejin Marine"), Semo Co., Ltd. ("Semo"), Noreunja Shopping Co., Ltd. ("Noreunja Shopping") and Onzigoo Co., Ltd. ("Onzigoo") by receiving money on the pretext of management consultation fees; and iii) violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (breach of trust) against Ahae, Semo, Chonhaiji, Cheonghaejin Marine and Onzigoo concerning purchases of YOO Byeong Eyn's photographs.

In addition, the lower court did not make any judgment out of judicial discretion by disregarding its duty to examine sufficiently or violating the principles of logic and experience, nor did it make any errors in law regarding the violation of the *Act on the Aggravated Punishment etc. of Specific Economic Crimes* (embezzlement and occupational breach of trust) and law on co-principals.

Also, the defense counsel's claim that the lower court's judgement breached the balance between crime and punishment as well as principle of liability due to lack of review on sentencing factors and intrinsic limitations of sentencing discretion is, after all, a claim of improper sentencing.   However, according to Article 383(4) of the *Criminal Procedure Act*, an appeal is only allowed in cases involving death penalty or imprisonment, with or without

labor, for an indefinite term or for not less than ten years.    Given that the punishment in this case is far lighter than that in the above cases, a claim of improper sentencing cannot be legitimate grounds for appeal.

Therefore, the appeal shall be dismissed, and this court shall adjudicate upon this case with a consensus from all the involved justices in accordance with the disposition.


Presiding Judge        Justice      LEE Ki-taek        _____

                       Justice      LEE In-bok         _____

Chief Judge            Justice    GO Young-han         _____

EX-YOO-S3-00031



**Ministry of Justice**
**Republic of Korea**

미합중국 법무부장관 귀하


## 유혁기에 대한 범죄인인도청구 추가서류


대한민국 법무부장관 본인 박상기는,

1. 대한민국을 대표하여 대한민국정부와 미합중국정부간 범죄인인도조약에 따라, 횡령 등 혐의의 유혁기가 대한민국의 법률에 의하여 처리될 수 있도록 대한민국에 인도하여 줄 것을 청구합니다.

2. 범죄인 유혁기에 대한 범죄인인도청구를 위한 추가서류로서 본 문서를 봉인한 후 서명하고 대한민국 법무부장관의 관인을 날인함으로써 대한민국정부에 의하여 인증된 서류임을 확인합니다.


대한민국 서울

2017년 7월 31일

대한민국 법무부장관 ~~박상기~~

대리 국제형사과장 이창수

# 추 가 확 인 서

대한민국 인천지방검찰청 검사인 본인 김형근은 대한민국과 미합중국간에 1999. 12. 20. 발효된 범죄인인도조약에 의거한 도피 범죄인 유혁기에 대한 범죄인인도요청과 관련하여 미합중국의 추가 확인 요청에 대하여 아래 사항을 확인함

## 1. 확인자 자격

1.1. 본인은 대한민국 법무부 산하 인천지방검찰청 검사임. 본인은 1997년 국가 사법 시험을 합격하고, 대법원 산하 사법연수원에 입소하여 2년간 훈련을 받았으며, 2000년 사법연수원의 수료와 동시에 대한민국에서 판사, 검사 또는 변호사로 활동할 수 있는 자격을 취득하였음. 2002년 2월부터 대한민국 대통령에 의하여 검사로 임용되어 근무하고 있음. 본인의 훈련과 경험 그리고 직책에 근거하여, 본인은 대한민국의 형사법과 형사절차에 익숙함. 본인은 2015. 4. 피의자에 대한 범죄인인도요청 당시 이 사건의 담당 검사인 정순신의 승계검사로서 현재 이 사건을 담당하고 있으며, 이 사건 기록에 있는 피해자 및 관련자들의 진술, 수사관의 수사보고서 및 증거물 등을 모두 검토하여 이 사건의 진상에 대하여 잘 알고 있음.

1.2. 대한민국법상 검사는 수사를 주관하는 자로서 경찰의 도움 없이 독자적으로 범죄사건을 수사할 수도 있고, 경찰을 지휘하여 수사를 할 수도 있음. 수사가 종결되면 검사는 사건의 기소여부를 독점적으로 결정하고, 기소 후에는 공소 유지를 담당하며, 마지막으로 확정된 판결을 집행함. 기소독점주의 원칙상 검사가 기소한 사건에 대해서만 법원이 재판절차를 진행할 수 있음. 본 사건은 피의자의 진술과 무관하게 기소할 수 있을 만큼 충분하고 확실한 증거를 이미 확보하고 있음. 다만 대한민국의 수사, 기소 관행에 의하면 피의자가 도주 중에는 기소하지 않으므로 그를 송환받아 기소하기 위하여 2015. 4. 당시 이 사건의 수사검사인 정순신이 피의자에 대한 범죄인인도요청을 하였고, 이에 관한 미합중국의 추가 확인 요청이 있어 이 사건의 승계검사로서 아래와 같이 확인함.

EX-YOO-S3-00033

## 2. 횡령 범죄사실의 특정

2.1. 최초 확인서 4.1.1.은 범죄사실에 대한 전제사실로서 유혁기의 신분, 유혁기의 횡령 범행 방법을 설명한 것이고 4.1.2.내지 4.1.8.에 기재된 범죄사실이 구체적인 범죄사실임. 따라서 피의자를 송환하여 기소할 횡령의 범죄사실을 구체적으로 특정하면 기존 확인서의 4.1.2내지 4.1.8.과 같음.

