

U.S. Department of State

# CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
## EVIDENCE ACCOMPANYING REQUISITIONS IN
## THE UNITED STATES FOR EXTRADITION
## AMERICAN FOREIGN SERVICE

02-02-2018
Place and Date *(mm-dd-yyyy)*

Angela M. Kerwin , Consul General
Name                                        Title

of the United States of America at                    Seoul, Korea

hereby certify that the annexed papers, being          supporting documents


proposed to be used upon an application for the extradition from the United States of America

Hyuk Kee YOO ,

charged with the crime of     embezzlement, etc.


alleged to have been committed in          Republic of Korea

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of          Republic of Korea ,

as required by Title 18, United States Code, Section 3190.

In witness thereof I hereunto sign my name and cause my seal of office to be affixed

this          2nd          day of          February 2018          .
Month and Year

Signature

Angela M. Kerwin, Consul General
Type Name and Title of Certifying Officer
of the United States of America.



**Ministry of Justice**
Republic of Korea

Attorney General
Department of Justice
United States of America

## Supplement to Request for Extradition of YOO Hyuk Kee

I, Park Sang-ki, the Korean Minister of Justice,

1. on behalf of the Korean government, hereby request for the extradition of YOO Hyuk Kee who is investigated for alleged embezzlement, etc. under the Treaty on Extradition between the Republic of Korea and the United States of America, so that this case can be handled in accordance with the relevant laws of the Republic of Korea.

2. hereby confirm that the Korean government certifies this supplementary document on the request for the extradition of the criminal by sealing, signing and impressing the official seal of the Korean Minister of Justice on this document.

Seoul, Republic of Korea

January 30, 2018

Park Sang-ki
Minister of Justice
Republic of Korea
(Sealed by Minister of Justice)

Seo Jungmin
Director, International Criminal Affairs Division
(Duly authorized by the Minister)

# SUPPLEMENTARY STATEMENT OF CONFIRMATION

I, KIM Hyeong-geun, Prosecutor at the Incheon District Prosecutors' Office in Korea hereby certify the following in support of the request for the extradition of YOO Hyuk Kee from the United States of America to the Republic of Korea, pursuant to the Extradition Treaty between the Republic of Korea and the United States of America which took effect in December 20, 1999.

## 1. QUALIFICATIONS

1.1. I am a public prosecutor of the Incheon District Prosecutors' Office ("Incheon DPO") under the Korean Ministry of Justice. After passing the National Bar Examination in 1997, I completed the required two-year course at the Judicial Research and Training Institute under the Supreme Court of Korea and obtained qualifications to work as a judge, prosecutor or lawyer in 2000. I have been working as a prosecutor since February 2002, under the appointment of the President of Korea. Based on my training, experience and position, I fully understand the criminal law and procedures of Korea. As a prosecutor in charge of investigating this case succeeding Prosecutor JEONG Soon Shin, who was previously in charge of this case and sent a request to extradite YOO Hyuk Kee dated May 2014, I am well aware of the matters of this case as I have reviewed the statements made by the victims and those involved in this case, investigation reports and evidence.

1

EX-YOO-S4-00003

1.2. Under the Korean law, a prosecutor who presides over investigations may choose to either investigate independently or supervise the police as they investigate a case. Once the investigation is completed, the prosecutor exclusively decides whether or not to indict the case. After the indictment, the prosecutor supports and maintains the prosecution and executes the final judgment of the court. According to the principle of the exclusive power of prosecutors, the court may proceed with trial procedures only for cases that have been indicted by a prosecutor. In this case, there is clear and sufficient evidence to indict the suspect regardless of his statement. However, according to the Korean practice on investigations and indictments, prosecutors do not indict a suspect on the run. It is for this reason that JEONG Soon Shin, then-prosecutor who took charge of the investigation of this case, made a request to extradite YOO Hyuk Kee dated May 2014. I, as the prosecutor who has taken over this case, hereby certify the following upon the supplementary request from the U.S.

## 2. EACH COUNT OF EMBEZZLEMENT

2.1. Paragraph 4.1.1. of the initial Statement of Confirmation (May 14, 2014) is about the background of YOO Hyuk Kee's crimes, such as his identity and the criminal methods he used to commit embezzlement. Details of each count, with which YOO Hyuk Kee will be charged after he is extradited, are described in paragraphs 4.1.2. through 4.1.8. of the

2

initial Statement of Confirmation (May 14, 2014).

2.2. Details of each count are described in the following paragraph 2.2.2. to 2.2.8.

2.2.1. YOO Hyuk Kee owned 19.44% of the shares outstanding of I-One-I Holdings Co., Ltd. ("I-One-I Holdings") and operated its affiliate companies, including Trigon Korea Co., Ltd., Kukje Pictures Co., Ltd., Dapanda Co., Ltd. ("Dapanda"), Onzigoo Co., Ltd. ("Onzigoo"), Ahae Co., Ltd. ("Ahae"), Moonjin Media Co., Ltd. ("Moonjin Media"), Chonhaiji, Co., Ltd. ("Chonhaiji"), Cheonghaijin Marine Co., Ltd. ("Cheonghaijin Marine"), Semo Co., Ltd. ("Semo"), Clian Co., Ltd, Saemuri Co., Ltd, Hojin Co., Ltd., and Sokuri Trading Co., Ltd.

2.2.2. In or around March 2010, at Semo's office located at 565-3, 558-10 Sipjeong-dong, Bupyeong-gu, Incheon, YOO Hyuk Kee conspired with GO Chang-hwan, Semo's CEO, and signed a management consulting services contract through which YOO Hyuk Kee received KRW 25,000,000 from the victim company, Semo, in return for providing management consulting services. However, Semo was not in need of such services and Key Solution, a company operated by YOO Hyuk Kee, neither provided nor had the ability to provide such services to Semo. From the point of signing the contract until March 2014, YOO Hyuk Kee received KRW 25,000,000 every month, which is KRW 1,225,000,000 in total, from Semo into his Woori Bank account thereby embezzling the money.

**[Relevant Evidence]**

3

EX-YOO-S4-00005

▲      Statement made by GO Chang-hwan, Semo's CEO, at the Incheon District Prosecutors' Office On April 25, 2014: 'It was upon the request of PARK Seung-il of Key Solution that Semo provided KRW 250,000,000 in 2010 and KRW 300,000,000 every year from 2011 to 2013 to Key Solution operated by YOO Hyuk Kee as management consulting fee.' 'No cost comparison analysis was conducted in deciding the service fee. I and PARK Seung-il exclusively reached the contract without considering Key Solution's expertise, past performance, and reliability and checking the need for additional consulting.'

▲      Statement made by GO Chang-hwan at the Incheon District Prosecutors' Office on May 6, 2014: 'Key Solution provided consulting service by releasing a consulting report once or twice a year. The quality of the report was not enough given that an expensive fee was paid on a regular basis and you could get that quality of service if you hire another company.'

▲      Statement made by KIM Kyu-suk, chief of Semo's Management Support Team at the Incheon District Prosecutors' Office on April 30, 2014: 'Even though significant amounts of consulting service fees were given to YOO Hyuk Kee every month, what we had was only a consulting report released once or twice a year.'

▲      Statement made by CHO Seon-ae, an employee of Semo, at the Incheon District Prosecutors' Office on May 1, 2014: 'While Semo's debt exceeded its capital on its financial statement and its operating profits were on the

4

decline, Semo provided KRW 300,000,000 to Key Solution every year, which amounted to a whopping KRW 1,150,000,000 in total over a period of four years, on the pretext of paying management consulting fees. It was unusual that Semo didn't change the consulting company even when Semo's business performance barely improved with such expensive consulting service.'

▲   Judgement of conviction on GO Chang-hwan for this case in which YOO Hyuk Kee is stated as an accomplice

2.2.3. In or about April 2010 in the office of Moreal Design Co., Ltd. ("Moreal Design") located at 4-4 Samseong-dong, Gangnam-gu, Seoul, YOO Hyuk Kee conspired with YOO Chong Somena, who had authority over Moreal Design's funds, and received KRW 30,000,000 on the pretext of a management consulting fee. Until December 2013, he received KRW 20,000,000 or KRW 30,000,000 every month, KRW 990,000,000 in total, even though it was not necessary for the victim company Moreal Design to receive management consulting on a regular basis. Also, YOO Hyuk Kee's Key Solution neither provided nor had the ability to provide such services to Moreal Design. In this manner, YOO Hyuk Kee embezzled the money.

**[Relevant Evidence]**

▲   Statement made by HA Myeong-hwa, CEO of Moreal Design, at the Incheon District Prosecutors' Office on May 14, 2014: 'YOO Hyuk Kee and YOO Chong Somena signed a management consulting services contract. KRW 20,000,000 was provided to YOO Hyuk Kee every month but there is no

5

EX-YOO-S4-00007

official document proving Moreal Design received management consulting.'

▲    Statement made by PARK Hwa-soon, an accounting clerk of Moreal Design, at the Incheon District Prosecutors' Office on May 12, 2014: 'YOO Hyuk Kee signed a management consulting services contract with YOO Chong Somena and HA Myeong-hwa but I have no idea whether Moreal Design actually received any consulting service from Key Solution.'

2.2.4. In or about January 2009 in the office of Ahae, YOO Hyuk Kee conspired with LEE Jae-young, who had authority over Ahae's funds, and signed a trademark licensing agreement stating that Ahae would pay licensing fees of about 0.8% to 1.6% of Ahae's revenue to him after registering the name of the company, "Ahae," as a trademark. The victim company, however, had been using the name for the company for about 10 years. At the point of signing the contract, YOO Hyuk Kee received KRW 9,499,200 and until December 2013, he received a total of KRW 5,346,311,045 from Ahae thereby embezzling the money.

[Relevant Evidence]

▲    Statement made by PARK Seung-il (executive director at I-One-I Holdings), a staff member at Key Solution who managed YOO Hyuk Kee's fund, at the Incheon District Prosecutors' Office on May 8, 2014: 'YOO Hyuk Kee directed to collect 1.6% of Ahae's sales revenue as trademark royalties. I told LEE Seong-hwan, then CEO of Ahae, to follow what YOO Hyuk Kee ordered saying he is YOO Byeong

EX-YOO-S4-00008

Eyn's son. I signed a trademark licensing agreement and received licensing fees. The amount of the fee was singlehandedly decided by YOO Hyuk Kee, not based on common market pricing. This is, disguised as trademark royalties, was in fact a means to transfer affiliates' funds to YOO's family.'

▲     Statement made by LEE Seong-hwan who served as CEO of Ahae until around 2010 at the Incheon District Prosecutors' Office on May 4, 2014: 'Even though the trademark, "Ahae," was created altogether by company staff in 1998, YOO Hyuk Kee, through PARK Seung-il, made a directive to pay trademark royalties, saying that he registered it in 2009. Because YOO Hyuk Kee is YOO Byeong Eyn's son, it was hard not to follow his words so we couldn't help but pay the fees.'

▲     Judgement of conviction on LEE Jae-young for this case in which YOO Hyuk Kee is stated as an accomplice

2.2.5. In or about January 2009 in the office of Onnara Shopping Co., Ltd. ("Onnara Shopping"), YOO Hyuk Kee conspired with BYEON Gi-chun who had authority over Onnara Shopping's funds and signed a trademark licensing agreement through which YOO Hyuk Kee received KRW 8,514,430 at the point of signing, and a total of KRW 328,436,704 until December 2011 from the victim company Onnara, even though the company name "Onnara Shopping" did not have any brand value and was an easily replaceable name, while a trademark registration cost only about KRW 300,000.

**[Relevant Evidence]**

7

▲ Statement made by PARK Seung-il, a Key Solution's employee who handled YOO Hyuk Kee's funds, at the Incheon District Prosecutors' Office on May 8, 2014: 'Following YOO Hyuk Kee's order, we received a certain percentage of their revenue as trademark licensing fee from affiliates such as Onnara Shopping. The amount of the fees was singlehandedly decided by YOO Hyuk Kee, not based on common market pricing. This is, disguised as trademark royalties, was in fact a means to transfer affiliates' funds to YOO's family.'

▲ Judgement of conviction on PARK Seung-il for this case in which YOO Hyuk Kee is stated as an accomplice

2.2.6. In or about January 2008 in the office of Chonhaiji, YOO Hyuk Kee conspired with BYEON Gi-chun who had authority over Chonhaiji's funds and signed a trademark licensing agreement stating that Cheonhaiji would pay a licensing fee of 1.0% to 1.5% of Chonhaiji's revenue. YOO Hyuk Kee received KRW 18,898,710 at the point of signing the contract, and a total of KRW 1,235,426,771 until June 2010, even though the company name "Chonhaiji" did not have any brand value and was an easily replaceable name, while a trademark registration cost only about KRW 300,000.

**[Relevant Evidence]**

▲ Statement made by BYEON Gi-chun, CEO of Chonhaiji, at the Incheon District Prosecutors' Office on May 6, 2014: 'YOO Byeong Eyn is the person who helped me work at Chonhaiji so I had no choice but to accept YOO Hyuk Kee's request and offer money as trademark royalties. However,

8

EX-YOO-S4-00010

from around April to May 2010 when expenses of trademark and logo loyalty were categorized as a non-deductible item by the National Tax Service, we started providing KRW 20 million per month to YOO Hyuk Kee from around February 2011 as consulting fees.'

▲　　Judgement of conviction on PARK Seung-il for this case in which YOO Hyuk Kee is stated as an accomplice

2.2.7. In or about February 2011 in the office of Chonhaiji, YOO Hyuk Kee received KRW 20,000,000 from Chonhaiji in the name of consulting fees even though YOO Hyuk Kee did not provide any consulting to Chonhaiji. Until November 2011, YOO Hyuk Kee received KRW 20,000,000 every month and embezzled KRW 200,000,000 in total from Chonhaiji.

**[Relevant Evidence]**

▲　　Statement made by BYEONG Gi-chun, Chonhaiji CEO, at the Incheon District Prosecutors' Office on May 6, 2014: 'As National Tax Service determined expenses of trademark licensing fees to YOO Hyuk Kee no longer non-deductible, we turned to consulting fees. I had no choice but to follow directions of YOO Hyuk Kee.'

2.2.8. YOO Hyuk Kee needed large amounts of money to hold an exhibition of photographs taken by his father, YOO Byeong Eyn, at the Palace of Versailles in France. For this reason, he conspired with BYEON Gi-chun, Chonhaiji CEO, to use Chonhaiji's money. On the pretext of purchasing YOO Byeong Eyn's photographs at a high price, Chonhaiji offered large amounts of money to Ahae Press Inc., the U.S. branch of Ahae Co., Ltd., where YOO Hyuk Kee was CEO.

9

EX-YOO-S4-00011

Including KRW 1,656,598,080 that he received at the point of signing the purchase agreement in March 2013, YOO Hyuk Kee received KRW 19,862,077,987 in total from Chonhaiji, the victim company, until December 2013. However, the prices of YOO Byeong Eyn's works were not very high and could not be priced accurately because they had never been sold in the market before.

**[Relevant Evidence]**

▲    Statement made by PARK Seung-il, executive director of I-One-I Holdings (Semo's holding company), at the Incheon District Prosecutors' Office on May 14, 2014: 'YOO Hyuk Kee ordered affiliate firms to prepare funds for purchasing YOO Byeong Eyn's photographs through capital increase by consideration. As YOO Hyuk Kee is YOO Byeong Eyn's son, CEOs of affiliates had no choice but to do what YOO Hyuk Kee told them to do.'

