U.S. Department of State

# CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
# EVIDENCE ACCOMPANYING REQUISITIONS IN
# THE UNITED STATES FOR EXTRADITION
# AMERICAN FOREIGN SERVICE

Seoul, Republic of Korea  06-10-2019

Place and Date *(mm-dd-yyyy)*

Kimberly R. Furnish , Acting Consul General

Name                                     Title

United States of America at         Seoul, Korea

certify that the annexed papers, being         supporting documents

proposed to be used upon an application for the extradition from the United States of America

Hyuk Kee YOO

charged with the crime of     embezzlement, etc.

alleged to have been committed in         Republic of Korea

are proposed legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of         Republic of Korea

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this         day of         June 2019

Month and Year

Signature

Kimberly R. Furnish , Acting Consul General

Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2007



**Ministry of Justice**
Republic of Korea

Attorney General
Department of Justice
United States of America

## Supplement to Request for Extradition of YOO Hyuk Kee

I, Park Sang-ki, the Korean Minister of Justice,

1. on behalf of the Korean government, made the request for the extradition of YOO Hyuk Kee, currently under investigation for alleged violation of *Act on the Aggravated Punishment, Etc. of Specific Economic Crimes* (Embezzlement), etc. pursuant to the Treaty on Extradition between the Republic of Korea and the United States of America.

2. hereby confirm that the Korean government certifies this supplementary document on the request for the extradition by sealing, signing and impressing the official seal of the Korean Minister of Justice on this document.

Seoul, Republic of Korea

June 7, 2019

Park Sang-ki
Minister of Justice
Republic of Korea
(Sealed by Minister of Justice)

Koo Seung-mo
Director, International Criminal Affairs Division
(Duly authorized by the Minister)

# Response to the US Request for Supplemental Information
# with regard to YOO Hyuk Kee case

## 1. Background Information

## (1) Korean Prosecution Service's Launch of Investigation

Tragedy struck the Republic of Korea on April 16, 2014, when 'Sewol Ferry' sank in the territorial waters of Korea, killing a total of 304 people, including students on a school trip.

- The ferry at issue was registered with Chonghaejin Marine Co., Ltd. ("Chonghaejin[1]"), which was run by YOO Byeong Eyn and his family including YOO Hyuk Kee. Chonghaejin purchased from a Japanese marine company this time-worn ferry, which had been already operated for 18 years at a low price and renovated the ferry inordinately in order to add more cabins for maximizing profits and overloaded cargo almost doubling the maximum capacity, resulting in this incident.

- The Korean Prosecution Service, while investigating the causes of the incident, came to identify that Chonghaejin's excessive expansion of cabins and overload to maximize profits without considering the safety of passengers had attributed to its poor financial conditions and abnormal business management.

- Moreover, the Korean Prosecution Service found that Chonghaejin's financial situation deteriorated and its management became weak, because YOO Byeong Eyn and his family embezzled some huge amount of corporate funds through abnormal funding transactions while taking control of Chonghaejin and its affiliates.

- What I want to emphasize once again here is that YOO Byeong Eyun and his family's

---

[1] There is a typographic error("Chonghaejin" is written as "Cheonghaijin") in supplementary statement of confirmation dated November 18, 2016 and July 7, 2017.

embezzlement of some huge amount of corporate funds left the company financially unsound, making the ferry that should have been managed and operated to guarantee the safety of passengers a mere means of maximizing profits.   In the end, it has resulted in the loss of 304 innocent lives, including those of students.

**(2) YOO Byung Eyun and His Family's Corporate Governance Structure**

- To help you have a better understanding of this case, I will first explain about the corporate governance structure of the companies operated by YOO Byeong Eyn and his family, including YOO Hyuk Kee.

- After YOO Byeong Eyn and his family including YOO Hyuk Kee established I-One-I Holdings Co., Ltd. ("I-One-I Holdings") as a holding company, YOO Dae Kyoon and YOO Hyuk Kee each came to own a 19 % stake in I-One-I Holdings and then the YOO family had the company hold a 43 % stake in Chonhaiji Co., Ltd. ("Chonhaiji") and a 44 % stake in Ahae Co., Ltd. ("Ahae"), thereby taking control over Chonhaiji and Ahae. Then, YOO Byeong Eyn's family continued to make Chonhaiji hold a 39 % stake in Chonghaejin , thereby taking control over Chonghaejin through Chonhaiji. YOO Dae Kyoon held a 32 % stake in Dapanda Co., Ltd. ("Dapanda") and made Dapanda hold an 18 % stake in Chonhaiji and a 31 % stake in Semo Co., Ltd. ("Semo"), thereby taking control over Chonhaiji and Semo.

## ※ Corporate governance by YOO Byeong Eyn's family over major affiliates



## ※ I-One-I Holding's Equity

| Category | Equity Ratio | | Equity Holders |
|---|---|---|---|
| Shares held by YOO Byung Eyn's family members | 50.31 % | 52.59 % | ▸ 19.44 % held by YOO Hyuk Kee and YOO Dae Kyoon, respectively<br>▸ 2.57 % held by YOO Chong Somena and YOO Sang Na, respectively<br>▸ 6.29 % held by KIM Heakyung |
| Shares in favor of YOO Hyuk Kee | 2.28 % | | ▸ GANG Kee-cheol and JOO Soon-oak appointed by YOO Hyuk Kee |
| Shares held by ordinary holders | | 47.41 % | |

## ※ Investigation on the YOO Family

| Name | Investigation/Punishment | Note |
|---|---|---|
| YOO Byeong Eyn | Died in June, 2014 | |
| YOO Dae Kyoon (1st son) | Sentenced to 2 years in prison for embezzlement, etc. in October, 2015 | |
| YOO Somena (1st daughter) | Sentenced to 4 years in prison for embezzlement, etc. in September, 2018 | Extradited from France |
| YOO Hyuk Kee (2nd son) | Extradition requested to the U.S. | Residing in the U.S. |
| YOO Sang Na (2nd daughter) | | Residing in the U.S. |
| KIM Heakyung (Secretary) | Sentenced to 1 year and 6 months for embezzlement, etc. in February, 2018 | Deported from the U.S. |

- As such, YOO Byeong Eyn and his family, including YOO Hyuk Kee took de facto control over the personnel and management of I-One-I Holdings and its affiliates through the above corporate governance. Moreover, in furtherance thereof, they appointed members of the church run by YOO Byung Eyn and his family as external auditors for the company, thereby actually paralyzing the system of audits on those companies.

- In addition, YOO Byeong Eyn and his family have strengthened and maintained their control over the affiliates through the closed management system, where they made a small number of their closest aids who were loyal to them concurrently hold positions at several affiliates as executives or auditors and even rotated them through such posts.

## ※ Overlapping executives and auditors at I-One-I Holdings and affiliates

| Name | I-One-I Holdings | Trigon Korea | Dapanda | Onzigoo | Ahae | Moonjin Media | Chonhaiji | Chonghaejin Marine | Semo |
|---|---|---|---|---|---|---|---|---|---|
| KIM Pil bae | CEO | | CEO | | | CEO | | | |
| GWON Oh-gyun | | CEO | | | | | | | Director |
| SONG Guk-bin | Director | | CEO | | | | | | |
| LEE Jae-yeong | | | | | CEO | | | | Director |
| BYEON Gi-chun | CEO | Director | | | | | CEO | Auditor | |
| GOH Chang-hwan | Director | | CEO | Director | | | Director | | CEO |
| KIM Han-sik | Auditor | | | Auditor | | | | CEO | Auditor |
| SHIN Jae-jik | Director | | | Director | | | CEO | | |
| PARK Seung-il | Director | Director | | | Auditor | Auditor | Director | | |
| KIM Dong-hwan | Director | | Auditor | | | | Director | | |
| KIM Heakyung | Shareholder | | Director | | | Director | | | |
| LEE Gang-se | | | | | CEO | | Director | | |
| YOO Hyuk Kee | Shareholder | CEO | | Shareholder | | CEO | | | |
| YOO Dae Kyoon | Shareholder | Director | Director | | | | | | |

## 2. Embezzlement

**(1) Did the affiliate companies (like Semo, Moreal Design, Ahae, Onnara Shopping, Chonhaji) have legitimate "real" businesses or were they just shell companies?**

- The affiliate companies had legitimate businesses which generated real revenues. For example, Dapanda is a manufacturer of squalene, a dietary supplement, and Chonhaiji is a shipbuilding company.

※ Businesses of Affiliates (Unit: 100 million won)

| Company | Business | Assets | Liabilities | Sales | Net Profits |
|---|---|---|---|---|---|
| Ahae | Paint | 445 | 364 | 578 | 3 |
| Onzigoo | Car parts | 223 | 164 | 428 | 13 |
| Chonghaejin Marine | Marine transportation | 181 | 128 | 299 | -725 |
| Dapanda | Dietary supplements | 331 | 144 | 477 | 23 |
| Chonhaiji | Shipbuilding | 983 | 785 | 1,143 | 68 |
| Semo | Dietary supplements | 318 | 234 | 220 | 23 |
| Moonjin Media | Publication | 571 | 354 | 427 | 30 |

- When revenues were generated from the affiliates, YOO Byung Eyun and his family including YOO Hyuk Kee had the affiliates transfer corporate funds into YOO Hyuk Kee's personal accounts in the false pretenses of consulting fees, etc. without going through the due process such as voting of board of directors, taking advantage of their control over the affiliates' management and personnel, and thereby embezzled the corporate funds.

- The YOO family controlled the affiliates – all incorporated companies – through I-One-I Holdings but they did not hold shares of all of the affiliates. As more than 50% of shares of the affiliates were owned by ordinary shareholders, the victims of the YOO family's embezzlement under the law are the affiliates and, in fact, the actual damage has been passed onto their shareholders.

**(2) Was the money for these affiliates companies raised through YOO's church followers? Were they investors who expected a return on their investment? What did the church followers think the money would be used for?**

- The affiliates, which were "real" incorporated companies, generated profits and raised funds through businesses and sales.

- It was not that YOO Hyuk Kee's church followers invested in the affiliates but that they purchased some products or services of the affiliates.

- As mentioned earlier, the affiliates are legal victims in this case, not the followers who purchased the products or services. YOO Hyuk Kee's embezzlement undermined liquidity and profitability of the companies, inflicting actual damage onto their shareholders.

**(3) After all the money from the affiliates companies went to Key Solutions, is there evidence that the money then went to YOO's personal bank account?**

- As Key Solution was a private business without a corporate account, the funds embezzled from the affiliates were directly transferred to YOO Hyuk Kee's personal accounts. It is evidence of embezzlement that funds of incorporated companies were transferred to an individual's accounts by false pretenses. (See attached Transaction history of YOO Hyuk Kee.)

**(4) Did Yoo actually sign the contracts for consulting services himself?**

- YOO Hyuk Kee's seal is affixed to the Consulting Service Contract attached.

- It was PARK Seung-il who managed the operation of Key Solution under the direction of YOO Hyuk Kee, and some of Key Solution's documents were signed by PARK Seung-il. However, it can be understood that YOO Hyuk Kee managed the matter even if there is a signature of PARK Seung-il because he was on behalf of YOO Hyuk Kee.


**3. Tax Evasion**

**(1) What is evidence that YOO knew the taxable income of Saechonnyeon company would be reported?**

- The evidence is as follows:

① Statement of LEE Gang-se, a shareholder of Saechonnyeon

② Statement of SHIN Jae-jik, a former CEO of Saechonnyeon

③ Statement of PARK Seung-il who managed affiliates under the direction of YOO Hyuk Kee


① Statement of LEE Gang-se, a shareholder of Saechonnyeon:

LEE Gang-se said during investigation at the Prosecution Service that the actual owner of Saechonnyeon is the YOO family or the YOO family's Evangelical Baptist Church of Korea and that he lent his name for Saechonnyeon's shares under the direction of YOO Hyuk Kee or YOO Byeong Eyn but never involved in the business of the company. He also stated that he transferred Chonhaiji's shares at a low price upon directives from PARK Seung-il who managed I-One-I Holdings and other affiliates on behalf of YOO Hyuk Kee. (See the attached statement of LEE Gang-se.)

② Statement of SHIN Jae-jik, a former CEO of Saechonnyeon:

SHIN Jae-jik said during investigation at the Prosecution Service that the YOO family is the de-facto owner of all Saechonnyeon's shares and others are shareholders in name only who have never engaged in the company's business, and that he verbally reported to YOO Byeong Eyn on Saechonnyeon's business. He stated, as an example of the report, that he reported it to YOO Byeong Eyn when Saechonnyeon received an approval of medical device manufacturing from Korea Food and Drug Administration. (See the attached statement of SHIN Jae-jik.)

③ Statement of PARK Seung-il:

PARK Seung-il said during investigation at the Prosecution Service that he delivered YOO Hyuk Kee's direction to LEE Gang-se over the transfer of Chonhaiji's shares at a low price as YOO Hyuk Kee directed. (See the attached statement of PARK Seung-il)

- Based on the above-mentioned, it is proven that YOO Hyuk Kee, who had a benefit-sharing relation with YOO Dae Kyoon, his older brother, and YOO Byeong Eyn, his father, controlled affiliates through I-One-I Holdings, a holding company, and that shareholders of Saechonnyeon – LEE Gang-se, LEE Jae-ok and LEE Seung-ki – are shareholders in name only and the de-facto owner of Saechonnyeon is YOO Byung Eyun and his family including YOO Hyuk Kee.

- Therefore, the YOO family not only knew how the taxable income of Saechonnyeon would be reported but also directed tax evasion.

**(2) What is evidence that YOO participated in the decision about how to report the income of Saechonnyeon?**

- See the answer in Paragraph (1).

**(3) I'm having difficulty understanding why YOO is charged with tax evasion for the under-reporting of tax by Saechonnyeon because he is not part of this company. Even if YOO was part of the company that falsely reported its tax, U.S. Court would require more specific evidence that YOO participated in the act of the tax reporting, either as a decision-maker or was involved in discussions about how to report the tax.**

- See the answer in Paragraph (1).

# Transaction history of YOO Hyuk Kee's personal account

| No | Date | Provider | CEO | Recipient | Amount embezzled (excluding VAT) | Description |
|----|------|----------|-----|-----------|-----------------------------------|-------------|
| 1 | 2009-07-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 65,986,900 | Trademark royalty |
| 2 | 2009-08-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 74,332,910 | Trademark royalty |
| 3 | 2009-09-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 85,358,950 | Trademark royalty |
| 4 | 2009-10-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 82,482,640 | Trademark royalty |
| 5 | 2009-11-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 75,699,660 | Trademark royalty |
| 6 | 2009-12-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 65,440,520 | Trademark royalty |
| 7 | 2010-01-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 20,057,030 | Trademark royalty |
| 8 | 2010-02-27 | Ahae | LEE Gang-se | YOO Hyuk Kee | 34,552,840 | Trademark royalty |
| 9 | 2010-03-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 98,678,620 | Trademark royalty |
| 10 | 2010-04-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 113,957,210 | Trademark royalty |
| 11 | 2010-05-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 108,965,880 | Trademark royalty |
| 12 | 2010-06-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 119,595,560 | Trademark royalty |
| 13 | 2010-07-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 91,733,660 | Trademark royalty |
| 14 | 2010-08-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 57,267,790 | Trademark royalty |
| 15 | 2010-09-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 68,928,360 | Trademark royalty |
| 16 | 2010-10-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 88,509,320 | Trademark royalty |
| 17 | 2010-11-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 92,307,510 | Trademark royalty |
| 18 | 2010-12-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 67,265,320 | Trademark royalty |
| 19 | 2011-01-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 28,770,020 | Trademark royalty |
| 20 | 2011-02-28 | Ahae | LEE Gang-se | YOO Hyuk Kee | 37,212,960 | Trademark royalty |
| 21 | 2011-03-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 86,113,660 | Trademark royalty |
| 22 | 2011-04-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 119,011,700 | Trademark royalty |
| 23 | 2011-05-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 114,268,060 | Trademark royalty |

| 24 | 2011-06-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 125,344,540 | Trademark royalty |
|----|------------|------|-------------|--------------|-------------|-------------------|
| 25 | 2011-07-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 97,473,630 | Trademark royalty |
| 26 | 2011-08-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 95,052,150 | Trademark royalty |
| 27 | 2011-09-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 118,644,650 | Trademark royalty |
| 28 | 2011-10-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 117,824,120 | Trademark royalty |
| 29 | 2011-11-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 112,252,300 | Trademark royalty |
| 30 | 2011-12-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 105,125,510 | Trademark royalty |
| 31 | 2012-01-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 32,865,670 | Trademark royalty |
| 32 | 2012-02-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 54,586,090 | Trademark royalty |
| 33 | 2012-03-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 99,416,630 | Trademark royalty |
| 34 | 2012-04-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 126,176,930 | Trademark royalty |
| | Total amount provided by LEE Gang-se | | | KRW 2,881,259,300 | | |
| 35 | 2012-05-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 153,315,540 | Trademark royalty |
| 36 | 2012-06-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 152,717,850 | Trademark royalty |
| 37 | 2012-07-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 88,316,150 | Trademark royalty |
| 38 | 2012-08-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 71,302,970 | Trademark royalty |
| 39 | 2012-09-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 109,726,550 | Trademark royalty |
| 40 | 2012-11-12 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 117,211,055 | Trademark royalty |
| 41 | 2012-11-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 117,887,270 | Trademark royalty |
| 42 | 2012-12-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 67,798,940 | Trademark royalty |
| 43 | 2013-01-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 29,444,940 | Trademark royalty |
| 44 | 2013-02-28 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 96,207,690 | Trademark royalty |
| 45 | 2013-03-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 104,114,570 | Trademark royalty |
| 46 | 2013-04-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 135,741,050 | Trademark royalty |
| 47 | 2013-05-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 140,537,280 | Trademark royalty |
| 48 | 2013-06-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 134,883,620 | Trademark royalty |
| 49 | 2013-07-31 | Ahae | LEE Jae-yeong, | YOO Hyuk | 95,969,170 | Trademark |

| No | Date | Provider | CEO | Recipient | Damages (excluding VAT) | Description |
|----|------|----------|-----|-----------|------------|-------------|
| | | | HWANG Won-ju | Kee | | royalty |
| 50 | 2013-08-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 97,998,480 | Trademark royalty |
| 51 | 2013-09-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 99,694,710 | Trademark royalty |
| 52 | 2013-10-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 116,803,180 | Trademark royalty |
| 53 | 2013-11-30 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 131,752,960 | Trademark royalty |
| 54 | 2013-12-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 151,053,570 | Trademark royalty |
| 55 | 2014-01-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 43,679,160 | Trademark royalty |
| 56 | 2014-02-28 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 41,540,120 | Trademark royalty |
| 57 | 2014-03-31 | Ahae | LEE Jae-yeong, HWANG Won-ju | YOO Hyuk Kee | 121,063,920 | Trademark royalty |
| Total amount provided by LEE Jae-yeong | | | | KRW 2,418,760,745 | | |

| No | Date | Provider | CEO | Recipient | Damages (excluding VAT) | Description |
|----|------|----------|-----|-----------|------------|-------------|
| 1 | 2010-03-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 2 | 2010-04-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 3 | 2010-05-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 4 | 2010-06-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 5 | 2010-07-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 6 | 2010-08-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 7 | 2010-09-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 8 | 2010-11-01 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 9 | 2010-11-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 10 | 2010-12-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 11 | 2011-01-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 12 | 2011-02-28 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 13 | 2011-03-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 14 | 2011-04-30 | Semo | GO | YOO Hyuk | 25,000,000 | Management |

| | | | Chang-hwan | Kee | | consulting fee |
|---|---|---|---|---|---|---|
| 15 | 2011-05-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 16 | 2011-06-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 17 | 2011-07-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 18 | 2011-08-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 19 | 2011-09-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 20 | 2011-10-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 21 | 2011-11-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 22 | 2011-12-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 23 | 2012-01-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 24 | 2012-02-29 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 25 | 2012-03-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 26 | 2012-04-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 27 | 2012-05-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 28 | 2012-06-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 29 | 2012-07-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 30 | 2012-08-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 31 | 2012-09-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 32 | 2012-10-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 33 | 2012-11-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 34 | 2012-12-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 35 | 2013-01-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 36 | 2013-02-28 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 37 | 2013-03-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 38 | 2013-04-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 39 | 2013-05-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 40 | 2013-06-30 | Semo | GO | YOO Hyuk | 25,000,000 | Management |

EX-YOO-S5-00014

| No | Date | Provider | CEO | Recipient | Amount embezzled (excluding VAT) | Description |
|---|---|---|---|---|---|---|
| | | | Chang-hwan | Kee | | consulting fee |
| 41 | 2013-07-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 42 | 2013-08-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 43 | 2013-09-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 44 | 2013-10-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 45 | 2013-11-30 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 46 | 2013-12-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 47 | 2014-01-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 48 | 2014-02-28 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| 49 | 2014-03-31 | Semo | GO Chang-hwan | YOO Hyuk Kee | 25,000,000 | Management consulting fee |
| Total | | | | | KRW 1,225,000,000 | |

| No | Date | Provider | CEO | Recipient | Amount embezzled (excluding VAT) | Description |
|---|---|---|---|---|---|---|
| 1 | 2009-03-31 | Ahae | LEE Seong-hwan | YOO Hyuk Kee | 52,638,400 | Trademark royalty |
| 2 | 2009-04-30 | Ahae | LEE Seong-hwan | YOO Hyuk Kee | 62,902,300 | Trademark royalty |
| 3 | 2009-05-30 | Ahae | LEE Seong-hwan | YOO Hyuk Kee | 49,325,900 | Trademark royalty |
| 4 | 2009-06-30 | Ahae | LEE Seong-hwan | YOO Hyuk Kee | 59,522,800 | Trademark royalty |
| 5 | 2009-07-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 65,986,900 | Trademark royalty |
| 6 | 2009-08-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 74,332,910 | Trademark royalty |
| 7 | 2009-09-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 85,358,950 | Trademark royalty |
| 8 | 2009-10-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 82,482,640 | Trademark royalty |
| 9 | 2009-11-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 75,699,660 | Trademark royalty |
| 10 | 2009-12-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 65,440,520 | Trademark royalty |

EX-YOO-S5-00015

| 11 | 2010-01-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 20,057,030 | Trademark royalty |
|----|------------|------|-------------|--------------|------------|-------------------|
| 12 | 2010-02-27 | Ahae | LEE Gang-se | YOO Hyuk Kee | 34,552,840 | Trademark royalty |
| 13 | 2010-03-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 98,678,620 | Trademark royalty |
| 14 | 2010-04-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 113,957,210 | Trademark royalty |
| 15 | 2010-05-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 108,965,880 | Trademark royalty |
| 16 | 2010-06-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 119,595,560 | Trademark royalty |
| 17 | 2010-07-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 91,733,660 | Trademark royalty |
| 18 | 2010-08-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 57,267,790 | Trademark royalty |
| 19 | 2010-09-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 68,928,360 | Trademark royalty |
| 20 | 2010-10-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 88,509,320 | Trademark royalty |
| 21 | 2010-11-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 92,307,510 | Trademark royalty |
| 22 | 2010-12-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 67,265,320 | Trademark royalty |
| 23 | 2011-01-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 28,770,020 | Trademark royalty |
| 24 | 2011-02-28 | Ahae | LEE Gang-se | YOO Hyuk Kee | 37,212,960 | Trademark royalty |
| 25 | 2011-03-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 86,113,660 | Trademark royalty |
| 26 | 2011-04-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 119,011,700 | Trademark royalty |
| 27 | 2011-05-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 114,268,060 | Trademark royalty |
| 28 | 2011-06-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 125,344,540 | Trademark royalty |
| 29 | 2011-07-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 97,473,630 | Trademark royalty |
| 30 | 2011-08-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 95,052,150 | Trademark royalty |
| 31 | 2011-09-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 118,644,650 | Trademark royalty |
| 32 | 2011-10-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 117,824,120 | Trademark royalty |
| 33 | 2011-11-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 112,252,300 | Trademark royalty |
| 34 | 2011-12-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 105,125,510 | Trademark royalty |
| 35 | 2012-01-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 32,865,670 | Trademark royalty |
| 36 | 2012-02-29 | Ahae | LEE Gang-se | YOO Hyuk Kee | 54,586,090 | Trademark |

