

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

July 22, 2020

The Honorable Judith C. McCarthy
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

        **Re:  *In re Extradition of Hyuk Kee Yoo*, No. 20 Mag. 2252**

Dear Judge McCarthy,

      In this proceeding, at the formal request of the Republic of Korea, the Government is seeking a certification that Hyuk Kee Yoo, a Korean fugitive, is extraditable pursuant to the Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Korea, U.S.-S. Korea, signed on June 9, 1998 and entered into force December 20, 1999, S. TREATY DOC. No. 106-2 (1999) (the "Treaty"). Korea has requested Yoo's extradition so that he can stand trial on seven counts of embezzlement. Yoo allegedly leveraged his family's power as business and church leaders in Korea to pilfer the assets of several companies (the "Victim Companies"). According to the Government of Korea, Yoo conspired with the executives of the Victim Companies to enter into sham contracts that served as vehicles for Yoo to embezzle more than $23 million, to the detriment of the Victim Companies and their respective public shareholders. On February 27, 2020, Judge Davison issued an arrest warrant based on a complaint seeking Yoo's extradition to Korea pursuant to the Treaty and 18 U.S.C. § 3184. Yoo was arrested on July 22, 2020.

      The Government respectfully submit this letter to provide the Court with a brief overview of the law governing extradition proceedings, including, in particular, bail determinations. As explained below, unlike in criminal cases, there is a strong presumption against bail in extradition proceedings. To justify bail, a fugitive must establish that he is not a flight risk and that "special circumstances" exist that warrant bail. Yoo will be unable to make that showing here, and he should be detained.

**I.     Overview of Executive and Judicial Responsibilities in Extradition Proceedings**

      International extradition is primarily an executive function, with a limited role for the judiciary pursuant to the federal extradition statute. The Court's role is to determine whether (1) it is authorized to conduct the extradition proceeding; (2) it has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the treaty; and (5) there is sufficient evidence to support a finding of

probable cause as to the charges for which extradition is sought. *See* 18 U.S.C. § 3184; *see also Skaftouros v. United States*, 667 F.3d 144, 154-55 (2d Cir. 2011). "If the judicial officer answers these questions in the affirmative, he or she 'shall certify' the extraditability of the fugitive to the Secretary of State." *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000) (quoting 18 U.S.C. § 3184). The Secretary of State, and not the Court, then makes the final, discretionary determination whether the fugitive should be surrendered to the requesting country. *See* 18 U.S.C. §§ 3184, 3186; *Lo Duca v. United States*, 93 F.3d 1100, 1103-04 (2d Cir. 1996).

In light of the limited nature of extradition proceedings, fugitives lack most of the protections afforded to criminal defendants. Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply. At the extradition hearing, hearsay is admissible, unsworn statements of absent witnesses can be considered, and fugitives have no right to confrontation or cross-examination. *See, e.g.*, *Skaftouros*, 667 F.3d at 155 n.16 (collecting cases). As a result, the Court can make the requisite determination of extraditability solely on a written record, without hearing from any live witnesses. Further, the fugitive's ability to put on defenses is highly circumscribed, *see, e.g.*, *Charlton v. Kelly*, 229 U.S. 447, 461 (1913) (no right to assert affirmative defenses), and there is no right to discovery, *see, e.g.*, *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984).

II.   **There Is a Presumption Against Bail in Extradition Proceedings, and a Fugitive Seeking Bail Must Establish "Special Circumstances"**

No statutory authority expressly permits bail in extradition proceedings. The statutes governing extradition, 18 U.S.C. §§ 3181 *et seq.*, do not provide for bail, and the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not apply because an extradition proceeding is not a criminal prosecution.[1] *See, e.g.*, *Austin v. Healey*, 5 F.3d 598, 603 (2d Cir. 1993); *Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001). And courts have long recognized a "presumption against bail in extradition cases." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam); *see also Wright v. Henkel*, 190 U.S. 40, 63 (1903). This presumption is necessitated by the "United States Government's overriding interest in complying with its treaty obligations," and the serious embarrassment that would result if a fugitive were to abscond after being released on bail. *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009).

In light of the Government's overriding interest, and the presumption against bail, "release on bail in extradition cases should be an unusual and extraordinary thing." *Borodin*, 136 F. Supp. 2d at 128 (internal quotation marks and citations omitted). A fugitive cannot be released pending his extradition hearing unless he establishes that he is neither a flight risk nor a danger to the community, *and* that additional "special circumstances" warrant release. *E.g. Leitner*, 784 F.2d at 160. This "special circumstances" standard is "much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In re Extradition of Lui*, 913 F. Supp. 50, 53 (D. Mass. 1996).

---

[1] The Bail Reform Act applies only to "offenses" in violation of U.S. law triable in U.S. courts. *See* 18 U.S.C. §§ 3141(a), 3142, and 3156(a)(2). Here, Yoo is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with offenses committed in violation of Korean law.