2.2. 구체적으로 정리하면 다음 2.2.1.내지 2.2.7.과 같음

2.2.1. 유혁기는 (주)아이원아이홀딩스의 지분 19.44%을 보유하면서, 위 회사를 통해 그 계열사인 (주)트라이곤코리아, (주)국제영상, (주)다판다, (주)온지구, (주)아해, (주)문진미디어, (주)천해지, (주)청해진해운, (주)세모, (주)클리앙, (주)새무리, (주)호진기업, (주)소쿠리상사 등을 경영하는 자로서, (주)세모 대표이사 고창환과 공모하여, 2010. 3.경 인천 부평구 십정동 558-10, 565-3에 있는 '세모' 사무실에서, 당시 피해회사가 리스크 관리 등 경영자문을 상시적으로 받아야 할 필요가 없었고, 유혁기가 운영하는 키솔루션이 (주)세모에 실질적인 도움이 될 수 있는 경영자문을 할 능력이 없었으며, 실제로 별다른 경영자문을 한 사실이 없음에도 불구하고, 피해회사로부터 매달 25,000,000원을 지급받는 내용의 '경영자문용역계약'을 체결하고, 그 무렵 자문료 명목으로 25,000,000원을 유혁기 명의 우리은행 계좌로 지급 받는 것을 비롯하여, 그때부터 2014. 3.경까지 매달 25,000,000원씩을 지급받아 (주)세모 소유의 돈 합계 1,225,000,000원을 횡령하였음

2.2.2. 유혁기는 (주)모래알디자인 소유의 돈을 업무상 보관하는 위 회사 대표이사 유섬나와 공모하여, 2010. 4.경 서울 강남구 삼성동 4-4에 있는 '모래알디자인' 사무실에서, 당시 피해회사가 리스크 관리 등 경영자문을 상시적으로 받아야 할 필요가 없었고, 피의자가 운영하는 키솔루션은 피해회사에 실질적인 도움이 될 수 있는 경영자문을 할 능력이 없었으며, 피의자가 '모래알디자인'에 경영자문을 한 사실이 없음에도 '경영자문료' 명목으로 30,000,000원을 받은 것을 비롯하여 2013. 12.경까지 '경영자문료' 명목으로 매달 20,000,000원 또는 30,000,000원씩 지급받는 방법으로 피해회사 소유의

EX-YOO-S3-00034

돈 합계 990,000,000원을 지급받아 이를 횡령하였음

2.2.3. 유혁기는 (주)아해의 돈을 업무상 보관하는 위 회사 대표이사 이재영과 공모하여, 2009. 1.경 '아해' 사무실에서, 약 10년전부터 피해회사가 사용해오던 '아해'라는 상호에 대하여 상표등록한 후 피해회사 월 매출액의 월 매출액의 0.8%~1.6%를 상표권 사용료로 받는 계약서를 작성한 후 그 무렵 9,499,200원을 지급받은 것을 비롯하여 2013. 12.경까지 (주)아해로부터 같은 명목으로 합계 5,346,311,045원을 지급받아 이를 횡령하였음

2.2.4. 유혁기는 (주)온나라쇼핑 소유의 자금을 업무상 보관하는 위 회사 대표이사 변기춘과 공모하여, 2009. 1.경 '온나라쇼핑' 사무실에서, 피해회사를 설립하고 그 상호를 정함에 있어, 피의자가 상표 등록한 '온나라쇼핑'라는 호칭에 아무런 브랜드가치도 없고, 상표등록에 소요되는 비용은 약 300,000원에 불과하며, 얼마든지 다른 상호로 대체가능한 상호임에도 불구하고, 피의자는 변기춘과 '전용사용권 설정 계약'을 체결하고, 그 무렵 8,514,430원을 지급받은 것을 비롯하여 2011. 12.경까지 합계 328,436,704원을 지급받아 이를 횡령하였음

2.2.5. 유혁기는 (주)천해지 소유의 돈을 업무상 보관하는 위 회사 대표이사 변기춘과 공모하여, 2008. 1.경 '천해지' 사무실에서, 피해회사를 설립하고 그 상호를 정함에 있어, 피의자가 상표 등록한 '천해지'라는 호칭에 아무런 브랜드가치도 없고, 상표등록에 소요되는 비용은 약 300,000원에 불과하며, 얼마든지 다른 상호로 대체가능한 상호임에도 불구하고, 위 상표사용에 대한 대가로 '천해지' 매출의 1.0 ~1.5%를 받는 내용의 계약을 체결한 후, 그 무렵 피해회사로부터 18,898,710원을 지급받은 것을 비롯하여 2010. 6.경까지 합계 1,235,426,771원을 지급받아 이를 횡령하였음

2.2.6. 유혁기는 변기춘과 공모하여, 2011. 2.경 (주)천해지 사무실에서 회사의 경영과 관련하여 특별한 역할을 수행하지 않으면서 그 무렵 피해회사로부터 고문료 명목으로 20,000,000원을 지급받은 것을 비롯하여 2011. 11.경까지 매달 20,000,000원씩 합계 200,000,000원을 지급 받아 이를 횡령하였음

2.2.7. 유혁기는 아버지인 유병언이 촬영한 사진을 베르사이유 궁전에서 전시하

EX-YOO-S3-00035

기 위해 필요한 비용 등 거액의 돈이 필요해지자 (주)천해지 회사 자금을 인출하기로 마음먹고, (주)천해지 대표이사인 변기춘과 공모하여 2013. 3. 경 '천해지' 사무실에서, 유병언 회장의 사진 작품이 교회 신도들 및 계열사 외에 경매 시장에서 매매가 이루어진 적이 없어 시장 가격을 정할 수 없을 정도로 사진 가치가 그다지 높지 않음에도 불구하고, 마치 유병언 회장의 사진을 고가에 구입하기로 계약한 후 선급금을 미리 지급하는 것처럼 형식을 취해 피해 회사로부터 피의자가 대표로 있는 미국 법인 AHAE PRESS INC로 1,656,598,080원을 지급받은 것을 비롯하여 2013. 12.경까지 합계 19,862,077,987원을 지급받아 이를 횡령하였음