▲    Statement made by BYEON Gi-chun, Chonhaiji CEO, at the Incheon District Prosecutors' Office on May 6, 2014: 'YOO Hyuk Kee ordered affiliates to prepare funds for YOO Byeong Eyn's photo exhibition at the Palace of Versailles in France. By doing so, YOO Hyuk Kee received KRW 11,024,000,000 from Dapanda, Munjin Midia, Onzigoo and Semo through capital increase by consideration and KRW 2,800,000,000 from Ahae by disguising it payment for subscription of new stocks. Also, along with funds provided by Chonhaiji, a total of KRW 19,862,077,987 was provided to Ahae Press Inc. Even though such funds were for the purchase of YOO Byeong Eyn's photographs,

10

affiliates had no idea about his works and didn't decide what works they would buy. CEOs had no choice but to follow what YOO Hyuk Kee told them to do.'

▲　　Judgement of conviction on BYEON Gi-chun for this case in which YOO Hyuk Kee is stated as an accomplice

2.3. The victims of each count described in paragraphs 2.2 are different companies. The victim in paragraph 2.2.2. is Semo, that in 2.2.3. is Moreal Design, that in 2.2.4. is Ahae, that in 2.2.5. is Onnara Shopping and that in 2.2.6. through 2.2.8. is Chonhaiji. According to court precedents in Korea, a criminal who commits multiple embezzlement offenses is charged with one count per victim if the criminal committed the offenses under a single criminal intent and used the same criminal methods. Therefore, if there are more than one victim, the criminal shall be charged with multiple counts and those counts shall be considered as concurrent crimes. If there are more than one criminal method used for committing the crimes, the criminal shall be charged with multiple counts and the charges shall be considered as concurrent crimes, as well, even though there was only one victim. In this case, each criminal act described in each of the paragraphs 2.2.2. through 2.2.8. shall be deemed a single count and these counts will be considered as concurrent crimes. Based on this principle, YOO Hyuk Kee is facing seven counts of embezzlement.

2.4. Relevant evidence provided in paragraph 2.2. has been all submitted as supplementary material dated August 19, 2014

11

EX-YOO-S4-00013

and September 16, 2014 with respect to mutual legal assistance (August 5, 2014). Please refer to those supplementary documents.

2.5. If there is a need for elaboration or further explanation with regards to counts of embezzlement of YOO Hyuk Kee and evidence, please specify. We will provide further explanations.

## 3. ADDITIONAL EVIDENCE OF TAX EVASION

3.1. YOO Hyuk Kee's tax evasion offense is as follows: in conspiracy with YOO Byeong Byn, YOO Dae Kyoon and CEO LEE Gang-se of Saecheonnyeon, YOO Hyuk Kee transferred Chonhaiji's shares (70.1%) owned by Saecheonnyeon at a total price of KRW 5,600,000,000 to I-One-I Holdings. In the tax report on November 7, 2008, a total of KRW 9,181,760,000, which is the disparity between the total amount sold at the normal price and the total amount sold at transfer price, should be reported as income, given that Saecheonnyeon and I-One-I Holdings are "related parties"., YOO Hyuk Kee, however, reported only KRW 4,746,560,000 as income, the disparity between the amount sold at 70% of the normal price and the amount sold at the transfer price, thereby evading corporate tax equivalent to KRW 1,108,880,000.

3.2. There is additional evidence of YOO Hyuk Kee's involvement in the above tax evasion.

3.2.1. On October 10, 2014, PARK Seung-il, an executive at I-One-I Holdings, who managed YOO Hyuk Kee's accounts, said in

EX-YOO-S4-00014

the Incheon District Prosecutors' Office 'Upon the direction of KIM Pil-bae and YOO Hyuk Kee who were top decision-makers at I-One-I Holdings, I transferred Chonhaiji shares held by Saecheonnyeon to I-One-I Holdings at a cheap price. They said the cheap share transfer is not violating the tax code because Saecheonnyeon and I-One-I Holdings are not "related parities" under the law. I couldn't help but follow their decision because I was just one of the working-level employees.'

3.2.2. On October 8, 2014, LEE Gang-se, then CEO of Saecheonnyeon, said at the Incheon District Prosecutors' Office 'I admit I transferred Chonhaiji shares held by Saecheonnyeon to I-One-I Holdings at a cheap price. PARK Seung-il at I-One-I Holdings told me "transfer shares at a low price because it is not other than just moving assets from one affiliate to another," so I just did what he told me. I don't know exactly where that order came from, whether it was from YOO Byeong Eyn, YOO Hyuk Kee or KIM Pil-bae.'

3.3. Based on the statement of PARK Seung-il and LEE Gang-se described in the paragraph 3.2.1. to 3.2.2., it is clear that YOO Hyuk Kee, as a top decision-maker of I-One-I Holdings, committed tax evasion and stock transfer at a cheap price by directing PARK Seung-il, a working-level employee at I-One-I Holdings, and LEE Gang-se, Saecheonnyeon's CEO.

3.4. The supplementary statement of confirmation dated January 21, 2015 includes statement made by KIM Pil-bae, then CEO of I-One-I Holdings and other statements. The

EX-YOO-S4-00015

supplementary statement of confirmation dated November 18, 2016 includes judgement of conviction on accomplices who committed similar crimes with YOO Hyuk kee Initial and supplementary evidence clearly proves that YOO Hyuk Kee was involved in the above tax evasion by making orders to the company employees.

3.5. I understand there can be differences in the required level of proof as the legal system of the U.S. and that of Korea is different. If there are any parts where you consider the level of proof is not met under the U.S. law, please let us know so that we can send another statement of confirmation or further submit additional materials to clarify the matter.

4. **I hereby certify that the aforementioned are all true and correct to the best of my knowledge. I am submitting this statement of confirmation, being well-aware that I may be punished for falsely producing official documents pursuant to Article 227 of the *Criminal Act* of Korea.**

2017. 7. 7.

Respectfully submitted by

Prosecutor KIM Hyeong-geun

Incheon District Prosecutors' Office

Attachment

EX-YOO-S4-00016

1. A copy of suspect interrogation report on LEE Gang-se on
   October 8, 2014
2. A copy of statement by PARK Seung-il on October 10, 2014

EX-YOO-S4-00017

# SUSPECT INTERROGATION REPORT

Name: LEE Gang-se

Resident Registration Number: 410210-1405915

At around 14:30 on October 8, 2014, in the prosecutor's room #1025 at Incheon District Prosecutors' Office, Prosecutor PARK Gwang-hyeon interrogated the above person regarding the case of violating *Punishment of Tax Offenses Act* in the presence of prosecutorial investigator SUH Dae-suk.

Q: State your name, resident registration number, occupation, address and registered domicile.

A: Name    LEE Gang-se

   Resident Registration Number    410210-1405915

   Occupation    Former CEO of Ahae Co., Ltd.

   Address    4-1201 Samseong APT, 175 Oryu-dong, Jung-gu, Daejeon

               Currently detained in Incheon Detention Center (Inmate No.: 477)

   Registered Domicile    451-1, Daeheung-dong, Jung-gu, Daejeon

   Office Address

   Contact Information

        Home                          Mobile Phone    010-3450-8586

        Office                        E-mail

The prosecutor gives the suspect a summary of the alleged facts of crime and notifies him of his rights to refuse to make statements and to have the assistance of legal counsel pursuant to Article 244-3 of the *Criminal Procedure Act*, and confirms whether he will exercise his rights.

EX-YOO-S4-00018

# Confirmation of Rights to Remain Silent and to Legal Counsel

1. You have the right to remain silent or decline to make statements for each question.

1. Remaining silent will not be used against you.

1. Anything you say by waiving your right can and will be used against you in court as evidence.

1. You have the right to legal counsel, including the counsel's presence during the interrogation.

Q: Were you informed of the above rights?

A: (*Hand-written*) Yes.

Q: Will you exercise the right to remain silent?

A: (*Hand-written*) No.

Q: Will you exercise the right to have the assistance of legal counsel?

A: (*Hand-written*) No.

The prosecutor starts to interrogate the suspect with regard to the facts of crime as follows.

Q: Have you ever faced any punishment for committing a crime?

A: No.

Q: Tell me about your family.

A: I have a wife, two sons and three daughters. My children are all married so I am currently living with my wife in the above address.

Q: Tell me about your academic and career background.

A: I went to Gayagok Elementary School at Nonsan-si, Chungcheongnam-do but didn't finish school. I ran a gas station for 33 years in Daejeon and was the CEO of Saecheonnyeon Co., Ltd. ("Saecheonnyeon") from 2003 to 2008. After a year without working, I served as the CEO of Ahae Co., Ltd. ("Ahae") between about July 2009 and about May 2012.

Q: What is your religion?

A: I am a member of the Evangelical Baptist Church of Korea since 1984.

Q: How did you come to serve as the CEO of Saecheonnyeon in around 2003 after running a gas station for 33 years?

A: I invested approximately KRW 500 million in Semo Co., Ltd. ("Semo") but Semo went bankrupt and my gas station was closed down so I had a hard time making ends meet. Mr. LEE Jae-young, who was the head of general affairs division of Semo, offered the position and I became the CEO when Saecheonnyeon was established.

Q: How did you come to serve as the CEO of Ahae in around 2009?

A: When I was not working after resigning as Saecheonnyeon's CEO, KIM Pil-bae, CEO of I-One-I Holdings Co., Ltd. (I-One-I Holdings) suggested that I run Ahae as co-CEO along

EX-YOO-S4-00020

with LEE Seong-hwan.

Q: Tell me about your wealth and monthly income.

A: I own a plot of land located at Bogye-myeon, Anseong-si worth a market price of KRW 40 million but it is currently under seizure by the National Tax Service ("NTS") as far as I know. My house where I am living now is a property leased under the name of my wife after we paid KRW 100 million as a lump-sum deposit. From about May 2012 when I stepped down as Ahae's CEO, my children financially supported me because I had no income at all.

Q: Tell me about your current health status.

A: I am being treated for lower limb instability, so I am having a hard time in the detention center.

Q: Your trial process is underway while you are detained in the Incheon Detention Center. What are your charges?

A: I was charged with embezzlement for giving KRW 240 million to YOO Byeon Eyn between about October 2011 and about April 2012 as management consulting fees and for giving KRW 2.88 billion to YOO Hyuk Kee between about July 2009 and about April 2012 as trademark licensing fees when I was CEO of Ahae. I was also charged with breach of trust for paying a total of KRW 218 million to I-One-I Holdings and Hemato Centric Life between about August 2009 and about May 2012 as management consulting fees and for paying KRW 426 million to Hemato Centric Life between about October 2009 and about March 2012 on the pretext of buying calendars and photo books while conspiring with KIM Pil-bae, thereby causing loss to Ahae.

Q: Do you admit those charges?

A: Yes. I admitted all of my charges in court. I feel responsible for all the crimes I committed during my term as CEO of Ahae. I am seeking favorable consideration from the

EX-YOO-S4-00021

court.

Q: When will the court make the final judgement?

A: On November 5, 2014.

Q: You served as co-CEO of Ahae along with LEE Seong-hwan from around July 2, 2009 to around March 24, 2010 and served as Ahae's only CEO from about March 25, 2010 to about May 29, 2012. Is that right?

A: Yes.

Q: Please explain Ahae's shareholder structure.

A: I-One-I Holdings owns 40% of the shares as a majority shareholder.

Q: How many shares do you own?

A: 9% of Ahae shares are held under my name but the church is the de-facto owner of the shares.

Q: Who made those decisions?

A: It was decided by Ahae's board of directors.

Q: Do YOO Byeong Eyn, YOO Hyuk Kee and YOO Dae Kyoon or other YOO family members hold Ahae shares?

A: YOO Byeong Eyn's family doesn't have Ahae shares but they have a lot of I-One-I Holdings shares, which is the majority shareholder of Ahae.

Q: Do you know about the shareholder structure of I-One-I Holdings?

A: I only know that YOO's family holds a lot of its shares. I don't know about the detailed structure of shareholders.

EX-YOO-S4-00022

Q: The summary of the complaint in this case is as follows.

Between around January 2006 and around December 2013, even though YOO Hyuk Kee of Key Solution hadn't provided you with any trademark, you paid him trademark licensing fees, received false tax invoices worth a total of KRW 6,118,502,000 and submitted a false sum table of tax invoices of the equivalent amount to the tax office.

Between around August 2008 and around December 2013, even though I-One-I Holdings hadn't provided you with any management consulting services, you paid I-One-I Holdings management consulting service fees, received false tax invoices worth a total of KRW 325,000,000 and submitted a false sum table of tax invoices of the equivalent amount to the tax office.

Between around October 2011 and around December 2013, even though YOO Byeong Eyn of Vinous-throated Parrotbill hadn't provided you with any consulting services, you paid him consulting service fees, received a false tax invoice of KRW 540,000,000 and submitted a false sum tables of the equivalent amount of tax invoices to the tax office.

On top of that, you evaded corporate taxes worth KRW 1,404,107,329 by falsely reporting that you incurred expenses.   Do you admit to the abovementioned?

A: I will not deny my responsibilities for tax evasion charges because it was the result of said offenses I made as I have already admitted my charges of embezzlement and breach of trust in court and sought favorable considerations from the court. However, could you be more specific about what makes the tax invoices false and how my action is tax evasion?

Q: Did you sign a trademark licensing agreement with YOO Hyuk Kee?

A: No.   The agreement was first signed by former CEO LEE Seong-hwan and the license had been renewed while I was CEO.

Q: But you knew that 1.6% of the sales revenue was used for trademark licensing fee every

month, didn't you?

A: Yes.

Q: Did you discuss the licensing agreement or royalty payment directly with YOO Hyuk Kee?

A: No, the head of accounting division of the company was handling all matters before I became CEO. I only had to approve it.

Q: Which trademarks of YOO Hyuk Kee's have your company been using?

A: Company title 'Ahae' and its logo.  Almost all products were labeled with the marks registered by YOO Hyuk Kee.

Q: Have you ever seen any company, in the same field or any other field, which pays trademark royalties like your company did?

A: No.

Q: Leaving aside the fact that your company paid 1.6% of the company revenue as royalties, did your company actually use trademarks registered by YOO Hyuk Kee?

A: Yes.  As I have already said during the trial for embezzlement and breach of trust charges, Our company did actually use YOO Hyuk Kee's trademarks.  I admit that paying him that much royalties was unnecessary.

Q: Since about July 2009 when you took office as the company CEO, have you said anything to YOO Hyuk Kee or to I-One-I Holdings about the royalties, have you mentioned that you think it's unfair?

A: I didn't mention it to YOO Hyuk Kee or KIM Pil-bae, who were at the top of the decision-making process.  I once expressed my complaint to CHOI Hyung-tae, Ahae's auditor appointed by I-One-I Holdings, when the royalties were raised from 0.5% to 1.6% of the

sales revenue.    However, he said there's nothing he could do because it was the management's decision.    I have never mentioned it to anyone since then.

Q: Now my question is about management consulting fees paid to I-One-I Holdings.    Who was CEO of I-One-I Holdings while you were serving as Ahae's CEO?

A: It was KIM Pil-bae.

Q: How often did you, as CEO, meet with KIM Pil-bae or BYUN Ki-chun?