EX-YOO-S5-00016

| | | | Gang-se | | | royalty |
|---|---|---|---|---|---|---|
| 37 | 2012-03-31 | Ahae | LEE Gang-se | YOO Hyuk Kee | 99,416,630 | Trademark royalty |
| 38 | 2012-04-30 | Ahae | LEE Gang-se | YOO Hyuk Kee | 126,176,930 | Trademark royalty |
| 39 | 2012-05-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 153,315,540 | Trademark royalty |
| 40 | 2012-06-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 152,717,850 | Trademark royalty |
| 41 | 2012-07-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 88,316,150 | Trademark royalty |
| 42 | 2012-08-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 71,302,970 | Trademark royalty |
| 43 | 2012-09-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 109,726,550 | Trademark royalty |
| 44 | 2012-11-12 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 117,211,055 | Trademark royalty |
| 45 | 2012-11-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 117,887,270 | Trademark royalty |
| 46 | 2012-12-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 67,798,940 | Trademark royalty |
| 47 | 2013-01-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 29,444,940 | Trademark royalty |
| 48 | 2013-02-28 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 96,207,690 | Trademark royalty |
| 49 | 2013-03-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 104,114,570 | Trademark royalty |
| 50 | 2013-04-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 135,741,050 | Trademark royalty |
| 51 | 2013-05-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 140,537,280 | Trademark royalty |
| 52 | 2013-06-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 134,883,620 | Trademark royalty |
| 53 | 2013-07-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 95,969,170 | Trademark royalty |
| 54 | 2013-08-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 97,998,480 | Trademark royalty |
| 55 | 2013-09-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 99,694,710 | Trademark royalty |
| 56 | 2013-10-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 116,803,180 | Trademark royalty |
| 57 | 2013-11-30 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 131,752,960 | Trademark royalty |
| 58 | 2013-12-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 151,053,570 | Trademark royalty |
| 59 | 2014-01-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 43,679,160 | Trademark royalty |
| 60 | 2014-02-28 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 41,540,120 | Trademark royalty |
| 61 | 2014-03-31 | Ahae | LEE Jae-yeong | YOO Hyuk Kee | 121,063,920 | Trademark royalty |
| Total | | | | KRW 5,524,409,445 | | |

EX-YOO-S5-00017

| No | Date | Provider | CEO | Recipient | Amount embezzled (excluding VAT) | Description |
|---|---|---|---|---|---|---|
| 1 | 2009-01-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 48,111,860 | Trademark royalty |
| 2 | 2009-02-28 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 50,410,799 | Trademark royalty |
| 3 | 2009-03-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 60,588,197 | Trademark royalty |
| 4 | 2009-04-30 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 58,348,572 | Trademark royalty |
| 5 | 2009-05-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 54,578,526 | Trademark royalty |
| 6 | 2009-06-30 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 64,037,212 | Trademark royalty |
| 7 | 2009-07-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 59,809,228 | Trademark royalty |
| 8 | 2009-08-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 53,707,361 | Trademark royalty |
| 9 | 2009-09-30 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 63,522,079 | Trademark royalty |
| 10 | 2009-10-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 58,962,850 | Trademark royalty |
| 11 | 2009-11-30 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 64,268,957 | Trademark royalty |
| 12 | 2009-12-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 57,277,573 | Trademark royalty |
| 13 | 2010-01-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 52,761,859 | Trademark royalty |
| 14 | 2010-02-28 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 35,350,717 | Trademark royalty |
| 15 | 2010-03-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 51,082,683 | Trademark royalty |
| 16 | 2010-04-30 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 45,397,219 | Trademark royalty |
| 17 | 2010-05-31 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 38,288,632 | Trademark royalty |
| 18 | 2010-06-30 | Cheonhaiji | SHIN Jae-jik | YOO Dae Kyoon | 33,678,446 | Trademark royalty |
| Total amount remitted to YOO Dae Kyoon | | | | | KRW 950,182,770 | |
| 19 | 2009-01-31 | Cheonhaiji | SHIN Jae-jik | YOO Hyuk Kee | 48,111,860 | Trademark royalty |
| 20 | 2009-02-28 | Cheonhaiji | SHIN Jae-jik | YOO Hyuk Kee | 50,410,799 | Trademark royalty |
| 21 | 2009-03-31 | Cheonhaiji | SHIN Jae-jik | YOO Hyuk Kee | 60,588,197 | Trademark royalty |
| 22 | 2009-04-30 | Cheonhaiji | SHIN | YOO Hyuk | 58,348,572 | Trademark |

EX-YOO-S5-00018

| | | | | Jae-jik | Kee | | royalty |
|---|---|---|---|---|---|---|---|

| No | Date | Provider | CEO | | Recipient | Amount | Description |
|---|---|---|---|---|---|---|---|
| 23 | 2009-05-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 54,578,526 | Trademark royalty |
| 24 | 2009-06-30 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 64,037,212 | Trademark royalty |
| 25 | 2009-07-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 59,809,228 | Trademark royalty |
| 26 | 2009-08-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 53,707,361 | Trademark royalty |
| 27 | 2009-09-30 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 63,522,079 | Trademark royalty |
| 28 | 2009-10-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 58,962,850 | Trademark royalty |
| 29 | 2009-11-30 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 64,268,957 | Trademark royalty |
| 30 | 2009-12-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 57,277,573 | Trademark royalty |
| 31 | 2010-01-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 52,761,859 | Trademark royalty |
| 32 | 2010-02-28 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 35,350,717 | Trademark royalty |
| 33 | 2010-03-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 51,082,683 | Trademark royalty |
| 34 | 2010-04-30 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 45,397,219 | Trademark royalty |
| 35 | 2010-05-31 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 38,288,632 | Trademark royalty |
| 36 | 2010-06-30 | Cheonhaiji | SHIN Jae-jik | | YOO Hyuk Kee | 33,678,446 | Trademark royalty |
| Total amount remitted to YOO Hyuk Kee | | | | | KRW 950,182,770 | | |

| No | Date | Provider | CEO | Recipient | Amount embezzled (excluding VAT) | Description |
|---|---|---|---|---|---|---|
| 1 | 2009-01-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 8,514,430 | Trademark royalty |
| 2 | 2009-02-28 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 8,387,180 | Trademark royalty |
| 3 | 2009-03-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 10,049,271 | Trademark royalty |
| 4 | 2009-04-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 8,911,148 | Trademark royalty |
| 5 | 2009-05-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 8,944,341 | Trademark royalty |
| 6 | 2009-06-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,369,197 | Trademark royalty |
| 7 | 2009-07-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,339,334 | Trademark royalty |

| 8 | 2009-08-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,194,022 | Trademark royalty |
|---|---|---|---|---|---|---|
| 9 | 2009-09-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,251,062 | Trademark royalty |
| 10 | 2009-10-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 10,081,781 | Trademark royalty |
| 11 | 2009-11-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,411,741 | Trademark royalty |
| 12 | 2009-12-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,631,725 | Trademark royalty |
| 13 | 2010-01-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,077,274 | Trademark royalty |
| 14 | 2010-02-28 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,646,549 | Trademark royalty |
| 15 | 2010-03-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,053,410 | Trademark royalty |
| 16 | 2010-04-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,104,935 | Trademark royalty |
| 17 | 2010-05-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,336,950 | Trademark royalty |
| 18 | 2010-06-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 11,248,907 | Trademark royalty |
| 19 | 2010-07-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 10,724,209 | Trademark royalty |
| 20 | 2010-08-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 10,668,041 | Trademark royalty |
| 21 | 2010-09-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,475,317 | Trademark royalty |
| 22 | 2010-10-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 10,402,170 | Trademark royalty |
| 23 | 2010-11-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,953,442 | Trademark royalty |
| 24 | 2010-12-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,386,467 | Trademark royalty |
| 25 | 2011-01-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 9,153,436 | Trademark royalty |
| 26 | 2011-02-28 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 5,693,324 | Trademark royalty |
| 27 | 2011-03-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 8,382,828 | Trademark royalty |
| 28 | 2011-04-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 6,747,077 | Trademark royalty |
| 29 | 2011-05-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 7,476,739 | Trademark royalty |
| 30 | 2011-06-30 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 7,234,918 | Trademark royalty |
| 31 | 2011-07-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 7,281,819 | Trademark royalty |
| 32 | 2011-08-31 | Onnara | LEE Ho-seob | YOO Hyuk Kee | 6,729,200 | Trademark royalty |
| 33 | 2011-09-30 | Onnara | LEE | YOO Hyuk | 7,084,049 | Trademark |

EX-YOO-S5-00020

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | Ho-seob | Kee | | royalty |
| 34 | 2011-10-31 | Onnara | LEE<br>Ho-seob | YOO Hyuk<br>Kee | 6,179,764 | Trademark<br>royalty |
| 35 | 2011-11-30 | Onnara | LEE<br>Ho-seob | YOO Hyuk<br>Kee | 6,690,886 | Trademark<br>royalty |
| 36 | 2011-12-31 | Onnara | LEE<br>Ho-seob | YOO Hyuk<br>Kee | 6,619,761 | Trademark<br>royalty |
| Total | | | | KRW 328,436,704 | | |

EX-YOO-S5-00021

# Consulting Service Contract

This Consulting Service Contract is made and entered into by and between Moreal Design (hereinafter "Party A") and Key Solution (hereinafter "Party B"). The Parties hereby agree as follows:

## Article 1. (Purpose)

Whereas Party A intends to entrust consulting service and Party B is willing to provide the consulting service, this contract is to prepare general arrangements for the entrust and provision of consulting service and precisely set duties, rights and cooperative matters between the Parties to facilitate the consulting service.

## Article 2. (Consulting Service Items)

1. Party B shall provide Party A with consulting services for the following items:

   1) Management analysis and management strategy establishment;

   2) Business valuation;

   3) National and international marketing strategies and advanced design policy development;

   4) Provision of international training programs for employees and internship; and

   5) Other matters entrusted by Party A in relation with the above items.

2. If Party A seeks consulting services for matters other than the abovementioned, the payment for the consulting services shall be separately decided.

## Article 3. (Payment and Payment Method)

1. Amount: Payment for monthly service shall be KRW 30,000,000 (VAT excluded).

2. Payment Method: A tax invoice shall be issued on the last day of each month, and the payment shall be remitted into an account designated by Party B in the beginning of each month.

3. Expenses for flight, accommodation and transportation in Korea or other country, etc. shall be paid in addition to the monthly payment only when the detailed schedules and expense plans have been approved in advance by Party A.

## Article 4. (Reimbursement of Other Expenses)

1. Expenses spent for Party B's consulting services shall be reimbursed by Party A; Party A shall make reimbursement within seven (7) days from Party B's reimbursement request.

2. The scope of expenses reimbursable by Party A shall be determined in a separate agreement between the Parties.

## Article 5. (Period of Contract)

This Contract shall be in full force and effect from April 1, 2010 to December 31, 2010.

## Article 6. (Extension of Period)

The contract shall be automatically extended, maintaining the same conditions, for an year from the expiry date unless any Party notifies change of the contract by one month before the expiry date.

## Article 7. (Occupational Assistance)

Party A shall provide Party B with as much information as possible to facilitate Party B's services, and Party B shall diligently perform its duties in accordance with this Contract.

## Article 8. (Confidentiality)

Party B shall maintain in confidence all information of Party A acquired during the consulting services to prevent its disclosure.

## Article 9. (Report)

Party A can request for Party B's consulting service at any time during the contract period; Party B shall make a written or oral report regarding the requested issue and accept Party A's request of face-to-face report.

## Article 10. (Cancellation)

If any of the following subparagraphs is caused by one Party, the other Party may request for correction; if the generated problem is still not solved, this Contract may be cancelled:

1) the duties of this Contract are not carried out; and

2) one Party incurs damages to the other Party with intent or by negligence.


## Article 11 (Others)

1. Matters which are not prescribed in this Contract shall be subject to relevant provisions in the Korean law or, if there are no appropriate provisions, follow general customs.

2. When both Parties agree to make an amendment on this Contract, the amendment shall be signed and attached at the end of the Contract and prevail over the Contract.


## Article 12 (Jurisdiction)

The Parties shall first effort to amicably settle any dispute arising out of or in connection with this Contract and, if the dispute is not solved, submit the dispute to a competent court for the region where the main office of Party A is located.


This Contract is made into two (2) copies to be kept by the respective Parties.


Signed on

April 1, 2010


Party A          Company Name: Moreal Design

CEO: HA Myeong-hwa

Corporation Registration No.: 110111-2882367

Address: Second floor, MJ Building, 797-26, Yeoksam-dong, Gangnam-gu, Seoul

Party B        Company Name: Key Solution

CEO: YOO Hyuk Kee

Corporation Registration No.: 220-05-32547

Address: First floor, 96-3, Cheongdam-dong, Gangnam-gu, Seoul

# Consulting Service Contract

This Consulting Service Contract is made and entered into by and between Moreal Design (hereinafter "Party A") and Key Solution (hereinafter "Party B"). The Parties hereby agree as follows:

## Article 1. (Purpose)

Whereas Party A intends to entrust consulting service and Party B is willing to provide the consulting service, this contract is to prepare general arrangements for the entrust and provision of consulting service and precisely set duties, rights and cooperative matters between the Parties to facilitate the consulting service.

## Article 2. (Consulting Service Items)

1. Party B shall provide Party A with consulting services for the following items:

    1) Management analysis and management strategy establishment;

    2) Business valuation;

    3) National and international marketing strategies and advanced design policy development;

    4) Provision of international training programs for employees and internship; and

    5) Other matters entrusted by Party A in relation with the above items.

2. If Party A seeks consulting services for matters other than the abovementioned, the payment for the consulting services shall be separately decided.

## Article 3. (Payment and Payment Method)

1. Amount: Payment for monthly service shall be KRW 20,000,000 (VAT excluded).

2. Payment Method: A tax invoice shall be issued on the last day of each month, and the payment shall be remitted into an account designated by Party B in the beginning of each month.

3. Expenses for flight, accommodation and transportation in Korea or other country, etc. shall be paid in addition to the monthly payment only when the detailed schedules and expense plans have been approved in advance by Party A.

EX-YOO-S5-00026

Article 4. (Reimbursement of Other Expenses)

1. Expenses spent for Party B's consulting services shall be reimbursed by Party A; Party A shall make reimbursement within seven (7) days from Party B's reimbursement request.

2. The scope of expenses reimbursable by Party A shall be determined in a separate agreement between the Parties.

Article 5. (Period of Contract)

This Contract shall be in full force and effect from January 1, 2011 to December 31, 2011.

Article 6. (Extension of Period)

The contract shall be automatically extended, maintaining the same conditions, for an year from the expiry date unless any Party notifies change of the contract by one month before the expiry date.

Article 7. (Occupational Assistance)

Party A shall provide Party B with as much information as possible to facilitate Party B's services, and Party B shall diligently perform its duties in accordance with this Contract.

Article 8. (Confidentiality)

Party B shall maintain in confidence all information of Party A acquired during the consulting services to prevent its disclosure.

Article 9. (Report)

Party A can request for Party B's consulting service at any time during the contract period; Party B shall make a written or oral report regarding the requested issue and accept Party A's request of face-to-face report.

Article 10. (Cancellation)

If any of the following subparagraphs is caused by one Party, the other Party may request for correction; if the generated problem is still not solved, this Contract may be cancelled:

1) the duties of this Contract are not carried out; and

2) one Party incurs damages to the other Party with intent or by negligence.


Article 11 (Others)

1. Matters which are not prescribed in this Contract shall be subject to relevant provisions in the Korean law or, if there are no appropriate provisions, follow general customs.

2. When both Parties agree to make an amendment on this Contract, the amendment shall be signed and attached at the end of the Contract and prevail over the Contract.


Article 12 (Jurisdiction)

The Parties shall first effort to amicably settle any dispute arising out of or in connection with this Contract and, if the dispute is not solved, submit the dispute to a competent court for the region where the main office of Party A is located.


This Contract is made into two (2) copies to be kept by the respective Parties.


Signed on

December 31, 2010


Party A

Company Name: Moreal Design

CEO: HA Myeong-hwa

Corporation Registration No.: 110111-2882367

Address: Second floor, MJ Building, 797-26, Yeoksam-dong, Gangnam-gu, Seoul

Party B           Company Name: Key Solution

CEO: YOO Hyuk Kee

Corporation Registration No.: 220-05-32547

Address: First floor, 96-3, Cheongdam-dong, Gangnam-gu, Seoul

# SUSPECT INTERROGATION REPORT

Name: LEE Gang-se

Resident Registration Number: 410210-1405915

At around 14:30 on October 8, 2014, in the prosecutor's room #1025 at Incheon District Prosecutors' Office, Prosecutor PARK Gwang-hyeon interrogated the above person regarding the case of violating *Punishment of Tax Offenses Act* in the presence of prosecutorial investigator SUH Dae-suk.

Q: State your name, resident registration number, occupation, address and registered domicile.

A: Name    LEE Gang-se

   Resident Registration Number    410210-1405915

   Occupation    Former CEO of Ahae Co., Ltd.

   Address    4-1201 Samseong APT, 175 Oryu-dong, Jung-gu, Daejeon

       Currently detained in Incheon Detention Center (Inmate No.: 477)

   Registered Domicile    451-1, Daeheung-dong, Jung-gu, Daejeon

   Office Address

   Contact Information

     Home                          Mobile Phone    010-3450-8586

     Office                           E-mail

The prosecutor gives the suspect a summary of the alleged facts of crime and notifies him of his rights to refuse to make statements and to have the assistance of legal counsel pursuant to Article 244-3 of the *Criminal Procedure Act*, and confirms whether he will exercise his rights.

EX-YOO-S5-00030

# Confirmation of Rights to Remain Silent and to Legal Counsel

1. You have the right to remain silent or decline to make statements for each question.

1. Remaining silent will not be used against you.

1. Anything you say by waiving your right can and will be used against you in court as evidence.

1. You have the right to legal counsel, including the counsel's presence during the interrogation.

Q: Were you informed of the above rights?

A: (*Hand-written*) Yes.

Q: Will you exercise the right to remain silent?

A: (*Hand-written*) No.

Q: Will you exercise the right to have the assistance of legal counsel?

A: (*Hand-written*) No.

The prosecutor starts to interrogate the suspect with regard to the facts of crime as follows.

EX-YOO-S5-00031

Q: Have you ever faced any punishment for committing a crime?

A: No.

Q: Tell me about your family.

A: I have a wife, two sons and three daughters. My children are all married so I am currently living with my wife in the above address.

Q: Tell me about your academic and career background.

A: I went to Gayagok Elementary School at Nonsan-si, Chungcheongnam-do but didn't finish school. I ran a gas station for 33 years in Daejeon and was the CEO of Saecheonnyeon Co., Ltd. ("Saecheonnyeon") from 2003 to 2008. After a year without working, I served as the CEO of Ahae Co., Ltd. ("Ahae") between about July 2009 and about May 2012.

Q: What is your religion?

A: I am a member of the Evangelical Baptist Church of Korea since 1984.

Q: How did you come to serve as the CEO of Saecheonnyeon in around 2003 after running a gas station for 33 years?

A: I invested approximately KRW 500 million in Semo Co., Ltd. ("Semo") but Semo went bankrupt and my gas station was closed down so I had a hard time making ends meet. Mr. LEE Jae-young, who was the head of general affairs division of Semo, offered the position and I became the CEO when Saecheonnyeon was established.

Q: How did you come to serve as the CEO of Ahae in around 2009?

A: When I was not working after resigning as Saecheonnyeon's CEO, KIM Pil-bae, CEO of I-One-I Holdings Co., Ltd. (I-One-I Holdings) suggested that I run Ahae as co-CEO along

EX-YOO-S5-00032

with LEE Seong-hwan.

Q: Tell me about your wealth and monthly income.

A: I own a plot of land located at Bogye-myeon, Anseong-si worth a market price of KRW 40 million but it is currently under seizure by the National Tax Service ("NTS") as far as I know. My house where I am living now is a property leased under the name of my wife after we paid KRW 100 million as a lump-sum deposit. From about May 2012 when I stepped down as Ahae's CEO, my children financially supported me because I had no income at all.

Q: Tell me about your current health status.

A: I am being treated for lower limb instability, so I am having a hard time in the detention center.

Q: Your trial process is underway while you are detained in the Incheon Detention Center. What are your charges?

A: I was charged with embezzlement for giving KRW 240 million to YOO Byeon Eyn between about October 2011 and about April 2012 as management consulting fees and for giving KRW 2.88 billion to YOO Hyuk Kee between about July 2009 and about April 2012 as trademark licensing fees when I was CEO of Ahae. I was also charged with breach of trust for paying a total of KRW 218 million to I-One-I Holdings and Hemato Centric Life between about August 2009 and about May 2012 as management consulting fees and for paying KRW 426 million to Hemato Centric Life between about October 2009 and about March 2012 on the pretext of buying calendars and photo books while conspiring with KIM Pil-bae, thereby causing loss to Ahae.

Q: Do you admit those charges?

A: Yes. I admitted all of my charges in court. I feel responsible for all the crimes I committed during my term as CEO of Ahae. I am seeking favorable consideration from the

EX-YOO-S5-00033

court.

Q: When will the court make the final judgement?

A: On November 5, 2014.

Q: You served as co-CEO of Ahae along with LEE Seong-hwan from around July 2, 2009 to around March 24, 2010 and served as Ahae's only CEO from about March 25, 2010 to about May 29, 2012.   Is that right?

A: Yes.

Q: Please explain Ahae's shareholder structure.

A: I-One-I Holdings owns 40% of the shares as a majority shareholder.

Q: How many shares do you own?

A: 9% of Ahae shares are held under my name but the church is the de-facto owner of the shares.

Q: Who made those decisions?

A: It was decided by Ahae's board of directors.

Q: Do YOO Byeong Eyn, YOO Hyuk Kee and YOO Dae Kyoon or other YOO family members hold Ahae shares?

A: YOO Byeong Eyn's family doesn't have Ahae shares but they have a lot of I-One-I Holdings shares, which is the majority shareholder of Ahae.

Q: Do you know about the shareholder structure of I-One-I Holdings?

A: I only know that YOO's family holds a lot of its shares.   I don't know about the detailed structure of shareholders.

Q: The summary of the complaint in this case is as follows.

Between around January 2006 and around December 2013, even though YOO Hyuk Kee of Key Solution hadn't provided you with any trademark, you paid him trademark licensing fees, received false tax invoices worth a total of KRW 6,118,502,000 and submitted a false sum table of tax invoices of the equivalent amount to the tax office.

Between around August 2008 and around December 2013, even though I-One-I Holdings hadn't provided you with any management consulting services, you paid I-One-I Holdings management consulting service fees, received false tax invoices worth a total of KRW 325,000,000 and submitted a false sum table of tax invoices of the equivalent amount to the tax office.

Between around October 2011 and around December 2013, even though YOO Byeong Eyn of Vinous-throated Parrotbill hadn't provided you with any consulting services, you paid him consulting service fees, received a false tax invoice of KRW 540,000,000 and submitted a false sum tables of the equivalent amount of tax invoices to the tax office.