Courts have considered and rejected a lengthy list of would-be special circumstances, including a low risk of flight. *See Leitner*, 784 F.2d at 161; *Garcia*, 615 F. Supp. 2d at 173; *Borodin*, 136 F. Supp. 2d at 130. Courts have found that the following circumstances *do not* qualify as "special circumstances": (1) the fugitive's need to consult with his attorney or participate in pending litigation, *see In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997); (2) the complexity of the pending litigation, *see United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996); *United States v. Tang Yee-Chun*, 657 F. Supp. 1270, 1271-72 (S.D.N.Y. 1987); (3) the fugitive's character, background, or ties to the community, *see Leitner*, 784 F.2d at 160-61; *Duran v. United States*, 36 F. Supp. 2d 622, 628 (S.D.N.Y. 1999); (4) health issues including discomfort, dietary needs, or associated health concerns while incarcerated, *see Garcia*, 615 F. Supp. 2d at 173-74; *In re Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1992) (allowing for possibility of bail if a "health emergency" could "only be treated" while on bail); (5) citizenship or pendency of naturalization proceedings, *see In re Extradition of Sacirbegovic*, 280 F. Supp. 2d 81, 84 (S.D.N.Y. 2003)*; In re Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1072 (C.D. Cal. 2017); (6) political or professional status, *see Borodin*, 136 F. Supp. 2d at 131; (7) the availability of electronic monitoring, *see Rovelli*, 977 F. Supp. at 569; (8) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see In re Klein*, 46 F.2d 85, 85 (S.D.N.Y. 1930); (9) the probability of success at the extradition hearing, *see Sacirbegovic*, 280 F. Supp. 2d at 88; and (10) the availability of bail for the same offense in the requesting country, *see Garcia*, 615 F. Supp. 2d at 172.

In addition, a majority of district courts to consider the issue have held that the ongoing COVID-19 pandemic is not a "special circumstance" justifying release pending extradition. *See In re Extradition of Taylor*, Nos. 20 Mag. 1069 & 1070, 2020 WL 3893049, at *5-6 (D. Mass. July 10, 2020); *Risner v. Fowler*, No. 19 Civ. 3078, 2020 WL 2110579, at *4-8 (N.D. Tex. May 1, 2020); *Valentino v. U.S. Marshal*, No. 20 Civ. 304, 2020 WL 1950765 at *1-3 (S.D. Tex. April 15, 2020); *but see In re Extradition of Toldedo Manrique*, No. 19 Mag. 71055, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) (finding COVID-19, in combination with the fact that the defendant was 74 years old, was a special circumstance).

To be sure, while these factors have been rejected as proposed special circumstances, in an exceptional case a confluence of these factors may satisfy the standard. *See Sacirbegovic*, 280 F. Supp. 2d at 88 (collecting cases). Such findings are highly case-specific and within the discretion of the court, mindful of the strong presumption against bail and the future reciprocity of other countries at stake.

### III. Yoo Is a Flight Risk, and the Government Is Unaware of any Special Circumstances

The Court should deny bail in this case because Yoo is a flight risk, and because there do not appear to be any special circumstances that can overcome the strong presumption against bail.

Yoo poses a substantial flight risk. *First*, Yoo has the financial means to flee. Public reporting indicates that Yoo and his family have significant financial resources: according to the *New York Times*, Yoo and his wife purchased their Pound Ridge home in 2007 for $3.5 million, purchased another property in Bedford—which they use as a guesthouse for visiting business associates—for $2.75 million, and own or owned other properties including a condominium at the Ritz-Carlton in Manhattan and a million-dollar home in Yucaipa, California, which per the *Times*

is "near a lavender farm and resort that the Yoo family controls." Alison Leigh Cowan & Choe Sang-Hun, "In Suburban New York, an Unlikely Link to a South Korean Ferry Disaster," *N.Y. Times* (Aug. 12, 2014), https://www.nytimes.com/2014/08/13/nyregion/in-suburban-new-york-an-unlikely-link-to-a-south-korean-ferry-disaster.html.

*Second*, Yoo has a strong incentive to flee. As noted above, the upcoming extradition proceedings are limited in scope and afford Yoo few rights, and the Government's burden of establishing extraditability is relatively light. *See, e.g.*, *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010) ("The Court believes that Garcia's risk of flight is beyond a 'tolerable risk.' He has virtually no incentive to appear at his extradition hearing, where, due to the Government's low burden of proof, there are significant risks that he will be formally extradited to Mexico."). And if extradited, Yoo will likely be imprisoned: several of Yoo's business associates and family members have already been tried and convicted in Korea. *See, e.g.*, Gov't Ex. A to Compl. at EX-YOO-S5-00006-07 (noting that Yoo's brother was sentenced to two years' imprisonment for embezzlement, his sister was sentenced to four years' imprisonment for embezzlement, and multiple officers and directors of the Victim Companies and their affiliated entities were convicted of crimes and sentenced to prison).

*Third*, Yoo has already taken steps to avoid participating in the legal proceedings against him in Korea. Korean officials report that they have repeatedly sought, through counsel, to interview Yoo, but he has refused to appear. *See id.* at EX-YOO-00084. And public reporting, including in the United States, has noted that Yoo is facing charges in Korea. *See, e.g.*, *N.Y. Times* article, *supra*. Because Yoo has already deliberately avoided returning to Korea, this Court can reasonably surmise that he will continue to seek to avoid prosecution. *See, e.g.*, *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution." (citing *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir. 1976))).

Finally, even if Yoo could establish that he was not a flight risk, there do not appear to be any special circumstances that could overcome the strong presumption in favor of detention. Absent receipt of additional material information, bail in this case should be denied.

If, however, the Court is inclined to grant bail in this case, the Government respectfully requests that the Court submit written findings as to those specific matters that are found to constitute "special circumstances."

Very truly yours,

AUDREY STRAUSS
Acting United States Attorney

by: _____
Derek Wikstrom
Assistant United States Attorney
(914) 993-1946