2.3 위 2.2.에서 특정한 범행의 피해자는 각 항목별로 모두 다름. 2.2.1. 범행의 피해자는 (주)세모, 2.2.2. 범행의 피해자는 (주)모래알디자인, 2.2.3. 범행의 피해자는 (주)아해, 2.2.4. 범행의 피해자는 (주)온나라쇼핑, 2.2.5.부터 2.2.7 범행의 피해자는 (주)천해지임. 대한민국 판례는 '단일한 범의를 가지고 동일한 방법에 의하여 여러 차례에 걸쳐서 횡령 범행을 한 경우에 피해자별로 1개의 횡령죄가 된다'는 입장임. 따라서 일단 피해자가 다른 범행의 경우에는 1죄가 아닌 경합범(별죄)이고, 피해자가 동일하다고 하더라도 범행의 방식이 다르면 1죄가 아닌 경합범(별죄)임. 때문에 2.2.1.부터 2.2.7.까지 위 범행은 각 항목 안에서는 1죄(단일한 범의, 동일한 방법, 동일한 피해자)를 구성하고, 각 항목간에는 경합범의 관계임(다른 피해자, 다른 범행 방식). 즉 유혁기의 횡령 범행의 죄수는 총 7개임.

2.4. 대한민국 형사소송법에서는 '피의자가 죄를 범하였다고 의심할 만한 상당한 이유'가 있을 때에만 법원에서 체포영장을 발부함. 대한민국 법원에서는 유혁기에 대한 위 횡령 범죄사실이 충분히 특정되고 의심할만한 상당한 이유가 소명되었다고 판단하여 유혁기에 대한 체포영장을 발부한 것임. 그러함에도 불구하고 특정이 안 되었다고 판단되는 부분이 있으면 구체적으로 그 부분을 적시하여 주면 추가 특정을 하도록 하겠음

# 3. 조세포탈 부분에 대한 추가 증거

EX-YOO-S3-00036

3.1. 유혁기에 대한 조세포탈 범행의 공범으로는 김필배, 이강세가 있음. 유혁기가 현재 소재불명이므로 유혁기에 대해서는 기소중지 처분이 내려졌고, 공범인 김필배, 이강세에 대해서는 주범인 유혁기의 조사가 마쳐져야만 같이 처벌할 수 있어서 참고인중지 처분이 내려진 상태임. 대한민국에서는 공범 중 1인의 도피로 그의 진술을 들을 수 없어 나머지 공범에 대한 범죄혐의 인정 여부에 판단이 어려운 경우, 도피한 공범의 검거시까지 도피한 공범의 소재불명을 이유로 나머지 공범에 대하여 중간처분인 참고인중지 처분을 하여 수사를 일시 중단할 수 있음.

3.2. 그런데 김필배, 이강세는 이미 별도의 조세포탈 범행으로 처벌받은 사실이 있고, 처벌받은 조세포탈의 범죄 구조가 유혁기와 공모한 이 사건 조세포탈의 범죄구조와 유사함

3.3. 김필배, 이강세가 유죄의 확정판결을 받은 조세포탈의 범죄사실은 '유병언(유혁기의 아버지)에게 용역비를 지급한 것처럼 거짓으로 기재한 세금계산서 합계표를 세무서에 제출하는 방식으로 법인세 39,600,000원을 포탈하였다'는 것이므로, 김필배, 이강세가 유혁기 일가를 위하여 허위의 서류를 제출하여 세금포탈을 한 사실 자체는 대한민국 법원에 의하여 이미 확인되었음.

3.4. 한편 김필배에 대한 조세범처벌법위반 등 2심 판결문에서 법원은 '김필배의 범행이 유혁기 등 유병언 일가가 공모한 범행으로, 유혁기 등 유병언 일가가 거액의 부당한 이득을 취한 범행'이라고 판시한 바 있음(서울고등법원 2015. 7. 3. 선고 2015노592, 2015노1112 판결문). 결국 김필배, 이강세는 유병언 일가를 위하여 허위의 세금계산서 등을 제출하는 방식으로 조세를 포탈하였고, 유혁기와 공모한 김필배, 이강세의 조세포탈 범행도 김필배, 이강세가 이미 처벌받은 조세범처벌법위반 사건과 연결되는 일련의 범행임.

3.5. 대한민국 법원에서는 전회 확인서에서 설시한 공범들의 진술 등에 의하여 이 부분 범죄사실도 충분히 소명되었다고 보아 유혁기에 대하여 특정범죄가중처벌등에관한법률위반(조세) 혐의로 체포영장이 발부되어 있음. 또한 공범들 중 김필배, 이강세는 이미 유혁기 일가와 공모하여 별건의 조세범처벌법

EX-YOO-S3-00037

위반죄로 처벌받은 사실도 있어서 공범들의 진술은 충분히 신빙성이 있음.

3.6. 대한민국법과 미국법의 체계, 입증의 정도 등에 대한 차이점이 있을 수 있어 미국법상 어느 부분에 대한 입증이 부족한지에 대해 자세히 적시하여 주면 그에 대해 확인서 작성 및 소명자료 제출 부분에 대해 다시 검토할 예정임.

　　본인은 위 기재한 사실이 모두 진실임을 확인하며, 고의로 허위 사실을 기재하였을 경우 대한민국 형법 제227조에 따라 허위공문서작성죄로 처벌 받을 수 있다는 사실을 인식하면서 본 확인서를 작성하였음.

2016.　11.　18.

인 천 지 방 검 찰 청　검 사　김 형 근

첨부 1.　김필배, 이강세에 대한 조세범처벌법위반 사건 1, 2, 3심 판결문 각 1부. 끝.

EX-YOO-S3-00038

# 인 천 지 방 법 원

## 판 결

| | |
|---|---|
| 사 건 | 2014고단9347, 9348(병합), 9349(병합), 9350(병합) 조세범처벌 |
| | 법위반 |
| 피 고 인 | 주식회사 정석케미칼(변경 전 상호 : 주식회사 아해) |
| | 소재지  전북 완주군 봉동읍 완주산단5로 192 |
| | 대표자 관리인  김용현 |
| 검 사 | 정순신(기소), 이태일(공판) |
| 판 결 선 고 | 2015. 3. 25. |

## 주 문

피고인을 벌금 110,000,000원에 처한다.