A: I didn't meet them often.    They are people very close to YOO Byeong Eyn, but I am not close to him.    YOO Byeong Eyn seemed uncomfortable around me probably because, I don't know, I am older than him.    So I didn't try to contact him first.    I would say hi when I encountered him at church but we never talked about business matters at all.

Q: While you were CEO, how much did your company pay I-One-I Holdings for management consulting?

A: We paid KRW 5 million every month.

Q: Did you sign a consulting services contract with I-One-I Holdings while you were CEO?

A: No, I didn't sign the agreement myself.    The division in charge at my company asked for my approval for the contract so I approved. The division head probably stamped my seal on the contract.


At this point, the Prosecutor presents 'Management Consulting Service Contract' included in the Case Records p.139 – p.141 to the suspect.

Q: Is this the contract you approved and finalized as CEO?

A: Yes.

Q: What kind of advisory service did you receive from I-One-I Holdings?

A: As CEO, I would report the status of my company once or twice a month to CEO KIM Pil-bae. Then he would point out problems or give consulting on management. I-One-I Holdings also issued a consulting report for my company which our working-level staff used as a guideline.


At this point, the Prosecutor presents an indexed list in the Case Records p.159 – p.163 to the suspect.

Q: This is the list of consulting reports Ahae received from I-One-I Holdings, right?

A: Yes, that's right.

Q: Did you, as CEO, review consulting reports issued by I-One-I Holdings?

A: No, I didn't. I am not a professional businessman so I don't understand them anyways. My staff in the working-level read those reports and applied it to their work. But it's true that I-One-I Holdings wrote consulting reports for my company.

Q: Were these reports helpful for your business?

A: Frankly speaking, I am not an expert on management matters. When I co-chaired with LEE Seong-hwan, he did most of the work and I'd say I was learning. When I became the only CEO, executive director LEE Jae-young from the Seoul office ran the company. I do think those reports were helpful to my company because there were a lot of experts at I-One-I Holdings. Furthermore, since Ahae's an affiliated company of I-One-I Holdings, it was natural that Ahae got support from I-One-I Holdings.

Q: In addition to the list of reports I presented to you, do you have more evidence to prove that your company received advisory service from I-One-I Holdings?

A: If there is more evidence, LEE Jae-young should know since he was the person in charge of that matter.

Q: YOO Hyuk Kee and YOO Dae Kyoon are majority shareholders of I-One-I Holdings, which is the majority shareholder of Ahae. Were they involved in Ahae's management?

A: I've never received direct orders from YOO Hyuk Kee or YOO Dae Kyoon. When giving orders, KIM Pil-bae may have added his opinion but I believed most orders came from YOO Hyuk Kee.

Q: Did you know that YOO Hyuk Kee was to succeed YOO Byeong Eyn?

A: Yes. I knew and everyone in my church knew he would become the next chairman.

Q: Did YOO Dae Kyoon engage in your company management?

A: No. YOO Dae Kyoon had no interest in the business at all because he is an artist. It was a well-known fact that YOO Byeong Eyn was trying to make YOO Hyuk Kee his successor.

Q: This question is about consulting service fees paid to YOO Byeong Eyn. In the consulting services contract signed on January 3, 2011, YOO Byeong Eyn was to receive KRW 180 million in total for a period of three months: KRW 60 million on October 31, 2011, KRW 60 million on November 30, 2011, and KRW 60 million on December 31, 2011. However, in the new contract signed on January 1, 2012, this was changed to monthly installments of KRW 15 million. Why was the amount changed?

A: As far as I know, in around January 2011, a total of KRW 118 million was agreed to be paid to YOO Byeong Eyn over a year, but it was not decided whether the amount would be wired directly to YOO Byeong Eyn or to his business account. So in October, same year, it was decided to report the payment as YOO Byeong Eyn's business revenue, which was why YOO Byeong Eyn registered his business under the name, Vinous-throated Parrotbill. Thus,

over a period of three months ending in December 2011, KRW 180 million in total was wired in three separate installments to YOO Byeong Eyn's business account.

Q: So the money you gave to him was not in return for advisory service but for his personal use and thinking about how to give money to YOO Byeong Eyn, you came up with an idea of disguising the money as YOO Byeong Eyn's business revenue by making him register his business.   Is that true?

A: Yes.   It was all decided from above (CEO KIM Pil-bae of I-One-I Holdings) so I had no choice but to follow.

Q: According to the written indictment, you, after KIM Pil Bae suggested, 'let's give YOO Byung Eyn money on the pretext of paying him consulting service fee,' signed a management consulting services contract in around January 2011, appointing YOO Byung Eyn (who registered his business under the name of Vinous-throated Parrotbill in around October 2011) as a consultant of the victim company in order to provide him with KRW 15,000,000 every month, even though he knew that YOO Byung Eyn would not provide any management consulting for the company on a regular basis or on special occasions.   Did you admit to these charges in court?

A: Yes, I did.

Q: Did you receive such orders directly from KIM Pil-bae?

A: No, executive director LEE Jae-young got the order from KIM Pil-bae via phone call and relayed it to me.   I directed my employees, saying "I have no choice.   It's an order from the top."

Q: So it seems that money you provided to YOO Byeong Eyn, Vinous-throated Parrotbill, was disguised as consulting services fee even though no advisory service was rendered by YOO Byeong Eyn.   Do you admit to that?

EX-YOO-S4-00028

A: Yes, I do. I respect YOO Byeong Eyn and it is true he gave me guidance. However, on the business side, my company got no help from him at all.

Q: So based on your statement above, regardless of the excessiveness of the payment, it seems that your company used YOO Hyuk Kee's trademarks and received consulting services from I-One-I Holdings. However, you received nothing from YOO Byeong Eyn in return for paying him consulting services fee. Is that right?

A: I never received any advisory service worth monthly payment of KRW 15 million from YOO Byeon Eyn. No consulting on a regular basis, at all. I think KIM Pil-bae and other executives of Semo Group wanted to provide funds for YOO Byeong Eyn's personal expenses so they decided to deliver funds by disguising it as consulting service fees.

Q: Couldn't you have rejected KIM Pil-bae's suggestion in the first place?

A: Executive director LEE Jae-young first reported KIM's suggestion to me and I just approved it. LEE Jae-young and I were in no position to say no to KIM's orders.

Q: Did you know that trademark royalties and other consulting service fees excessively or falsely provided to YOO Dae Kyoon, YOO Byeong Eyn and I-One-I Holdings were categorized as business expenses thereby deducting your tax burden?

A: Yes, I don't know exactly how numbers are drawn out because I am not a tax expert. However, I was certainly aware if a company incurs expenses, its corporate tax burden is reduced.

Q: You said you were CEO of Saecheonnyeon from around 2003 to around 2008.

A: Yes.

Q: Saecheonnyeon is recorded to have been established on or about January 23, 2003 and closed on or about August 13, 2008. Did you serve as CEO until the company's closure?

A: Yes, I worked as the CEO until the company closed down.

Q: Did you transfer Chonhaiji Co., Ltd. ("Chonhaiji")'s 1,120,000 shares, which were held by Saecheonnyeon, to I-One-I Holdings in about March 2008 at a total price of KRW 5.6 billion?

A: Yes, I did.

Q: According to the NTS, although tax accountant PARK Sang-bae estimated the price per share as KRW 13,198 per share, Saecheonnyeon transferred Chonhaiji's shares at the face value of KRW 5,000 per share, KRW 5.6 billion in total for 1,120,000 shares, which was way below 70% of the normal price. Do you admit that?

A: Yes, I do.

Q: How did you transfer the shares at such a low price?

A: Based on what I remember, PARK Seung-il from I-One-I Holdings relayed directions it saying that there is no problem because it's just moving assets from one affiliate to another and I did what I was told to. But I have no idea whether that order came from YOO Byeong Eyn, YOO Hyuk Kee or KIM Pil-bae.

Q: At the point when the above transfer took place, 30% of Saecheonnyeon shares were held under your name, 35% under LEE Seung-ki, and 35% under LEE Jae-ok. Who were actual shareholders?

A: I think the real holder was the Church (Evangelical Baptist Church of Korea).

Q: Didn't you say Saecheonnyeon's shares held by you, LEE Seung-ki and LEE Jae-ok were actually YOO Byeong Eyn's during the tax investigation by the NTS Seoul Regional Office?

A: I admitted during the investigation that the shares were held under borrowed names but I didn't mean to say that YOO Byeong Eyn privately owned the shares. What I was trying to say was that the Church is the holder and YOO Byeong Eyn is the de-facto owner because he

EX-YOO-S4-00030

was the leader of the Church back then.

Q: SHIN Jae-jik, who temporarily served as Saecheonnyeon's CEO to operate the Anseong Branch of Saecheonnyeon stated that three shareholders including the suspect were borrowed names and the de-facto owner seemed to be YOO Byeong Eyn given how the company was operated at that time.  What do you think about that?

A: When Semo's executive director LEE Jae-young suggested that I take the CEO position, he asked LEE Jae-ok, LEE Seung-ki, and me to hold shares so I only knew that our names were borrowed as holders.  However, I have no idea who funded the purchase of shares and who the real owners were.  It's only my guess that the Church is the real holder.

Q: Do you think executive director LEE Jae-young, who suggested that you serve as CEO in the first place, knows about the real owner?

A: Yes, I do.

Q: According to the NTS, YOO Byeong Eyn is the de-facto owner of the Saecheonnyeon's shares and YOO Byeong Eyn's children hold 44% of I-One-I Holdings's shares, which means, Saecheonnyeon and I-One-I Holdings are related parties (affiliate - holding company relationship).  Saecheonnyeon's shares were transferred to I-One-I Holdings at 37% of the normal price - way lower than 70% - but holders of the shares in question were disguised as three people whose names were borrowed to conceal that relation and evade taxes.  Is it true that the names were borrowed on purpose to avoid paying taxes?

A: Since Saecheonnyeon was established, the three people including myself have been the holders of the shares. However, I want to point out that our names were not deliberately used for the said transfer to disguise the real holder or avoid paying taxes.  I admit that the price was much lower than the normal price.  However, I don't agree that borrowed names were used or documents were forged on purpose to deceive the tax authority.  The title of the

EX-YOO-S4-00031

shares were trusted to us since the establishment of the company just in case a transfer of shares is necessary.

Q: Then why have the shares been held under the name of the three people since Saecheonnyeon was founded?

A: It was because orders came from the very top such as YOO Byeong Eyn and YOO Hyuk Kee . I didn't know why they did so.

Q: Did YOO Dae Kyoon engage in transferring the shares?

A: As far as I know, YOO Dae Kyoon, since he is an artist, enjoyed trademark royalties provided by affiliates but didn't engage in the management of affiliates. He neither engaged in Saecheonnyeon's management nor in the said transfer.

Q: The said transfer benefits I-One-I Holdings greatly. Don't you think it is highly likely that YOO Dae Kyoon was involved in making decisions regarding the said transfer since he owns over 19% of I-One-I Holdings's shares?

A: Given that YOO Dae Kyoon is the majority shareholder of the transferee company, I guess he could have agreed with the transfer when he was informed about it by YOO Hyuk Kee or anyone at I-One-I Holdings. However, I don't know exactly who in I-One-I Holdings made that decision.

Q: Is your statement all true?

A: Yes.

Q: Do you have any evidence supporting your claims? Or anything to add?

A: No.

Q : Is there anything missing from what you stated or different from what is true?

A: (In his own handwriting) No. (fingerprinted and sealed)


The above statement was made available to the suspect, who fingerprinted between pages, signed, and sealed (fingerprinted), after confirming that there is no error and that no addition, subtraction or change is necessary


Statement given by LEE Gang-se (sealed)


October 8, 2014

Incheon District Prosecutors' Office

Prosecutor PARK Gwang-hyeon　(sealed)

Prosecutorial Investigator SUH Dae-suk　(sealed)

EX-YOO-S4-00033

# Confirmation of Investigation Procedure

| Category | Details |
|---|---|
| 1. Arrival Time for the Interview | 14:30 |
| 2. Start and Finish Time for the Interview | □ Start: 14:45 <br> □ Finish: 18:02 |
| 3. Start and Finish Time for Reviewing the Record | □ Start: 18:02 <br> □ Finish: 18:28 |
| 4. Other factors to be checked so as to certify the lawful process of investigation: in cases where there is a considerable temporal gap between the arrival time and the start time, please state the reasons for such a gap, reasons for calling off the interview, and time to call off and to reinstate the interview, etc. (Article 13-4(2) of the Administrative Regulations on Prosecution Cases) | None |
| 5. Any Objections or Statements on the Procedure / Its Contents | None |

October 8, 2014

Prosecutor PARK Gwang-hyeon has interviewed LEE Gang-se and had him certify the above-mentioned.

Certifier: LEE Gang-se (*fingerprinted*)

Prosecutor: PARK Gwang-hyeon (*sealed*)

# STATEMENT

- Name: PARK Seung-il

- Resident Registration Number: 590108-1464629

- Occupation: former auditor of I-One-I Holdings Co., Ltd.

- Address:

  - 210-302 Hansolmaeul APT, 111 Jeongja-dong, Bundang-gu, Seongnam-si, Gyeonggi-do

  - Currently in Incheon Detention Center (Inmate No. 1484)

- Registered Domicile:

- Work Address:

- Contact Information:

  - Home: 031-719-1939          Mobile: 010-9400-0781

  - Office: 02-3458-8111         E-mail:

On October 10, 2014, the above person voluntarily appeared at prosecutor room #1025 of Incheon District Prosecutors' Office and gave the following statement regarding a case involving suspect YOO Byeong Eyn and others on charges of violating the *Punishment of Tax Offenses Act*.

1. How are you related to YOO Byeong Eyn?

   I worked under Mr. YOO Byeong Eyn as an executive of his companies. So I was involved partly in company management however, I am not a family member, nor a relative of his.

2. How are you involved in this case?

   I will state everything I know on the transferring of Chonhaiji shares held by

Saecheonnyeon to I-One-I Holdings at a low price when was the director and auditor of I-One-I Holdings.

EX-YOO-S4-00036

## Confirmation of Rights to Remain Silent and to Legal Counsel

1. You have the right to remain silent or to decline to make statements on all or part of the questions.

1. Remaining silent will not be used against you.

1. Anything you say by waiving your right to remain silent can and will be used against you in court as evidence.

1. You have the right to legal counsel including the right to have the assistance of counsel during interrogation.

Q: Were you informed of the above rights?

A: *(Handwritten and fingerprinted) Yes.*

Q: Will you exercise the right to remain silent?

A: *(Handwritten and fingerprinted) No.*

Q: Will you exercise the right to have the assistance of legal counsel?

A: *(Handwritten and fingerprinted) No.*

October 10, 2014

Statement given by: PARK Seung-il *(fingerprinted)*

EX-YOO-S4-00037

At this time, the prosecutor starts questioning PARK Seung-il as follows.

Q: Are you PARK Seung-il?

A: Yes.

Q: Why are you under detention?

A: I am currently under trial on charges of complicity in embezzlement of affiliate company funds by YOO Byeong Eyn family. The court will pass the sentence on November 5, 2014.

Q: Today, you will be investigated as a witness regarding charges of corporate tax evasion by YOO Byeong Eyn and others for transferring Chonhaiji Co., Ltd. ("Chonhaiji") shares held by Saecheonnyeon Co., Ltd. ("Saecheonnyeon") to I-One-I Holdings Co., Ltd. ("I-One-I Holdings") at a price lower than the market price. Are you willing to give a statement on this?