On top of that, you evaded corporate taxes worth KRW 1,404,107,329 by falsely reporting that you incurred expenses.    Do you admit to the abovementioned?

A: I will not deny my responsibilities for tax evasion charges because it was the result of said offenses I made as I have already admitted my charges of embezzlement and breach of trust in court and sought favorable considerations from the court. However, could you be more specific about what makes the tax invoices false and how my action is tax evasion?

Q: Did you sign a trademark licensing agreement with YOO Hyuk Kee?

A: No.   The agreement was first signed by former CEO LEE Seong-hwan and the license had been renewed while I was CEO.

Q: But you knew that 1.6% of the sales revenue was used for trademark licensing fee every

month, didn't you?

A: Yes.

Q: Did you discuss the licensing agreement or royalty payment directly with YOO Hyuk Kee?

A: No, the head of accounting division of the company was handling all matters before I became CEO. I only had to approve it.

Q: Which trademarks of YOO Hyuk Kee's have your company been using?

A: Company title 'Ahae' and its logo. Almost all products were labeled with the marks registered by YOO Hyuk Kee.

Q: Have you ever seen any company, in the same field or any other field, which pays trademark royalties like your company did?

A: No.

Q: Leaving aside the fact that your company paid 1.6% of the company revenue as royalties, did your company actually use trademarks registered by YOO Hyuk Kee?

A: Yes. As I have already said during the trial for embezzlement and breach of trust charges, Our company did actually use YOO Hyuk Kee's trademarks. I admit that paying him that much royalties was unnecessary.

Q: Since about July 2009 when you took office as the company CEO, have you said anything to YOO Hyuk Kee or to I-One-I Holdings about the royalties, have you mentioned that you think it's unfair?

A: I didn't mention it to YOO Hyuk Kee or KIM Pil-bae, who were at the top of the decision-making process. I once expressed my complaint to CHOI Hyung-tae, Ahae's auditor appointed by I-One-I Holdings, when the royalties were raised from 0.5% to 1.6% of the

sales revenue. However, he said there's nothing he could do because it was the management's decision. I have never mentioned it to anyone since then.

Q: Now my question is about management consulting fees paid to I-One-I Holdings. Who was CEO of I-One-I Holdings while you were serving as Ahae's CEO?

A: It was KIM Pil-bae.

Q: How often did you, as CEO, meet with KIM Pil-bae or BYUN Ki-chun?

A: I didn't meet them often. They are people very close to YOO Byeong Eyn, but I am not close to him. YOO Byeong Eyn seemed uncomfortable around me probably because, I don't know, I am older than him. So I didn't try to contact him first. I would say hi when I encountered him at church but we never talked about business matters at all.

Q: While you were CEO, how much did your company pay I-One-I Holdings for management consulting?

A: We paid KRW 5 million every month.

Q: Did you sign a consulting services contract with I-One-I Holdings while you were CEO?

A: No, I didn't sign the agreement myself. The division in charge at my company asked for my approval for the contract so I approved. The division head probably stamped my seal on the contract.


At this point, the Prosecutor presents 'Management Consulting Service Contract' included in the Case Records p.139 – p.141 to the suspect.

Q: Is this the contract you approved and finalized as CEO?

A: Yes.

Q: What kind of advisory service did you receive from I-One-I Holdings?

A: As CEO, I would report the status of my company once or twice a month to CEO KIM Pil-bae. Then he would point out problems or give consulting on management. I-One-I Holdings also issued a consulting report for my company which our working-level staff used as a guideline.

At this point, the Prosecutor presents an indexed list in the Case Records p.159 – p.163 to the suspect.

Q: This is the list of consulting reports Ahae received from I-One-I Holdings, right?

A: Yes, that's right.

Q: Did you, as CEO, review consulting reports issued by I-One-I Holdings?

A: No, I didn't. I am not a professional businessman so I don't understand them anyways. My staff in the working-level read those reports and applied it to their work. But it's true that I-One-I Holdings wrote consulting reports for my company.

Q: Were these reports helpful for your business?

A: Frankly speaking, I am not an expert on management matters. When I co-chaired with LEE Seong-hwan, he did most of the work and I'd say I was learning. When I became the only CEO, executive director LEE Jae-young from the Seoul office ran the company. I do think those reports were helpful to my company because there were a lot of experts at I-One-I Holdings. Furthermore, since Ahae's an affiliated company of I-One-I Holdings, it was natural that Ahae got support from I-One-I Holdings.

Q: In addition to the list of reports I presented to you, do you have more evidence to prove that your company received advisory service from I-One-I Holdings?

A: If there is more evidence, LEE Jae-young should know since he was the person in charge of that matter.

Q: YOO Hyuk Kee and YOO Dae Kyoon are majority shareholders of I-One-I Holdings, which is the majority shareholder of Ahae.   Were they involved in Ahae's management?

A: I've never received direct orders from YOO Hyuk Kee or YOO Dae Kyoon. When giving orders, KIM Pil-bae may have added his opinion but I believed most orders came from YOO Hyuk Kee.

Q: Did you know that YOO Hyuk Kee was to succeed YOO Byeong Eyn?

A: Yes.   I knew and everyone in my church knew he would become the next chairman.

Q: Did YOO Dae Kyoon engage in your company management?

A: No.   YOO Dae Kyoon had no interest in the business at all because he is an artist.   It was a well-known fact that YOO Byeong Eyn was trying to make YOO Hyuk Kee his successor.

Q: This question is about consulting service fees paid to YOO Byeong Eyn.   In the consulting services contract signed on January 3, 2011, YOO Byeong Eyn was to receive KRW 180 million in total for a period of three months: KRW 60 million on October 31, 2011, KRW 60 million on November 30, 2011, and KRW 60 million on December 31, 2011. However, in the new contract signed on January 1, 2012, this was changed to monthly installments of KRW 15 million.   Why was the amount changed?

A: As far as I know, in around January 2011, a total of KRW 118 million was agreed to be paid to YOO Byeong Eyn over a year, but it was not decided whether the amount would be wired directly to YOO Byeong Eyn or to his business account.   So in October, same year, it was decided to report the payment as YOO Byeong Eyn's business revenue, which was why YOO Byeong Eyn registered his business under the name, Vinous-throated Parrotbill.   Thus,

EX-YOO-S5-00039

over a period of three months ending in December 2011, KRW 180 million in total was wired in three separate installments to YOO Byeong Eyn's business account.

Q: So the money you gave to him was not in return for advisory service but for his personal use and thinking about how to give money to YOO Byeong Eyn, you came up with an idea of disguising the money as YOO Byeong Eyn's business revenue by making him register his business. Is that true?

A: Yes. It was all decided from above (CEO KIM Pil-bae of I-One-I Holdings) so I had no choice but to follow.

Q: According to the written indictment, you, after KIM Pil Bae suggested, 'let's give YOO Byung Eyn money on the pretext of paying him consulting service fee,' signed a management consulting services contract in around January 2011, appointing YOO Byung Eyn (who registered his business under the name of Vinous-throated Parrotbill in around October 2011) as a consultant of the victim company in order to provide him with KRW 15,000,000 every month, even though he knew that YOO Byung Eyn would not provide any management consulting for the company on a regular basis or on special occasions. Did you admit to these charges in court?

A: Yes, I did.

Q: Did you receive such orders directly from KIM Pil-bae?

A: No, executive director LEE Jae-young got the order from KIM Pil-bae via phone call and relayed it to me. I directed my employees, saying "I have no choice. It's an order from the top."

Q: So it seems that money you provided to YOO Byeong Eyn, Vinous-throated Parrotbill, was disguised as consulting services fee even though no advisory service was rendered by YOO Byeong Eyn. Do you admit to that?

EX-YOO-S5-00040

A: Yes, I do. I respect YOO Byeong Eyn and it is true he gave me guidance. However, on the business side, my company got no help from him at all.

Q: So based on your statement above, regardless of the excessiveness of the payment, it seems that your company used YOO Hyuk Kee's trademarks and received consulting services from I-One-I Holdings. However, you received nothing from YOO Byeong Eyn in return for paying him consulting services fee. Is that right?

A: I never received any advisory service worth monthly payment of KRW 15 million from YOO Byeon Eyn. No consulting on a regular basis, at all. I think KIM Pil-bae and other executives of Semo Group wanted to provide funds for YOO Byeong Eyn's personal expenses so they decided to deliver funds by disguising it as consulting service fees.

Q: Couldn't you have rejected KIM Pil-bae's suggestion in the first place?

A: Executive director LEE Jae-young first reported KIM's suggestion to me and I just approved it. LEE Jae-young and I were in no position to say no to KIM's orders.

Q: Did you know that trademark royalties and other consulting service fees excessively or falsely provided to YOO Dae Kyoon, YOO Byeong Eyn and I-One-I Holdings were categorized as business expenses thereby deducting your tax burden?

A: Yes, I don't know exactly how numbers are drawn out because I am not a tax expert. However, I was certainly aware if a company incurs expenses, its corporate tax burden is reduced.

Q: You said you were CEO of Saecheonnyeon from around 2003 to around 2008.

A: Yes.

Q: Saecheonnyeon is recorded to have been established on or about January 23, 2003 and closed on or about August 13, 2008. Did you serve as CEO until the company's closure?

A: Yes, I worked as the CEO until the company closed down.

Q: Did you transfer Chonhaiji Co., Ltd. ("Chonhaiji")'s 1,120,000 shares, which were held by Saecheonnyeon, to I-One-I Holdings in about March 2008 at a total price of KRW 5.6 billion?

A: Yes, I did.

Q: According to the NTS, although tax accountant PARK Sang-bae estimated the price per share as KRW 13,198 per share, Saecheonnyeon transferred Chonhaiji's shares at the face value of KRW 5,000 per share, KRW 5.6 billion in total for 1,120,000 shares, which was way below 70% of the normal price. Do you admit that?

A: Yes, I do.

Q: How did you transfer the shares at such a low price?

A: Based on what I remember, PARK Seung-il from I-One-I Holdings relayed directions it saying that there is no problem because it's just moving assets from one affiliate to another and I did what I was told to. But I have no idea whether that order came from YOO Byeong Eyn, YOO Hyuk Kee or KIM Pil-bae.

Q: At the point when the above transfer took place, 30% of Saecheonnyeon shares were held under your name, 35% under LEE Seung-ki, and 35% under LEE Jae-ok. Who were actual shareholders?

A: I think the real holder was the Church (Evangelical Baptist Church of Korea).

Q: Didn't you say Saecheonnyeon's shares held by you, LEE Seung-ki and LEE Jae-ok were actually YOO Byeong Eyn's during the tax investigation by the NTS Seoul Regional Office?

A: I admitted during the investigation that the shares were held under borrowed names but I didn't mean to say that YOO Byeong Eyn privately owned the shares. What I was trying to say was that the Church is the holder and YOO Byeong Eyn is the de-facto owner because he

was the leader of the Church back then.

Q: SHIN Jae-jik, who temporarily served as Saecheonnyeon's CEO to operate the Anseong Branch of Saecheonnyeon stated that three shareholders including the suspect were borrowed names and the de-facto owner seemed to be YOO Byeong Eyn given how the company was operated at that time.   What do you think about that?

A: When Semo's executive director LEE Jae-young suggested that I take the CEO position, he asked LEE Jae-ok, LEE Seung-ki, and me to hold shares so I only knew that our names were borrowed as holders.   However, I have no idea who funded the purchase of shares and who the real owners were.   It's only my guess that the Church is the real holder.

Q: Do you think executive director LEE Jae-young, who suggested that you serve as CEO in the first place, knows about the real owner?

A: Yes, I do.

Q: According to the NTS, YOO Byeong Eyn is the de-facto owner of the Saecheonnyeon's shares and YOO Byeong Eyn's children hold 44% of I-One-I Holdings's shares, which means, Saecheonnyeon and I-One-I Holdings are related parties (affiliate - holding company relationship).   Saecheonnyeon's shares were transferred to I-One-I Holdings at 37% of the normal price - way lower than 70% - but holders of the shares in question were disguised as three people whose names were borrowed to conceal that relation and evade taxes.   Is it true that the names were borrowed on purpose to avoid paying taxes?

A: Since Saecheonnyeon was established, the three people including myself have been the holders of the shares. However, I want to point out that our names were not deliberately used for the said transfer to disguise the real holder or avoid paying taxes.   I admit that the price was much lower than the normal price.   However, I don't agree that borrowed names were used or documents were forged on purpose to deceive the tax authority.   The title of the

shares was trusted to us since the establishment of the company just in case a transfer of shares is necessary.

Q: Then why have the shares been held under the name of the three people since Saecheonnyeon was founded?

A: It was because orders came from the very top such as YOO Byeong Eyn and YOO Hyuk Kee . I didn't know why they did so.

Q: Did YOO Dae Kyoon engage in transferring the shares?

A: As far as I know, YOO Dae Kyoon, since he is an artist, enjoyed trademark royalties provided by affiliates but didn't engage in the management of affiliates. He neither engaged in Saecheonnyeon's management nor in the said transfer.

Q: The said transfer benefits I-One-I Holdings greatly. Don't you think it is highly likely that YOO Dae Kyoon was involved in making decisions regarding the said transfer since he owns over 19% of I-One-I Holdings's shares?

A: Given that YOO Dae Kyoon is the majority shareholder of the transferee company, I guess he could have agreed with the transfer when he was informed about it by YOO Hyuk Kee or anyone at I-One-I Holdings. However, I don't know exactly who in I-One-I Holdings made that decision.

Q: Is your statement all true?

A: Yes.

Q: Do you have any evidence supporting your claims? Or anything to add?

A: No.

Q : Is there anything missing from what you stated or different from what is true?

A: (In his own handwriting) No. (fingerprinted and sealed)

The above statement was made available to the suspect, who fingerprinted between pages, signed, and sealed (fingerprinted), after confirming that there is no error and that no addition, subtraction or change is necessary

Statement given by LEE Gang-se (sealed)

October 8, 2014

Incheon District Prosecutors' Office

Prosecutor PARK Gwang-hyeon    (sealed)

Prosecutorial Investigator SUH Dae-suk    (sealed)

EX-YOO-S5-00045

# Confirmation of Investigation Procedure

| Category | Details |
|---|---|
| 1. Arrival Time for the Interview | 14:30 |
| 2. Start and Finish Time for the Interview | □ Start:　　14:45<br>□ Finish:　　18:02 |
| 3. Start and Finish Time for Reviewing the Record | □ Start:　　18:02<br>□ Finish:　　18:28 |
| 4. Other factors to be checked so as to certify the lawful process of investigation: in cases where there is a considerable temporal gap between the arrival time and the start time, please state the reasons for such a gap, reasons for calling off the interview, and time to call off and to reinstate the interview, etc. (Article 13-4(2) of the Administrative Regulations on Prosecution Cases) | None |
| 5. Any Objections or Statements on the Procedure / Its Contents | None |

October 8, 2014

Prosecutor PARK Gwang-hyeon has interviewed LEE Gang-se and had him certify the above-mentioned.

Certifier: LEE Gang-se (*fingerprinted*)

Prosecutor: PARK Gwang-hyeon　　(*sealed*)

EX-YOO-S5-00046

# Witness Statement (1)

| Name | SHIN Jae-jik | Resident Registration No. | 551116-1463028 |
|---|---|---|---|
| Address | #205, 28, Daehak7ga-gil, Gwanak-gu, Seoul | | |
| Relation | Former CEO | | |

| Company | Name | Saecheonnyeon Co., Ltd. | Business Registration No. | 621-81-16963 |
|---|---|---|---|---|
| | Location | 1, Janggi-ri, Donghae-myeon, Goseong-gun, Gyeongsangnam-do | CEO (Resident Registration No.) | LEE (410210-1405915) |

The above stator, who was the former CEO of Saecheonnyeon Co., Ltd. (hereinafter "Saecheonnyeon"), appeared at the room of Investigation Team 2, Investigation Division II, Investigation Bureau 4 located on the 4th floor of Hyoje branch of the National Tax Service Seoul Regional Office at 17:20, May 2, 2014, and stated as follows, in relation with the allegation regarding the *Punishment of Tax Evaders Act*, at the office of Investigation Team 6 located on the 3rd floor of the same building from 21:30 on the same day.

1. Relation to the suspect

     I worked as the CEO of Saecheonnyeon from March 31, 2004 to July 20, 2005, and appeared here as a witness of Saecheonnyeon case.

2. At this point, the tax investigator arbitrarily questions SHIN Jae-jik as follows in order to clarify the facts in this case.

Q:   Your name, resident registration number, address, occupation, and contact information.

A:   My name is                        SHIN Jae-jik.

My resident registration number is        551116-1463028

My address is                     #205, 28, Daehak7ga-gil, Gwanak-gu, Seoul.

My place of birth is              Boryeong-si, Chungcheongnam-do.

My occupation is                  currently unemployed.

My contact number is              010-9467-7829 (mobile).


Q:   How do you feel today?

A:   Not that bad.

Q:   It's already over 10 p.m. Is it OK for you to be investigated at this time?

A:   Yes.

Q:   Your educational background and career.

A:   I graduated Gyeonggi Technical High School (5-year course; currently Seoul National University of Science and Technology) located in Ahyeon-dong, Mapo-gu, Seoul, in 1977, then graduated Hanyang University College of Engineering, majoring in Mechanical Engineering in February 1980, and obtained the master's degree of Mechanical Engineering in the graduate school of the same university in August 1987.

I worked for about 25 years at KEPCO Engineering & Construction, Samsung

Aerospace (currently Samsung Techwin), Korea Heavy Industries & Construction (currently Doosan Heavy Industries & Construction), etc., and started to work at Chonhaiji Co., Ltd. (hereinafter "Chonhaiji") in 2005. Before Chonhaiji, I worked at a related company called Saecheonnyeon for about a year.

Q:     What is your religion?

A:     I have been a Christian since I was in the university. I started to attend at an Evangelical Baptist Church of Korea in the late 1970s. Then I went to Seoul Church located in Samgakji, Seoul. Since my retirement from Chonhaiji in the end of February, 2011, I have not attended any church.

Q:     What business does Saecheonnyeon do?

A:     It was a toll processing company of Semo Co., Ltd. (hereinafter "Semo"), a vessel block manufacturer in Goseong-si, Gyeongsangnam-do. In 2005, Chonhaiji took over Semo's ship building department, which was under court receivership, via a court auction. Then Saecheonnyeon started to do toll processing for Chonhaiji. More specifically, Saecheonnyeon performs cutting of steel material, which means cutting steel plates according to drawings.

Q:     How did you become the CEO of Saecheonnyeon?

A:     LEE Gang-se, former CEO of Saecheonnyeon, was running the headquarters in Goseong-si, Gyeongsangnam-do. In 2004, however, a new branch was established in Anseong-si, Gyeonggi-do, to expand the business to the medical device (colon cleansing device) manufacturing field. Because a CEO to run the Anseong branch was necessary, I was additionally appointed as the CEO. LEE Gang-se and I respectively operated the headquarters and the Anseong branch as CEO. Saecheonnyeon sold the Anseong branch to Moreal Design in the end of 2006, as I

EX-YOO-S5-00049

know.

Q: Who appointed you as the CEO of Saecheonnyeon?

A: I got to know the chairman (YOO Byung Eyn) at church. When the Anseong branch was established, people said that it should be operated by an engineer. And, as I know, Lee Gang-se and other people recommended me to the chairman since I was an engineer.

The chairman used to preach a sermon in Geumsuwon in Anseong-si at 8 on Saturday. Usually 500 to 600 people attended it, but I attended the service only sometimes because I was working at Doosan Heavy Industries and Construction to build a nuclear power plant in Uljin. In the early 2004, I attended a Geumsuwon service, and after the service, the chairman came to me and suggested me operating the colon cleansing device business. I answered that I would think about it. He had the patent for the colon cleansing device. I thought a lot, and felt that it would be nice to face a new challenge. So after several weeks, after a Geumsuwon service, I told him that I would do it. He wished me luck. So I became the CEO of Saecheonnyeon.

Q: Do you mean that you were appointed as the CEO of Saecheonnyeon by YOO Byung Eyn?

A: Yes.

Q: Was YOO Byung Eyn qualified to appoint you as the CEO of Saecheonnyeon?

A: After I was appointed as the CEO of Saecheonnyeon, I or LEE Gang-se used to make an oral report on important issues to the chairman, when appropriate, after a Geumsuwon service. So I thought he was the de-facto owner of the company.

Q: Who are stockholders of Saecheonnyeon?

EX-YOO-S5-00050

A: There are a few stockholders, as I know. I do not know their specific names. But, in the case of LEE Gang-se, although he was formally holding stocks, I think his stocks were actually owned by the chairman.

Q: Why do you think so?

A: If LEE Gang-se had been the actual stockholder and had the management right over the company, he would have made decisions for management by himself. But LEE Gang-se reported important matters to the chairman, as I did, after a Geumsuwon service, although he did ordinary management activities. So I think he is a nominal stockholder. Also, if he had been the actual stockholder, he must have decided whether to appoint me as the CEO, but it was the chairman who determined it. So I think the chairman is the de-facto owner of LEE Gang-se's stocks.

Q: Are the stocks of other stockholders actually owned by YOO Byung Eyn?

A: I think so.

Q: Why do you think like that?

A: Because I have never seen other stockholders participating in company management.

Q: If other stockholders had been true stockholders, they must often have contacted you, the CEO of the company, to check the management at any time as well as during the general meeting of stockholders. Wasn't there any such contact?

A: No. If they were true stockholders of Saecheonnyeon, they must have checked the company's operation often. Because they did not do so, I think they were just nominal stockholders and the de-factor owner of the stocks was the chairman.

Q: Have you ever reported about Saecheonnyeon's management to LEE Gang-se or YOO Byung Eyn?

A:     LEE Gang-se was a CEO like me and in charge of a vessel manufacturer in Goseong-si, while I operated the medical device manufacturer in Anseong. Also, he was in a different field from me, so I did not make any occupational report to him. But sometimes I consulted with him on some issues.

The chairman was not a person who works in an exclusive and prescriptive way. When a Geumsuwon service ended, he used to give a nod to me or other CEOs, and when possible, we used to make a verbal report to him about an important issue. For example, when I obtained Korea Food & Drug Administration's approval on the company (Saecheonnyeon)'s manufacturing of medical device (colon cleansing device), I reported it verbally to him. Other people, including LEE Gang-se, also made reports in the same way.

Q:     Did YOO Byung Eyn see you alone to receive a report or give an instruction?

A:     No. He preferred freely receiving a verbal report in a public place. He had not called me privately.

Q:     Didn't other henchmen such as KIM Pil Bae have private consultation with YOO Byung Eyn?

A:     KIM Pil Bae had held the position of the CEO of I-One-I Holdings (a holding company) since 2007. So CEOs of subsidiaries including me sometimes called him as "vice chairman." KIM Pil Bae sometimes gave instructions to us, saying that the orders are from the chairman, so I thought KIM Pil Bae may have had private consultations with the chairman to make a report or receive instructions. I have no idea whether the other henchmen also personally saw the chairman.

Q:     Did YOO Byung Eyn also give instructions to you when you were reporting to him after a Geumsuwon service?

A:    He used to say that we should settle matters by ourselves via discussion. Those who work at a conglomerate or other ordinary organization may not understand it, but it was his management style. He may have meant that the CEOs in charge should solve the problem with responsibility.

When KIM Pil Bae became the CEO of I-One-I Holdings, a holding company, he expressed discontent about CEOs directly reporting to the chairman, so we instead reported to KIM Pil Bae for a while. Even before that, KIM Pil Bae was a very influential person in the group compared to other CEOs.