위 벌금에 상당한 금액의 가납을 명한다.

## 이 유

**범 죄 사 실**

피고인 김필배는 2007. 10.경부터 2014. 3.경까지 세모 그룹 지주회사인 주식회사 아이원아이홀딩스 대표이사로 재직하면서 위 그룹 계열사에 대한 영향력을 이용하여 계열사의 업무집행을 지시, 총괄하던 부회장이자 2000. 9.경부터 2014. 3.경까지 위 계열사 중 하나인 주식회사 다판다의 대표이사로, 2005. 5.경부터 2014. 3.경까지 위 계열

- 1 -

EX-YOO-S3-00039

사 중 하나인 주식회사 문진미디어의 대표이사로 각 재직하던 사람이고, 피고인 이강세는 2014. 11. 5. 인천지방법원에서 특정경제범죄가중처벌등에관한법률위반(횡령)죄 등으로 징역 2년에 집행유예 3년을 선고받아 같은 달 13. 위 판결이 확정되었고 2009. 7. 2.경부터 2012. 5. 29.경까지 주식회사 정석케미칼의 대표이사로 재직하던 사람이고, 피고인 이재영은 2014. 11. 5. 인천지방법원에서 특정경제범죄가중처벌등에관한법률위반(횡령)죄 등으로 징역 2년에 집행유예 3년을 선고받아 같은 달 13. 위 판결이 확정되었고 2012. 5. 29.경부터 주식회사 정석케미칼의 대표이사로 재직하던 사람이고, 주식회사 정석케미칼은 도료제조·판매업 등을 목적으로 설립된 법인이다.

1. 피고인 이강세, 김필배

가. 허위 세금계산서합계표 제출

피고인 김필배와 유병언은 계열사들로부터 매달 일정한 금액을 받아 유병언이 개인적으로 사용하기로 하고, 피고인 김필배는 유병언과 공모한 바에 따라 피고인 이강세에게 "회사 원로인 유병언 회장에게 고문료 명목으로 돈을 좀 챙겨 드리자."라고 제안하였고, 피고인 이강세는 그에 따라 2011. 1.경 위 주식회사 정석케미칼 사무실에서, 유병언이 위 회사의 경영과 관련하여 상시적이고 특별한 자문을 해주지 않을 것을 알면서도, 유병언에게 위 회사의 자금을 지원하기 위해 유병언에게 매달 15,000,000원을 지급하는 내용의 '고문위촉계약'을 체결하여 자금인출의 근거를 만든 후, 그 무렵 매월 고문료 명목의 15,000,000원을 유병언 명의 우리은행 계좌로 송금한 것을 비롯하여 그 때부터 2012. 5.경까지 총 16회에 걸쳐 합계 240,000,000원을 송금하였다.

그에 따라 피고인들은 유병언과 순차 공모하여 2012. 1. 27.경 사실은 유병언으로부터 위 회사의 경영과 관련하여 상시적이고 특별한 자문을 받은 것이 없음에도 불구하

EX-YOO-S3-00040

고, 2011년에 마치 회사 고문인 유병언의 개인사업체 '붉은머리오목눈이'로부터 공급가액 합계 180,000,000원의 자문 용역을 공급받은 것처럼 거짓으로 기재한 2011년 2기 확정 세금계산서합계표를 세무서에 제출한 것을 비롯하여 그때부터 2012. 4. 25.경까지 범죄일람표(7)의 1, 2항 기재와 같이 총 2회에 걸쳐 유병언과 순차 공모하여 공급가액 합계 225,000,000원 상당의 허위 세금계산서합계표를 세무서에 각 제출하였다.

나. 조세포탈

피고인들은 유병언과 순차 공모하여 위와 같이 2011년에 마치 주식회사 정석케미칼이 회사 고문인 유병언의 개인사업체 '붉은머리오목눈이'로부터 공급가액 합계 180,000,000원의 자문 용역을 공급받아 그 용역비를 지급한 것처럼 거짓으로 기재한 세금계산서합계표를 세무서에 제출한 후 위 회사의 법인세 과세표준을 신고할 때 과소신고하고 그대로 정부의 조사결정을 거쳐 2012. 4. 3.경 위 세목의 납부기한을 경과함으로써 사기나 그 밖의 부정한 행위로써 범죄일람표(8)의 1항 기재와 같이 법인세 39,600,000원을 포탈하였다.

2. 피고인 이재영, 김필배

가. 허위세금계산서합계표 제출

피고인 이재영은 주식회사 정석케미칼 대표이사로 취임한 후인 2012. 5. 31.경 위 회사 사무실에서, 위와 같은 유병언, 김필배의 요구에 따라 당시 유병언이 위 회사의 경영과 관련하여 상시적이고 특별한 자문을 해주고 있지 아니함에도 유병언에게 자금을 지원하기 위해 형식적으로 체결해두었던 유병언('붉은머리오목눈이'로 개인사업자등록)과의 계약을 유지하여 자금인출의 근거를 만든 후, 그 무렵 매월 고문료 명목의 15,000,000원을 유병언 명의 우리은행 계좌로 송금한 것을 비롯하여 그때부터 2014. 3.

EX-YOO-S3-00041

31.경까지 총 23회에 걸쳐 합계 345,000,000원을 송금하였다.

그에 따라 피고인들은 위 유병언과 순차 공모하여 2012. 7. 24.경 사실은 유병언으로부터 위 회사의 경영과 관련하여 상시적이고 특별한 자문을 받은 것이 없음에도 불구하고, 2012년 4, 5, 6월에 마치 회사 고문인 유병언의 개인사업체 '붉은머리오목눈이'로부터 공급가액 합계 45,000,000원의 자문 용역을 공급받은 것처럼 거짓으로 기재한 2012년 1기 확정 세금계산서합계표를 세무서에 제출한 것을 비롯하여 그때부터 2014. 1. 23.경까지 범죄일람표(7) 3~9항 기재와 같이 총 7회에 걸쳐 위 유병언과 순차 공모하여 공급가액 합계 315,000,000원 상당의 허위 세금계산서합계표를 세무서에 각 제출하였다.