A: Yes. I will state everything I know.

Q: From around December 27, 2007 to around March 16, 2014, you were the director of I-One-I Holdings. And auditor until around March 17, 2014. Is this correct?

A: Yes, that is correct.

Q: Do you know that an agreement was made on around March 5, 2008 to transfer 1,120,000 Chonhaiji shares - held by Saecheonnyeon - to I-One-I Holdings at a face value of KRW 5,000 per share, so at a total price of KRW 5,600,000,000? And that KRW 560,000,000 was paid down on the same day, and the rest, KRW 5,040,000,000, was paid on around March 21, 2008?

A: Yes. I don't remember the exact numbers but I do remember how the agreement was carried out.

Q: Do you know who held Saecheonnyeon shares at the time?

A: I remember that LEE Gang-se, LEE Seung-ki and LEE Jae-ok, the three held the shares but I don't remember exactly how much - in percentage - they each held.

Q: According to our data, LEE Gang-se had 30% and LEE Seung-ki and LEE Jae-ok each

had 35%. Does this recall your memory?

A: I remember they each had a similar percentage.

Q: Could you tell us what you know about how the three came to hold Saecheonnyeon shares?

A: That was before I-One-I Holdings was established so I wasn't involved at all in Saecheonnyeon affairs. I have no idea how they became Saecheonnyeon shareholders.

Q: Regarding the transfer of Chonhaiji shares, LEE Gang-se, the former CEO of Saecheonnyeon stated that PARK Seung-il from I-One-I Holdings relayed directions saying that there is no problem because it's just moving assets from one affiliate to another and I did what I was told to. But I have no idea whether that order came from YOO Byeong Eyn, YOO Hyuk Kee or KIM Pil-bae. Do you have anything to say about his statement?

A: I roughly remember. As far as I remember, the directions came from KIM Pil-bae and YOO Hyuk Kee, the top decision-makers.

Q: Saecheonnyeon transferred Chonhaiji's shares to I-One-I Holdings at a face value of KRW 5,000 per share despite the fact that tax accountant PARK Sang-bae estimated the price per Chonhaiji share as KRW 13,198. Can you tell us anything about how this decision was made?

A: Back then, KIM Dong-hwan and I would follow directions from KIM Pil-bae or YOO Hyuk Kee. We did not have a say in the decision-making process. I vaguely remember that consulting advice was sought from accounting firm Samil PwC on the legality of transferring Chonhaiji's shares to I-One-I Holdings at a low price and that Samil PwC said that tax law-wise, it shouldn't be a problem because I-One-I Holdings and Saecheonnyeon are not specially-related parties. After that, the top management made a decision and KIM Dong-hwan and I went on with it as we were told.

Q: And the whereabouts of the KRW 5,600,000,000? I think you'd remember since at the time of transfer – in around March 2008 - you were the director.

A: As far as I know, Saecheonnyeon paid corporate tax and paid dividends to the shareholders

and it went into liquidation. But I don't know any details.

Q: How did I-One-I Holdings come up with the KRW 5,600,000,000 for the above transfer.

A: Probably through paid-in capital increase.

Q: Are you also a shareholder of I-One-I Holdings?

A: Yes. I don't know exactly how many but I know the shares are worth about KRW 10,000,000. I bought them during paid-in capital increase in around 2008 and have had them since.

Q: Were Saecheonnyeon shares held by LEE Gang-se, LEE Seung-ki and LEE Jae-ok because the shares were transferred to them prior to the transfer of Chonhaiji's shares?

A: As far as I remember, that's not the case and the three had been shareholders since Saecheonnyeon's establishment.

Q: Were there any parts of the documents related to the transfer of Chonhaiji's shares that were untrue to the facts?

A: No. I don't know anything about who the real owner of Chonhaiji's shares is. But even if they are held under borrowed names, LEE Gang-se, LEE Seung-ki and LEE Jae-ok have been shareholders for years since establishment. So that's why their names are on the documents related to the transfer of shares. The shareholders were not intentionally disguised with borrowed names, nor were false documents drafted regarding this matter in order to deceive the taxation office or to hide anything in the event of tax investigation. And about the real owner of Chonhaiji's shares, like I said earlier, I don't know much. I think those in the top management like KIM Pil-bae and YOO Hyuk Kee would know.

Q: Is everything you stated true to the facts?

A: Yes.

Q: Are there any statements or evidence supporting your claims?

EX-YOO-S4-00040

A: No.

Q: Is there anything on this statement that is written differently from what was stated or the truth?

A: *(Hand-written) No. (fingerprinted and sealed)*

The above statement was made available to PARK Seung-il, who fingerprinted between pages, signed, and sealed, after confirming that there is no error and that no addition, subtraction or change is necessary.

Statement given by: PARK Seung-il *(fingerprinted)*

October 10, 2014

Incheon District Prosecutors' Office

Prosecutor: PARK Gwang-hyeon *(sealed)*

Assistant Investigator: SUH Dae-suk *(sealed)*

EX-YOO-S4-00042

# Confirmation of Investigation Procedure

| Category | Details | |
|---|---|---|
| 1. Arrival Time for Interview | 13:50 | |
| 2. Start/Finish Time of Interview | □ Start Time: | 13:50 |
| | □ Finish Time: | 16:12 |
| 3. Start/Finish Time of Reviewing the Record | □ Start Time: | 16:12 |
| | □ Finish Time: | 16:20 |
| 4. Other Factors to be Certified Regarding the Investigation Procedure [If there is a considerable disparity in time, reasons thereof, reasons of suspended investigation, time of suspended, and time of resumed are needed (Article 13-4 Paragraph 2 of *the Regulation on Prosecution Case Treatment*)] | N/A | |
| 5. Any Objections to or Comments on    Procedure and Contents of Investigation | N/A | |

October 10, 2014

Prosecutor PARK Gwang-hyeon interviewed PARK Seung-il and had him certify the above-mentioned.

Certified by: PARK Seung-il    *(fingerprinted)*

Prosecutor: PARK Gwang-hyeon *(sealed)*

EX-YOO-S4-00043



**Ministry of Justice**
**Republic of Korea**

미합중국 법무부장관 귀하


### 유혁기에 대한 범죄인인도청구 추가서류


대한민국 법무부장관 본인 박상기는,

1. 대한민국을 대표하여 대한민국정부와 미합중국정부간 범죄인인도조약에 따라, 횡령 등 혐의의 유혁기가 대한민국의 법률에 의하여 처리될 수 있도록 대한민국에 인도하여 줄 것을 청구합니다.

2. 범죄인 유혁기에 대한 범죄인인도청구를 위한 추가서류로서 본 문서를 봉인한 후 서명하고 대한민국 법무부장관의 관인을 날인함으로써 대한민국정부에 의하여 인증된 서류임을 확인합니다.


대한민국 서울

2018년 1월 30일

대한민국 법무부장관 박상기

대리 국제형사과장 서정민

# 추 가 확 인 서

대한민국 인천지방검찰청 검사인 본인 김형근은 대한민국과 미합중국간에 1999. 12. 20. 발효된 범죄인인도조약에 의거한 도피 범죄인 유혁기에 대한 범죄인인도요청과 관련하여 미합중국의 추가 확인 요청에 대하여 아래 사항을 확인함.

## 1. 확인자 자격

1.1. 본인은 대한민국 법무부 산하 인천지방검찰청 검사임. 본인은 1997년 국가 사법 시험을 합격하고, 대법원 산하 사법연수원에 입소하여 2년간 훈련을 받았으며, 2000년 사법연수원의 수료와 동시에 대한민국에서 판사, 검사 또는 변호사로 활동할 수 있는 자격을 취득하였음. 2002. 2.부터 대한민국 대통령에 의하여 검사로 임용되어 근무하고 있음. 본인의 훈련과 경험 그리고 직책에 근거하여, 본인은 대한민국의 형사법과 형사절차에 익숙함. 본인은 2014. 5. 유혁기에 대한 범죄인인도요청 당시 이 사건의 담당 검사인 정순신의 승계검사로서 현재 이 사건을 담당하고 있으며, 이 사건 기록에 있는 피해자 및 관련자들의 진술, 수사관의 수사보고서 및 증거물 등을 모두 검토하여 이 사건의 진상에 대하여 잘 알고 있음.

1.2. 대한민국법상 검사는 수사를 주관하는 자로서 경찰의 도움 없이 독자적으로 범죄사건을 수사할 수도 있고, 경찰을 지휘하여 수사를 할 수도 있음. 수사가 종결되면 검사는 사건의 기소여부를 독점적으로 결정하고, 기소 후에는 공소 유지를 담당하며, 마지막으로 확정된 판결을 집행함. 기소독점주의 원칙상 검사가 기소한 사건에 대해서만 법원이 재판절차를 진행할 수 있음. 본 사건은 유혁기의 진술과 무관하게 기소할 수 있을 만큼 충분하고 확실한 증거를 이미 확보하고 있음. 다만 대한민국의 수사, 기소 관행에 의하면 유혁기가 도주 중에는 기소하지 않으므로 그를 송환받아 기소하기 위하여 2014. 5. 당시 이 사건의 수사검사인 정순신이 유혁기에 대한 범죄인인도요청을 하였고, 이에 관한 미합중국의 추가 확인 요청이 있어 이 사건의 승계검사로서 아래와 같이 확인함.

EX-YOO-S4-00045

## 2. 횡령 범죄사실의 특정

2.1. 최초 확인서(2014. 5. 14.자)의 4.1.1.은 범죄사실에 대한 전제사실로서 유혁기의 신분, 유혁기의 횡령 범행 방법을 설명한 것이고 4.1.2.내지 4.1.8.에 기재된 범죄사실이 구체적인 범죄사실임. 따라서 유혁기를 송환하여 기소할 횡령의 범죄사실을 구체적으로 특정하면 최초 확인서(2014. 5. 14.자)의 4.1.2내지 4.1.8.과 같음.

2.2. 유혁기를 송환하여 기소할 횡령의 범죄사실 및 이를 뒷받침하는 관련증거를 구체적으로 정리하면 다음 2.2.2.내지 2.2.8.과 같음.

2.2.1. 유혁기는 (주)아이원아이홀딩스의 지분 19.44%을 보유하면서, 위 회사를 통해 그 계열사인 (주)트라이곤코리아, (주)국제영상, (주)다판다, (주)온지구, (주)아해, (주)문진미디어, (주)천해지, (주)청해진해운, (주)세모, (주)클리앙, (주)새무리, (주)호진기업, (주)소쿠리상사 등을 경영하는 자임.

2.2.2. 유혁기는 피해자 (주)세모 대표이사 고창환과 공모하여, 2010. 3.경 인천 부평구 십정동 558-10, 565-3에 있는 '세모' 사무실에서, 당시 피해회사가 리스크 관리 등 경영자문을 상시적으로 받아야 할 필요가 없었고, 유혁기가 운영하는 키솔루션이 (주)세모에 실질적인 도움이 될 수 있는 경영자문을 할 능력이 없었으며, 실제로 별다른 경영자문을 한 사실이 없음에도 불구하고, 피해회사로부터 매달 25,000,000원을 지급받는 내용의 '경영자문용역계약'을 체결하고, 그 무렵 자문료 명목으로 25,000,000원을 유혁기 명의 우리은행 계좌로 지급 받는 것을 비롯하여, 그때부터 2014. 3.경까지 매달 25,000,000 원씩을 지급받아 (주)세모 소유의 돈 합계 1,225,000,000원을 횡령하였음.

[관련증거]

▲ (주)세모 대표이사 고창환은 2014. 4. 25. 인천지방검찰청에서 "(주)세모가 유혁기가 운영하는 키솔루션에 2010년에는 250,000,000원, 2011년부터 2013년 까지 매년 300,000,000원의 경영자문료를 지급한 것은 키솔루션의 박승일의 요청에 의한 것이다.", "금액 책정 과정에서 다른 업체와 비교 견적 등을 받은 사실이 없고, 키솔루션의 전문성, 실적, 신뢰성, 이중 자문의 필요성 등을 고려함이 없이 저와 박승일 둘이서 협의해서 결정을 했다."고 검사에게 진술

EX-YOO-S4-00046

- ▲ 고창환은 2014. 5. 6. 인천지방검찰청에서 "키솔루션으로부터 받은 자문 내용은 1년에 1~2회 정도 서류를 통한 경영자문이었고, 정기적으로 고액의 자문료를 지급하면서 받아야 할 내용이 아니었으며, 외부 용역을 맡겨도 될 정도의 수준이었다."고 검사에게 진술
- ▲ (주)세모 경영지원팀장 김규석은 2014. 4. 30. 인천지방검찰청에서 "유혁기 에게 매월 정기적으로 고액의 자문료를 지급하였지만 1년에 1~2회의 자료를 받은 것 이외에 따로 자문을 받은 사실이 없다."고 검사에게 진술
- ▲ (주)세모 직원 조선애는 2014. 5. 1. 인천지방검찰청에서 "(주)세모의 재무 제표상 자본보다 부채가 많은 편이고 계속 영업이익이 감소하고 있었음에도 불구하고 키솔루션에 컨설팅비 명목으로 매년 300,000,000원을 지급하는 등 4년 동안 1,150,000,000원을 지급한 것이 과한 일이었고, 특히 고액의 자문료를 지불하고도 회사 경영실적이 향상되지 않았는데 자문업체를 교체 하지 않은 것이 정상은 아니었다."고 검사에게 진술
- ▲ 유혁기가 공범으로 기재된 공범 고창환의 본건 범죄사실에 대한 유죄 확정 판결문

2.2.3. 유혁기는 피해자 (주)모래알디자인 소유의 돈을 업무상 보관하는 위 회사 대표이사 유섬나와 공모하여, 2010. 4.경 서울 강남구 삼성동 4-4에 있는 '모래알디자인' 사무실에서, 당시 피해회사가 리스크 관리 등 경영자문을 상시적으로 받아야 할 필요가 없었고, 유혁기가 운영하는 키솔루션은 피해 회사에 실질적인 도움이 될 수 있는 경영자문을 할 능력이 없었으며, 유혁 기가 '모래알디자인'에 경영자문을 한 사실이 없음에도 '경영자문료' 명목 으로 30,000,000원을 받은 것을 비롯하여 2013. 12.경까지 '경영자문료' 명목 으로 매달 20,000,000원 또는 30,000,000원씩 지급받는 방법으로 피해회사 소유의 돈 합계 990,000,000원을 지급받아 이를 횡령하였음.

[관련증거]

- ▲ (주)모래알디자인 대표이사 하명화는 2014. 5. 14. 인천지방검찰청에서 "자문 계약은 유혁기와 유섬나 남매가 체결하였고, 유혁기에게 매월 20,000,000원을 자문료로 지급하였지만 자문을 받은 공식적인 서류는 없다."고 검사에게 진술
- ▲ (주)모래알디자인 경리 직원 박화순은 2014. 5. 12. 인천지방검찰청에서 "유혁기가 유섬나, 하명화와 자문계약을 체결하였으나, 키솔루션으로부터 자문을 받았는지 여부는 알지 못한다."고 검사에게 진술

2.2.4. 유혁기는 피해자 (주)아해의 돈을 업무상 보관하는 위 회사 대표이사 이재 영과 공모하여, 2009. 1.경 '아해' 사무실에서, 약 10년전부터 피해회사가 사용 해오던 '아해'라는 상호에 대하여 상표등록한 후 피해회사 월 매출액의

EX-YOO-S4-00047

0.8%~1.6%를 상표권 사용료로 받는 계약서를 작성한 후 그 무렵 9,499,200원을 지급받은 것을 비롯하여 2013. 12.경까지 (주)아해로부터 같은 명목으로 합계 5,346,311,045원을 지급받아 이를 횡령하였음.