Q:    Why did you resign from the CEO of Saecheonnyeon on July 20, 2005?

A:    In 2005, YOO Byung Eyn appointed me as the CEO of Chonhaiji. The sales scale and company size of Chonhaiji were far greater than Saecheonnyeon so I had lots of work. Also, the Anseong branch of Saecheonnyeon was far away from the Goseong plant of Chonhaiji, so it was difficult to operate the two companies at the same time. So I said to YOO Byung Eyn that I would be better off resigning from the CEO of Saecheonnyeon, and he accepted it. So I resigned.

Q:    Why did you resign from the CEO of Chonhaiji on around February 28, 2011?

A:    The company suffered damage, amounting to billions of won, as I mistakenly obtained an order of marine cranes. I should not have obtained it since the company had no experience in manufacturing marine cranes. It resulted in great injury. Then KIM Pil Bae had director KIM Dong-hwan force me to quit. So I submitted my resignation.

Q:    Do you have any additional comment?

A:    Please do not tell other believers that I stated I became the CEO of Saecheonnyeon and Chonhaiji by directions of the chairman. If they know, they will treat me as a

traitor.

I have not attended a church for a while, but it never means that I do not agree with the doctrines or do not believe in the religion at all. It is just because I got into financial difficulty and felt skepticism about the connection between the church and companies. So I am just in a resting phase in my faith life, a kind of dormant period. I fear if other believers get to know about what I said about YOO Byung Eyn.

Q:    Is there anything to correct about what you stated?

A:    No.

Q:    Thank you for your cooperation. What time is it now?

A:    It's 23:40.

(Having reviewing the above statement from 23:40 to 23:57, May 2, 2014, I hereby confirm that there is no error (or such an error has been corrected by addition, change or subtraction by my handwriting).)

EX-YOO-S5-00054

The above statement was made available to SHIN Jae-jik, who fingerprinted between pages, signed, and sealed, after confirming that there is no error (or such an error has been corrected by addition, change or subtraction) and that no addition, subtraction or change is necessary.

May 2, 2014

Stated by            SHIN Jae-jik

Investigated by        tax investigator JO Seong-in

Witnessed by         tax investigator LEE Seok-jae

If it is found that any part of the statement is not true to the fact, the stator may be punished under the *Punishment of Tax Evaders Act.*

EX-YOO-S5-00055

## Resident Registration Card

SHIN Jae-jik
55111601463028

#31-408, Chagwan Apt,
Samsung-dong, Gangnam-gu, Seoul

March 9, 2002
Head of Gangnam-gu, Seoul

(photograph)

EX-YOO-S5-00056

# STATEMENT

- Name: PARK Seung-il

- Resident Registration Number: 590108-1464629

- Occupation: former auditor of I-One-I Holdings Co., Ltd.

- Address:

  - 210-302 Hansolmaeul APT, 111 Jeongja-dong, Bundang-gu, Seongnam-si, Gyeonggi-do

  - Currently in Incheon Detention Center (Inmate No. 1484)

- Registered Domicile:

- Work Address:

- Contact Information:

  - Home: 031-719-1939      Mobile: 010-9400-0781

  - Office: 02-3458-8111      E-mail:


On October 10, 2014, the above person voluntarily appeared at prosecutor room #1025 of Incheon District Prosecutors' Office and gave the following statement regarding a case involving suspect YOO Byeong Eyn and others on charges of violating the *Punishment of Tax Offenses Act.*


1. How are you related to YOO Byeong Eyn?

   I worked under Mr. YOO Byeong Eyn as an executive of his companies. So I was involved partly in company management however, I am not a family member, nor a relative of his.

2. How are you involved in this case?

   I will state everything I know on the transferring of Chonhaiji shares held by

Saecheonnyeon to I-One-I Holdings at a low price when was the director and auditor of I-One-I Holdings.

# Confirmation of Rights to Remain Silent and to Legal Counsel

1. You have the right to remain silent or to decline to make statements on all or part of the questions.

1. Remaining silent will not be used against you.

1. Anything you say by waiving your right to remain silent can and will be used against you in court as evidence.

1. You have the right to legal counsel including the right to have the assistance of counsel during interrogation.

Q: Were you informed of the above rights?

A: *(Handwritten and fingerprinted) Yes.*

Q: Will you exercise the right to remain silent?

A: *(Handwritten and fingerprinted) No.*

Q: Will you exercise the right to have the assistance of legal counsel?

A: *(Handwritten and fingerprinted) No.*

October 10, 2014

Statement given by: PARK Seung-il *(fingerprinted)*

EX-YOO-S5-00059

At this time, the prosecutor starts questioning PARK Seung-il as follows.

Q: Are you PARK Seung-il?

A: Yes.

Q: Why are you under detention?

A: I am currently under trial on charges of complicity in embezzlement of affiliate company funds by YOO Byeong Eyn family. The court will pass the sentence on November 5, 2014.

Q: Today, you will be investigated as a witness regarding charges of corporate tax evasion by YOO Byeong Eyn and others for transferring Chonhaiji Co., Ltd. ("Chonhaiji") shares held by Saecheonnyeon Co., Ltd. ("Saecheonnyeon") to I-One-I Holdings Co., Ltd. ("I-One-I Holdings") at a price lower than the market price. Are you willing to give a statement on this?

A: Yes. I will state everything I know.

Q: From around December 27, 2007 to around March 16, 2014, you were the director of I-One-I Holdings. And auditor until around March 17, 2014. Is this correct?

A: Yes, that is correct.

Q: Do you know that an agreement was made on around March 5, 2008 to transfer 1,120,000 Chonhaiji shares - held by Saecheonnyeon - to I-One-I Holdings at a face value of KRW 5,000 per share, so at a total price of KRW 5,600,000,000? And that KRW 560,000,000 was paid down on the same day, and the rest, KRW 5,040,000,000, was paid on around March 21, 2008?

A: Yes. I don't remember the exact numbers but I do remember how the agreement was carried out.

Q: Do you know who held Saecheonnyeon shares at the time?

A: I remember that LEE Gang-se, LEE Seung-ki and LEE Jae-ok, the three held the shares but I don't remember exactly how much - in percentage - they each held.

Q: According to our data, LEE Gang-se had 30% and LEE Seung-ki and LEE Jae-ok each

had 35%. Does this recall your memory?

A: I remember they each had a similar percentage.

Q: Could you tell us what you know about how the three came to hold Saecheonnyeon shares?

A: That was before I-One-I Holdings was established so I wasn't involved at all in Saecheonnyeon affairs. I have no idea how they became Saecheonnyeon shareholders.

Q: Regarding the transfer of Chonhaiji shares, LEE Gang-se, the former CEO of Saecheonnyeon stated that PARK Seung-il from I-One-I Holdings relayed directions saying that there is no problem because it's just moving assets from one affiliate to another and I did what I was told to. But I have no idea whether that order came from YOO Byeong Eyn, YOO Hyuk Kee or KIM Pil-bae. Do you have anything to say about his statement?

A: I roughly remember. As far as I remember, the directions came from KIM Pil-bae and YOO Hyuk Kee, the top decision-makers.

Q: Saecheonnyeon transferred Chonhaiji's shares to I-One-I Holdings at a face value of KRW 5,000 per share despite the fact that tax accountant PARK Sang-bae estimated the price per Chonhaiji share as KRW 13,198. Can you tell us anything about how this decision was made?

A: Back then, KIM Dong-hwan and I would follow directions from KIM Pil-bae or YOO Hyuk Kee. We did not have a say in the decision-making process. I vaguely remember that consulting advice was sought from accounting firm Samil PwC on the legality of transferring Chonhaiji's shares to I-One-I Holdings at a low price and that Samil PwC said that tax law-wise, it shouldn't be a problem because I-One-I Holdings and Saecheonnyeon are not specially-related parties. After that, the top management made a decision and KIM Dong-hwan and I went on with it as we were told.

Q: And the whereabouts of the KRW 5,600,000,000? I think you'd remember since at the time of transfer – in around March 2008 - you were the director.

A: As far as I know, Saecheonnyeon paid corporate tax and paid dividends to the shareholders

and it went into liquidation. But I don't know any details.

Q: How did I-One-I Holdings come up with the KRW 5,600,000,000 for the above transfer.

A: Probably through paid-in capital increase.

Q: Are you also a shareholder of I-One-I Holdings?

A: Yes. I don't know exactly how many but I know the shares are worth about KRW 10,000,000. I bought them during paid-in capital increase in around 2008 and have had them since.

Q: Were Saecheonnyeon shares held by LEE Gang-se, LEE Seung-ki and LEE Jae-ok because the shares were transferred to them prior to the transfer of Chonhaiji's shares?

A: As far as I remember, that's not the case and the three had been shareholders since Saecheonnyeon's establishment.

Q: Were there any parts of the documents related to the transfer of Chonhaiji's shares that were untrue to the facts?

A: No. I don't know anything about who the real owner of Chonhaiji's shares is. But even if they are held under borrowed names, LEE Gang-se, LEE Seung-ki and LEE Jae-ok have been shareholders for years since establishment. So that's why their names are on the documents related to the transfer of shares. The shareholders were not intentionally disguised with borrowed names, nor were false documents drafted regarding this matter in order to deceive the taxation office or to hide anything in the event of tax investigation. And about the real owner of Chonhaiji's shares, like I said earlier, I don't know much. I think those in the top management like KIM Pil-bae and YOO Hyuk Kee would know.

Q: Is everything you stated true to the facts?

A: Yes.

Q: Are there any statements or evidence supporting your claims?

EX-YOO-S5-00062

A: No.

Q: Is there anything on this statement that is written differently from what was stated or the truth?

A: *(Hand-written) No. (fingerprinted and sealed)*

EX-YOO-S5-00063

The above statement was made available to PARK Seung-il, who fingerprinted between pages, signed, and sealed, after confirming that there is no error and that no addition, subtraction or change is necessary.

Statement given by: PARK Seung-il *(fingerprinted)*

October 10, 2014

Incheon District Prosecutors' Office

Prosecutor: PARK Gwang-hyeon *(sealed)*

Assistant Investigator: SUH Dae-suk *(sealed)*

EX-YOO-S5-00064

# Confirmation of Investigation Procedure

| Category | Details |
|---|---|
| 1. Arrival Time for Interview | 13:50 |
| 2. Start/Finish Time of Interview | ☐ Start Time: 13:50<br>☐ Finish Time: 16:12 |
| 3. Start/Finish Time of Reviewing the Record | ☐ Start Time: 16:12<br>☐ Finish Time: 16:20 |
| 4. Other Factors to be Certified Regarding the Investigation Procedure [If there is a considerable disparity in time, reasons thereof, reasons of suspended investigation, time of suspended, and time of resumed are needed (Article 13-4 Paragraph 2 of *the Regulation on Prosecution Case Treatment*)] | N/A |
| 5. Any Objections to or Comments on Procedure and Contents of Investigation | N/A |

October 10, 2014

Prosecutor PARK Gwang-hyeon interviewed PARK Seung-il and had him certify the above-mentioned.

Certified by: PARK Seung-il   *(fingerprinted)*

Prosecutor: PARK Gwang-hyeon *(sealed)*



**Ministry of Justice**
Republic of Korea

미합중국 법무부장관 귀하


### 유혁기에 대한 범죄인인도청구 추가자료


대한민국 법무부장관 본인 박상기는,

1. 대한민국을 대표하여 대한민국 정부와 미합중국 정부 간의 범죄인인도조약에
따라, 특정경제범죄가중처벌등에관한법률위반(횡령) 등 혐의를 받고 있는 유혁기를
대한민국으로 인도하여 줄 것을 청구하였습니다.

2. 본 문서는 범죄인인도를 위한 추가자료로서 본 문서를 봉인한 후 서명하고
대한민국 법무부장관의 관인을 날인함으로써 대한민국 정부에 의하여 인증된
문서임을 확인합니다.


대한민국 서울

2019년 6월 7일

대한민국 법무부장관 

대리 국제형사과장 주동언




# 유혁기 사건 미측 설명자료

## 1. 사건배경 설명

### (1) 검찰의 수사착수 계기

- 2014년 4월 16일 대한민국 영해에서 '세월호' 여객선이 침몰하여 수학여행을 가던 어린 학생들을 포함한 총 304명이 사망한 가슴아픈 사건이 발생하였습니다.

- 이 사고 선박은 유혁기를 포함한 유병언 일가가 운영하던 ㈜청해진해운 소속 선박으로, ㈜청해진해운은 18년간 운항하여 이미 노후된 상태였던 이 선박을 일본 해운업체로부터 저가에 매입한 후, 수익 극대화를 위해 무리하게 객실증설 공사를 실시하고, 최대 화물 적재량의 2배에 달하는 과적 운행을 하다가 사고가 발생하게 된 것입니다.

- 대한민국 검찰은 이 사건의 사고원인을 수사하던 중, ㈜청해진해운이 승객의 안전을 생각하지 않은 채 수익 극대화를 위해 무리하게 증축 및 과적 운행을 한 원인이 ㈜청해진해운의 부실한 자금상황 및 비정상적인 경영 때문이라는 사실을 확인하게 되었습니다.

- 그리고, ㈜청해진해운의 자금상황이 악화되고 경영이 부실화된 이유는 유병언 일가가 ㈜청해진해운을 포함한 계열사들의 경영권을 장악한 상태에서 비정상적인 자금거래를 통해 거액의 회사자금을 횡령하였기 때문이라는 사실을 밝혀내게 되었습니다.

- 다시 한번 강조하고 싶은 점은, 유혁기 등 유병언 일가의 거액의 회사자금 횡령으로 회사가 부실하게 됨으로써 안전하게 관리하며 운행해야 할 선박도 단순한 수익 극대화의 수단으로 전락하게 되었고, 이로 인해 결국 어린 학생들을 포함한 304명의 무고한 생명들이 억울한 죽음을 당하게 되었다는 것입니다.

### (2) 유병언 일가 회사들의 지배구조

- 사건의 이해도를 높이기 위해 유혁기를 포함한 유병언 일가가 운영하던 회사들의 지배구조에 대해 먼저 설명을 드리겠습니다.

EX-YOO-S5-00067

- 유혁기를 포함한 유병언 일가는 ㈜아이원아이홀딩스를 지주회사로 설립한 후 유대균과 유혁기가 각각 19%의 지분을 보유한 다음, ㈜아이원아이홀딩스로 하여금 ㈜천해지의 지분 43%, ㈜아해의 지분 44%를 보유하게 하여 ㈜천해지, ㈜아해를 지배하고, ㈜천해지로 하여금 ㈜청해진해운의 지분 39%를 보유하게 하여 ㈜천해지를 통해 ㈜청해진해운을 지배하고, 유대균은 ㈜다판다의 지분 32%를 보유하고, ㈜다판다로 하여금 ㈜천해지의 지분 18%, ㈜세모의 지분 31%를 보유하게 하여 ㈜천해지와 ㈜세모를 지배하는 구조를 형성하였습니다.

## ※ 유병언 일가의 주요 계열사 지배구조도



## ※ ㈜아이원아이홀딩스 지분구조

| 구분 | 지분율 | | 지분권자 |
|---|---|---|---|
| 유병언 일가 지분 | 50.31% | 52.59% | ▸유혁기, 유대균 각 19.44%<br>▸유섬나, 유상나 각 2.57%<br>▸김혜경 6.29% |
| 유혁기 우호지분 | 2.28% | | ▸유혁기가 지명한 강기철, 주순옥 |
| 일반인 | | 47.41% | |

## ※ 유병언 일가 수사현황

| 이 름 | 수사 및 처벌 | 비 고 |
|---|---|---|
| 유병언 | 2014. 6. 도피 중 사망 | |
| 유대균(장남) | 2015. 10. 횡령죄 등 징역 2년 | |
| 유섬나(장녀) | 2018. 9. 횡령죄 등 징역 4년 | 2017. 6. 프랑스로부터 범죄인인도 송환 |
| 유혁기(차남) | 2014. 5. 미국에 범죄인인도 청구 | 미국 체류 중 |
| 유상나(차녀) | | 미국 체류 중 |
| 김혜경(비서) | 2018. 2. 횡령죄 등 징역 1.6년 | 2014. 10. 미국으로부터 강제추방 |

- 유혁기를 포함한 유병언 일가는 위와 같은 지배구조를 통해 ㈜아이원 아이홀딩스 및 계열사들의 인사권과 경영권을 사실상 장악하고, 인사 권과 경영권을 자신들 뜻대로 전횡하기 위해 회사의 외부 감사인을 유 병언 일가가 운영하는 교회 신도들로 임명함으로써 회사들에 대한 감 사업무를 사실상 형해화 시켰습니다.

- 또한, 유병언 일가는 자신들에 대한 충성도가 높은 소수 측근들을 여 러 계열사들의 임원 또는 감사 직위에 겸임시키고, 인사이동 시에도 그들 간에 보직을 순환시키는 폐쇄적 경영방식을 통해 계열사들에 대 한 지배력을 강화 및 유지하였습니다.

## ※ ㈜아이원아이홀딩스 및 계열사들의 임원 및 감사 중복 현황

| 이름 | 아이원아이홀딩스 | 트라이곤코리아 | 다판다 | 온지구 | 아해 | 문진미디어 | 천해지 | 청해진해운 | 세모 |
|---|---|---|---|---|---|---|---|---|---|
| 김필배 | 대표 | | 대표 | | | 대표 | | | |
| 권오균 | | 대표 | | | | | | | 이사 |
| 송국빈 | 이사 | | 대표 | | | | | | |
| 이재영 | | | | | 대표 | | | | 이사 |
| 변기춘 | 대표 | 이사 | | | | | 대표 | 감사 | |
| 고창환 | 이사 | | 대표 | 이사 | | | 이사 | | 대표 |
| 김한식 | 감사 | | | 감사 | | | | 대표 | 감사 |
| 신재직 | 이사 | | | 이사 | | | 대표 | | |
| 박승일 | 이사 | 이사 | | | 감사 | 감사 | 이사 | | |
| 김동환 | 이사 | | 감사 | | | | 이사 | | |
| 김혜경 | 주주 | | 이사 | | | 이사 | | | |
| 이강세 | | | | | 대표 | | 이사 | | |
| 유혁기 | 주주 | 대표 | | 주주 | | 대표 | | | |
| 유대균 | 주주 | 이사 | 이사 | | | | | | |

## 2. 횡령 부분

**(1) (세모, 모래알 디자인, 아해, 온나라쇼핑, 천해지 등과 같은) 계열사는 실제 운영되는 합법적 회사입니까 아니면 실체가 없는 페이퍼 컴퍼니에 불과합니까?**

- 위 계열사들은 페이퍼 컴퍼니가 아니고, 실제 매출이 있고 합법적으로 운영되는 실체가 있는 회사들입니다. 예를 들어 ㈜다판다 회사는 건강식품인 스쿠알렌을 판매하는 회사이며, ㈜천해지는 조선업을 운영하는 회사입니다.

※ 계열사들의 영업 현황 (단위 : 억원)

| 회사 | 업종 | 자산 | 부채 | 매출 | 순익 |
|------|------|------|------|------|------|
| 아해 | 도료 | 445 | 364 | 578 | 3 |
| 온지구 | 자동차부품 | 223 | 164 | 428 | 13 |
| 청해진해운 | 해운 | 181 | 128 | 299 | - 725 |
| 다판다 | 건강식품 | 331 | 144 | 477 | 23 |
| 천해지 | 조선 | 983 | 785 | 1,143 | 68 |
| 세모 | 건강식품 | 318 | 234 | 220 | 23 |
| 문진미디어 | 출판 | 571 | 354 | 427 | 30 |

- 위 계열사들이 영업을 통해 매출을 일으키면, 유혁기를 포함한 유병언 일가는 지주회사를 통해 계열사들의 경영권과 인사권을 장악하고 있음을 기화로, 이사회 의결 등 적법한 절차 없이 컨설팅 수수료 등 허위 명목으로 계열사의 자금을 유혁기 개인 계좌로 이체함으로써, 계열사들의 자금을 횡령한 것입니다.

- 계열사들은 모두 주식회사이며, 유혁기 등 유병언 일가가 ㈜아이원아이홀딩스를 통해 위 계열사들을 사실상 지배하고 있었으나 계열사들의 주식을 모두 소유하고 있었던 것은 아니고 일반 주주들이 50% 이상의 지분을 가지고 있었습니다. 그러므로, 본건 횡령죄의 법률상 피해자는 위 계열사 회사들이며, 그 실질적인 피해는 결국 위 계열사들의 주주들이 떠안게 된 것입니다.

**(2) 계열사의 자금은 유혁기의 교회 신도들을 통해 조성된 돈입니까? 이 교회신도들을 투자 수익금을 기대한 투자자로 볼 수 있습니까? 교회 신도들은 자신의 돈이 어떻게 사용될 것이라고 알고 있었습니까?**

- 앞에서 언급한 바와 같이 이 사건 계열사들은 모두 실체가 있는 주식회사이기 때문에, 각 계열사들은 영업과 매출을 통해 수익을 내고 자금을 벌어들였습니다.

- 유혁기의 교회 신도들이 위 계열사들에 사업자금을 투자한 것이 아니라, 교회 신도들이 위 계열사들의 일부 상품을 구매한 것입니다.

- 앞에서 언급한 바와 같이 본건 횡령의 피해자는 위 계열사들의 물품을 구입한 교회의 신도들이 아니고, 주식회사인 계열사들이며, 유혁기의 횡령으로 계열사들의 자금상황과 수익구조가 악화되었고 이로 인한 실질적인 피해는 위 계열사들의 주주들이 떠안게 된 것입니다.


**(3) 계열사의 자금이 키솔루션으로 지급된 후에, 이 돈이 유혁기의 개인 은행 계좌로 입금되었다는 증거가 있습니까?**

- 키솔루션은 개인 사업체로 법인 계좌가 따로 없었기 때문에 계열사 자금을 횡령한 자금은 바로 유혁기의 개인계좌로 입금이 되었습니다. 주식회사의 자금을 허위의 명목으로 개인계좌로 이체하였다는 사실은 횡령에 부합하는 증거가 됩니다. (별첨 거래내역 첨부)


**(4) 경영자문용역계약서에 실제로 유혁기 본인이 서명하였습니까?**

- 첨부된 경영자문용역계약서에는 유혁기의 도장이 날인되어 있습니다.

- 유혁기의 지시를 받아 키솔루션 업무를 전반적으로 관리한 사람은 박승일이고, 키솔루션 명의의 서류들 중에 일부는 박승일의 서명이 기재되어 있습니다. 그러나, 박승일은 유혁기의 지시를 받아 유혁기의 업무를 대리하는 사람이었기 때문에 박승일의 서명이 있다고 하더라도 실제로는 유혁기가 해당 업무를 실행한 것으로 볼 수 있습니다.

EX-YOO-S5-00071

# 3. 조세포탈 부분

## (1) 유혁기가 새천년의 과세대상소득이 어떤 식으로 신고될 것이라는 것을 알고 있었다는 증거는 무엇입니까?

- 유혁기가 ㈜새천년의 과세대상소득의 신고방식을 알고 있었다는 사실에 대한 증거로는 ① ㈜새천년 주주였던 이강세의 진술, ② ㈜새천년의 대표이사였던 신재직의 진술, ③ 유혁기의 뜻에 따라 계열사를 관리하던 박승일의 진술이 있습니다.