나. 조세포탈

피고인들은 위 유병언과 순차 공모하여 위와 같이 2012년에 마치 주식회사 정석케미칼이 회사 고문인 유병언의 개인사업체 '붉은머리오목눈이'로부터 공급가액 합계 180,000,000원의 자문 용역을 공급받아 그 용역비를 지급한 것처럼 거짓으로 기재한 세금계산서합계표를 세무서에 제출한 후 위 회사의 법인세 과세표준을 신고할 때 과소신고하고 그대로 정부의 조사결정을 거쳐 2013. 4. 2.경 위 세목의 납부기한을 경과함으로써 사기나 그 밖의 부정한 행위로써 법인세 36,000,000원을 포탈한 것을 비롯하여 그때부터 2014. 4. 1.경까지 별지 범죄일람표(8) 2, 3항 기재와 같이 2회에 걸쳐 위 유병언과 순차 공모하여 사기나 그 밖의 부정한 행위로써 법인세 합계 72,000,000원을 각 포탈하였다.

3. 피고인 주식회사 정석케미칼

피고인은 제1, 2항과 같은 일시, 장소에서 피고인의 대표이사인 위 이강세, 이재영이

EX-YOO-S3-00042

피고인의 업무에 관하여 위와 같은 방법으로 범죄일람표(7) 기재와 같이 공급가액 합계 540,000,000원 상당의 허위 세금계산서합계표를 세무서에 각 제출하고, 범죄일람표 (8) 기재와 같이 법인세 합계 111,600,000원을 각 포탈하였다.

## 증거의 요지

1. 피고인 김필배, 이재영, 이강세, 주식회사 정석케미칼의 각 법정진술

1. 피고인 이재영에 대한 검찰 피의자신문조서

1. 피고인 이강세, 김필배에 대한 검찰 피의자신문조서 사본

1. 조성인에 대한 검찰 진술조서

1. 고발서, 고문위촉계약서, 이사회 의사록, 이체확인증, 매입처별 세금계산서 합계표

## 법령의 적용

1. 범죄사실에 대한 해당법조

　　각 조세범 처벌법 제18조, 제10조 제3항 제3호(허위 세금계산서합계표 제출의 점), 조세범 처벌법 제18조, 제3조 제1항 본문(조세포탈의 점)

1. 경합범가중

　　형법 제37조 전단, 조세범 처벌법 제20조

1. 가납명령

　　형사소송법 제334조 제1항

## 양형의 이유

　이 사건 범행은 유병언에게 고문료 명목으로 금원을 송금한 후 자문용역을 공급받은 것처럼 허위 세금계산서 합계표를 세무서에 제출하고, 법인세를 포탈한 것으로 그 죄질이 좋지 못하다.

EX-YOO-S3-00043

다만 피고인이 이 사건 범죄를 인정하고 반성하고 있는 점, 이 사건은 김필배, 이강세, 이재영이 형사처분을 받은 횡령죄 또는 배임죄의 세금 부분인 점, 피고인은 회생절차 중으로 국세청으로부터 징수유예처분을 받아 포탈세액을 납입하고 있는 점, 그 밖에 이 사건 범행에 이르게 된 동기와 경위, 범행 후의 정황 등을 고려하여 주문과 같이 형을 정한다.


　　　　　　　　　　판사　　　　이봉락　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿

EX-YOO-S3-00044

## 범죄일람표(7) - 아해

| 연번 | 거래처명 | 구분 | 과세기간 | 계산서(장) | 공급가액(원) | 세액(원) | 합계표 제출일 |
|---|---|---|---|---|---|---|---|
| 1 | 붉은머리오목눈이 | 매입 | 11년2기 확정 | 3 | 180,000,000 | 18,000,000 | 2012. 1. 27. |
| 2 | 붉은머리오목눈이 | 매입 | 12년1기 예정 | 3 | 45,000,000 | 4,500,000 | 2012. 4. 25. |
| 3 | 붉은머리오목눈이 | 매입 | 12년1기 확정 | 3 | 45,000,000 | 4,500,000 | 2012. 7. 24. |
| 4 | 붉은머리오목눈이 | 매입 | 12년2기 예정 | 3 | 45,000,000 | 4,500,000 | 2012. 10. 24. |
| 5 | 붉은머리오목눈이 | 매입 | 12년2기 확정 | 3 | 45,000,000 | 4,500,000 | 2013. 1. 24. |
| 6 | 붉은머리오목눈이 | 매입 | 13년1기 예정 | 3 | 45,000,000 | 4,500,000 | 2013. 4. 24. |
| 7 | 붉은머리오목눈이 | 매입 | 13년1기 확정 | 3 | 45,000,000 | 4,500,000 | 2013. 7. 25. |
| 8 | 붉은머리오목눈이 | 매입 | 13년2기 예정 | 3 | 45,000,000 | 4,500,000 | 2013. 10. 23. |
| 9 | 붉은머리오목눈이 | 매입 | 13년2기 확정 | 3 | 45,000,000 | 4,500,000 | 2014. 1. 23. |
| 총 합계 | | | | | 540,000,000 | | |

EX-YOO-S3-00045

### 범죄일람표 (8) - 아해

| 연번 | 세목 | 과세기간 | 과세표준(원) | 포탈세액(원) |
|------|------|----------|--------------|--------------|
| 1 | 법인세 | 2011년 귀속 | 180,000,000 | 39,600,000 |
| 2 | 법인세 | 2012년 귀속 | 180,000,000 | 36,000,000 |
| 3 | 법인세 | 2013년 귀속 | 180,000,000 | 36,000,000 |
| 총 합계 | | | | 111,600,000 |