[관련증거]

▲ 키솔루션 대표 유혁기의 자금관리자인 키솔루션 직원 박승일(아이원아이홀딩스 이사와 동일 인물)은 2014. 5. 8. 인천지방검찰청에서 "유혁기가 (주)아해의 매출액 1.6%를 상표권 사용료로 받으라고 지시하여, 당시 (주)아해의 대표이사인 이성환에게 유병언의 아들 유혁기의 지시이니, 따라야 된다고 하여 계약을 체결하고 상표권 사용료를 지급받았고, 사용료 금액은 통상적인 가치평가 방식이 아닌 유혁기의 일방적인 지시에 따라 책정하였다. 상표권의 상표권사용료라는 형식을 취하였지만 실제로는 계열사들의 자금을 유병언 일가가 유출하기 위한 방편이었다."고 검사에게 진술

▲ 2010.경까지 (주)아해 대표이사였던 이성환은 2014. 5. 4. 인천지방검찰청에서 "(주)아해라는 상호는 1998년 당시 직원들과 함께 만든 상호임에도 유혁기가 2009년에 상표권 등록을 했으나 사용료를 달라고 박승일을 통하여 지시하므로 유병언 회장의 아들 유혁기의 지시를 거절 할 수 없어 상표권 사용료를 지급하게 되었다."고 검사에게 진술

▲ 유혁기가 공범으로 기재된 공범 이재영의 본건 범죄사실에 대한 유죄 확정 판결문

2.2.5. 유혁기는 피해자 (주)온나라쇼핑 소유의 자금을 업무상 보관하는 위 회사 대표이사 변기춘, 유혁기의 자금관리자 박승일과 공모하여, 2009. 1.경 '온나라쇼핑' 사무실에서, 피해회사를 설립하고 그 상호를 정함에 있어, 유혁기가 상표 등록한 '온나라쇼핑'라는 호칭에 아무런 브랜드가치도 없고, 상표등록에 소요되는 비용은 약 300,000원에 불과하며, 얼마든지 다른 상호로 대체가능한 상호임에도 불구하고, 유혁기는 변기춘과 '전용사용권 설정 계약'을 체결하고, 그 무렵 8,514,430원을 지급받은 것을 비롯하여 2011. 12.경까지 합계 328,436,704원을 지급받아 이를 횡령하였음.

[관련증거]

▲ 키솔루션 대표 유혁기의 자금관리자인 키솔루션 직원 박승일은 2014. 5. 8. 인천지방검찰청에서 "유혁기의 지시에 따라 (주)온나라쇼핑 등 계열사들로부터 매출액의 일정 비율을 상표권 사용료 명목으로 지급받았고, 사용료 금액은 통상적인 가치평가 방식이 아닌 유혁기의 일방적인 지시에 따라 책정하였다. 상표권의 상표권사용료라는 형식을 취하였지만 실제로는 계열사들의 자금을 유병언 일가가 유출하기 위한 방편이었다."고 검사에게 진술

EX-YOO-S4-00048

▲유혁기가 공범으로 기재된 공범 박승일의 본건 범죄사실에 대한 유죄 확정 판결문

2.2.6. 유혁기는 피해자 (주)천해지 소유의 돈을 업무상 보관하는 위 회사 대표이사 변기춘, 유혁기의 자금관리자 박승일과 공모하여, 2008. 1.경 '천해지' 사무실에서, 피해회사를 설립하고 그 상호를 정함에 있어, 유혁기가 상표 등록한 '천해지'라는 호칭에 아무런 브랜드 가치도 없고, 상표등록에 소요되는 비용은 약 300,000원에 불과하며, 얼마든지 다른 상호로 대체가능한 상호임에도 불구하고, 위 상표사용에 대한 대가로 '천해지' 매출의 1.0~1.5%를 받는 내용의 계약을 체결한 후, 그 무렵 피해회사로부터 18,898,710원을 지급받은 것을 비롯하여 2010. 6.경까지 합계 1,235,426,771원을 지급받아 이를 횡령하였음.

[관련증거]

▲(주)천해지의 대표이사 변기춘은 2014. 5. 6. 인천지방검찰청에서 "유병언 회장이 저를 천해지에 입사하게 해주었기 때문에 그의 아들인 유혁기의 요구대로 상표권 사용료를 줄 수밖에 없었고, 형식만 상표권 사용료일 뿐 실제로는 2010. 4.에서 5. 사이에 국세청에서 (주)천해지라는 상로와 로고의 사용료로 지급한 돈을 비용으로 인정할 수 없다며 과세를 하므로 더 이상 상표권 사용료의 형식으로 돈을 줄 수 없게 되자, 2011. 2. 부터는 자문료의 형식으로 매월 2,000만원을 유혁기에게 주게 되었다."고 검사에게 진술

▲유혁기가 공범으로 기재된 공범 박승일의 본건 범죄사실에 대한 유죄 확정 판결문

2.2.7. 유혁기는 변기춘과 공모하여, 2011. 2.경 피해자 (주)천해지 사무실에서 회사의 경영과 관련하여 특별한 역할을 수행하지 않으면서 그 무렵 피해회사로부터 고문료 명목으로 20,000,000원을 지급받은 것을 비롯하여 2011. 11.경까지 매달 20,000,000원씩 합계 200,000,000원을 지급 받아 이를 횡령하였음.

[관련증거]

▲(주)천해지 대표이사 변기춘은 2014. 5. 6. 인천지방검찰청에서 "국세청이 유혁기에게 상표권 사용료를 지급한 부분을 손금불산입 결정을 하여 이를 대체할 명목으로 지급한 것에 불과하고, 유혁기의 지시에 따를 수밖에 없었다."고 검사에게 진술

2.2.8. 유혁기는 아버지인 유병언이 촬영한 사진을 베르사이유 궁전에서 전시하기 위해 필요한 비용 등 거액의 돈이 필요해지자 피해자 (주)천해지 회사 자금을 인출하기로 마음먹고, 피해회사의 대표이사인 변기춘과 공모하여 2013. 3.경 '천해지' 사무실에서, 유병언 회장의 사진 작품이 교회 신도들

EX-YOO-S4-00049

및 계열사 외에 경매 시장에서 매매가 이루어진 적이 없어 시장 가격을 정할 수 없을 정도로 사진 가치가 그다지 높지 않음에도 불구하고, 마치 유병언 회장의 사진을 고가에 구입하기로 계약한 후 선급금을 미리 지급하는 것처럼 형식을 취해 피해회사로부터 유혁기가 대표로 있는 미국 법인 AHAE PRESS INC로 1,656,598,080원을 지급받은 것을 비롯하여 2013. 12.경까지 합계 19,862,077,987원을 지급받아 이를 횡령하였음.

[관련증거]

▲ 유혁기의 계좌를 관리한 아이원아이홀딩스(세모그룹 계열사 지주회사) 이사 박승일은 2014. 5. 14. 인천지방검찰청에서 "유혁기가 유병언의 사진을 상업화하자고 하면서 세모그룹 계열사 사장들에게 유상증 등의 방법으로 자금을 마련하여 지원하라고 지시하였고, 계열사 사장들은 유혁기가 유병언의 아들이므로 이러한 지시를 들어줄 수밖에 없었다."라고 검사에게 진술

▲ (주)천해지 대표이사 변기춘은 2014. 5. 6. 인천지방검찰청에서 "유혁기가 세모그룹 계열사들로부터 자금을 모아서 유병언 사진의 베르사유 궁정 전시회 비용을 마련하라고 지시하였고, 세모그룹 계열사인 (주)다판다, (주)문진미디어, (주)온지구, (주)세모로부터 유상증자금 명목으로 11,024,000,000원을 받고, (주)아해로부터 차입금 2,800,000,000원을 신주청약증거금으로 대체하고, (주)천해지의 회사 자금과 함께 합계 19,862,077,987원을 유병언의 사진을 구입하는 선급금 형식으로 아해 프레스 INC에 지급하였는데, 예술사진을 구입하는 명목으로 돈을 지급하면서도 어떤 작품이 있는지, 어떤 작품을 구입할지 여부를 정하지 않았으며 계열사 사장들은 유혁기의 지시에 따르지 않을 수 없었다."고 검사에게 진술

▲ 유혁기가 공범으로 기재된 공범 변기춘의 본건 범죄사실에 대한 유죄 확정 판결문

2.3 위 2.2.에서 특정한 범행의 피해자는 각 항목별로 모두 다름. 2.2.2. 범행의 피해자는 (주)세모, 2.2.3. 범행의 피해자는 (주)모래알디자인, 2.2.4. 범행의 피해자는 (주)아해, 2.2.5. 범행의 피해자는 (주)온나라쇼핑, 2.2.6.부터 2.2.8 까지 범행의 피해자는 (주)천해지임. 대한민국 판례는 '단일한 범의를 가지고 동일한 방법에 의하여 여러 차례에 걸쳐서 횡령 범행을 한 경우에 피해자별로 1개의 횡령죄가 된다'는 입장임. 따라서 일단 피해자가 다른 범행의 경우에는 1죄가 아닌 경합범(별죄)이고, 피해자가 동일하다고 하더라도 범행의 방식이 다르면 1죄가 아닌 경합범(별죄)임. 때문에 2.2.2.부터 2.2.8.까지 위 범행은 각 항목 안에서는 1죄(단일한 범의, 동일한 방법, 동일한 피해자)를 구성하고,

EX-YOO-S4-00050

각 항목간에는 경합범의 관계임(다른 피해자, 다른 범행 방식). 즉 유혁기의 횡령 범행의 죄수는 총 7개임.

2.4. 위 2.2.에서 적시한 관련증거는 유혁기의 사법공조요청(2014. 8. 5.자)에 대한 2014. 8. 19.자 보충자료 및 2014. 9. 16.자 보충자료로 모두 기제출된 것이므로, 사법공조요청에 대한 보충자료를 참조하기 바람.

2.5. 유혁기의 횡령 범죄사실의 죄수 및 증거관계에 대하여 추가 설명이 필요한 사항이 있는 경우, 구체적으로 그 부분을 적시하여 주면 상세히 답변하도록 하겠음.


# 3. 조세포탈 부분에 대한 추가 증거

3.1. 유혁기에 대한 조세포탈 범행은, 유혁기가 유병언, 유대균, (주)새천년의 대표이사 이강세와 공모하여 2008. 3. 5. (주)새천년이 보유한 (주)천해지의 주식(70.1%)을 주식 액면가인 5,600,000,000원에 (주)아이원아이홀딩스로 양도하고 2008. 11. 7. 국세청에 (주)새천년 법인세를 신고함에 있어, 위 거래에 관하여 (주)새천년과 (주)아이원아이홀딩스는 특수관계인에 해당하므로 (주)천해지 주식의 정상가액과 양도가액의 차액 9,181,760,000원을 소득금액으로 신고하여야 함에도 불구하고, (주)천해지 주식의 정상가액의 70%와 양도가액의 차액인 4,746,560,00원만을 소득금액으로 신고함으로써 (주)새천년의 법인세 1,108,880,000원을 포탈하였다는 것임.

3.2. 유혁기가 위 조세포탈 범행에 관여하였다는 점에 관하여는 다음과 같은 추가 증거가 있음.

3.2.1. 유혁기의 계좌를 관리한 아이원아이홀딩스 이사였던 박승일은 2014. 10. 10. 인천지방검찰청에서 "(주)아이원아이홀딩스의 최고 결정권자인 김필배와 유혁기 두 사람에게 지시를 받아, (주)새천년이 보유하던 (주)천해지의 주식을 (주)아이원아이홀딩스에 저가로 양도하게 하였다. '(주)새천년과 (주)아이원아이홀딩스 간에 특수관계자 신분이 아니므로 주식을 저가 양도해도 세법상의 문제는 생기지 않는다'고 윗선(김필배, 유혁기)이 결정을

EX-YOO-S4-00051

내린 상태에서 자신에게 위와 같은 지시를 하였고, 자신은 그 지시에 따라 그대로 진행을 하는 실무자일 뿐이었다."라고 검사에게 진술함.

3.2.2. (주)새천년 대표이사로 재직했던 이강세는 2014. 10. 8. 인천지방검찰청에서 "(주)새천년이 보유하던 (주)천해지의 주식을 (주)아이원아이홀딩스에 저가로 양도한 사실을 인정한다. 세모그룹 지주회사인 (주)아이원아이홀딩스의 박승일이 '어차피 그룹 계열사 간에 자산을 옮기기만 하는 부분이니 저가에 양도하라'고 지시를 전달해 와서 그에 따른 것이다. 박승일이 전달한 지시가 유병언의 지시인지, 유혁기의 지시인지, 김필배의 지시인지는 정확히 알지 못한다."라고 검사에게 진술함.

3.3. 위 3.2.1. 내지 3.2.2.에서 살펴본 박승일과 이강세의 진술에 따르면, 유혁기가 (주)아이원아이홀딩스의 최고 결정권자로서 위 회사에서 실무를 담당하는 박승일, (주)새천년 대표이사 이강세에게 순차 지시하여 주식 저가 양도 및 조세포탈 범행을 하였다는 점은 분명함.

3.4. 한편 기존의 2015. 1. 21.자 확인서에서 (주)아이원아이홀딩스 대표이사였던 김필배의 진술 등 다수의 진술증거를 제출하였고, 2016. 11. 18.자 추가 확인서에서 이 사건과 범죄구조가 유사한 사건에 대하여 공범들의 유죄 확정 판결문을 증거로 제출하였음. 기제출한 증거와 추가로 제출하는 증거를 종합하여 보면 유혁기가 실무자에게 지시하는 방법으로 위 조세포탈 범행에 관여하였다는 점은 충분히 입증됨.

3.5. 대한민국법과 미국법의 체계가 달라 입증의 정도 등에 대한 견해의 차이가 있을 수 있으므로, 미국법상 어느 부분에 대한 입증이 부족한지 자세히 적시하여 주면 그에 대해 추가 확인서 작성 및 소명자료 제출하도록 하겠음.

**4. 본인은 위 기재한 사실이 모두 진실임을 확인하며, 고의로 허위 사실을 기재하였을 경우 대한민국 형법 제227조에 따라 허위공문서작성죄로 처벌받을 수 있다는 사실을 인식하면서 본 확인서를 작성하였음.**

EX-YOO-S4-00052

2017.  7.  7.


인 천 지 방 검 찰 청   검 사   김 형 근


첨부    1. 2014. 10. 8.자 검찰 피의자신문조서(이강세) 사본 1부

       2. 2014. 10. 10.자 검찰 진술조서(박승일) 사본 1부. 끝.

EX-YOO-S4-00053

2017. 7. 7.


인 천 지 방 검 찰 청   검 사   김 형 근


첨부    1. 2014. 10. 8.자 검찰 피의자신문조서(이강세) 사본 1부

        2. 2014. 10. 10.자 검찰 피의자신문조서(박승일) 사본 1부. 끝.