  ① ㈜새천년 주주 이강세의 진술 : 이강세는 검찰 조사에서, ㈜새천년 주식의 실제 소유자는 유병언 일가 또는 그 일가가 운영하는 기독교복음침례회이고, 이강세 자신은 유혁기나 유병언의 지시를 받아 ㈜새천년의 주식 명의를 빌려주었을 뿐 ㈜새천년의 주주로서 회사 업무에 관여한 사실은 없으며, ㈜천해지 주식을 저가에 양도하게 된 것은 유혁기의 뜻에 따라 ㈜아이원아이홀딩스와 계열사들을 관리하던 박승일의 지시에 의한 것이라고 진술하였습니다. (이강세 진술조서 별첨)

  ② ㈜새천년 대표이사 신재직의 진술 : 신재직은 검찰 조사에서, ㈜새천년의 주식은 모두 유병언 회장 일가의 소유이고, 다른 주주들은 모두 명의상 주주일 뿐 회사 운영에 관여한 사실이 없으며, ㈜새천년의 경영과 관련하여서는 유병언에게 구두로 보고하였다고 진술하였습니다. 구체적인 예로, ㈜새천년이 의료기기 생산허가를 식약청으로부터 받았을 때 이러한 사실을 유병언에게 보고한 사실이 있다고 진술하였습니다. (신재직 진술조서 별첨)

  ③ 유혁기의 지시에 따라 계열사들을 관리하던 박승일의 진술 : 박승일은 검찰 조사에서, ㈜천해지 주식의 저가 양도 관련하여 유혁기의 지시를 받고 이강세에게 유혁기의 지시를 전달하였다고 진술하였습니다. (박승일 진술조서 별첨)

- 위와 같은 증거들을 종합하면, 결국 유혁기는 자신의 형인 유대균, 자신의 아버지인 유병언과 함께 경제 공동체를 형성하여 ㈜아이원홀딩스

를 지주회사로 하여 계열사들을 지배하고 있었고, ㈜새천년 또한 주주는 이강세, 이재욱, 이승기로 구성되어 있었으나 이들은 모두 차명으로 주식을 소유한 것에 불과하였으며, ㈜새천년의 실질적인 소유주는 유혁기를 포함한 유병언 일가였던 사실이 인정됩니다.

- 그러므로, 유혁기를 포함한 유병언 일가는 ㈜새천년의 과세대상 소득이 어떤 식으로 신고될 것이라는 것은 모두 알고 있었을 뿐만 아니라, 이러한 소득 신고를 지시한 것입니다.


**(2) 유혁기가 새천년의 소득 신고에 관한 의사결정과정에 참여하였다는 증거는 무엇입니까?**

- 위 (1)항의 답변과 동일합니다.


**(3) 제가 이해하기 어려운 점은 유혁기가 ㈜새천년 소속이 아님에도 ㈜새천년의 소득금액 누락의 조세포탈혐의를 받고 있다는 것입니다. 만약 유혁기가 세금을 허위 신고한 회사와 관련이 있다고 하더라도, 미국 법원은 유혁기가 의사결정자로서 혹은 세금신고논의에 참여자로서 세금 신고 누락 행위에 참여하였다는 구체적인 증거를 요구할 것으로 보입니다.**

- 위 (1)항의 답변과 동일합니다.

# 유혁기 개인계좌로 이체된 거래내역

| 순번 | 일시 | 제공자 | 대표이사 | 수령자 | 횡령금액 (부가세제외) | 명목 |
|---|---|---|---|---|---|---|
| 1 | 2009-07-31 | ㈜아해 | 이강세 | 유혁기 | 65,986,900 | 상표권사용료 |
| 2 | 2009-08-31 | ㈜아해 | 이강세 | 유혁기 | 74,332,910 | 상표권사용료 |
| 3 | 2009-09-30 | ㈜아해 | 이강세 | 유혁기 | 85,358,950 | 상표권사용료 |
| 4 | 2009-10-30 | ㈜아해 | 이강세 | 유혁기 | 82,482,640 | 상표권사용료 |
| 5 | 2009-11-30 | ㈜아해 | 이강세 | 유혁기 | 75,699,660 | 상표권사용료 |
| 6 | 2009-12-31 | ㈜아해 | 이강세 | 유혁기 | 65,440,520 | 상표권사용료 |
| 7 | 2010-01-30 | ㈜아해 | 이강세 | 유혁기 | 20,057,030 | 상표권사용료 |
| 8 | 2010-02-27 | ㈜아해 | 이강세 | 유혁기 | 34,552,840 | 상표권사용료 |
| 9 | 2010-03-31 | ㈜아해 | 이강세 | 유혁기 | 98,678,620 | 상표권사용료 |
| 10 | 2010-04-30 | ㈜아해 | 이강세 | 유혁기 | 113,957,210 | 상표권사용료 |
| 11 | 2010-05-31 | ㈜아해 | 이강세 | 유혁기 | 108,965,880 | 상표권사용료 |
| 12 | 2010-06-30 | ㈜아해 | 이강세 | 유혁기 | 119,595,560 | 상표권사용료 |
| 13 | 2010-07-30 | ㈜아해 | 이강세 | 유혁기 | 91,733,660 | 상표권사용료 |
| 14 | 2010-08-31 | ㈜아해 | 이강세 | 유혁기 | 57,267,790 | 상표권사용료 |
| 15 | 2010-09-30 | ㈜아해 | 이강세 | 유혁기 | 68,928,360 | 상표권사용료 |
| 16 | 2010-10-29 | ㈜아해 | 이강세 | 유혁기 | 88,509,320 | 상표권사용료 |
| 17 | 2010-11-30 | ㈜아해 | 이강세 | 유혁기 | 92,307,510 | 상표권사용료 |
| 18 | 2010-12-31 | ㈜아해 | 이강세 | 유혁기 | 67,265,320 | 상표권사용료 |
| 19 | 2011-01-31 | ㈜아해 | 이강세 | 유혁기 | 28,770,020 | 상표권사용료 |
| 20 | 2011-02-28 | ㈜아해 | 이강세 | 유혁기 | 37,212,960 | 상표권사용료 |
| 21 | 2011-03-31 | ㈜아해 | 이강세 | 유혁기 | 86,113,660 | 상표권사용료 |
| 22 | 2011-04-29 | ㈜아해 | 이강세 | 유혁기 | 119,011,700 | 상표권사용료 |
| 23 | 2011-05-31 | ㈜아해 | 이강세 | 유혁기 | 114,268,060 | 상표권사용료 |
| 24 | 2011-06-29 | ㈜아해 | 이강세 | 유혁기 | 125,344,540 | 상표권사용료 |
| 25 | 2011-07-29 | ㈜아해 | 이강세 | 유혁기 | 97,473,630 | 상표권사용료 |
| 26 | 2011-08-31 | ㈜아해 | 이강세 | 유혁기 | 95,052,150 | 상표권사용료 |
| 27 | 2011-09-30 | ㈜아해 | 이강세 | 유혁기 | 118,644,650 | 상표권사용료 |
| 28 | 2011-10-31 | ㈜아해 | 이강세 | 유혁기 | 117,824,120 | 상표권사용료 |
| 29 | 2011-11-30 | ㈜아해 | 이강세 | 유혁기 | 112,252,300 | 상표권사용료 |
| 30 | 2011-12-30 | ㈜아해 | 이강세 | 유혁기 | 105,125,510 | 상표권사용료 |
| 31 | 2012-01-31 | ㈜아해 | 이강세 | 유혁기 | 32,865,670 | 상표권사용료 |
| 32 | 2012-02-29 | ㈜아해 | 이강세 | 유혁기 | 54,586,090 | 상표권사용료 |
| 33 | 2012-03-31 | ㈜아해 | 이강세 | 유혁기 | 99,416,630 | 상표권사용료 |
| 34 | 2012-04-30 | ㈜아해 | 이강세 | 유혁기 | 126,176,930 | 상표권사용료 |
| | 이강세 합계 | | | | 2,881,259,300 | 원 |
| 35 | 2012-05-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 153,315,540 | 상표권사용료 |
| 36 | 2012-06-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 152,717,850 | 상표권사용료 |
| 37 | 2012-07-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 88,316,150 | 상표권사용료 |
| 38 | 2012-08-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 71,302,970 | 상표권사용료 |
| 39 | 2012-09-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 109,726,550 | 상표권사용료 |
| 40 | 2012-11-12 | ㈜아해 | 이재영, 황원주 | 유혁기 | 117,211,055 | 상표권사용료 |
| 41 | 2012-11-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 117,887,270 | 상표권사용료 |
| 42 | 2012-12-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 67,798,940 | 상표권사용료 |
| 43 | 2013-01-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 29,444,940 | 상표권사용료 |
| 44 | 2013-02-28 | ㈜아해 | 이재영, 황원주 | 유혁기 | 96,207,690 | 상표권사용료 |
| 45 | 2013-03-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 104,114,570 | 상표권사용료 |
| 46 | 2013-04-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 135,741,050 | 상표권사용료 |
| 47 | 2013-05-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 140,537,280 | 상표권사용료 |
| 48 | 2013-06-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 134,883,620 | 상표권사용료 |
| 49 | 2013-07-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 95,969,170 | 상표권사용료 |

| 50 | 2013-08-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 97,998,480 | 상표권사용료 |
| 51 | 2013-09-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 99,694,710 | 상표권사용료 |
| 52 | 2013-10-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 116,803,180 | 상표권사용료 |
| 53 | 2013-11-30 | ㈜아해 | 이재영, 황원주 | 유혁기 | 131,752,960 | 상표권사용료 |
| 54 | 2013-12-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 151,053,570 | 상표권사용료 |
| 55 | 2014-01-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 43,679,160 | 상표권사용료 |
| 56 | 2014-02-28 | ㈜아해 | 이재영, 황원주 | 유혁기 | 41,540,120 | 상표권사용료 |
| 57 | 2014-03-31 | ㈜아해 | 이재영, 황원주 | 유혁기 | 121,063,920 | 상표권사용료 |
| | 이재영 합계 | | | | 2,418,760,745 | 원 |

| 순번 | 일시 | 제공자 | 대표이사 | 수령자 | 피해금액<br>(부가세제외) | 명목 |
|---|---|---|---|---|---|---|
| 1 | 2010-03-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 2 | 2010-04-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 3 | 2010-05-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 4 | 2010-06-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 5 | 2010-07-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 6 | 2010-08-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 7 | 2010-09-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 8 | 2010-11-01 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 9 | 2010-11-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 10 | 2010-12-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 11 | 2011-01-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 12 | 2011-02-28 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 13 | 2011-03-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 14 | 2011-04-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 15 | 2011-05-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 16 | 2011-06-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 17 | 2011-07-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 18 | 2011-08-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 19 | 2011-09-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 20 | 2011-10-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 21 | 2011-11-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 22 | 2011-12-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 23 | 2012-01-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 24 | 2012-02-29 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 25 | 2012-03-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 26 | 2012-04-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 27 | 2012-05-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 28 | 2012-06-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 29 | 2012-07-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 30 | 2012-08-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 31 | 2012-09-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 32 | 2012-10-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 33 | 2012-11-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 34 | 2012-12-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 35 | 2013-01-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 36 | 2013-02-28 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 37 | 2013-03-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 38 | 2013-04-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 39 | 2013-05-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |

| 40 | 2013-06-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
|----|------------|--------|--------|--------|------------|----------------|
| 41 | 2013-07-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 42 | 2013-08-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 43 | 2013-09-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 44 | 2013-10-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 45 | 2013-11-30 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 46 | 2013-12-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 47 | 2014-01-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 48 | 2014-02-28 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 49 | 2014-03-31 | ㈜세모 | 고창환 | 유혁기 | 25,000,000 | 경영자문용역료 |
| 합  계 | | | | | 1,225,000,000 | 원 |

| 순번 | 일시 | 제공자 | 대표이사 | 수령자 | 횡령금액<br>(부가세제외) | 명목 |
|------|------|--------|----------|--------|--------------------------|------|
| 1 | 2009-03-31 | ㈜아해 | 이성환 | 유혁기 | 52,638,400 | 상표권사용료 |
| 2 | 2009-04-30 | ㈜아해 | 이성환 | 유혁기 | 62,902,300 | 상표권사용료 |
| 3 | 2009-05-30 | ㈜아해 | 이성환 | 유혁기 | 49,325,900 | 상표권사용료 |
| 4 | 2009-06-30 | ㈜아해 | 이성환 | 유혁기 | 59,522,800 | 상표권사용료 |
| 5 | 2009-07-31 | ㈜아해 | 이강세 | 유혁기 | 65,986,900 | 상표권사용료 |
| 6 | 2009-08-31 | ㈜아해 | 이강세 | 유혁기 | 74,332,910 | 상표권사용료 |
| 7 | 2009-09-30 | ㈜아해 | 이강세 | 유혁기 | 85,358,950 | 상표권사용료 |
| 8 | 2009-10-30 | ㈜아해 | 이강세 | 유혁기 | 82,482,640 | 상표권사용료 |
| 9 | 2009-11-30 | ㈜아해 | 이강세 | 유혁기 | 75,699,660 | 상표권사용료 |
| 10 | 2009-12-31 | ㈜아해 | 이강세 | 유혁기 | 65,440,520 | 상표권사용료 |
| 11 | 2010-01-30 | ㈜아해 | 이강세 | 유혁기 | 20,057,030 | 상표권사용료 |
| 12 | 2010-02-27 | ㈜아해 | 이강세 | 유혁기 | 34,552,840 | 상표권사용료 |
| 13 | 2010-03-31 | ㈜아해 | 이강세 | 유혁기 | 98,678,620 | 상표권사용료 |
| 14 | 2010-04-30 | ㈜아해 | 이강세 | 유혁기 | 113,957,210 | 상표권사용료 |
| 15 | 2010-05-31 | ㈜아해 | 이강세 | 유혁기 | 108,965,880 | 상표권사용료 |
| 16 | 2010-06-30 | ㈜아해 | 이강세 | 유혁기 | 119,595,560 | 상표권사용료 |
| 17 | 2010-07-30 | ㈜아해 | 이강세 | 유혁기 | 91,733,660 | 상표권사용료 |
| 18 | 2010-08-31 | ㈜아해 | 이강세 | 유혁기 | 57,267,790 | 상표권사용료 |
| 19 | 2010-09-30 | ㈜아해 | 이강세 | 유혁기 | 68,928,360 | 상표권사용료 |
| 20 | 2010-10-29 | ㈜아해 | 이강세 | 유혁기 | 88,509,320 | 상표권사용료 |
| 21 | 2010-11-30 | ㈜아해 | 이강세 | 유혁기 | 92,307,510 | 상표권사용료 |
| 22 | 2010-12-31 | ㈜아해 | 이강세 | 유혁기 | 67,265,320 | 상표권사용료 |
| 23 | 2011-01-31 | ㈜아해 | 이강세 | 유혁기 | 28,770,020 | 상표권사용료 |
| 24 | 2011-02-28 | ㈜아해 | 이강세 | 유혁기 | 37,212,960 | 상표권사용료 |
| 25 | 2011-03-31 | ㈜아해 | 이강세 | 유혁기 | 86,113,660 | 상표권사용료 |
| 26 | 2011-04-29 | ㈜아해 | 이강세 | 유혁기 | 119,011,700 | 상표권사용료 |
| 27 | 2011-05-31 | ㈜아해 | 이강세 | 유혁기 | 114,268,060 | 상표권사용료 |
| 28 | 2011-06-29 | ㈜아해 | 이강세 | 유혁기 | 125,344,540 | 상표권사용료 |
| 29 | 2011-07-29 | ㈜아해 | 이강세 | 유혁기 | 97,473,630 | 상표권사용료 |
| 30 | 2011-08-31 | ㈜아해 | 이강세 | 유혁기 | 95,052,150 | 상표권사용료 |
| 31 | 2011-09-30 | ㈜아해 | 이강세 | 유혁기 | 118,644,650 | 상표권사용료 |
| 32 | 2011-10-31 | ㈜아해 | 이강세 | 유혁기 | 117,824,120 | 상표권사용료 |
| 33 | 2011-11-30 | ㈜아해 | 이강세 | 유혁기 | 112,252,300 | 상표권사용료 |
| 34 | 2011-12-30 | ㈜아해 | 이강세 | 유혁기 | 105,125,510 | 상표권사용료 |
| 35 | 2012-01-31 | ㈜아해 | 이강세 | 유혁기 | 32,865,670 | 상표권사용료 |
| 36 | 2012-02-29 | ㈜아해 | 이강세 | 유혁기 | 54,586,090 | 상표권사용료 |
| 37 | 2012-03-31 | ㈜아해 | 이강세 | 유혁기 | 99,416,630 | 상표권사용료 |

| 순번 | 일시 | 제공자 | 대표이사 | 수령자 | 횡령금액 (부가세제외) | 명목 |
|---|---|---|---|---|---|---|
| 38 | 2012-04-30 | ㈜아해 | 이강세 | 유혁기 | 126,176,930 | 상표권사용료 |
| 39 | 2012-05-31 | ㈜아해 | 이재영 | 유혁기 | 153,315,540 | 상표권사용료 |
| 40 | 2012-06-30 | ㈜아해 | 이재영 | 유혁기 | 152,717,850 | 상표권사용료 |
| 41 | 2012-07-31 | ㈜아해 | 이재영 | 유혁기 | 88,316,150 | 상표권사용료 |
| 42 | 2012-08-31 | ㈜아해 | 이재영 | 유혁기 | 71,302,970 | 상표권사용료 |
| 43 | 2012-09-30 | ㈜아해 | 이재영 | 유혁기 | 109,726,550 | 상표권사용료 |
| 44 | 2012-11-12 | ㈜아해 | 이재영 | 유혁기 | 117,211,055 | 상표권사용료 |
| 45 | 2012-11-30 | ㈜아해 | 이재영 | 유혁기 | 117,887,270 | 상표권사용료 |
| 46 | 2012-12-31 | ㈜아해 | 이재영 | 유혁기 | 67,798,940 | 상표권사용료 |
| 47 | 2013-01-31 | ㈜아해 | 이재영 | 유혁기 | 29,444,940 | 상표권사용료 |
| 48 | 2013-02-28 | ㈜아해 | 이재영 | 유혁기 | 96,207,690 | 상표권사용료 |
| 49 | 2013-03-31 | ㈜아해 | 이재영 | 유혁기 | 104,114,570 | 상표권사용료 |
| 50 | 2013-04-30 | ㈜아해 | 이재영 | 유혁기 | 135,741,050 | 상표권사용료 |
| 51 | 2013-05-31 | ㈜아해 | 이재영 | 유혁기 | 140,537,280 | 상표권사용료 |
| 52 | 2013-06-30 | ㈜아해 | 이재영 | 유혁기 | 134,883,620 | 상표권사용료 |
| 53 | 2013-07-31 | ㈜아해 | 이재영 | 유혁기 | 95,969,170 | 상표권사용료 |
| 54 | 2013-08-30 | ㈜아해 | 이재영 | 유혁기 | 97,998,480 | 상표권사용료 |
| 55 | 2013-09-30 | ㈜아해 | 이재영 | 유혁기 | 99,694,710 | 상표권사용료 |
| 56 | 2013-10-31 | ㈜아해 | 이재영 | 유혁기 | 116,803,180 | 상표권사용료 |
| 57 | 2013-11-30 | ㈜아해 | 이재영 | 유혁기 | 131,752,960 | 상표권사용료 |
| 58 | 2013-12-31 | ㈜아해 | 이재영 | 유혁기 | 151,053,570 | 상표권사용료 |
| 59 | 2014-01-31 | ㈜아해 | 이재영 | 유혁기 | 43,679,160 | 상표권사용료 |
| 60 | 2014-02-28 | ㈜아해 | 이재영 | 유혁기 | 41,540,120 | 상표권사용료 |
| 61 | 2014-03-31 | ㈜아해 | 이재영 | 유혁기 | 121,063,920 | 상표권사용료 |
| 합 계 | | | | | 5,524,409,445 | 원 |

| 순번 | 일시 | 제공자 | 대표이사 | 수령자 | 횡령금액 (부가세제외) | 명목 |
|---|---|---|---|---|---|---|
| 1 | 2009-01-31 | ㈜천해지 | 신재직 | 유대균 | 48,111,860 | 상표권사용료 |
| 2 | 2009-02-28 | ㈜천해지 | 신재직 | 유대균 | 50,410,799 | 상표권사용료 |
| 3 | 2009-03-31 | ㈜천해지 | 신재직 | 유대균 | 60,588,197 | 상표권사용료 |
| 4 | 2009-04-30 | ㈜천해지 | 신재직 | 유대균 | 58,348,572 | 상표권사용료 |
| 5 | 2009-05-31 | ㈜천해지 | 신재직 | 유대균 | 54,578,526 | 상표권사용료 |
| 6 | 2009-06-30 | ㈜천해지 | 신재직 | 유대균 | 64,037,212 | 상표권사용료 |
| 7 | 2009-07-31 | ㈜천해지 | 신재직 | 유대균 | 59,809,228 | 상표권사용료 |
| 8 | 2009-08-31 | ㈜천해지 | 신재직 | 유대균 | 53,707,361 | 상표권사용료 |
| 9 | 2009-09-30 | ㈜천해지 | 신재직 | 유대균 | 63,522,079 | 상표권사용료 |
| 10 | 2009-10-31 | ㈜천해지 | 신재직 | 유대균 | 58,962,850 | 상표권사용료 |
| 11 | 2009-11-30 | ㈜천해지 | 신재직 | 유대균 | 64,268,957 | 상표권사용료 |
| 12 | 2009-12-31 | ㈜천해지 | 신재직 | 유대균 | 57,277,573 | 상표권사용료 |
| 13 | 2010-01-31 | ㈜천해지 | 신재직 | 유대균 | 52,761,859 | 상표권사용료 |
| 14 | 2010-02-28 | ㈜천해지 | 신재직 | 유대균 | 35,350,717 | 상표권사용료 |
| 15 | 2010-03-31 | ㈜천해지 | 신재직 | 유대균 | 51,082,683 | 상표권사용료 |
| 16 | 2010-04-30 | ㈜천해지 | 신재직 | 유대균 | 45,397,219 | 상표권사용료 |
| 17 | 2010-05-31 | ㈜천해지 | 신재직 | 유대균 | 38,288,632 | 상표권사용료 |
| 18 | 2010-06-30 | ㈜천해지 | 신재직 | 유대균 | 33,678,446 | 상표권사용료 |
| 유대균 지급 합계 | | | | | 950,182,770 | 원 |
| 19 | 2009-01-31 | ㈜천해지 | 신재직 | 유혁기 | 48,111,860 | 상표권사용료 |
| 20 | 2009-02-28 | ㈜천해지 | 신재직 | 유혁기 | 50,410,799 | 상표권사용료 |
| 21 | 2009-03-31 | ㈜천해지 | 신재직 | 유혁기 | 60,588,197 | 상표권사용료 |
| 22 | 2009-04-30 | ㈜천해지 | 신재직 | 유혁기 | 58,348,572 | 상표권사용료 |