EX-YOO-S3-00046

# 서 울 고 등 법 원

## 제 6 형 사 부

## 판         결

| | |
|---|---|
| 사         건 | 2015노592 특정경제범죄가중처벌등에관한법률위반(횡령), 특정경제범죄가중처벌등에관한법률위반(배임), 업무상횡령, 업무상배임 |
| | 2015노1112(병합) 조세범처벌법위반 |
| 피 고 인 | 김필배 (380209-1063620), 무직 |
| | 주거  서울 성동구 독서당로40길 37-0 102동 1301호(옥수동, 어울림더리버아파트) |
| | 등록기준지  충남 부여군 옥산면 학산리 264 |
| 항 소 인 | 피고인, 검사 |
| 검         사 | 박광현, 정순신(기소), 장인호(공판) |
| 변 호 인 | 변호사 남원상 |
| | 법무법인(유) 태평양 |
| | 담당 변호사 송우철, 고경남, 오명은 |
| 원 심 판 결 | 1. 인천지방법원 2015. 1. 29. 선고 2014고합907 판결 |
| | 2. 인천지방법원 2015. 3. 20. 선고 2014고단9347, 9348(병합), 9349(병합), 9350(병합) 판결 |
| 판 결 선 고 | 2015. 7. 3. |

EX-YOO-S3-00047

## 주        문

원심판결들 중 피고인에 대한 부분을 모두 파기한다.

피고인을 징역 4년에 처한다.


## 이        유

### 1. 항소이유의 요지

피고인에 대하여 제1 원심이 선고한 형(징역 5년)과 제2 원심이 선고한 형(징역 1년에 집행유예 2년)은 너무 무거워서 부당하다(피고인). 반대로 제2 원심이 선고한 형은 너무 가벼워서 부당하다(검사).

### 2. 직권판단

제1, 2 원심법원이 피고인에 대하여 각각 따로 심리를 마친 후, 제1 원심판결로 징역 5년의 형을, 제2 원심판결로 징역 1년에 집행유예 2년의 형을 각 선고하였고, 피고인은 제1, 2 원심판결에 대하여, 검사는 제2 원심판결에 대하여 각 항소를 제기하였으며, 당심법원은 위 두 항소사건을 병합하여 심리하기로 결정하였는바, 피고인에 대한 제1, 2 원심의 각 죄는 형법 제37조 전단의 경합범 관계에 있어 형법 제38조 제1항에 의하여 경합범 가중을 한 형기 내에서 단일한 선고형으로 처단하여야 할 것이므로, 원심판결들 중 피고인에 대한 부분은 모두 파기를 면할 수 없게 되었다.

### 3. 결론

그렇다면 원심판결들 중 피고인에 대한 부분에는 위와 같은 직권파기사유가 있으므로, 피고인과 검사의 각 양형부당 주장에 관한 판단을 생략한 채, 형사소송법 제364조

EX-YOO-S3-00048

제2항에 의하여 원심판결들 중 피고인에 대한 부분을 모두 파기하고 변론을 거쳐 다시 다음과 같이 판결한다.

## 범죄사실 및 증거의 요지

이 법원이 설시할 범죄사실과 이에 대한 증거의 요지는 원심판결들 각 해당란의 기재와 같으므로, 형사소송법 제369조에 의하여 이를 그대로 인용한다.

## 법령의 적용

1. 범죄사실에 대한 해당법조 및 형의 선택

   ○ 유병언에 대한 고문료 지급의 점

      – 아이원아이홀딩스로부터 유병언에 대한 고문료 지급의 점 : 형법 제356조, 제355조 제1항, 제30조(포괄하여, 징역형 선택)

      – 나머지 각 피해회사들로부터 유병언에 대한 고문료 지급의 점 : 각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제356조, 제355조 제1항, 제30조(피해회사 별로 포괄하여)

   ○ 유대균에 대한 상표사용료 지급의 점 : 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제356조, 제355조 제1항, 제30조(포괄하여)

   ○ 유병언에 대한 상표권 양수대금 지급의 점 : 형법 제356조, 제355조 제1항, 제30조(징역형 선택)

   ○ 모래알디자인에 대한 디자인컨설팅비 지급의 점 : 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제356조, 제355조 제2항, 제30조(포괄하여)

   ○ 아이원아이홀딩스 경영자문료 수수의 점

      – 다판다, 문진미디어로부터 아이원아이홀딩스 경영자문료 수수의 점 : 각 특정

EX-YOO-S3-00049

경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제356조, 제355조 제2항, 제30조(피해회사 별로 포괄하여)

- 나머지 각 피해회사들로부터 아이원아이홀딩스 경영자문료 수수의 점 : 각 형법 제356조, 제355조 제2항, 제30조(피해회사 별로 포괄하여, 각 징역형 선택)

○ 헤마토센트릭라이프연구소에 대한 사진구입 및 출자의 점 : 각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제356조, 제355조 제2항, 제30조(피해회사 별로 포괄하여)

○ 천해지에 대한 출자 및 사진구입의 점

- 다판다의 천해지에 대한 출자의 점 : 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제1호, 형법 제356조, 제355조 제2항, 제30조(포괄하여, 유기징역형 선택)

- 나머지 피해회사들의 천해지에 대한 출자의 점, 문진미디어의 천해지에 대한 사진구입 및 출자의 점 : 각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제356조, 제355조 제2항, 제30조(피해회사 별로 포괄하여)

○ 조세 포탈의 점 : 각 조세범 처벌법 제10조 제3항 제3호, 형법 제30조(허위 세금계산서합계표 제출의 점), 조세범 처벌법 제3조 제1항 본문, 형법 제30조(조세포탈의 점), 징역형 선택

1. 법률상감경(자수감경)

형법 제52조 제1항, 제55조 제1항 제3호

1. 경합범가중

형법 제37조 전단, 제38조 제1항 제2호, 제50조[형이 가장 무거운 다판다의 천해지

EX-YOO-S3-00050

에 대한 출자로 인한 특정경제범죄가중처벌등에관한법률위반(배임)죄에 정한 형에 경합범 가중]

## 양형의 이유

가. 이 사건 각 범행은 유병언, 유혁기, 유대균, 유섬나 등 유병언 일가와 피고인, 변기춘, 고창환 등이 공모하여 사업성이 검증되지 않은 유병언의 사진 사업에 거액의 돈을 지급하게 하거나 고문료, 경영자문료, 상표권사용료, 디자인컨설팅비 등의 명목으로 그들이 사실상 지배하는 계열사들의 자금을 유병언 일가에 조직적·계획적으로 유출한 것이다.