EX-YOO-S4-00054

# 피 의 자 신 문 조 서

성     명 : 이강세

주민등록번호 : 410210-1405915

위의 사람에 대한 조세범처벌법위반 피의사건에 관하여 2014년 10월 8일  14:30경 인 천지방검찰청 1025호 검사실에서 검사 박광현은 검찰주사보 서대석을 참여하게 하고 피의자에 대하여 아래와 같이 신문하다.

문     피의자의 성명, 주민등록번호, 직업, 주거, 등록기준지 등을 말하시오.

답     성명은          이강세

　　　　주민등록번호는   410210-1405915                   (63세)

　　　　직업은          前 (주)아해 대표이사

　　　　주거는          대전 중구 오류동 175 삼성아파트 4-1201
　　　　　　　　　　　　현재 인천구치소 수감중(수감번호 : 477)

　　　　등록기준지는    대전 중구 대흥동 451-1

　　　　직장 주소는

　　　　연락처는

　　　　　　자택 전화 :            휴대 전화 : 010-3450-8586

　　　　　　직장 전화 :            전자우편(e-mail) :

입니다.

　　　검사는 피의사실의 요지를 설명하고 검사의 신문에 대하여 「형사소송 법」제244조의3의 규정에 의하여 진술을 거부할 수 있는 권리 및 변호인의참 여 등 조력을 받을 권리가 있음을 피의자에게 알려주고 이를 행사할 것인지 그 의사를 확인하다.

EX-YOO-S4-00055

# 진술거부권 및 변호인 조력권 고지 등 확인



> 1. 귀하는 일체의 진술을 하지 아니하거나 개개의 질문에 대하여 진술을 하지 아니할 수 있습니다.
> 1. 귀하가 진술을 하지 아니하더라도 불이익을 받지 아니합니다.
> 1. 귀하가 진술을 거부할 권리를 포기하고 행한 진술은 법정에서 유죄의 증거로 사용될 수 있습니다.
> 1. 귀하가 신문을 받을 때에는 변호인을 참여하게 하는 등 변호인의 조력을 받을 수 있습니다.

문  피의자는 위와 같은 권리들이 있음을 고지받았는가요

답  예 

문  피의자는 진술거부권을 행사할 것인가요

답  아니오 

문  피의자는 변호인의 조력을 받을 권리를 행사할 것인가요

답  아니오 

이에 검사는 피의사실에 관하여 다음과 같이 피의자를 신문하다.

EX-YOO-S4-00056

문  피의자는 형사처벌을 받은 사실이 있는가요

답  없습니다.

문  가족관계는 어떻게 되는가요

답  처와 아들 둘, 딸 셋이 있습니다. 자녀들은 모두 출가한 상태고 현재 처와 함께 위 주소지에서 살고 있습니다.

문  학력 및 사회경력은 어떠한가요

답  학력은 충남 논산시에 있는 가야곡 초등학교 중퇴이고, 사회경력은 대전에서 33년 동안 주유소를 운영하다가 2003년경부터 2008년경까지 (주)새천년의 대표이사로 재직하였고, 1년 정도 쉬다가 2009. 7.경부터 2012. 5.경까지 (주)아해의 대표이사로 재직하였습니다.

문  어떤 종교를 믿는가요

답  1984년경부터 기독교복음침례회 신도로 활동하고 있습니다.

문  33년간 주유소만 운영하다가 2003년경 새천년의 대표이사로 취임하게 된 경위는 어떠한가요

답  예전에 (주)세모에 5억원 정도를 투자했는데 세모가 부도나면서 주유소도 문 닫고 어렵게 생활하고 있을 때 (주)세모의 총무부장으로 있던 이재영 씨가 권유해서 새천년을 설립함과 동시에 대표이사로 취임하게 된 것입니다.

문  2009년경 (주)아해의 대표이사로 취임하게 된 경위는 어떠한가요

답  새천년 대표이사를 그만두고 집에서 쉬고 있을 때 다시 아이원아이홀딩스의 대표이사였던 김필배 사장이 이성환 씨와 공동대표로 아해를 한 번 운영해 보라고 권유해서 아해 대표이사를 맡게 된 것입니다.

- 3 -

EX-YOO-S4-00057

문  재산상태 및 월수입은 어떻게 되는가요

답  안성시 보개면에 있는 밭이 시가로 4,000만원 정도 나가는데 이미 국세청에서 압류를 한 걸로 알고 있습니다. 지금 사는 집은 보증금 1억원의 전세인데 제 처 명의로 계약을 한 것입니다. 아해 대표이사를 그만 둔 2012. 5.경 이후부터는 수입이 전혀 없어서 자녀들이 조금씩 보태어 주는 돈으로 생활을 해 왔습니다.

문  현재 건강상태는 어떤가요

답  하지불안정증으로 치료를 받고 있어서 수감생활이 많이 힘든 상태입니다.

문  피의자는 현재 인천구치소에 수감되어 재판을 받고 있는데, 어떤 내용인가요

답  (주)아해의 대표이사로 재직하면서 2011. 10.경부터 2012. 4.경까지 유병언 회장님에게 고문료 명목으로 2억 4,000만원, 2009. 7.경부터 2012. 4.경까지 유혁기에게 상표권 사용료 명목으로 28억 8,000여만 원 상당을 회사자금으로 지급한 횡령 혐의와 2009. 8.경부터 2012. 5.경까지 아이원아이홀딩스 및 헤마토센트릭라이프에 합계 2억 1,800만원을 컨설팅비용으로 지급하고, 2009. 10.경부터 2012. 3.경까지 김필배와 공모하여 헤마토센트릭라이프에 4억 2,600여만 원을 달력 및 사진집 등 구입비용으로 지급하여 회사에 재산상 손해를 가한 배임 혐의로 구속되어 재판을 받고 있습니다.

문  피의자는 위 혐의에 대하여 인정하는가요

답  예, 법정에서 혐의내용에 대하여는 전부 인정하고, 제가 대표이사로 재직하는 동안 이루어진 범죄행위에 대하여는 책임을 통감하고 선처를 구하고 있

- 4 -

EX-YOO-S4-00058

습니다.

문    재판선고일은 언제인가요

답    2014. 11. 5.로 선고일이 잡혔습니다.

문    피의자는 2009. 7. 2.경부터 2010. 3. 24.경까지는 이성환과 함께 (주)아해의
      공동대표이사로, 이후 2010. 3. 25.경부터 2012. 5. 29.경까지는 대표이사로 재
      직한 것으로 확인되는데 맞는가요

답    예, 맞습니다.

문    (주)아해의 지분구조는 어떻게 되는가요

답    아이원아이홀딩스가 최대주주로 40% 이상을 보유한 것으로 알고 있습니다.

문    피의자는 아해 주식의 몇 퍼센트를 보유하고 있는가요

답    제 명의로 9%를 보유하고 있는데 실제 제 소유는 아니고 교회 소유입니다.

문    피의자 명의로 아해 주식 9%를 보유하기로 한 것은 누가 결정한 것인가요

답    아해 이사회에서 결정한 것입니다.

문    유병언, 유혁기, 유대균 등 유병언 회장 일가가 소유한 아해 주식은 없는가
      요

답    유병언 회장님 일가에서 아해 주식을 직접 소유하고 있지는 않고, 아해의 최
      대주주인 아이원아이홀딩스 주식을 많이 갖고 있는 것으로 알고 있습니다.

문    아이원아이홀딩스의 지분구조에 대하여는 아는가요

답    회장님 일가가 많이 갖고 있다는 정도만 알지 정확한 지분구조까지는 모릅
      니다.

문    본건 고발요지는 2006. 1.경부터 2013. 12.경까지 키솔루션의 유혁기로부터

- 5 -

EX-YOO-S4-00059

상표권을 제공받은 사실이 없음에도 상표권사용료를 지급하고 공급가액 합계 6,118,502,000원의 허위세금계산서를 수취한 후 동액 상당의 매입세금계산서합계표를 세무당국에 제출하고,

2008. 8.경부터 2013. 12.경까지 (주)아이원아이홀딩스로부터 경영자문을 받은 사실이 없음에도 컨설팅비용을 지급하고 공급가액 합계 325,000,000원의 허위세금계산서를 수취한 후 동액 상당의 매입세금계산서합계표를 세무당국에 제출하고,

2011. 10.경부터 2013. 12.경까지 붉은머리오목눈이의 유병언으로부터 경영자문을 제공받은 사실이 없음에도 고문료를 지급하고 공급가액 합계 540,000,000원의 허위세금계산서를 수취한 후 동액 상당의 매입세금계산서합계표를 세무당국에 제출하고,

더불어, 위 금액 상당을 가공비용으로 계상하여 1,404,107,329원의 법인세를 포탈한 것인데 어떻게 생각하는가요

답 　법정에서 횡령, 배임 사실에 대하여 전부 인정하고 선처를 구한 입장에서 횡령, 배임 행위에 의해 결과적으로 세금부분도 책임이 따르게 되는 건데 그걸 이제 와서 부인하지는 않겠습니다. 하지만 구체적으로 어떤 게 허위세금계산서인지 또 어떻게 하여 법인세 포탈이 되는지는 사안별로 물어주시면 답변하겠습니다.

문 　피의자는 유혁기와 상표권사용계약서를 작성한 사실이 있는가요

답 　없습니다. 이전 대표이사 이성환이 계약서를 작성하고 계속 갱신이 되고 있던 상황이었습니다.

EX-YOO-S4-00060

문　하지만, 매달 전달 매출액의 1.6%가 지급되고 있다는 사실은 알고 있었지요

답　예.

문　유혁기의 상표권 사용 계약이나 사용료 지급에 관하여 유혁기와 직접 상대하였는가요

답　아니요, 제가 대표이사로 취임하기 전부터 경리부장이 알아서 처리를 하고 있었기 때문에 저는 내부결재를 하기만 했지 특별히 챙길 필요도 없었습니다.

문　피의자 회사에서 유혁기의 어떤 상표를 사용하고 있는가요

답　'아래'라는 회사 명칭 및 로고와 아해가 생산한 거의 전 제품명을 유혁기가 등록한 상표로 사용했습니다.

문　피의자는 동종 업계, 아니면 타 업종을 회사라도 이런 식으로 상표권 사용료를 지급하는 업체를 본 적 있는가요

답　없습니다.

문　매출액의 1.6%나 되는 불필요한 비용을 지출하였더라도 실제 유혁기가 등록한 상표를 사용한 것 또한 사실인가요

답　예, 지금 횡령, 배임 사건 법정에서도 진술했듯이 회사에서 유혁기가 등록한 상표를 사용한 것은 분명한 사실입니다. 하지만 그 비용이 과다하고 불필요한 면이 있었던 점은 저도 인정하고 있습니다.

문　피의자가 대표이사로 취임한 2009. 7.경 이후에 상표권사용료의 불합리성에 대하여 유혁기나 아이원아이홀딩스 측에 항의한 적은 있는가요

답　유혁기나 김필배와 같은 윗선에 항의한 적은 없고, 사용료를 0.5%에서 1.6%

- 7 -

EX-YOO-S4-00061

로 올릴 때 아이원아이홀딩스에서 내려 보낸 상근 감사 최형태에게 너무한 거 아니냐는 식으로 항의를 해봤지만, 최형태로부터 위에서 결정한 것이라 어쩔 수 없다는 식의 답변을 듣고 그 뒤로는 일체 언급을 하지 않았습니다.

문   아이원아이홀딩스에 지급한 경영자문료에 대하여 질문하겠습니다. 피의자가 아해의 대표이사로 재직하는 동안 아이원아이홀딩스의 대표이사는 누구였는 가요

답   김필배 사장이었습니다.

문   대표이사로 재직하는 동안 김필배나 변기춘을 얼마나 자주 만났는가요

답   아니요, 그 사람들은 회장님 측근인데 사실 저는 회장님과 가깝게 지내는 사이가 아닙니다. 제가 회장님보다 나이가 더 많아서 그런지 회장님도 저를 좀 불편해 하셔서 제가 먼저 찾아뵙기가 어려운 관계입니다. 가끔 금수원에 예배보러 가서 만나면 인사나 하는 정도지 회사 얘기를 일절 하지도 않습니다.

문   피의자가 대표이사로 재직하는 동안 아이원아이홀딩스에는 경영자문료로 얼마씩을 지급하였는가요

답   매월 500만원 씩을 지급하였습니다.

문   피의자가 대표이사로 재직하는 중 아이원아이홀딩스와의 자문용역계약서에 서명날인 한 적이 있는가요

답   직접 서명날인 한 적은 없습니다, 담당부서에서 내부결재로 자문용역계약 건을 건의 올려서 결재를 했고, 담당부서에서 계약서에 제 대표이사 직인을 날인 했을 겁니다.

이때 기록139~141에 편철된 '경영자문 용역계약서'를 보여주며,

EX-YOO-S4-00062

무래도 그쪽에는 전무가들도 많고 아해의 지주회사이다 보니까 저희 입장에서는 그쪽 도움을 많이 받을 수밖에 없는 입장이니까요.

문  위 색인목록표에 나온 자문보고서 의 아이원아이홀딩스로부터 받은 자문 내용을 입증할 만한 자료가 있는가요

답  더 있다면, 실무를 책임진 이재영 사장이 저보다 더 잘 알겠습니다.

문  유혁기와 유대균은 아해의 최대주주인 아이원아이홀딩스 최대주주인데 이들이 아해 경영에 관여한 부분도 있는가요

답  유혁기나 유대균에게 직접 지시받은 건 전혀 없습니다. 제 입장에서는 김필배 사장이 지시하는 내용이 일정부분은 김필배 사장 개인적인 의견일 수도 있지만 대부분 유혁기의 지시라는 생각은 했습니다.

문  유혁기가 차기 그룹의 오너라는 사실은 알고 있었는가요

답  예, 저뿐만 아니라 신도나 모임사람들 모두 그렇게 생각하고 있습니다.

문  유대균도 그룹 경영에 관여한 부분이 있는가요

답  전혀 없습니다. 유대균은 예술하는 친구라서 사업에 전혀 관심이 없고, 회장님도 유혁기를 후계자로 내세우려고 한다는 사실은 누구나 다 아는 사실입니다.

문  유병언에게 지급한 고문료 관련해서 질문하겠습니다. 2011. 1. 3.자 작성된 '고문위촉 계약서'를 보면 2011. 10. 31. 6,000만원, 2011. 11. 30. 6,000만원, 2011. 12. 31. 6,000만원을 지급해서 총 1억 8,000만원을 3개월 동안 지급하기로 했는데, 2012. 1. 1.자 새로 작성한 계약내용에는 매월 1,500만원을 지급하는 걸로 변경되었는데 왜 그런가요

문  피의자가 대표이사로 재직할 때 피의자가 결재해서 작성된 계약서가 맞는가
  요

답  예, 맞습니다.

문  아이원아이홀딩스로부터는 어떤 경영자문을 받았는가요

답  한 달에 한두 번 씩 대표이사로서 지주회사 대표인 김필배 사장을 찾아가서
  회사 운영상황을 보고하면, 잘못 된 점에 대하여 지적도 받고 경영자문을 해
  줍니다. 그리고 실무적으로는 여러 가지 경영자문보고서를 만들어서 내려주
  면 실무진들이 그 보고서를 참고해서 일을 하였습니다.