| 23 | 2009-05-31 | ㈜천해지 | 신재직 | 유혁기 | 54,578,526 | 상표권사용료 |
|---|---|---|---|---|---|---|
| 24 | 2009-06-30 | ㈜천해지 | 신재직 | 유혁기 | 64,037,212 | 상표권사용료 |
| 25 | 2009-07-31 | ㈜천해지 | 신재직 | 유혁기 | 59,809,228 | 상표권사용료 |
| 26 | 2009-08-31 | ㈜천해지 | 신재직 | 유혁기 | 53,707,361 | 상표권사용료 |
| 27 | 2009-09-30 | ㈜천해지 | 신재직 | 유혁기 | 63,522,079 | 상표권사용료 |
| 28 | 2009-10-31 | ㈜천해지 | 신재직 | 유혁기 | 58,962,850 | 상표권사용료 |
| 29 | 2009-11-30 | ㈜천해지 | 신재직 | 유혁기 | 64,268,957 | 상표권사용료 |
| 30 | 2009-12-31 | ㈜천해지 | 신재직 | 유혁기 | 57,277,573 | 상표권사용료 |
| 31 | 2010-01-31 | ㈜천해지 | 신재직 | 유혁기 | 52,761,859 | 상표권사용료 |
| 32 | 2010-02-28 | ㈜천해지 | 신재직 | 유혁기 | 35,350,717 | 상표권사용료 |
| 33 | 2010-03-31 | ㈜천해지 | 신재직 | 유혁기 | 51,082,683 | 상표권사용료 |
| 34 | 2010-04-30 | ㈜천해지 | 신재직 | 유혁기 | 45,397,219 | 상표권사용료 |
| 35 | 2010-05-31 | ㈜천해지 | 신재직 | 유혁기 | 38,288,632 | 상표권사용료 |
| 36 | 2010-06-30 | ㈜천해지 | 신재직 | 유혁기 | 33,678,446 | 상표권사용료 |
| 유혁기 지급 합계 | | | | 950,182,770 | | 원 |

| 순번 | 일시 | 제공자 | 대표이사 | 수령자 | 횡령금액 (부가세제외) | 명목 |
|---|---|---|---|---|---|---|
| 1 | 2009-01-31 | ㈜온나라 | 이호섭 | 유혁기 | 8,514,430 | 상표권사용료 |
| 2 | 2009-02-28 | ㈜온나라 | 이호섭 | 유혁기 | 8,387,180 | 상표권사용료 |
| 3 | 2009-03-31 | ㈜온나라 | 이호섭 | 유혁기 | 10,049,271 | 상표권사용료 |
| 4 | 2009-04-30 | ㈜온나라 | 이호섭 | 유혁기 | 8,911,148 | 상표권사용료 |
| 5 | 2009-05-31 | ㈜온나라 | 이호섭 | 유혁기 | 8,944,341 | 상표권사용료 |
| 6 | 2009-06-30 | ㈜온나라 | 이호섭 | 유혁기 | 9,369,197 | 상표권사용료 |
| 7 | 2009-07-31 | ㈜온나라 | 이호섭 | 유혁기 | 9,339,334 | 상표권사용료 |
| 8 | 2009-08-31 | ㈜온나라 | 이호섭 | 유혁기 | 9,194,022 | 상표권사용료 |
| 9 | 2009-09-30 | ㈜온나라 | 이호섭 | 유혁기 | 11,251,062 | 상표권사용료 |
| 10 | 2009-10-31 | ㈜온나라 | 이호섭 | 유혁기 | 10,081,781 | 상표권사용료 |
| 11 | 2009-11-30 | ㈜온나라 | 이호섭 | 유혁기 | 11,411,741 | 상표권사용료 |
| 12 | 2009-12-31 | ㈜온나라 | 이호섭 | 유혁기 | 11,631,725 | 상표권사용료 |
| 13 | 2010-01-31 | ㈜온나라 | 이호섭 | 유혁기 | 11,077,274 | 상표권사용료 |
| 14 | 2010-02-28 | ㈜온나라 | 이호섭 | 유혁기 | 9,646,549 | 상표권사용료 |
| 15 | 2010-03-31 | ㈜온나라 | 이호섭 | 유혁기 | 11,053,410 | 상표권사용료 |
| 16 | 2010-04-30 | ㈜온나라 | 이호섭 | 유혁기 | 11,104,935 | 상표권사용료 |
| 17 | 2010-05-31 | ㈜온나라 | 이호섭 | 유혁기 | 11,336,950 | 상표권사용료 |
| 18 | 2010-06-30 | ㈜온나라 | 이호섭 | 유혁기 | 11,248,907 | 상표권사용료 |
| 19 | 2010-07-31 | ㈜온나라 | 이호섭 | 유혁기 | 10,724,209 | 상표권사용료 |
| 20 | 2010-08-31 | ㈜온나라 | 이호섭 | 유혁기 | 10,668,041 | 상표권사용료 |
| 21 | 2010-09-30 | ㈜온나라 | 이호섭 | 유혁기 | 9,475,317 | 상표권사용료 |
| 22 | 2010-10-31 | ㈜온나라 | 이호섭 | 유혁기 | 10,402,170 | 상표권사용료 |
| 23 | 2010-11-30 | ㈜온나라 | 이호섭 | 유혁기 | 9,953,442 | 상표권사용료 |
| 24 | 2010-12-31 | ㈜온나라 | 이호섭 | 유혁기 | 9,386,467 | 상표권사용료 |
| 25 | 2011-01-31 | ㈜온나라 | 이호섭 | 유혁기 | 9,153,436 | 상표권사용료 |
| 26 | 2011-02-28 | ㈜온나라 | 이호섭 | 유혁기 | 5,693,324 | 상표권사용료 |
| 27 | 2011-03-31 | ㈜온나라 | 이호섭 | 유혁기 | 8,382,828 | 상표권사용료 |
| 28 | 2011-04-30 | ㈜온나라 | 이호섭 | 유혁기 | 6,747,077 | 상표권사용료 |
| 29 | 2011-05-31 | ㈜온나라 | 이호섭 | 유혁기 | 7,476,739 | 상표권사용료 |
| 30 | 2011-06-30 | ㈜온나라 | 이호섭 | 유혁기 | 7,234,918 | 상표권사용료 |
| 31 | 2011-07-31 | ㈜온나라 | 이호섭 | 유혁기 | 7,281,819 | 상표권사용료 |
| 32 | 2011-08-31 | ㈜온나라 | 이호섭 | 유혁기 | 6,729,200 | 상표권사용료 |
| 33 | 2011-09-30 | ㈜온나라 | 이호섭 | 유혁기 | 7,084,049 | 상표권사용료 |

| 34 | 2011-10-31 | ㈜온나라 | 이호섭 | 유혁기 | 6,179,764 | 상표권사용료 |
|---|---|---|---|---|---|---|
| 35 | 2011-11-30 | ㈜온나라 | 이호섭 | 유혁기 | 6,690,886 | 상표권사용료 |
| 36 | 2011-12-31 | ㈜온나라 | 이호섭 | 유혁기 | 6,619,761 | 상표권사용료 |
| 합 계 | | | | | 328,436,704 | 원 |

# 자문 계약서

위임인 주식회사 모래알디자인(이하 "갑"이라 칭한다)와 수임인 키솔루션(이하"을"이라 칭한다)은 다음과 같이 자문 계약을 체결한다.

### 제1조(목적)

본 계약은 "갑"이 "을"에게 "갑"의 경영계반에 대한 자문을 위탁하고 "을"이 이를 수행함에 필요한 제반사항과 "갑"과 "을"간의 권리의무 및 협력사항을 분명히 정함으로써 상호 신뢰를 바탕으로 성공적인 자문을 수행하는 데에 있다.

### 제2조(자문 항목)

1. "을"은 다음 각 호의 사항을 "갑"에게 자문 한다.
   1) 경영분석 및 경영전략수립에 관한 사항
   2) 기업가치평가에 관한사항
   3) 국내·외 마케팅 전략 및 선진 디자인 정책개발에 관한 사항
   4) 직원의 해외연수와 관련된 프로그램제공 및 인턴쉽 제공에 관한 사항
   5) 기타 위 각호와 관련한 "갑"이 위임하는 사항
2. 제1항의 의뢰사항 이외에 "갑"이 추가로 자문을 의뢰하고자 하는 경우 당해 비용은 별도로 협의하여 결정한다.

### 제3조(보수 및 지급방법)

1. 보수금액 : 용역대가는 월 금삼천만원(₩30,000,000)으로 한다.(부가세별도)
2. 지급방법 : 세금계산서는 매월 말일에 발행하고, 익월 초에 "을"이 지정하는 계좌로 지급한다.
3. 항공료, 해외체류비, 국내교통비 및 숙박비는 사전에 "갑"에게 세부 업무일정 및 경비 소요일정을 협의하여 승인을 받은 경우, 관련경비를 별도로 지원한다.

### 제4조(기타비용의 청구)

1. "을"은 자문 업무에 소요된 필요경비는 실비로 "갑"에게 청구할 수 있으며, "갑"은 "을"이 그 비용을 청구한 경우 이를 7일 내에 지급하여야 한다.
2. "을"이 청구할 수 있는 필요경비의 범위는 "갑"과 "을"의 별도 합의에 의해 따로 정하기로 한다.

갑 제6호증 1

갑 제6-1호증

EX-YOO-S5-00080

제5조(계약기간)

자문 계약기간은 2010년 4월 1일부터 2010년 12월31일까지로 한다.

제6조(기간의 연장)

자문 기간의 만료 1개월 전까지 "갑" 또는 "을" 어느 한쪽에서 계약변경 통보를 하지 않는 한, 동일한 조건으로 만료일로부터 1년간 자동으로 연장되는 것으로 한다.

제7조(업무협조)

"갑"은 "을"이 갑과 관련한 업무 수행 시 필요한 정보와 자료를 최대한 "을"에게 제공하며, "을"은 "갑"과 약정한 업무의 내용에 관하여 신의 성실원칙에 따라 업무를 수행하여야 한다.

제8조(비밀준수의무)

"을"은 본 계약의 수행과정에서 습득하는 "갑"의 정보일체에 대하여 외부에 누설되지 아니하도록 비밀유지의 의무를 부담한다.

제9조(보고)

"갑"은 자문 기간 동안 "을"에게 자문 사항을 수시로 요구할 수 있으며, "을"은 해당하는 자료를 서면 또는 구두로 보고하여야 하며, "갑"이 출석보고를 요청하는 경우 이에 응하여야 한다.

제10조(해지)

당사자 일방에 대해 다음 각호의 사유가 발생할 경우 타방 당사자는 상대방에 대하여 보완을 요구하고 그럼에도 불구하고 해결되지 아니할 시 계약을 해지 할 수 있다.
   1) 본 계약의 의무사항을 이행하지 아니 한때
   2) 기타 고의 또는 중과실로 상대방에게 손해를 끼치는 행위를 한때

제11조(기타)

1. 본 계약에서 정하지 아니한 사항은 관련 법률규정이 있을 시에는 그에 의하며, 그것이 없을시 에는 일반적인 상관습에 의하여 해결한다.
2. 본 계약 체결이후 당사자 쌍방의 합의로 계약의 내용에 대해 변경사항의 발생 시 본 계약서의 말미에 서명 날인 하여 첨부하도록 하며 본 계약서에 우선하여 효력을 인정한다.

EX-YOO-S5-00081

제12조(관할법원)

본 계약에 관하여 분쟁이 발생할 시에는 당사자 상호간에 원만한 해결을 위하여
노력하며, 그럼에도 불구하고 분쟁이 해결되지 아니하는 경우에는 "갑"의 본점
소재지 관할 법원을 분쟁해결 관할로 한다.

상기 사항을 증명하기 위하여 본 계약서를 2부 작성하여 각각1부씩 쌍방이 보관하
기로 한다.

2010년 4월 1일

위임인 "갑"  상        호 : (주)모래알
            대 표 이 사 : 하 명 화
            법인 등록 번호 : 110111-2882561
            주        소 : 서울 강남구 역삼동 797-26 MJ빌딩2층

수임인 "갑"  상        호 : 키솔루션
            대 표 이 사 : 유 혁 기   (
            사업자등록번호 : 220-05-32547
            주        소 : 서울 강남구 청담동 96-3 1층

갑 제6-1호증

EX-YOO-S5-00082

# 자문 계약서

위임인 주식회사 모래알디자인(이하 "갑"이라 칭한다)와 수임인 키솔루션(이하"을"이라 칭한다)은 다음과 같이 자문 계약을 체결한다.


### 제1조 (목적)

본 계약은 "갑"이 "을"에게 "갑"의 경영제반에 대한 자문을 위탁하고 "을"이 이를 수행함에 필요한 제반사항과 "갑"과 "을"간의 권리의무 및 협력사항을 분명히 정함으로써 상호 신뢰를 바탕으로 성공적인 자문을 수행하는 데에 있다.

### 제2조 (자문 항목)

1. "을"은 다음 각 호의 사항을 "갑"에게 자문 한다.
   1) 경영분석 및 경영전략수립에 관한 사항
   2) 기업가치평가에 관한사항
   3) 국내·외 마케팅 전략 및 선전 디자인 정책개발에 관한 사항
   4) 직원의 해외연수와 관련된 프로그램제공 및 인턴쉽 제공에 관한 사항
   5) 기타 위 각호와 관련한 "갑"이 위임하는 사항
2. 제1항의 의뢰사항 이외에 "갑"이 추가로 자문을 의뢰하고자 하는 경우 당해 비용은 별도로 협의하여 결정한다.

### 제3조 (보수 및 지급방법)

1. 보수금액 : 용역대가는 월 금이천만원(₩20,000,000)으로 한다.(부가세별도)
2. 지급방법 : 세금계산서는 매월 말일에 발행하고, 익월 초에 "을"이 지정하는 계좌로 지급한다.
3. 항공료, 해외체류비, 국내교통비 및 숙박비는 사전에 "갑"에게 세부 업무일정 및 경비 소요일정을 협의하여 승인을 받은 경우, 관련경비를 별도로 지원한다.

### 제4조 (기타비용의 청구)

1. "을"은 자문 업무에 소요된 필요경비는 실비로 "갑"에게 청구할 수 있으며, "갑"은 "을"이 그 비용을 청구한 경우 이를 7일 내에 지급하여야 한다.
2. "을"이 청구할 수 있는 필요경비의 범위는 "갑"과 "을"의 별도 합의에 의해 따로 정하기로 한다.

갑제 6 호증 2

갑 제6-2호증

### 제5조(계약기간)

자문 계약기간은 2011년 1월 1일부터 2011년 12월31일까지로 한다.

### 제6조(기간의 연장)

자문 기간의 만료 1개월 전까지 "갑" 또는 "을" 어느 한쪽에서 계약변경 통보를 하지 않는 한, 동일한 조건으로 만료일로부터 1년간 자동으로 연장되는 것으로 한다.

### 제7조(업무협조)

"갑"은 "을"이 갑과 관련한 업무 수행 시 필요한 정보와 자료를 최대한 "을"에게 제공하며, "을"은 "갑"과 약정한 업무의 내용에 관하여 신의 성실원칙에 따라 업무를 수행하여야 한다.

### 제8조(비밀준수의무)

"을"은 본 계약의 수행과정에서 습득하는 "갑"의 정보일체에 대하여 외부에 누설되지 아니하도록 비밀유지의 의무를 부담한다.

### 제9조(보고)

"갑"은 자문 기간 동안 "을"에게 자문 사항을 수시로 요구할 수 있으며, "을"은 해당하는 자료를 서면 또는 구두로 보고하여야 하며, "갑"이 출석보고를 요청하는 경우 이에 응하여야 한다.

### 제10조(해지)

당사자 일방에 대해 다음 각호의 사유가 발생할 경우 타방 당사자는 상대방에 대하여 보완을 요구하고 그럼에도 불구하고 해결되지 아니할 시 계약을 해지 할 수 있다.

1) 본 계약의 의무사항을 이행하지 아니 한때
2) 기타 고의 또는 중과실로 상대방에게 손해를 끼치는 행위를 한때

### 제11조(기타)

1. 본 계약에서 정하지 아니한 사항은 관련 법률규정이 있을 시에는 그에 의하며, 그것이 없을시 에는 일반적인 상관습에 의하여 해결한다.
2. 본 계약 체결이후 당사자 쌍방의 합의로 계약의 내용에 대해 변경사항의 발생 시 본 계약서의 말미에 서명 날인 하여 첨부하도록 하며 본 계약서에 우선하여 효력을 인정한다.

갑　제6-2호증

EX-YOO-S5-00084

제12조(관할법원)

　본 계약에 관하여 분쟁이 발생할 시에는 당사자 상호간에 원만한 해결을 위하여 노력하며, 그럼에도 불구하고 분쟁이 해결되지 아니하는 경우에는 "갑"의 본점 소재지 관할 법원을 분쟁해결 관할로 한다.


　상기 사항을 증명하기 위하여 본 계약서를 2부 작성하여 각각1부씩 쌍방이 보관하기로 한다.



2010년 12월 31일



위임인 "갑"　상　　　호 : (주)모래알
　　　　대 표 이 사 : 하 명 화
　　　　법인 등록 번호 : 110111-2882367
　　　　주　　　소 : 서울 강남구 역삼동 797-26 MJ빌딩2층



수임인 "갑"　상　　　호 : 키솔루션
　　　　대 표 이 사 : 유 혁 기
　　　　사업자등록번호 : 220-05-32542
　　　　주　　　소 : 서울 강남구 청담동 96-3 1층



# 갑 제6-2호증

EX-YOO-S5-00085

# 피 의 자 신 문 조 서

성        명 :  이강세

주민등록번호 :   410210-1405915

위의 사람에 대한 조세범처벌법위반 피의사건에 관하여 2014년 10월 8일  14:30경 인천지방검찰청 1025호 검사실에서 검사 박광현은 검찰주사보 서대석을 참여하게 하고 피의자에 대하여 아래와 같이 신문하다.

문        피의자의 성명, 주민등록번호, 직업, 주거, 등록기준지 등을 말하시오.

답        성명은          이강세

          주민등록번호는   410210-1405915          (63세)

          직업은          前 (주)아해 대표이사

          주거는          대전 중구 오류동 175 삼성아파트 4-1201
                         현재 인천구치소 수감중(수감번호 : 477)

          등록기준지는     대전 중구 대흥동 451-1

          직장 주소는

          연락처는

              자택 전화 :              휴대 전화 :  010-3450-8586

              직장 전화 :                   전자우편(e-mail) :

입니다.

     검사는 피의사실의 요지를 설명하고 검사의 신문에 대하여 「형사소송법」제244조의3의 규정에 의하여 진술을 거부할 수 있는 권리 및 변호인의참여 등 조력을 받을 권리가 있음을 피의자에게 알려주고 이를 행사할 것인지 그 의사를 확인하다.

- 1 -

EX-YOO-S5-00086

# 진술거부권 및 변호인 조력권 고지 등 확인



1. 귀하는 일체의 진술을 하지 아니하거나 개개의 질문에 대하여 진술을 하지 아니할 수 있습니다.
1. 귀하가 진술을 하지 아니하더라도 불이익을 받지 아니합니다.
1. 귀하가 진술을 거부할 권리를 포기하고 행한 진술은 법정에서 유죄의 증거로 사용될 수 있습니다.
1. 귀하가 신문을 받을 때에는 변호인을 참여하게 하는 등 변호인의 조력을 받을 수 있습니다.

문   피의자는 위와 같은 권리들이 있음을 고지받았는가요

답   예 

문   피의자는 진술거부권을 행사할 것인가요

답   아니오

문   피의자는 변호인의 조력을 받을 권리를 행사할 것인가요

답   아니오

이에 검사는 피의사실에 관하여 다음과 같이 피의자를 신문하다.

EX-YOO-S5-00087

문  피의자는 형사처벌을 받은 사실이 있는가요

답  없습니다.

문  가족관계는 어떻게 되는가요

답  처와 아들 둘, 딸 셋이 있습니다. 자녀들은 모두 출가한 상태고 현재 처와 함께 위 주소지에서 살고 있습니다.

문  학력 및 사회경력은 어떠한가요

답  학력은 충남 논산시에 있는 가야곡 초등학교 중퇴이고, 사회경력은 대전에서 33년 동안 주유소를 운영하다가 2003년경부터 2008년경까지 (주)새천년의 대표이사로 재직하였고, 1년 정도 쉬다가 2009. 7.경부터 2012. 5.경까지 (주)아해의 대표이사로 재직하였습니다.

문  어떤 종교를 믿는가요

답  1984년경부터 기독교복음침례회 신도로 활동하고 있습니다.

문  33년간 주유소만 운영하다가 2003년경 새천년의 대표이사로 취임하게 된 경위는 어떠한가요

답  예전에 (주)세모에 5억원 정도를 투자했는데 세모가 부도나면서 주유소도 문 닫고 어렵게 생활하고 있을 때 (주)세모의 총무부장으로 있던 이재영 씨가 권유해서 새천년을 설립함과 동시에 대표이사로 취임하게 된 것입니다.

문  2009년경 (주)아해의 대표이사로 취임하게 된 경위는 어떠한가요

답  새천년 대표이사를 그만두고 집에서 쉬고 있을 때 다시 아이원아이홀딩스의 대표이사였던 김필배 사장이 이성환 씨와 공동대표로 아해를 한 번 운영해 보라고 권유해서 아해 대표이사를 맡게 된 것입니다.

EX-YOO-S5-00088

문  재산상태 및 월수입은 어떻게 되는가요

답  안성시 보개면에 있는 밭이 시가로 4,000만원 정도 나가는데 이미 국세청에
서 압류를 한 걸로 알고 있습니다. 지금 사는 집은 보증금 1억원의 전세인데
제 처 명의로 계약을 한 것입니다. 아해 대표이사를 그만 둔 2012. 5.경 이후
부터는 수입이 전혀 없어서 자녀들이 조금씩 보태어 주는 돈으로 생활을 해
왔습니다.

문  현재 건강상태는 어떤가요

답  하지불안정증으로 치료를 받고 있어서 수감생활이 많이 힘든 상태입니다.

문  피의자는 현재 인천구치소에 수감되어 재판을 받고 있는데, 어떤 내용인
가요

답  (주)아해의 대표이사로 재직하면서 2011. 10.경부터 2012. 4.경까지 유병언 회
장님에게 고문료 명목으로 2억 4,000만원, 2009. 7.경부터 2012. 4.경까지 유
혁기에게 상표권 사용료 명목으로 28억 8,000여만 원 상당을 회사자금으로
지급한 횡령 혐의와 2009. 8.경부터 2012. 5.경까지 아이원아이홀딩스 및 헤
마토센트릭라이프에 합계 2억 1,800만원을 컨설팅비용으로 지급하고, 2009.
10.경부터 2012. 3.경까지 김필배와 공모하여 헤마토센트릭라이프에 4억
2,600여만 원을 달력 및 사진집 등 구입비용으로 지급하여 회사에 재산상 손
해를 가한 배임 혐의로 구속되어 재판을 받고 있습니다.

문  피의자는 위 혐의에 대하여 인정하는가요

답  예, 법정에서 혐의내용에 대하여는 전부 인정하고, 제가 대표이사로 재직하
는 동안 이루어진 범죄행위에 대하여는 책임을 통감하고 선처를 구하고 있

- 4 -

EX-YOO-S5-00089

습니다.

문  재판선고일은 언제인가요

답  2014. 11. 5.로 선고일이 잡혔습니다.

문  피의자는 2009. 7. 2.경부터 2010. 3. 24.경까지는 이성환과 함께 (주)아해의
공동대표이사로, 이후 2010. 3. 25.경부터 2012. 5. 29.경까지는 대표이사로 재
직한 것으로 확인되는데 맞는가요

답  예, 맞습니다.

문  (주)아해의 지분구조는 어떻게 되는가요

답  아이원아이홀딩스가 최대주주로 40% 이상을 보유한 것으로 알고 있습니다.

문  피의자는 아해 주식의 몇 퍼센트를 보유하고 있는가요

답  제 명의로 9%를 보유하고 있는데 실제 제 소유는 아니고 교회 소유입니다.

문  피의자 명의로 아해 주식 9%를 보유하기로 한 것은 누가 결정한 것인가요

답  아해 이사회에서 결정한 것입니다.

문  유병언, 유혁기, 유대균 등 유병언 회장 일가가 소유한 아해 주식은 없는가
요

답  유병언 회장님 일가에서 아해 주식을 직접 소유하고 있지는 않고, 아해의 최
대주주인 아이원아이홀딩스 주식을 많이 갖고 있는 것으로 알고 있습니다.