피고인은 위 계열사들의 지주회사격인 주식회사 아이원아이홀딩스의 대표이사 및 주식회사 문진미디어, 주식회사 다판다의 대표이사로 재직하면서, 법률상으로 회사의 책임 재산을 유지하고 확보할 최종적인 책임자임에도 다른 계열사의 대표이사 등과 공모하여 위와 같은 범행을 저질렀다. 위와 같은 범행으로 피고인이 유병언 사진 사업 등에 부당하게 유출한 금원이 33,249,479,325원에 이른다.[1] 또한 피고인은 위와 같이 유병언에게 고문료 명목으로 금원을 송금한 후 자문용역을 공급받은 것처럼 허위 세금계산서 합계표를 세무서에 제출하고, 법인세를 포탈하였다.

물적 책임이 제한되는 주식회사의 특성상 최종적으로 법적 책임은 주식회사의

---

[1] 피고인의 변호인은 당심 제3회 공판기일에 이르러 판시 범죄사실 가. 1)항의 순번 2. 부분, 범죄사실 다.항의 순번 3. 내지 8. 부분, 범죄사실 라.항의 순번 3. 내지 7. 부분에 대하여는 피고인에게 보관자의 신분이 인정될 수 없고, 피고인은 단순히 유병언의 지시를 전달한 것에 불과하여 이 사건 배임행위를 교사하거나 이 사건 배임행위에 적극적으로 가담한 사실이 없으므로, 배임죄의 공동정범이 될 수 없다는 취지의 주장을 한다. 그러나 위 사유는 적법한 항소이유서 제출기간 내에 제기된 주장이 아닐 뿐만 아니라, 직권으로 위와 같은 주장을 살펴보아도 피고인이 계열사들의 지주회사격인 주식회사 아이원아이홀딩스의 대표이사로서 계열사 사장단 회의 등을 통하여 유병언의 의사를 전달하는 등으로 이 사건 범행에 공모, 가담하였음을 인정할 수 있으므로, 원심판결에 그러한 사실오인 내지 법리오해의 잘못이 있다고 할 수도 없다.

EX-YOO-S3-00051

책임 재산을 통해 실현되게 되므로 주식회사의 대표이사가 회사의 책임재산을 유지하여야 하는 의무는 단순히 회사 자체의 문제가 아니라 그 회사가 속한 사회공동체 전체의 이해관계와 직결되는 문제이다. 피고인의 범행으로 인하여 피해회사들의 경영상황이 악화된 반면, 유병언, 유혁기 등 유병언 일가가 개인적으로 거액의 부당한 이득을 취한 점을 고려하면 피고인을 엄히 처벌함이 마땅하다.

2) 다만 피고인에 대하여 구체적인 형벌을 정함에 있어서는 다음과 같이 피고인에게 유리한 사정들도 충분히 고려할 필요가 있다.

피고인은 35년간 교직생활을 하다가 정년퇴임하였다. 피고인은 종교[2]적인 이유로 해당 종교의 지도자인 유병언의 권유에 따라 주식회사 아이원아이홀딩스 등의 모임회사의 대표이사를 맡게 되었고, 이 사건 범행에 이르게 되었다. 피고인과 위와 같은 모임회사의 구성원들은 통상의 주식회사와 달리 같은 종교를 믿는 특수한 인적 관계에 있었고, 그로 인하여 의사결정이 폐쇄적이고 때로는 종교적 지도자의 결단을 맹종하는 경향이 있었다. 또한 주식회사 아이원아이홀딩스의 주식은 대부분 유대균, 유혁기 등 유병언 일가가 소유하고 있었다. 이러한 상황에서 피고인이 비록 대표이사의 자리에 있었다고는 하더라도 종교적 지도자이자 실질적인 사주인 유병언과 그 가족들의 의사에 반하여 독자적인 판단을 내릴 것을 기대하기는 어려워 보이는 측면도 있다.[3]

---

2) 피고인이 신봉하던 종교는 유병언의 장인인 권신찬이 설파한 교리를 바탕으로 한 기독교복음침례회로서, 위 권신찬의 후계자인 유병언은 교인들간의 공동체의식과 유대를 강조하고, 신도들이 일상생활에서도 신앙을 실천하며 일을 하여야 한다고 하며 이 사건 회사들과 같은 '모임회사'를 만들고, 신도들에게 모임회사에서 근무할 것을 권장하였다.

3) 이 사건 범죄사실 중 일부에 대한 공범인 주식회사 천해지의 대표이사 변기춘과 주식회사 세모 대표이사 고창환에 대하여 2015. 5. 22. 서울고등법원에서 각 징역 3년 및 징역 2년 6월의 실형이 선고되었다(서울고등법원 2014노3604, 2015노1194 사건). 피고인이 비록 세모 그룹 지주회사인 주식회사 아이원아이홀딩스의 대표이사를 맡고 있었고, 유병언의 지시를 직접 전달하는 역할을 하기는 하였으나, 나아가 유병언 등의 지시 없이 모임회사들에 대한 독자적인 의사결정권을 행사할 수 있는 지위에 있었다고 보이지 않는다는 점에서는 위 변기춘,

EX-YOO-S3-00052

이 사건 범행으로 인하여 취득한 수익은 유병언 일가에 귀속되었고 피고인이 개인적으로 취득한 이익은 없는 것으로 보인다. 피고인은 자신 명의로 보유하고 있던 주식회사 다판다 주식 10,400주를 포기하였으며, 피고인의 부인인 이순자 역시 자신의 명의로 되어 있던 주식회사 문진미디어 주식 50,000주를 포기하였다. 또한 피고인은 2014. 3. 17. 이미 위 주식회사 다판다, 주식회사 문진미디어, 주식회사 아이원아이홀딩스의 각 대표이사 자리에서 물러난 상태였다.