이때 기록 159~163에 편철된 색인목록표를 보여주며 질문하다,

문  여기 보면 아이원아이홀딩스에서 (주)아해에 보내 준 경영자문보고서 목록을
  정리한 것으로 보이는데 맞는가요

답  예, 맞습니다.

문  피의자는 대표이사로서 위와 같은 자문보고서가 내려오면 검토해 보는가요

답  아니요, 저는 전문경영인이 아니라서 봐도 잘 모르고, 밑에 실무진들이 직접
  보고 참고할 뿐입니다. 그렇지만 자문보고서 같은 자료들이 내려온 건 사실
  입니다.

문  위 경영자문보고서들이 실제 회사 경영에 도움이 됐는가요

답  사실 저는 경영에 대해서 잘 모릅니다. 이성환과 공동대표일 때는 이성환이
  대부분 일을 처리했고 저는 옆에서 일을 배운 입장이었고, 단독대표이사일
  때는 서울에서 내려보낸 이재영 전무가 알아서 처리했거든요. 그래도 아이원
  아이홀딩스에서 내려보낸 자료들은 도움이 많이 된 걸로 알고 있습니다. 아

- 9 -

EX-YOO-S4-00064

답　　제가 알기로 2011. 1.경 1년에 1억 1,800만원을 유병언 회장에게 고문료를 지급하기로 결정을 하였는데 회장님 개인에게 직접 지급할지 사업자를 내고 사업자 계좌로 지급할지 고민하다가 10월경 쯤에 사업소득으로 신고하기로 하고 붉은머리오목눈이로 사업자등록을 한 것으로 압니다. 그러다가 연 말 쯤에 1억 8,000만원을 3개월에 나눠 한꺼번에 지급한 것이고요.

문　　결국, 자문을 받고 그에 대한 대가를 지급했다기 보다, 유병언 개인에게 용돈이건 생활비건 일정금액을 보내기 위해 고민을 하다가 사업자등록을 내고 사업소득으로 신고하게 하도록 결정을 한 것으로 보이는데 어떤가요

답　　예, 위(아이원아이홀딩스 김필배)에서 결정해서 지시한 것이기 때문에 저희는 따를 수밖에 없었습니다.

문　　피의자의 공소장 내용을 보면, 「피고인은 김필배로부터 "회사 원로인 유병언 회장에게 고문료 명목으로 돈을 좀 챙겨 드리자"라는 제안을 받아, 2011. 1.경 당시 유병언이 피해회사의 경영과 관련하여 상시적이고 특별한 자문을 하여줄 것이 아님에도 유병언에게 자금을 지원하기 위해 형식적으로 유병언(2011. 10.경 '붉은머리오목눈이'로 사업자등록)과 매달 15,000,000원을 지급하는 내용의 '고문위촉' 계약을 체결한 후」라고 기재되어 있는데 법정에서 인정한 부분인가요

답　　예, 전부 인정했습니다.

문　　피의자가 직접 김필배 사장에게 위와 같은 지시를 받은 것인가요

답　　아니요, 당시 전무이사였던 이재영이 김필배와 직접 통화한 것이고, 저는 이재영으로부터 위와 같은 내용을 보고받고 '위에서 하라면 어쩔 수 있냐, 하

- 11 -

EX-YOO-S4-00065

라는 대로 해야지'하는 식으로 지시를 했습니다.

문  결국, 유병언, 즉 붉은머리오목눈이에 지급한 고문료는 고문료 형식을 취했을 뿐 아무런 자문 및 용역의 제공 없이 무상으로 지급한 자금으로 판단되는데 인정하는가요

답  예, 인정합니다. 평소 회장님을 존경하는 입장에서 도움되는 말씀을 많이 듣긴 했어도 아해라는 회사 입장에서 직접적으로 도움이 된 건 없습니다.

문  지금까지의 진술을 정리해보면, 유혁기에게 제공받은 상표권이나 아이원아이홀딩스로부터 제공받은 자문용역은 그 비용의 과다를 떠나 제공받은 용역을 일정부분 인정할 수 있어 보이지만, 유병언에게 지급한 고문료에 대한 자문은 전혀 받은 게 없어 보이는데 어떤가요

답  매월 1,500만원의 고문료를 지급할 만한 자문을 받은 건 없습니다. 사실 정기적으로 고문료를 지급하는 것에 상응하게 자문을 종종 받거나 한 것은 전혀 없습니다. 제가 생각하기로는 김필배 등 그룹 고위 관계자들이 회장님 생활비를 마련해드린다는 생각이 앞서서 고문료라는 명목을 붙여 돈을 받아가게 된 것 같습니다.

문  김필배 사장이 위와 같은 고문료를 요구할 때 거절할 수는 없었는가요

답  그 당시 저는 전무이사였던 이재영에게 보고받고 내부결재를 거쳐 최종 결정을 한 것인데, 저나 이재영 모두 김필배 사장의 지시를 거부할 수 있는 위치가 아니었습니다.

문  피의자는 유대균, 유병언, 아이원아이홀딩스에 과다 내지 가공 지급한 상표권사용료와 자문료들이 법인세 부과 시 비용으로 계상되어 그 만큼의 법인세가

EX-YOO-S4-00066

감면된다는 사실은 알고 있지요

답 예, 전문적인 정도는 아니지만 회사가 비용을 많이 지출하면 법인세 결산 시에는 감면된다는 정도는 알고 있습니다.

문 피의자는 조금 전에 2003년경부터 2008년경까지 (주)새천년의 대표이사로 재직하였다고 하였지요

답 예, 그렇습니다.

문 (주)새천년은 2003. 1. 23.경 설립되어 2008. 8. 13.경 해산된 것으로 나타나는데 피의자가 (주)새천년의 해산시까지 근무한 것인가요

답 제가 (주)새천년의 해산시까지 근무한 것이 맞습니다.

문 2008. 3.경 (주)새천년이 보유하고 있던 (주)천해지 주식 112만주를 (주)아이원아이홀딩스에 56억원에 양도한 사실이 있지요

답 예, 그렇습니다.

문 국세청의 고발 내용에 의하면, 당시 (주)천해지 주식의 1주당 가치에 대해서 박상배 세무사는 1주당 13,198원으로 평가하여 제출하였음에도, 당시 (주)새천년에서는 위 주식을 1주당 액면 가액인 5,000원에 양도하기로 하여 총 양도금액을 56억원에 양도하였고 이는 시가를 기준으로 할 때 정상가액의 70%보다도 훨씬 밑도는 수준으로 저가양도를 한 것이라고 하는데, 그렇지 않은가요

답 그 정도 금액으로 저가로 양도를 한 사실은 인정합니다.

문 어떤 경위로 저가양도를 하게 된 것인가요

답 제 기억으로는 그룹 지주회사인 (주)아이원아이홀딩스 관계자 박승일이 어차피 그룹 계열사 간에 자산을 옮기기만 하는 부분이니 저가에 양도하라는 지

EX-YOO-S4-00067

시를 전달해와서 그 결정에 따른 것인데 박승일이 전달한 지시가 유병언 회장님의 지시인지 유혁기 사장의 지시인지 김필배 부회장의 지시를 전한 것인지는 정확히 모르겠습니다.

문  위 주식 양도 당시에 (주)새천년의 주식 30% 지분이 피의자 명의로, 35% 지분이 이승기 명의로, 35% 지분이 이재옥 명의로 되어 있었는데 그 지분의 실소유자는 누구인가요

답  저는 교회(기독교복음침례회) 소유 지분이라고 생각합니다.

문  피의자는 서울지방국세청 세무조사 당시에 (주)새천년의 피의자, 이승기, 이재옥 명의 지분이 모두 유병언 회장의 주식이라고 진술하지 않았나요

답  제가 그 3명 명의의 주식이 차명 주식이라는 것은 인정했는데 유병언 회장 개인 소유라는 것은 아니고 교회 소유인데 교회의 총운영자인 유병언 회장이 실질적으로 관리하는 지분이라는 취지로 진술을 했던 것 같습니다.

문  (주)새천년의 안성지점 운영을 위해 (주)새천년의 대표이사로 일시 근무한 적이 있는 신재직은 당시 회사 상황을 볼 때 피의자 등 3명 명의의 주식은 차명 지분으로써 그 주식의 실제 소유자는 유병언 회장으로 보였다고 진술하고 있는데 그렇지 않은가요

답  저는 (주)세모 부장이던 이재영이 (주)새천년의 대표이사를 저한테 맡아달라는 얘기를 전하면서 저를 포함해서 이재옥, 이승기 명의로 주식 명의를 맡아달라고 해서 차명이라는 것만 정확히 알고 있고 그 주식 취득의 자금을 누가 실제로 대었고 누가 실제 소유자인지는 정확히는 모릅니다. 제 생각에 교회 것이 아니겠나 추측하는 정도입니다.

- 14 -

695

EX-YOO-S4-00068

문    그러면 피의자는 자신에게 (주)새천년의 대표이사를 맡아달라는 얘기를 전했던 이재영이 지분의 실소유관계를 정확히 알 것이라는 얘기인가요

답    예, 그렇습니다.

문    국세청의 고발 내용은, (주)새천년의 주식 지분의 실제 소유자는 유병언이고 (주)아이원아이홀딩스의 지분 44% 정도를 유병언의 자녀들 명의로 되어 있어서 (주)새천년과 (주)아이원아이홀딩스는 특수관계에 있고 특수관계에 있는 양도인과 양수인 간에 주식을 양도하면서 정상 가격의 70%보다도 훨씬 적은 37%대 가격으로 저가양도하면서 양도인과 양수인 간의 특수관계가 드러나지 않도록 (주)새천년의 주식 지분을 실제 소유자인 유병언이 아닌, 피의자 등 3명 명의로 명의위장을 해두어 조세를 포탈한 혐의가 있다는 것인데, 실제 조세포탈 목적으로 유병언 회장의 지분을 피의자 등 3명이 명의위장을 해둔 것이 아닌가요

답    저희 3명 앞으로 지분이 명의신탁이 된 것은 회사 설립 직후부터 수년간 그런 상태로 있어 왔던 것이고, (주)천해지 지분을 양도하면서 조세포탈을 하기 위해 일부러 저희 3명이 그 거래를 앞두고 차명으로 명의위장을 한 적은 없습니다. 저가양도를 한 사실은 인정하지만 그 거래를 앞두고 일부러 세무당국을 속이기 위해 명의를 위장하거나 서류를 허위로 꾸민 적은 없습니다. 회사 지분이 명의신탁된 상태로 있었던 것은 어느 날 지분을 양도할 일이 생길지도 몰랐던 회사 설립 당시부터 그랬을 뿐입니다.

문    그러면 회사 설립시부터 지분에 대해 피의자 등 3명에게 명의를 맡겨둔 이유는 무엇인가요

696

EX-YOO-S4-00069

답    유병언 회장님이나 유혁기 사장 같은 그룹 고위층의 지시를 전달받은대로
      (주)새천년 설립 무렵부터 제 명의를 걸어준 것일 뿐이지 왜 그 당시부터 저
      한테 (주)새천년의 지분 명의를 빌려달라고 한 것인지는 잘 모르겠습니다.

문    (주)새천년이 보유한 본건 (주)천해지 주식의 양도 과정에서 유대균이 개입한
      부분이 있나요

답    유대균은 예술가로 활동하면서 그룹 계열사에서 주는 상표권수수료 등을 받
      은 사실은 있는 것으로 알고 있으나 그룹 계열사 운영에 관여한 것은 없는
      것으로 알고 있고, (주)새천년의 운영에도 관여한 적이 없으며 (주)천해지 주
      식을 양도하는 과정에도 개입한 것이 없는 것으로 알고 있습니다.

문    (주)천해지 주식을 양수한 (주)아이원아이홀딩스로서는 본건 저가양도로 엄청
      난 수혜를 보는 입장인데 유대균도 (주)아이원아이홀딩스 지분을 19% 이상
      가지고 있는데 유대균이 저가양수를 받기 위해 유병언 일가의 일원으로서 본
      건 의사결정에 개입하였을 가능성이 있는 것 아닌가요

답    양수하는 회사의 대주주여서 덕을 보는 입장이니 유대균도 유혁기 등 지주회
      사 관계자로부터 그런 얘기를 전해듣고 동의를 하였을 수 있는 부분이기는
      한데 구체적으로 지주회사 쪽에서 누가 그런 의사결정에 개입하였는지 정확
      히는 모르겠습니다.

문    이상 사실대로 진술하였는가요

답    예.

문    피의자에게 유리한 증거나 더 하고 싶은 말이 있는가요

답    없습니다.

EX-YOO-S4-00070

문    조서에 진술한 대로 기재되지 아니하였거나 사실과 다른 부분이 있는가요

답    (자필 기재)  없읍니다 



68

EX-YOO-S4-00071

위 조서를 진술자에게 열람하게 하였던 바 진술한대로 오기나
증감 변경할 것이 전혀 없다고 말하므로 간인한 후 서명날(무)
인케 하다.

진 술 자 이 강세 

2014. 10. 8.

인천지방검찰청



검 사 박 광헌

검찰주사보 서 대 석

699

EX-YOO-S4-00072

# 수사 과정 확인서

| 구분 | 내용 |
|---|---|
| 1. 조사 장소 도착 시각 | 14:30 |
| 2. 조사 시작 시각<br><br>및 종료 시각 | ☐ 시작 시각 : 14:45<br>☐ 종료 시각 : 18:02 |
| 3. 조서 열람 시작 시각<br><br>및 종료 시각 | ☐ 시작 시각 : 18:02<br>☐ 종료 시각 : 18.00 28 |
| 4. 기타 조사과정 진행경과 확인에 필요한 사항[조사장소의 도착시각과 조사시작 시각에 상당한 시간적 차이가 있는 경우 그 이유, 조사중단 이유, 중단시각, 재개시각 등(검찰사건사무규칙 제13조의4 ②항)] | 없 음 |
| 5. 조사과정 기재사항에 대한 이의제기나 의견진술 여부 및 그 내용 | 없 음 |

2014. 10. 8.

검사 박광현은 이강세를(을) 조사한 후, 위와 같은 사항에 대해 이강세(으로)부터 확인받음.

확인자 : 이 강세 ㊞

검 사 : 박광현 

nw

EX-YOO-S4-00073

# 진 술 조 서

성        명:  박승일

주민등록번호:  590108-1464629

직        업:  前 (주)아이원아이홀딩스 감사

주        거:  경기 성남시 분당구 정자동 111 한솔마을아파트 210동 302호
              현재 인천구치소 수감중(수감번호 : 1484)

등 록 기 준 지 :

직 장 주 소 :

연 락 처 :   (자택 전화)   031-719-1939      (휴대 전화)   010-9400-7081

            (직장 전화)   02-3458-8111       (전자우편)

위의 사람은 피의자 유병언 등에 대한 조세범처벌법위반 사건에 관하여
2014. 10. 10. 인천지방검찰청 1025호 검사실에 임의 출석하여 다음과 같이
진술하다.


1. 피의자와의 관계

- 유병언 회장님 밑에서 계열사 임직원으로 재직하면서 회사운영에 일정 부분 관여
  한 사실만 있을 뿐 회장님과 직접적인 친인척 관계는 없습니다.


1. 피의사실과의 관계

- 아이원아이홀딩스 이사 및 감사로 재직 시, (주)새천년이 (주)아이원아이홀딩스에
  (주)천해지 주식을 저가 양도한 것과 관련하여 지득한 사실에 대하여도 아는 한도
  내에서 진술하겠습니다.