문  아이원아이홀딩스의 지분구조에 대하여는 아는가요

답  회장님 일가가 많이 갖고 있다는 정도만 알지 정확한 지분구조까지는 모릅
니다.

문  본건 고발요지는 2006. 1.경부터 2013. 12.경까지 키솔루션의 유혁기로부터

- 5 -

EX-YOO-S5-00090

686

상표권을 제공받은 사실이 없음에도 상표권사용료를 지급하고 공급가액 합계 6,118,502,000원의 허위세금계산서를 수취한 후 동액 상당의 매입세금계산서합계표를 세무당국에 제출하고,

2008. 8.경부터 2013. 12.경까지 (주)아이원아이홀딩스로부터 경영자문을 받은 사실이 없음에도 컨설팅비용을 지급하고 공급가액 합계 325,000,000원의 허위세금계산서를 수취한 후 동액 상당의 매입세금계산서합계표를 세무당국에 제출하고,

2011. 10.경부터 2013. 12.경까지 붉은머리오목눈이의 유병언으로부터 경영자문을 제공받은 사실이 없음에도 고문료를 지급하고 공급가액 합계 540,000,000원의 허위세금계산서를 수취한 후 동액 상당의 매입세금계산서합계표를 세무당국에 제출하고,

더불어, 위 금액 상당을 가공비용으로 계상하여 1,404,107,329원의 법인세를 포탈한 것인데 어떻게 생각하는가요

답   법정에서 횡령, 배임 사실에 대하여 전부 인정하고 선처를 구한 입장에서 횡령, 배임 행위에 의해 결과적으로 세금부분도 책임이 따르게 되는 건데 그걸 이제 와서 부인하지는 않겠습니다. 하지만 구체적으로 어떤 게 허위세금계산서인지 또 어떻게 하여 법인세 포탈이 되는지는 사안별로 물어주시면 답변하겠습니다.

문   피의자는 유혁기와 상표권사용계약서를 작성한 사실이 있는가요

답   없습니다. 이전 대표이사 이성환이 계약서를 작성하고 계속 갱신이 되고 있던 상황이었습니다.

EX-YOO-S5-00091

687

문 하지만, 매달 전달 매출액의 1.6%가 지급되고 있다는 사실은 알고 있었지요

답 예.

문 유혁기의 상표권 사용 계약이나 사용료 지급에 관하여 유혁기와 직접 상대 하였는가요

답 아니요, 제가 대표이사로 취임하기 전부터 경리부장이 알아서 처리를 하고 있었기 때문에 저는 내부결재를 하기만 했지 특별히 챙길 필요도 없었습니다.

문 피의자 회사에서 유혁기의 어떤 상표를 사용하고 있는가요

답 '아래'라는 회사 명칭 및 로고와 아해가 생산한 거의 전 제품명을 유혁기가 등록한 상표로 사용했습니다.

문 피의자는 동종 업계, 아니면 타 업종을 회사라도 이런 식으로 상표권 사용료 를 지급하는 업체를 본 적 있는가요

답 없습니다.

문 매출액의 1.6%나 되는 불필요한 비용을 지출하였더라도 실제 유혁기가 등록 한 상표를 사용한 것 또한 사실인가요

답 예, 지금 횡령, 배임 사건 법정에서도 진술했듯이 회사에서 유혁기가 등록한 상표를 사용한 것은 분명한 사실입니다. 하지만 그 비용이 과다하고 불필요 한 면이 있었던 점은 저도 인정하고 있습니다.

문 피의자가 대표이사로 취임한 2009. 7.경 이후에 상표권사용료의 불합리성에 대하여 유혁기나 아이원아이홀딩스 측에 항의한 적은 있는가요

답 유혁기나 김필배와 같은 윗선에 항의한 적은 없고, 사용료를 0.5%에서 1.6%

EX-YOO-S5-00092

로 올릴 때 아이원아이홀딩스에서 내려 보낸 상근 감사 최형태에게 너무한

거 아니냐는 식으로 항의를 해봤지만, 최형태로부터 위에서 결정한 것이라

어쩔 수 없다는 식의 답변을 듣고 그 뒤로는 일체 언급을 하지 않았습니다.

문　아이원아이홀딩스에 지급한 경영자문료에 대하여 질문하겠습니다. 피의자가

아해의 대표이사로 재직하는 동안 아이원아이홀딩스의 대표이사는 누구였나

가요

답　김필배 사장이었습니다.

문　대표이사로 재직하는 동안 김필배나 변기춘을 얼마나 자주 만났는가요

답　아니요, 그 사람들은 회장님 측근인데 사실 저는 회장님과 가깝게 지내는 사

이가 아닙니다. 제가 회장님보다 나이가 더 많아서 그런지 회장님도 저를 좀

불편해 하셔서 제가 먼저 찾아뵙기가 어려운 관계입니다. 가끔 금수원에 예

배보러 가서 만나면 인사나 하는 정도지 회사 얘기를 일절 하지도 않습니다.

문　피의자가 대표이사로 재직하는 동안 아이원아이홀딩스에는 경영자문료로 얼

마씩을 지급하였는가요

답　매월 500만원 씩을 지급하였습니다.

문　피의자가 대표이사로 재직하는 중 아이원아이홀딩스와의 자문용역계약서에

서명날인 한 적이 있는가요

답　직접 서명날인 한 적은 없습니다, 담당부서에서 내부결재로 자문용역계약 건

을 건의 올려서 결재를 했고, 담당부서에서 계약서에 제 대표이사 직인을 날

인 했을 겁니다.

이때 기록139~141에 편철된 '경영자문 용역계약서'를 보여주며,

EX-YOO-S5-00093

문  피의자가 대표이사로 재직할 때 피의자가 결재해서 작성된 계약서가 맞는가요

답  예, 맞습니다.

문  아이원아이홀딩스로부터는 어떤 경영자문을 받았는가요

답  한 달에 한두 번 씩 대표이사로서 지주회사 대표인 김필배 사장을 찾아가서 회사 운영상황을 보고하면, 잘못 된 점에 대하여 지적도 받고 경영자문을 해줍니다. 그리고 실무적으로는 여러 가지 경영자문보고서를 만들어서 내려주면 실무진들이 그 보고서를 참고해서 일을 하였습니다.

이때 기록 159~163에 편철된 색인목록표를 보여주며 질문하다.

문  여기 보면 아이원아이홀딩스에서 (주)아해에 보내 준 경영자문보고서 목록을 정리한 것으로 보이는데 맞는가요

답  예, 맞습니다.

문  피의자는 대표이사로서 위와 같은 자문보고서가 내려오면 검토해 보는가요

답  아니요, 저는 전문경영인이 아니라서 봐도 잘 모르고, 밑에 실무진들이 직접 보고 참고할 뿐입니다. 그렇지만 자문보고서 같은 자료들이 내려온 건 사실입니다.

문  위 경영자문보고서들이 실제 회사 경영에 도움이 됐는가요

답  사실 저는 경영에 대해서 잘 모릅니다. 이성환과 공동대표일 때는 이성환이 대부분 일을 처리했고 저는 옆에서 일을 배운 입장이었고, 단독대표이사일 때는 서울에서 내려보낸 이재영 전무가 알아서 처리했거든요. 그래도 아이원아이홀딩스에서 내려보낸 자료들은 도움이 많이 된 걸로 알고 있습니다. 아

EX-YOO-S5-00094

690

무래도 그쪽에는 전무가들도 많고 아해의 지주회사이다 보니까 저희 입장에서는 그쪽 도움을 많이 받을 수밖에 없는 입장이니까요.

문  위 색인목록표에 나온 자문보고서 외 아이원아이홀딩스로부터 받은 자문 내용을 입증할 만한 자료가 있는가요

답  더 있다면, 실무를 책임진 이재영 사장이 저보다 더 잘 알겁니다.

문  유혁기와 유대균은 아해의 최대주주인 아이원아이홀딩스 최대주주인데 이들이 아해 경영에 관여한 부분도 있는가요

답  유혁기나 유대균에게 직접 지시받은 건 전혀 없습니다. 제 입장에서는 김필배 사장이 지시하는 내용이 일정부분은 김필배 사장 개인적인 의견일 수도 있지만 대부분 유혁기의 지시라는 생각은 했습니다.

문  유혁기가 차기 그룹의 오너라는 사실은 알고 있었는가요

답  예, 저뿐만 아니라 신도이나 모임사람들 모두 그렇게 생각하고 있습니다.

문  유대균도 그룹 경영에 관여한 부분이 있는가요

답  전혀 없습니다. 유대균은 예술하는 친구라서 사업에 전혀 관심이 없고, 회장님도 유혁기를 후계자로 내세우려고 한다는 사실은 누구나 다 아는 사실입니다.

문  유병언에게 지급한 고문료 관련해서 질문하겠습니다. 2011. 1. 3.자 작성된 '고문위촉 계약서'를 보면 2011. 10. 31. 6,000만원, 2011. 11. 30. 6,000만원, 2011. 12. 31. 6,000만원을 지급해서 총 1억 8,000만원을 3개월 동안 지급하기로 했는데, 2012. 1. 1.자 새로 작성한 계약내용에는 매월 1,500만원을 지급하는 걸로 변경되었는데 왜 그런가요

- 10 -

EX-YOO-S5-00095

답　　제가 알기로 2011. 1.경 1년에 1억 1,800만원을 유병언 회장에게 고문료를 지
　　　급하기로 결정을 하였는데 회장님 개인에게 직접 지급할지 사업자를 내고
　　　사업자 계좌로 지급할지 고민하다가 10월경 쯤에 사업소득으로 신고하기로
　　　하고 붉은머리오목눈이로 사업자등록을 한 것으로 압니다. 그러다가 연 말
　　　쯤에 1억 8,000만원을 3개월에 나눠 한꺼번에 지급한 것이고요.

문　　결국, 자문을 받고 그에 대한 대가를 지급했다기 보다, 유병언 개인에게 용
　　　돈이건 생활비건 일정금액을 보내기 위해 고민을 하다가 사업자등록을 내고
　　　사업소득으로 신고하게 하도록 결정을 한 것으로 보이는데 어떤가요

답　　예, 위(아이원아이홀딩스 김필배)에서 결정해서 지시한 것이기 때문에 저희는
　　　따를 수밖에 없었습니다.

문　　피의자의 공소장 내용을 보면, 「피고인은 김필배로부터 "회사 원로인 유병
　　　언 회장에게 고문료 명목으로 돈을 좀 챙겨 드리자"라는 제안을 받아, 2011.
　　　1.경 당시 유병언이 피해회사의 경영과 관련하여 상시적이고 특별한 자문을
　　　하여줄 것이 아님에도 유병언에게 자금을 지원하기 위해 형식적으로 유병언
　　　(2011. 10.경 '붉은머리오목눈이'로 사업자등록)과 매달 15,000,000원을 지급하
　　　는 내용의 '고문위촉' 계약을 체결한 후」라고 기재되어 있는데 법정에서 인
　　　정한 부분인가요

답　　예, 전부 인정했습니다.

문　　피의자가 직접 김필배 사장에게 위와 같은 지시를 받은 것인가요

답　　아니요, 당시 전무이사였던 이재영이 김필배와 직접 통화한 것이고, 저는 이
　　　재영으로부터 위와 같은 내용을 보고받고 '위에서 하라면 어쩔 수 있나, 하

– 11 –

EX-YOO-S5-00096

라는 대로 해야지'하는 식으로 지시를 했습니다.

문  결국, 유병언, 즉 붉은머리오목눈이에 지급한 고문료는 고문료 형식을 취했을 뿐 아무런 자문 및 용역의 제공 없이 무상으로 지급한 자금으로 판단되는데 인정하는가요

답  예, 인정합니다. 평소 회장님을 존경하는 입장에서 도움되는 말씀을 많이 듣긴 했어도 아해라는 회사 입장에서 직접적으로 도움이 된 건 없습니다.

문  지금까지의 진술을 정리해보면, 유혁기에게 제공받은 상표권이나 아이원아이홀딩스로부터 제공받은 자문용역은 그 비용의 과다를 떠나 제공받은 용역을 일정부분 인정할 수 있어 보이지만, 유병언에게 지급한 고문에 대한 자문은 전혀 받은 게 없어 보이는데 어떤가요

답  매월 1,500만원의 고문료를 지급할 만한 자문을 받은 건 없습니다. 사실 정기적으로 고문료를 지급하는 것에 상응하게 자문을 종종 받거나 한 것은 전혀 없습니다. 제가 생각하기로는 김필배 등 그룹 고위 관계자들이 회장님 생활비를 마련해드린다는 생각이 앞서서 고문료라는 명목을 붙여 돈을 받아가게 된 것 같습니다.

문  김필배 사장이 위와 같은 고문료를 요구할 때 거절할 수는 없었는가요

답  그 당시 저는 전무이사였던 이재영에게 보고받고 내부결재를 거쳐 최종 결정을 한 것인데, 저나 이재영 모두 김필배 사장의 지시를 거부할 수 있는 위치가 아니었습니다.

문  피의자는 유대균, 유병언, 아이원아이홀딩스에 과다 내지 가공 지급한 상표권사용료와 자문료들이 법인세 부과 시 비용으로 계상되어 그 만큼의 법인세가

EX-YOO-S5-00097

감면된다는 사실은 알고 있지요

답  예, 전문적인 정도는 아니지만 회사가 비용을 많이 지출하면 법인세 결산 시에는 감면된다는 정도는 알고 있습니다.

문  피의자는 조금 전에 2003년경부터 2008년경까지 (주)새천년의 대표이사로 재직하였다고 하였지요

답  예, 그렇습니다.

문  (주)새천년은 2003. 1. 23.경 설립되어 2008. 8. 13.경 해산된 것으로 나타나는데 피의자가 (주)새천년의 해산시까지 근무한 것인가요

답  제가 (주)새천년의 해산시까지 근무한 것이 맞습니다.

문  2008. 3.경 (주)새천년이 보유하고 있던 (주)천해지 주식 112만주를 (주)아이원아이홀딩스에 56억원에 양도한 사실이 있지요

답  예, 그렇습니다.

문  국세청의 고발 내용에 의하면, 당시 (주)천해지 주식의 1주당 가치에 대해서 박상배 세무사는 1주당 13,198원으로 평가하여 제출하였음에도, 당시 (주)새천년에서는 위 주식을 1주당 액면 가액인 5,000원에 양도하기로 하여 총 양도금액을 56억원에 양도하였고 이는 시가를 기준으로 할 때 정상가액의 70%보다도 훨씬 밑도는 수준으로 저가양도를 한 것이라고 하는데, 그렇지 않은가요

답  그 정도 금액으로 저가로 양도를 한 사실은 인정합니다.

문  어떤 경위로 저가양도를 하게 된 것인가요

답  제 기억으로는 그룹 지주회사인 (주)아이원아이홀딩스 관계자 박승일이 어차피 그룹 계열사 간에 자산을 옮기기만 하는 부분이니 저가에 양도하라는 지

- 13 -

694

EX-YOO-S5-00098

시를 전달해와서 그 결정에 따른 것인데 박승일이 전달한 지시가 유병언 회장님의 지시인지 유혁기 사장의 지시인지 김필배 부회장의 지시를 전한 것인지는 정확히 모르겠습니다.

문　위 주식 양도 당시에 (주)새천년의 주식 30% 지분이 피의자 명의로, 35% 지분이 이승기 명의로, 35% 지분이 이재옥 명의로 되어 있었는데 그 지분의 실소유자는 누구인가요

답　저는 교회(기독교복음침례회) 소유 지분이라고 생각합니다.

문　피의자는 서울지방국세청 세무조사 당시에 (주)새천년의 피의자, 이승기, 이재옥 명의 지분이 모두 유병언 회장의 주식이라고 진술하지 않았나요

답　제가 그 3명 명의의 주식이 차명 주식이라는 것은 인정했는데 유병언 회장 개인 소유라는 것은 아니고 교회 소유인데 교회의 총운영자인 유병언 회장이 실질적으로 관리하는 지분이라는 취지로 진술을 했던 것 같습니다.

문　(주)새천년의 안성지점 운영을 위해 (주)새천년의 대표이사로 일시 근무한 적이 있는 신재직은 당시 회사 상황을 볼 때 피의자 등 3명 명의의 주식은 차명 지분으로써 그 주식의 실제 소유자는 유병언 회장으로 보였다고 진술하고 있는데 그렇지 않은가요

답　저는 (주)세모 부장이던 이재영이 (주)새천년의 대표이사를 저한테 맡아달라는 얘기를 전하면서 저를 포함해서 이재옥, 이승기 명의로 주식 명의를 맡아달라고 해서 차명이라는 것만 정확히 알고 있고 그 주식 취득의 자금을 누가 실제로 대었고 누가 실제 소유자인지는 정확히는 모릅니다. 제 생각에 교회 것이 아니겠나 추측하는 정도입니다.

EX-YOO-S5-00099

문    그러면 피의자는 자신에게 (주)새천년의 대표이사를 맡아달라는 얘기를 전했 던 이재영이 지분의 실소유관계를 정확히 알 것이라는 얘기인가요

답    예, 그렇습니다.

문    국세청의 고발 내용은, (주)새천년의 주식 지분의 실제 소유자는 유병언이고 (주)아이원아이홀딩스의 지분 44% 정도를 유병언의 자녀들 명의로 되어 있어 서 (주)새천년과 (주)아이원아이홀딩스는 특수관계에 있고 특수관계에 있는 양도인과 양수인 간에 주식을 양도하면서 정상 가격의 70%보다도 훨씬 적은 37%대 가격으로 저가양도하면서 양도인과 양수인 간의 특수관계가 드러나지 않도록 (주)새천년의 주식 지분을 실제 소유자인 유병언이 아닌, 피의자 등 3 명 명의로 명의위장을 해두어 조세를 포탈한 혐의가 있다는 것인데, 실제 조 세포탈 목적으로 유병언 회장의 지분을 피의자 등 3명이 명의위장을 해둔 것 이 아닌가요

답    저희 3명 앞으로 지분이 명의신탁이 된 것은 회사 설립 직후부터 수년간 그 런 상태로 있어 왔던 것이고, (주)천해지 지분을 양도하면서 조세포탈을 하기 위해 일부러 저희 3명이 그 거래를 앞두고 차명으로 명의위장을 한 적은 없 습니다. 저가양도를 한 사실은 인정하지만 그 거래를 앞두고 일부러 세무당국 을 속이기 위해 명의를 위장하거나 서류를 허위로 꾸민 적은 없습니다. 회사 지분이 명의신탁된 상태로 있었던 것은 어느 날 지분을 양도할 일이 생길지 도 몰랐던 회사 설립 당시부터 그랬을 뿐입니다.

문    그러면 회사 설립시부터 지분에 대해 피의자 등 3명에게 명의를 맡겨둔 이유 는 무엇인가요

답  유병언 회장님이나 유혁기 사장 같은 그룹 고위층의 지시를 전달받은대로 (주)새천년 설립 무렵부터 제 명의를 걸어준 것일 뿐이지 왜 그 당시부터 저한테 (주)새천년의 지분 명의를 빌려달라고 한 것인지는 잘 모르겠습니다.

문  (주)새천년이 보유한 본건 (주)천해지 주식의 양도 과정에서 유대균이 개입한 부분이 있나요

답  유대균은 예술가로 활동하면서 그룹 계열사에서 주는 상표권수수료 등을 받은 사실은 있는 것으로 알고 있으나 그룹 계열사 운영에 관여한 것은 없는 것으로 알고 있고, (주)새천년의 운영에도 관여한 적이 없으며 (주)천해지 주식을 양도하는 과정에도 개입한 것이 없는 것으로 알고 있습니다.

문  (주)천해지 주식을 양수한 (주)아이원아이홀딩스로서는 본건 저가양도로 엄청난 수혜를 보는 입장인데 유대균도 (주)아이원아이홀딩스 지분을 19% 이상 가지고 있는데 유대균이 저가양수를 받기 위해 유병언 일가의 일원으로서 본건 의사결정에 개입하였을 가능성이 있는 것 아닌가요

답  양수하는 회사의 대주주여서 덕을 보는 입장이니 유대균도 유혁기 등 지주회사 관계자로부터 그런 얘기를 전해듣고 동의를 하였을 수 있는 부분이기는 한데 구체적으로 지주회사 쪽에서 누가 그런 의사결정에 개입하였는지 정확히는 모르겠습니다.

문  이상 사실대로 진술하였는가요

답  예.

문  피의자에게 유리한 증거나 더 하고 싶은 말이 있는가요

답  없습니다.

697

EX-YOO-S5-00101

문    조서에 진술한 대로 기재되지 아니하였거나 사실과 다른 부분이 있는가요

답    (자필 기재)  없음니다



EX-YOO-S5-00102

위 조서를 진술자에게 열람하게 하였던 바 진술한대로 오기나 증감 변경할 것이 전혀 없다고 말하므로 간인한 후 서명날(무) 인케 하다.

진 술 자  이 강세 

2014. 10. 8.

인천지방검찰청



검 사  박 광 현

검찰주사보  서 대 석

EX-YOO-S5-00103

# 수사 과정 확인서

| 구분 | 내용 |
|---|---|
| 1. 조사 장소 도착 시각 | 14:30 |
| 2. 조사 시작 시각<br><br>　　및 종료 시각 | ☐ 시작 시각 : 14:45<br>☐ 종료 시각 : 18:02 |
| 3. 조서 열람 시작 시각<br><br>　　및 종료 시각 | ☐ 시작 시각 : 18:02<br>☐ 종료 시각 : 18.00 28 |
| 4. 기타 조사과정 진행경과 확인에 필요한 사항[조사장소의 도착시각과 조사시작 시각에 상당한 시간적 차이가 있는 경우 그 이유, 조사중단 이유, 중단시각, 재개시각 등(검찰사건사무규칙 제13조의4 ②항)] | 없 음 |
| 5. 조사과정 기재사항에 대한 이의제기나 의견진술 여부 및 그 내용 | 없 음 |

2014. 10. 8.

검사 박광현은 이강세를(을) 조사한 후, 위와 같은 사항에 대해 이강세(으로)부터 확인받음.

확인자 : 이 강세 (인)

검　사 : 박광현





EX-YOO-S5-00104

# 참고인 심문조서 (제1회)

| 진술자 | 성 명 : | 선재직 | 주민등록번호 : | 551116-1463028 |
|---|---|---|---|---|
| | 주 소 : | 서울 관악 대학7가길 28번지 205호 | | |
| | 관 계 : | 前 대표이사 | | |
| 소속회사 | 법인명(상호) : | 주식회사 새천년 | 사업자등록번호 : | 612-81-16963 |
| | 소재지 : | 경남 고성군 동해면 양기리 1 | 대표자 성명 :(주민등록번호) | 야강세(410210-1405915) |

위 진술자는 주식회사 새천년에 대한 「조세범처벌법」 해당 혐의사건과 관련하여 주식회사 새천년의 전 대표이사로서 2014. 5. 2. 17:20의로 서울지방국세청 효제별관 4층에 있는 조사4국 조사2과 2조사팀 사무실에 출석하여, 21:30부터 같은 건물 3층에 있는 6조사팀 사무실에서 다음과 같이 진술하다.

## 1. 범칙혐의자와의 관계

본인은 2004.03.31.부터 2005.07.20.까지 주식회사 새천년의 대표이사로 근무한 자로서 주식회사 새천년에 대한 범칙사건의 참고인 자격으로 출석하였습니다.