위와 같이 이 사건 범행의 최종 배후이자 실질적 주범이라 할 수 있는 유병언이 도피 중 사망하였고, 이 사건 횡령범행 중 일부의 수익자인 'AHAE PRESS INC' 등의 운영자로서 실질적 이득을 취한 공범 유혁기는 현재까지 도피 중에 있다.

그에 반하여 피고인은 미국 체류 중 유병언 일가 등에 대한 수사가 개시되고 피고인에 대한 체포영장이 발부되자, 2014. 11. 25. 스스로 귀국하여 수사기관에 출석하고, '기소중지 되어 있던 이 사건에 대하여 사실대로 진술하고 합당한 처벌을 받고자한다'는 취지의 자수서를 제출하였다. 이후 피고인은 수사기관의 질문에 대하여 모든 범죄사실을 자백하였다. 그 후 피고인은 수개월간의 구금생활을 통하여 자신의 범행을 진지하게 반성하고 있다.

또한 횡령 및 배임의 피해회사들이 모두 피고인에 대하여 처벌불원서를 제출하였다. 조세포탈의 점과 관련하여 제2 원심판결의 공동피고인인 주식회사 문진미디어, 주식회사 아이원아이홀딩스, 주식회사 다판다는 포탈세액을 모두 납입하였다.

그 밖에 피고인이 초범이고 고령의 나이로 당뇨 질환 등을 앓고 있는 점 등 피고인의 나이, 성행, 환경, 이 사건 범행에 이르게 된 동기와 경위, 범행 후의 정황 등을

고창환 등 공범들과 본질적인 차이가 있다고 보기는 어렵다.

EX-YOO-S3-00053

고려하여 양형기준에 따른 권고형의 범위 내에서 주문과 같이 형을 정한다.


재판장　　　판사　　　김상환　＿＿＿＿＿＿＿＿＿＿＿＿


　　　　　　　판사　　　김성수　＿＿＿＿＿＿＿＿＿＿＿＿


　　　　　　　판사　　　김상우　＿＿＿＿＿＿＿＿＿＿＿＿

EX-YOO-S3-00054

# 대 법 원

# 제 1 부

# 판 결

| | |
|---|---|
| 사 건 | 2015도11034 가. 특정경제범죄가중처벌등에관한법률위반(횡령) |
| | 나. 특정경제범죄가중처벌등에관한법률위반(배임) |
| | 다. 업무상횡령 |
| | 라. 업무상배임 |
| | 마. 조세범처벌법위반 |
| 피 고 인 | 김필배 (380209-1063620), 무직 |
| | 주거 서울 성동구 독서당로40길 37, 102동 1301호(옥수동, 어울 |
| | 림더리버아파트) |
| | 등록기준지 충남 부여군 옥산면 학산리 264 |
| 상 고 인 | 피고인 |
| 변 호 인 | 변호사 최충만(국선) |
| 원 심 판 결 | 서울고등법원 2015. 7. 3. 선고 2015노592, 1112(병합) 판결 |
| 판 결 선 고 | 2015. 10. 15. |

# 주 문

상고를 기각한다.

EX-YOO-S3-00055

이　　　유

상고이유를 판단한다.

원심판결 이유를 원심이 적법하게 채택한 증거들에 비추어 살펴보면, 원심이 그 판시와 같은 이유를 들어 이 사건 공소사실 중 피해자 주식회사 아해에 대한 특정경제범죄 가중처벌 등에 관한 법률 위반(횡령)의 점, 피해자 주식회사 천해지, 주식회사 아해, 주식회사 청해진해운, 주식회사 세모, 주식회사 노른자쇼핑, 주식회사 온지구에 대한 '주식회사 아이원아이홀딩스' 경영자문료 수입 관련 업무상 배임의 점 및 피해자 주식회사 아해, 주식회사 세모, 주식회사 천해지, 주식회사 청해진해운, 주식회사 온지구에 대한 사진 사업 관련 특정경제범죄 가중처벌 등에 관한 법률 위반(배임)의 점이 유죄로 인정된다고 판단한 것은 정당하고, 거기에 상고이유 주장과 같이 논리와 경험의 법칙을 위반하여 자유심증주의의 한계를 벗어나거나 특정경제범죄 가중처벌 등에 관한 법률 위반(횡령)죄, 특정경제범죄 가중처벌 등에 관한 법률 위반(배임)죄, 업무상 배임죄, 공동정범에 관한 법리를 오해한 위법이 없다.

그리고 원심판결에 양형 조건에 관한 심리미진 및 양형재량의 내재적 한계를 일탈하여 죄형균형의 원칙 내지 책임주의의 원칙을 위반한 위법이 있다는 취지의 주장은 결국 양형부당 주장에 해당한다. 그런데 형사소송법 제383조 제4호에 의하면 사형, 무기 또는 10년 이상의 징역이나 금고가 선고된 사건에서만 양형부당을 사유로 한 상고가 허용되므로, 피고인에 대하여 그보다 가벼운 형이 선고된 이 사건에서 형의 양정이 부당하다는 취지의 주장은 적법한 상고이유가 되지 못한다.

그러므로 상고를 기각하기로 하여 관여 대법관의 일치된 의견으로 주문과 같이 판결한다.

－ 2 －

EX-YOO-S3-00056

재판장　　대법관　　이기택 _____

　　　　　대법관　　이인복 _____

주　심　　대법관　　고영한 _____

EX-YOO-S3-00057