EX-YOO-S4-00074

# 진술거부권 및 변호인 조력권 고지 등 확인

1. 귀하는 일체의 진술을 하지 아니하거나 개개의 질문에 대하여 진술을 하지 아니할 수 있습니다.
1. 귀하가 진술을 하지 아니하더라도 불이익을 받지 아니합니다.
1. 귀하가 진술을 거부할 권리를 포기하고 행한 진술은 법정에서 유죄의 증거로 사용될 수 있습니다.
1. 귀하가 신문을 받을 때에는 변호인을 참여하게 하는 등 변호인의 조력을 받을 수 있습니다.



문   진술인은 위와 같은 권리들이 있음을 고지받았는가요

답   예 

문   진술인은 진술거부권을 행사할 것인가요
답   아니민

문   진술인은 변호인의 조력을 받을 권리를 행사할 것인가요
답   아니민.

2014. 10. 10.

진술인 박능일 

이때 검사는 진술인을 상대로 다음과 같이 문답을 하다.

문  진술인이 박승일인가요

답  예.

문  진술인은 현재 어떤 이유로 구속되어 있는가요

답  유병언 일가의 그룹 계열사 자금 횡령 행위에 대한 공범으로 기소되어 재판
   중이며, 2014. 11. 5.선고를 앞두고 있습니다.

문  금일 유병언 등이 (주)새천년이 보유한 (주)천해지 주식을 (주)아이원아이홀딩
   스에 저가 양도하여 법인세를 포탈한 혐의에 대하여 진술인을 참고인 신분으
   로 조사할 예정인데, 아는 대로 진술할 용의가 있는가요

답  예. 제가 아는 한도 내에서 전부 진술하겠습니다.

문  진술인은 2007. 12. 27.경부터 2014. 3. 16.경까지 (주)아이원아이홀딩스의 이
   사로 재직하고, 2014. 3. 17.경까지는 그곳 감사로 재직한 것으로 확인되는데
   맞는가요

답  예, 맞습니다.

문  진술인은 (주)아이원아이홀딩스가 2008. 3. 5.경 (주)새천년이 보유한 (주)천해
   지의 주식 112만주를 액면가 5,000원, 합계 56억원에 양수하기로 계약을 체결
   하고, 같은 날 계약금 5억 6,000만원, 같은 해 3. 21.경 잔금 50억 4,000만원을
   지급하여 거래를 마친 사실을 알고 있지요

답  예, 정확한 숫자나 액수는 기억을 못하지만 그 당시 거래과정에 대하여는 기
   억을 하고 있습니다.

문  위 거래 당시 (주)새천년의 주식 보유현황에 대하여 아는가요

EX-YOO-S4-00076

답    이강세, 이승기, 이재옥 세 명이 주식을 나눠 갖은 사실은 기억을 하는데 정확히 몇 퍼센트 씩 갖고 있는지는 기억이 없습니다.

문    자료에 따르면 이강세 30%, 이승기, 이재옥이 각각 35%를 소유하고 있었는데 기억나는가요

답    거의 비슷하게 나눠 갖고 있었던 걸로 기억합니다.

문    위 세 사람이 새천년의 주식을 보유하게 된 경위에 대하여는 아는 대로 진술해 보세요

답    그 당시는 아이원아이홀딩스 설립 전이어서 (주)새천년 일에 전혀 관여한 바가 없어서 그 사람들이 어떻게 해서 새천년 주식을 갖게 된 것인지는 전혀 알지 못합니다.

문    위 천해지 주식 양도양수 시, (주)새천년의 대표이사였던 이강세는 "그룹 지주회사인 (주)아이원아이홀딩스 관계자 박승일이 어차피 그룹 계열사 간에 자산을 옮기기만 하는 부분이니 저가에 양도하라는 지시를 전달해와서 그 결정에 따른 것인데 박승일이 전달한 지시가 유병언 회장님의 지시인지 유혁기 사장의 지시인지 김필배 부회장의 지시를 전한 것인지는 정확히 모르겠습니다"라고 진술하고 있는데 어떤가요

답    예, 대충 기억이 납니다. 그 당시 아이원아이홀딩스의 최고 결정권자인 김필배와 유혁기 두 사람에게 지시를 받은 걸로 기억합니다.

문    (주)새천년에서는 박상배 세무사를 통해 그 당시 천해지의 1주 당 가치를 13,198원으로 평가를 했음에도 아이원아이홀딩스에 액면가인 5,000원에 저가 양도하게 되는데 그러한 결정과정에 대하여 아는 게 더 없는가요

답  그 당시 저와 김동환은 김필배 사장이나 유혁기가 지시하면 그대로 진행을 하는 실무자일 뿐 의사결정과정에 참여할 위치가 전혀 아니었습니다. 어렴풋이 기억나는 건 삼일회계법인에 천해지의 주식을 액면가로 저가양도 받아도 법적인 문제가 없는지 자문을 받은 결과, 아이원아이홀딩스와 새천년 간에 특수관계자 신분이 아니므로 저가 양도해도 세법상 문제가 되지 않는다는 자문을 받고 윗선에서 그와 같은 결정을 내리고 저와 김동환은 그대로 일을 진행했다는 것입니다.

문  진술인은 2008. 3.경 주식 양도양수 시점에는 이사였으므로 기억할 것으로 보이는데, 새천년에 지급한 주식양수대금 56억원의 행방은 어떻게 되는가요

답  새천년에서 법인세 납부하고, 법인해산하면서 주주에게 배당금 지급하고 청산을 한 것으로 아는데 정확한 내막에 대해서는 아는 게 없습니다.



문  그럼 아이원아이홀딩스에서는 위 주식양수대금 56억원을 어떻게 마련하였는가요

답  아마 유상증자를 통해서 마련하였을 겁니다.

문  진술인도 아이원아이홀딩스 주식을 보유하고 있습니다.

문  예, 저도 2008.경 유상증자 시 몇 주인지는 정확하지 않지만, 금액으로 1,000만 상당의 주식을 사서 현재까지 보유하고 있습니다.

문  (주)새천년의 지분 구조가 이강세, 이승기, 이재옥 세 명 앞으로 되어 있던 것은 (주)천해지 주식 양도를 앞두고 3명 앞으로 지분을 이전했던 것인가요

답  제가 기억하기로 그건 아니고 수년 전에 (주)새천년을 설립할 당시부터 3명 앞으로 지분이 되어 있었던 것으로 알고 있습니다.

EX-YOO-S4-00078

문    그러면 (주)천해지 주식 양도를 앞두고 관련 서류를 실제와 달리 작성한 부분이 있었나요

답    실제와 달리 서류를 작성한 부분은 없습니다. (주)새천년의 지분이 실제 누가 소유자인지는 저도 정확히 모르는 부분이지만 만일 (주)새천년의 지분이 차명지분이라 하더라도 이는 (주)새천년을 설립하였을 당시부터 수년간 지분 구조가 3명 앞으로 되어 있는 상태로 지속되어 와서 (주)천해지 양도 당시 그간 계속되어 온 지분 명의에 따라 서류를 작성하였던 것에 불과하고, 세무관서를 속이거나 세무조사에 잘 드러나지 않게 하기 위해 (주)천해지 양도를 앞두고 의도적으로 지분을 제3자 명의로 위장하거나 그와 비슷한 허위 서류를 작성하거나 한 것은 전혀 없습니다. 그런데 (주)새천년의 지분 실소유관계에 대해서는 아까 말씀드린 것처럼 저도 정확히는 모르는 부분인데 김필배와 유혁기와 같은 그룹 고위층이 알 수 있는 부분이라 생각됩니다.



문    이상 사실대로 진술하였가요

답    예.

문    피의자에게 유리한 증거나 더 하고 싶은 말이 있는가요

답    없습니다.

문    조서에 진술한 대로 기재되지 아니하였거나 사실과 다른 부분이 있는가요

답    (자필 기재) 없읍니다. 

위 조서를 진술자에게 열람하게 하였던 바 진술한대로 오기나 증감 변경할 것이 전혀 없다고 말하므로 간인한 후 서명날(무)인케 하다.

진 술 자  박 승 일 

2014. 10. 10.

인천지방검찰청

검      사  박 광 현

검 찰 주 사 보  서 대 석

# 수사 과정 확인서

| 구분 | 내용 |
|---|---|
| 1. 조사 장소 도착 시각 | 13:50 |
| 2. 조사 시작 시각<br><br>및 종료 시각 | ☐ 시작 시각 : 13:50<br>☐ 종료 시각 : 16:12 |
| 3. 조서 열람 시작 시각<br><br>및 종료 시각 | ☐ 시작 시각 : 16:12<br>☐ 종료 시각 : 16:20 |
| 4. 기타 조사과정 진행경과 확인에 필요한 사항[조사장소의 도착시각과 조사시작 시각에 상당한 시간적 차이가 있는 경우 그 이유, 조사중단 이유, 중단시각, 재개시각 등(검찰사건사무규칙 제13조의4 ②항)] | 없음 |
| 5. 조사과정 기재사항에 대한 이의제기나 의견진술 여부 및 그 내용 | 없음 |

2014. 10. 10.

검사 박광현은 박승일를(을) 조사한 후, 위와 같은 사항에 대해 박승일로(으로)부터 확인받음.

확인자 : 박승일

검사 : 박광현

# 추 가 확 인 서

대한민국 청주지방검찰청 검사인 본인 최혜경은 대한민국과 호주 간에 **1991. 1. 16.** 발효된 범죄인인도조약에 의거 도피 범죄인 김진홍을 호주로부터 한국으로 인도받기 위하여, 귀하의 **2017. 11. 16.**자 질의와 관련하여 다음과 같은 추가사항을 확인함

## 1. 확인자 자격

1.1. 본인은 대한민국 법무부 산하 청주지방검찰청 검사임. 본인은 2005년 국가 사법시험을 합격하고, 대법원 산하 사법연수원에 입소하여 2년간 훈련을 받았으며, 2008년 사법연수원의 수료와 동시에 대한민국에서 판사, 검사 또는 변호사로 활동할 수 있는 자격을 취득하였음. 2008년 2월부터 대한민국 대통령에 의하여 검사로 임용되어 근무하고 있음. 본인의 훈련과 경험 그리고 직책에 근거하여, 본인은 대한민국의 형사법과 형사절차에 익숙함. 본인은 2016. 11. 24. 김진홍에 대한 범죄인인도요청 당시 이 사건의 담당 검사인 박종엽의 승계검사로서 현재 이 사건을 담당하고 있음.

1.2. 대한민국법상 검사는 수사를 주관하는 자로서 경찰의 도움 없이 독자적으로 범죄사건을 수사할 수도 있고, 경찰을 지휘하여 수사를 할 수도 있음. 수사가 종결되면 검사는 사건의 기소여부를 독점적으로 결정하고, 기소 후에는 공소유지를 담당하며, 마지막으로 확정된 판결을 집행함. 기소독점주의 원칙상 검사가 기소한 사건에 대해서만 법원이 재판절차를 진행할 수 있고, 통상 검사는 범죄자의 신병을 확보하여 법원에 기소하고 있으나, 이 사건은 범죄자가 재판 중 해외로 도피하여 공시송달로 재판이 진행되어 유죄의 확정판결이 내려져 그 집행을 위하여 귀국에 범죄자의 인도를 청구하는 것임

## 2. 형의 시효 정지에 관한 규정

2.1. 대한민국 형법 제78조 5항에 따라 김진홍의 형의 시효는 5년입니다. 청주지방

EX-YOO-S4-00082

법원은 김진홍에 대하여 2013. 1. 8. 징역 6월을 선고하였고, 2013. 1. 16. 그 판결이 확정되었으므로, 시효 정지 사유가 존재하지 않는 이상 2018. 1. 16. 위 형의 시효가 만료됩니다.

2.2. 그러나 대한민국 형법은 다음과 같이 시효 정지 사유에 대하여 정하고 있습니다.

『형법 제79조 제2항 : 시효는 형이 확정된 후 그 형의 집행을 받지 아니한 자가 형의 집행을 면할 목적으로 국외에 있는 기간 동안은 진행되지 아니한다.』

2.3. 위 조항은 2014. 5. 14.에 신설되어 같은 날 시행된 조항이나, 형법 부칙에서 위 신설법 시행 당시 형의 시효가 완성되지 아니한 자에 대하여도 위 신설 조항을 적용하도록 규정하고 있습니다.

『형법 부칙<법률 제12575호, 2014.5.14.> 제2조 제1항 : 제79조제2항의 개정 규정은 이 법 시행 당시 형의 시효가 완성되지 아니한 자에 대해서도 적용한다.』

## 3. 김진홍의 형의 시효

3.1. 김진홍은 본 사건에 대하여 수사와 재판이 이루어지고 있는 사실을 알면서도 1심 재판 진행 중인 2012. 3. 17. 타이완으로 출국한 후 2012. 3. 18. 뉴질랜드를 거쳐 2012. 7. 16. 호주로 입국하여 현재까지 호주에 체류하고 있는바, 김진홍이 형의 집행을 면할 목적으로 국외에 있는 것으로 인정됩니다.

3.2. 따라서 본건 재판이 확정된 2013. 1. 16.부터 김진홍에 국외에 체류하고 있는 현재까지 위 형법 제79조 제2항에 따라 형의 시효가 정지되어 있는 상태입니다. 김진홍이 계속 국외에 머무르는 이상 형의 시효 정지 상태가 계속 유지되며 김진홍이 한국으로 입국하는 날로부터 5년의 시효가 진행될 것입니다.

## 4. 기타

4.1. 대한민국 형법 제80조는 '시효 정지 사유'와 별도로 '시효 중단 사유'를 규정하고 있습니다.

EX-YOO-S4-00083

『형법 제80조 : 시효는 사형, 징역, 금고와 구류에 있어서는 수형자를 체포함으로, 벌금, 과료, 몰수와 추정에 있어서는 강제처분을 개시함으로 인하여 중단된다.』

※ 시효가 '정지'되는 경우에는 정지 사유가 사라지면 기왕에 진행된 시효가 계속하여 진행되는 반면, 시효가 '중단'되는 경우에는 중단 사유가 사라지면 시효가 처음부터 다시 진행된다는 차이점이 있습니다.

4.2. 호주 측에서 김진흥을 체포할 경우 위 조항에 따라 김진흥에 대한 형의 시효가 중단될 것입니다.

4.3. 그러나 위에서 본 바와 같이, 이미 김진흥에 대하여 시효가 정지되어 있는 이상 중복하여 시효 중단을 적용할 필요는 없습니다.


## 5. 결론

5.1. 결국 재판이 확정된 2013. 1. 16.부터 김진흥에 국외에 체류하고 있는 현재까지 대한민국 형법 제79조 제2항에 따라 형의 시효가 정지되어 있는 상태로, 시효가 단 하루도 진행되지 않고 있는 상황입니다. 김진흥이 한국으로 입국하는 날로부터 5년 되는 날 형의 시효가 만료될 예정입니다.


본인은 위 기재한 사실이 모두 진실임을 확인하며, 고의로 허위 사실을 기재하였을 경우 대한민국 형법 제227조에 따라 허위공문서작성죄로 처벌받을 수 있다는 사실을 인식하면서 본 확인서를 작성하였음.


2017.  12.  13.


청 주 지 방 검 찰 청   검 사

EX-YOO-S4-00084