## 2. 이에 세무공무원은 진술인 선재직을 상대로 사실관계를 명료히 하기 위하여 임의로 다음과 같이 문답하다.

문   진술인의 성명, 주민등록번호, 주소, 직업, 연락처를 말씀해 주세요.

답   성명은            선재직

주민등록번호는     551116-1463028

주소는             서울 관악 대학7가길 28번지 205호

출생지는           충남 보령시

**158**

EX-YOO-S5-00105

직업은          무직

연락처는        휴대전화   010-9467-7829    직장전화

                 자택전화                입니다.

문    진술인의 건강은 어떤가요.

답    큰 문제는 없습니다.

문    지금 시각이 밤 10시가 넘었는데 조사를 받을 수 있겠나요.

답    괜찮습니다.

문    진술인의 학력, 경력을 말씀해 주세요.

답    1977년 서울시 마포구 아현동에 있는 경기공업고등전문학교(5년 과정, 서울산업대학의 전신)를 졸업하고, 1980년 2월 한양공대 기계공학과, 1987년 8월 같은 대학 산업대학원 기계공학 석사과정을 졸업하였습니다.

     한국전력기술, 삼성항공산업(현 삼성테크윈), 한국중공업(현 두산중공업) 등에 25년 정도 근무하고, 2005년 천해지에 입사했습니다. ㈜천해지에 입사하기 전에 그 관계회사인 ㈜새천년에 1년 남짓 근무했습니다.

문    진술인의 종교는 어떻게 되나요.

답    대학교 때부터 기독교를 믿고 있습니다. 1970년대 말경부터 기독교복음침례회 교회를 다녔는데, 2004년경부터 서울 삼각지에 있는 서울교회에 다니다가 2011년 2월 말경 천해지를 퇴사한 이후 교회에 나가지 않고 있습니다.

문    새천년은 어떤 사업을 하는 회사인가요.

답    경남 고성에서 선박블럭 제조업을 영위하는 ㈜세모의 임가공 업체였습니다. 2005년에 ㈜천해지가 법정관리중이던 ㈜세모의 조선사업부를 법원경매를 통해 인수한 이후 새천년은 천해지의 임가공 업무를 하게 되었습니

**159**

EX-YOO-S5-00106

다. 새천년이 하는 업무를 구체적으로 설명하면 철판을 도면에 따라 절단하는 강재 절단업을 하고 있습니다.

문 진술인이 새천년의 대표이사로 재직한 경위는 어떻게 되나요.

답 새천년의 원래 대표이사로 있는 이강세 사장이 경남 고성의 본사를 운영하고 있었습니다. 그런데 2004년에 경기도 안성에 지점을 설치하여 의료기기(대장세척기) 제조업 분야로 사업영역을 확장했습니다. 안성지점을 운영할 경영자가 필요해 제가 대표이사로 추가 선임된 것입니다. 이강세 사장과 저는 각자 대표로서 본점과 안성지점을 각각 나누어 맡아 운영하였습니다. 새천년은 2006년 말경 안성지점을 모래알디자인에 매각한 것으로 알고 있습니다.

문 누가 진술인을 새천년의 대표이사로 선임한 것인가요.

답 제가 교회에 다니면서 유병언 회장님을 조금 알고 했었습니다. 안성지점을 설치하면서 그런 일은 엔지니어가 해야 하는데 제가 엔지니어 출신이다 보니 이강세 사장이나 다른 ████들이 회장님에게 저를 추천한 것으로 알고 있습니다.

회장님께서는 안성에 있는 금수원에서 토요일 오후 8시경에 설교를 하곤했습니다. 오륙백명 정도가 예배에 참여했는데, 평소 저는 두산중공업에 근무하면서 울진원자력발전소 건설하는 일을 하였기 때문에 금수원 예배에는 가끔 참석하였습니다. 2004년 초경 제가 금수원 예배에 참석했다가 예배를 마친후, 유병언 회장님께서 저에게 대장세척기 사업을 맡아서 해보라고 말씀해서 저는 조금 생각해 보겠다고 말씀드렸습니다. 대장세척기에 대한 특허를 유병언 회장님이 갖고 있었습니다. 저는 여러 가지로 생각해보니 새로운 일에 도전해 보는 것도 좋을 것 같아 몇 주 쯤 지나 금수원 예배를 마친 다음에 회장님에게 제 뜻을 말씀드렸더니 한 번 잘 해보라고 하셨습니다. 그래서 제가 새천년의 대표이사가 된 것입니다.

**160**

- 3 -

EX-YOO-S5-00107

159

문  그러면 진술인은 유병언 회장이 뽑아 주어서 새천년의 대표가 되었다는 것인가요.

답  예, 그렇습니다.

문  유병언은 어떤 자격으로 진술인을 새천년의 대표이사로 선임할 수 있는 것인가요.

답  저를 대표이사로 앉히고 이강세 사장이나 저는 금수원 예배가 끝난 후 기회가 되면 회사 경영에 관한 중요한 사항을 구두로 회장님에게 보고했기 때문에 저는 회장님이 실질적인 회사의 주인이라고 생각했습니다.

문  새천년의 주주로는 누가 있나요.

답  주주는 몇 명 안 되는 것으로 알고 있지만 구체적으로 누구인지는 잘 모르겠습니다. 다만 이강세 사장은 형식상 주주로 되어 있었지만 그 주식은 사실 이강세 사장의 것이 아니라 유병언 회장님의 것이라고 생각합니다.

문  그렇게 생각하는 이유는 무엇인가요.

답  이강세 사장이 실질 주주로서 ▓▓▓▓ 경영권을 갖고 있다면 스스로 주요 경영 의사결정을 하였을 것입니다. 그런데 이강세 사장은 일상적인 경영활동을 하기는 했지만 저와 마찬가지로 중요한 사항은 금수원 예배가 끝난 후에 회장님에게 구두 보고를 했기 때문에 이강세 사장은 실질 주주가 아닐 것이라고 생각하는 것입니다. 또 이강세 사장이 실질 주주라면 저를 대표이사로 선임하는 의사결정도 이강세 사장이 하였을 것인데, 그런 결정권한이 회장님에게 있었던 점을 보더라도 유병언 회장이 주식의 소유자라고 생각하는 것입니다.

문  이강세 사장 외의 다른 주주들의 주식도 유병언 회장의 소유인가요.

답  예, 그렇게 생각합니다.

문  그 이유는 무엇인가요.

- 4 - **161**

EX-YOO-S5-00108

16

답   다른 주주들이 회사 경영에 관여하는 것을 보지 못했기 때문입니다.

문   다른 주주들이 새천년이 실질 주주라면 주주총회 때뿐만 아니라 평소에도 전문경영인인 진술인에게 연락하여 경영상황을 점검하였을 텐데 그러한 과정은 있었나요.

답   없었습니다. 이강세 사장 외의 다른 명의상 주주들이 새천년의 실질 주주였다면 평소에도 회사 운영상황을 당연히 체크하였을 것입니다. 그러한 경우가 없던 점을 보더라도 다른 명의상 주주들은 명의 뿐이지 그 주식의 실제 소유자는 유병언 회장이라고 생각하는 것입니다.

문   진술인은 새천년 경영에 관해 이강세 사장이나 유병언 회장에게 보고한 적이 있나요.

답   이강세 사장은 저와 같은 사장이고, 이강세 사장은 고성 선박공장을 맡고 저는 안성 의료기 공장을 맡고 있어 서로 담당하는 분야가 달랐기 때문에 제가 이강세 사장에게 업무보고를 하는 경우는 없었습니다. 다만 어떤 사안에 대해 제가 이강세 사장과 ~~의논하는~~ 경우는 있었습니다.

유병언 회장님은 폐쇄적이거나 권위적으로 업무처리를 하는 분이 아닙니다. 금수원 예배를 마친 후 저 같은 사장들에게 눈인사나 목례로 서로 인사를 하고 그 때 가까이 있어 기회가 되면 회사 경영에 관해 중요한 사항을 구두로 보고하곤 하였습니다. 예를 들면 저는 회사(새천년)에 의료기기(대장세척기)에 대한 생산허가를 식약청으로부터 받았을 때 회장님에게 그러한 사항을 구두로 보고했습니다. 저 뿐만 아니라 이강세 사장도 그런 식으로 보고했고 다른 계열사의 사장들도 저와 같은 방식으로 보고했습니다.

문   유병언은 진술인을 따로 불러서 보고를 받거나 업무지시를 하는 경우도 있었나요.

답   그런 경우는 없습니다. 회장님은 보통 공개적인 장소에서 구두보고를 받

162

- 5 -

16

EX-YOO-S5-00109

는 프리한 스타일입니다. 저는 회장님을 독대한 적이 없습니다.

문  김필배 사장이나 다른 측근들의 경우에도 유병언을 독대하여 보고하는 경우가 없나요.

답  2007년경부터 김필배 사장은 지주회사 격인 ㈜아이원아이홀딩스의 대표이사를 맡았기 때문에 저희 같은 계열사 사장들은 김필배 사장을 부회장이라고 부르기도 했습니다. 김필배 사장은 회장님 지시라면서 저희에게 지시하는 경우가 종종 있어 김필배 사장은 유병언 회장님을 따로 뵙고 보고를 하거나 지시를 받는다고 생각했습니다. 측근이라 할 수 있는 다른 주요 임원이 회장님을 따로 뵙는지는 잘 모르겠습니다.

문  진술인은 금수원 예배 후에 유병언에게 주요 업무보고를 하면 유병언이 진술인에게 업무지시를 하는 경우도 있었나요.

답  회장님은 임원들간에 잘 의논해서 처리하라고 말씀하십니다. 대기업 같은 일반 조직생활을 한 사람은 이해하기 힘들겠지만 그것은 회장님의 경영 스타일이 그런 것 같습니다. 아마도 회장님 말씀은 담당 사장이 경영책임을 지고 문제를 헤쳐 나가라는 뜻이었죠.

김필배 사장이 지주회사 격인 아이원아이홀딩스 대표가 된 후에는 계열사 사장들이 왜 회장에게 직접 보고하냐고 해서 그 후 김필배 사장에게 보고를 하기도 했습니다. 그 전에도 김필배 사장은 그룹 내에서 다른 사장들보다 더 영향력이 있었습니다.

문  진술인이 2005. 7. 20. 새천년의 대표이사 직을 사임한 경위는 어떻게 되나요.

답  2005년에 유병언 회장님은 저에게 천해지의 대표를 시켰습니다. 천해지는 새천년에 비해 매출도 훨씬 많고 회사 규모도 크기 때문에 업무가 많았고, 또 새천년 안성지점과 천해지 고성공장은 거리가 너무 멀어 두 회사를 동시에 경영하기는 어려웠습니다. 그래서 제가 새천년 대표는 그만 두

163

EX-YOO-S5-00110

는게 좋겠다고 유병언 회장님께 말씀드렸더니 그렇게 하라고 해서 사임하게 된 것입니다.

문  진술인어 2011. 2. 28.경 천해지의 대표를 사임한 경위는 어떻게 되나요.

답  제가 해상크레인 수주를 잘못해서 회사가 수십억원의 손실을 입었습니다. 천해지는 해상크레인 제작 경험이 없는데 수주했다가 잘못된 것입니다. 그랬더니 김필배 사장이 김동환 이사를 시켜 저에게 그만 두라고 압력을 넣어 사표를 썼습니다.

문  더 하실 말씀이 있나요.

답  제가 유병언 회장이 시켜서 새천년이나 천해지의 대표가 되었다고 진술했다는 사실을 이강세 사장이나 다른 신도들에게 말하지 않았으면 좋겠습니다. 그러면 저는 완전히 배신자 취급을 받을 것이기 때문입니다.

저는 한동안 교회에 나가지 않고 있지만 그것은 제가 교리에 반대하거나 신앙이 없어졌기 때문이 아니라, 경제적으로 어려워지고 교회와 기업이 혼재되어 있는 점에 대해 어떤 의감을 갖게 되었기 때문에 동면을 한다고나 할까요, 신앙생활을 잠시 쉬고 있는 것뿐입니다.

그런데 제가 회장님에 대해서 위와 같이 말한 것을 다른 신도들이 알게 되는 것은 두렵습니다.

문  이상의 진술 내용에 대해 이의나 의견이 있나요.

답  없습니다.

문  심문에 협조해 주셔서 감사합니다. 조사가 끝난 시각은 언제인가요.

답  23:40경입니다.

(본인은 2014. 5. 2. 23:40 □□ 23:57까지 위 심문조서를 열람한바, 본인이 진술한 내용대로 작성되었으며, 잘못 기재된 부분은 없습니다.(또는 잘못 기재된 부분은 본인이 자필로 추가·변경·삭제하였습니다.))

163

EX-YOO-S5-00111

위의 조서를 진술자가 읽어본 후 본인의 진술이 잘못 기재되거나 (또는 본인이 진술한대로 기재되지 않은 일부사항을 추가·변경기재·삭제하여), 추가·변경·삭제 할 내용이 전혀 없다고 말하므로 간인 후 서명날인하게 하다.


2014. 5. 2.


진술자                     신     재 적      

세무대리인                                       (인)


조사자                세무공무원    조   성 인

입회자                공무원    이   석래


* 진술내용이 거짓으로 밝혀질 때에는 「조세범처벌법」 제17조의 규정에 의해 처벌될 수 있음



166

EX-YOO-S5-0011f3

# 진 술 조 서

성       명: 박승일

주민등록번호: 590108-1464629

직       업: 前 (주)아이원아이홀딩스 감사

주       거: 경기 성남시 분당구 정자동 111 한솔마을아파트 210동 302호
현재 인천구치소 수감중(수감번호 : 1484)

등록기준지:

직장 주소:

연 락 처: (자택 전화)  031-719-1939      (휴대 전화)  010-9400-7081

(직장 전화)  02-3458-8111      (전자우편)

위의 사람은 피의자 유병언 등에 대한 조세범처벌법위반 사건에 관하여 2014. 10. 10. 인천지방검찰청 1025호 검사실에 임의 출석하여 다음과 같이 진술하다.


## 1. 피의자와의 관계

- 유병언 회장님 밑에서 계열사 임직원으로 재직하면서 회사운영에 일정 부분 관여한 사실만 있을 뿐 회장님과 직접적인 친인척 관계는 없습니다.


## 1. 피의사실과의 관계

- 아이원아이홀딩스 이사 및 감사로 재직 시, (주)새천년이 (주)아이원아이홀딩스에 (주)천해지 주식을 저가 양도한 것과 관련하여 지득한 사실에 대하여도 아는 한도 내에서 진술하겠습니다.

# 진술거부권 및 변호인 조력권 고지 등 확인

1. 귀하는 일체의 진술을 하지 아니하거나 개개의 질문에 대하여 진술을 하지 아니할 수 있습니다.
1. 귀하가 진술을 하지 아니하더라도 불이익을 받지 아니합니다.
1. 귀하가 진술을 거부할 권리를 포기하고 행한 진술은 법정에서 유죄의 증거로 사용될 수 있습니다.
1. 귀하가 신문을 받을 때에는 변호인을 참여하게 하는 등 변호인의 조력을 받을 수 있습니다.



문 진술인은 위와 같은 권리들이 있음을 고지받았는가요

답 예

문 진술인은 진술거부권을 행사할 것인가요

답 아니요

문 진술인은 변호인의 조력을 받을 권리를 행사할 것인가요

답 아니요.

2014. 10. 10.

진술인 박능열 

EX-YOO-S5-00115

이때 검사는 진술인을 상대로 다음과 같이 문답을 하다.

문    진술인이 박승일인가요

답    예.

문    진술인은 현재 어떤 이유로 구속되어 있는가요

답    유병언 일가의 그룹 계열사 자금 횡령 행위에 대한 공범으로 기소되어 재판
      중이며, 2014. 11. 5.선고를 앞두고 있습니다.

문    금일 유병언 등이 (주)새천년이 보유한 (주)천해지 주식을 (주)아이원아이홀딩
      스에 저가 양도하여 법인세를 포탈한 혐의에 대하여 진술인을 참고인 신분으
      로 조사할 예정인데, 아는 대로 진술할 용의가 있는가요

답    예. 제가 아는 한도 내에서 전부 진술하겠습니다.

문    진술인은 2007. 12. 27.경부터 2014. 3. 16.경까지 (주)아이원아이홀딩스의 이
      사로 재직하고, 2014. 3. 17.경까지는 그곳 감사로 재직한 것으로 확인되는데
      맞는가요

답    예, 맞습니다.

문    진술인은 (주)아이원아이홀딩스가 2008. 3. 5.경 (주)새천년이 보유한 (주)천해
      지의 주식 112만주를 액면가 5,000원, 합계 56억원에 양수하기로 계약을 체결
      하고, 같은 날 계약금 5억 6,000만원, 같은 해 3. 21.경 잔금 50억 4,000만원을
      지급하여 거래를 마친 사실을 알고 있지요

답    예, 정확한 숫자나 액수는 기억을 못하지만 그 당시 거래과정에 대하여는 기
      억을 하고 있습니다.

문    위 거래 당시 (주)새천년의 주식 보유현황에 대하여 아는가요

답     이강세, 이승기, 이재옥 세 명이 주식을 나눠 갖은 사실은 기억을 하는데 정
        확히 몇 퍼센트 씩 갖고 있는지는 기억이 없습니다.

문     자료에 따르면 이강세 30%, 이승기, 이재옥이 각각 35%를 소유하고 있었는
        데 기억나는가요

답     거의 비슷하게 나눠 갖고 있었던 걸로 기억합니다.

문     위 세 사람이 새천년의 주식을 보유하게 된 경위에 대하여는 아는 대로 진술
        해 보세요

답     그 당시는 아이원아이홀딩스 설립 전이어서 (주)새천년 일에 전혀 관여한 바
        가 없어서 그 사람들이 어떻게 해서 새천년 주식을 갖게 된 것인지는 전혀
        알지 못합니다.

문     위 천해지 주식 양도양수 시, (주)새천년의 대표이사였던 이강세은 "그룹 지
        주회사인 (주)아이원아이홀딩스 관계자 박승일이 어차피 그룹 계열사 간에 자
        산을 옮기기만 하는 부분이니 저가에 양도하라는 지시를 전달해와서 그 결정
        에 따른 것인데 박승일이 전달한 지시가 유병언 회장님의 지시인지 유혁기
        사장의 지시인지 김필배 부회장의 지시를 전한 것인지는 정확히 모르겠습니
        다"라고 진술하고 있는데 어떤가요

답     예, 대충 기억이 납니다. 그 당시 아이원아이홀딩스의 최고 결정권자인 김필
        배와 유혁기 두 사람에게 지시를 받은 걸로 기억합니다.

문     (주)새천년에서는 박상배 세무사를 통해 그 당시 천해지의 1주 당 가치를
        13,198원으로 평가를 했음에도 아이원아이홀딩스에 액면가인 5,000원에 저가
        양도하게 되는데 그러한 결정과정에 대하여 아는 게 더 없는가요

답  그 당시 저와 김동환은 김필배 사장이나 유혁기가 지시하면 그대로 진행을 하는 실무자일 뿐 의사결정과정에 참여할 위치가 전혀 아니었습니다. 어렴풋이 기억나는 건 삼일회계법인에 천해지의 주식을 액면가로 저가양도 받아도 법적인 문제가 없는지 자문을 받은 결과, 아이원아이홀딩스와 새천년 간에 특수관계자 신분이 아니므로 저가 양도해도 세법상 문제가 되지 않는다는 자문을 받고 윗선에서 그와 같은 결정을 내리고 저와 김동환은 그대로 일을 진행했다는 것입니다.

문  진술인은 2008. 3.경 주식 양도양수 시점에는 이사였으므로 기억할 것으로 보이는데, 새천년에 지급한 주식양수대금 56억원의 행방은 어떻게 되는가요

답  새천년에서 법인세 납부하고, 법인해산하면서 주주에게 배당금 지급하고 청산을 한 것으로 아는데 정확한 내막에 대해서는 아는 게 없습니다.

문  그럼 아이원아이홀딩스에서는 위 주식양수대금 56억원을 어떻게 마련하였는가요

답  아마 유상증자를 통해서 마련하였을 겁니다.

문  진술인도 아이원아이홀딩스 주식을 보유하고 있습니다.

문  예, 저도 2008.경 유상증자 시 몇 주인지는 정확하지 않지만, 금액으로 1,000만 상당의 주식을 사서 현재까지 보유하고 있습니다.

문  (주)새천년의 지분 구조가 이강세, 이승기, 이재옥 세 명 앞으로 되어 있던 것은 (주)천해지 주식 양도를 앞두고 3명 앞으로 지분을 이전했던 것인가요

답  제가 기억하기로 그건 아니고 수년 전에 (주)새천년을 설립할 당시부터 3명 앞으로 지분이 되어 있었던 것으로 알고 있습니다.

문  그러면 (주)천해지 주식 양도를 앞두고 관련 서류를 실제와 달리 작성한 부분이 있었나요

답  실제와 달리 서류를 작성한 부분은 없습니다. (주)새천년의 지분이 실제 누가 소유자인지는 저도 정확히 모르는 부분이지만 만일 (주)새천년의 지분이 차명지분이라 하더라도 이는 (주)새천년을 설립하였을 당시부터 수년간 지분구조가 3명 앞으로 되어 있는 상태로 지속되어 와서 (주)천해지 양도 당시 그간 계속되어 온 지분 명의에 따라 서류를 작성하였던 것에 불과하고, 세무관서를 속이거나 세무조사에 잘 드러나지 않게 하기 위해 (주)천해지 양도를 앞두고 의도적으로 지분을 제3자 명의로 위장하거나 그와 비슷한 허위 서류를 작성하거나 한 것은 전혀 없습니다. 그런데 (주)새천년의 지분 실소유관계에 대해서는 아까 말씀드린 것처럼 저도 정확히는 모르는 부분인데 김필배와 유혁기와 같은 그룹 고위층이 알 수 있는 부분이라 생각됩니다.

문  이상 사실대로 진술하였는가요

답  예.

문  피의자에게 유리한 증거나 더 하고 싶은 말이 있는가요

답  없습니다.

문  조서에 진술한 대로 기재되지 아니하였거나 사실과 다른 부분이 있는가요

답  (자필 기재) 없읍니다. 

EX-YOO-S5-00119

진술조서(박숭일).hwp          2014.10.10 오후 4:12          706

위 조서를 진술자에게 열람하게 하였던 바 진술한대로 오기나 증감 변경할 것이 전혀 없다고 말하므로 간인한 후 서명날(무)인케 하다.

진 술 자    박 승 일



2014.  10.  10.

인천지방검찰청

검            사    박 광 현



검 찰 주 사 보    서 대 석

# 수사 과정 확인서

| 구분 | 내용 |
|---|---|
| 1. 조사 장소 도착 시각 | 13:50 |
| 2. 조사 시작 시각<br><br>및 종료 시각 | ☐ 시작 시각 : 13:50<br>☐ 종료 시각 : 16:12 |
| 3. 조서 열람 시작 시각<br><br>및 종료 시각 | ☐ 시작 시각 : 16:12<br>☐ 종료 시각 : 16:20 |
| 4. 기타 조사과정 진행경과 확인에 필요한 사항[조사장소의 도착시각과 조사시작 시각에 상당한 시간적 차이가 있는 경우 그 이유, 조사중단 이유, 중단시각, 재개시각 등(검찰사건사무규칙 제13조의4 ②항)] | 없음 |
| 5. 조사과정 기재사항에 대한 이의제기나 의견진술 여부 및 그 내용 | 없음 |



2014. 10. 10.

검사 박광현은 박승일를(을) 조사한 후, 위와 같은 사항에 대해 박승일로(으로)부터 확인받음.

확인자 : 박 승일

검사 : 박광현