# BRACEWELL

October 23, 2020

**VIA ECF**

Magistrate Judge Judith C. McCarthy
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      Re:    <u>In re Extradition of Hyuk Kee Yoo, No. 20 Mag. 2252</u>

Dear Judge McCarthy:

      This letter is respectfully submitted in support of Keith Yoo's request for release on bail due to the delay caused by the apparent dishonesty of Korean authorities.

A.    <u>Background</u>

      On April 16, 2014, the ferry between Incheon and Jeju sank, resulting in 304 deaths, most of them students. Outrage followed the accident, and the Korean government blamed the Yoo family, claiming it owned the ferry company. <u>See</u> Statement of President Park Geun Hye, May 27, 2014 ("[t]he family of Byeong Eun Yoo is the fundamental cause of the [ferry] disaster").

      After the accident, the Korean government launched a large-scale investigation, which resulted in the prosecution of nine executives on charges that they had depleted their companies' resources to enrich the Yoo family, principally through what were claimed to be sham consulting contracts and bogus trademark royalties. In May 2014, Korea requested the United States to extradite Keith Yoo to face trial as an accomplice to embezzlements from several of the companies. It was not until late 2019, however, after Korea made five supplemental submissions,

**Paul Shechtman**
Partner

T: +1.212.508.6107    F: +1.800.404.3970
1251 Avenue of the Americas, 49th Floor, New York, New York 10020-1100
paul.shechtman@bracewell.com    bracewell.com

AUSTIN   CONNECTICUT   DALLAS   DUBAI   HOUSTON   LONDON   NEW YORK   SAN ANTONIO   SEATTLE   WASHINGTON, DC

# BRACEWELL

October 23, 2020
Page 2

that our government authorized Keith Yoo's arrest. At his arraignment, he was denied bail and is now in custody.

B.   <u>The South Korean Submissions</u>

The evidence in support of the alleged embezzlements supposedly comes from interviews that Korean prosecutors conducted in 2014. As discussed in our motion to dismiss, we have been able to obtain the actual witness interviews from Korea. A comparison of the "quotations" in the Korean submissions with the actual interviews reveals that Korean authorities have grossly distorted the witnesses' statements to support their application. Quotation marks do not mark quotations. For example:

1.   <u>Statement of Go Chang-hwan</u>. The Korean submissions quote Go Chang-hwan, the former CEO of one of the companies, as telling Korean prosecutors that Keith Yoo's consulting company "provided business consulting services once or twice a year [and] the consulting service did not deserve a large amount of consulting fees, and could have been obtained by outsourced services." EX-YOO-S1-00027. The quoted words do not appear in Go Chang-hwan's interview. What does appear is this statement: Keith Yoo's consulting company provided "advice through documents related to HACCP (Hazard Analysis Critical Control Point) [and] data related to the US FDA." Korean Interviews Ex. B at 16.[1] And this:

Q.   In conclusion based on the above, it seems like excessive consulting fees were paid without any justifiable reasons. What do you think about that?

A.   That is absolutely not the case.

---

[1]   Go Chang-hwan's company obtained HACCP and USFDA certifications to allow it to sell its products in the United States and Europe.

# BRACEWELL

October 23, 2020
Page 3

<u>Id.</u> at 17.

       2.    <u>Statement of Park Seung-il</u>.  In its January 30, 2018 submission, Korea quotes Park Seung-il, who managed Keith Yoo's consulting company, as follows:

> [Keith Yoo] directed to collect 1.6% of the sales revenue of Ahae Co. [, a paint company], as trademark royalties.  I told LEE Seong-hwan, then CEO of Ahae, to follow what [Keith Yoo] ordered . . . .  I signed a trademark licensing agreement and received licensing fees.  The amount of the fee was singlehandedly decided by [Keith Yoo], not based on common market pricing.  <u>This is disguised as trademark royalties, was in fact a means to transfer affiliates' funds to YOO's family</u>.

EX-YOO-S4-00008-9 (emphasis added).  The underlined sentence does not appear in an earlier Korean submission.  <u>See</u> EX-YOO-S1-00029-30.  Nor did Park Seung-il say it.  The sentence appears to have been inserted in the fifth submission to give it added (but undeserved) strength.

       3.    <u>Statement of Byeon Gi-chun</u>.  The Korean submissions allege that Keith Yoo conspired with the CEO of Chonhaiji, a shipbuilding company, to execute a sham consulting contract, "even though he did not play any special role concerning the management of [Chonhaiji]."  EX-YOO-00088.  The submissions omit this question and answer from Byeon Gi-chun's interview:

> Q.    Have you received any advice from [Keith Yoo]?
>
> A.    Cheonhaeji Co., Ltd., planned to build a yacht manufacturing plant in Gyeongsangnam-do, and [Keith Yoo] had data on technical alliances with US yacht schools, design, and design technology, so he instructed the company about the future yacht business policy.
>
> Q.    Was the yacht business planned after you took office as CEO . . . ?
>
> A.    No.  Prior to 2007, it was already reported to the Gyeongsangnam-do or Goseong-gun that it had entered the yacht business, and was known to the media.  As part of that, we built the Han River water taxi.  All of this was part of [Keith Yoo's] business plan.

# BRACEWELL

October 23, 2020
Page 4

Korean Interviews Ex. H at 36.[2]

C.      Discussions

Courts have long recognized that a delayed extradition hearing may constitute special circumstances justifying release on bail.  United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir. 1996); R. Hedges, International Extradition:  A Guide for Judges, Federal Judicial Center (2014) at 8 ("unreasonable delays in the extradition process" warrant setting bail).  Delay is given special weight when it is occasioned by the actions of the requesting country.  See, e.g., Extradition of Morales, 906 F. Supp. 1368, 1375 (S.D. Cal. 1995); N. Persily International Extradition and the Right to Bail, 34 Stan. J. Int'l L. 407, 431 (1998)("the standard [in considering length of delay] . . . seems to rest more on the assignment of fault to prosecutors than to . . . [the] actual measure of time elapsed").

There is little doubt that the delay here has been occasioned by Korea's misconduct.  Having read our motion to dismiss, the United States Attorney's Office was obviously troubled and therefore requested a lengthy adjournment to speak with Korean authorities about the misrepresentations we uncovered.  The delay is on them.  Moreover, it is well established that "an inherent deficiency or impropriety in the charges" may constitute a special circumstance.  Matter of Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290 (S.D.N.Y. 1993).  And a substantial likelihood of success can be a special circumstance.  In re Extradition of Mironescu, 296 F. Supp. 632, 634 (M.D.N.C. 2003).  Those factors are also implicated here.  Unless our government can magically remedy Korea's improprieties, this Court is likely to find that the evidence is too

---

[2]      Other examples of distortions of witness accounts can be found in our motion to dismiss.

# BRACEWELL

October 23, 2020
Page 5

unreliable to support extradition. See In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 738 (W.D. La. 1999)(granting bail where government "ha[d] failed to establish the reliability of [its evidence]"); See In re Extradition of Santos, 473 F. Supp. 2d 1030, 1040 (C.D. Cal. 2006)("the uncertainty regarding the . . . existence of probable cause . . . make[s] the government's probability of success sufficiently unclear that it constitutes a special circumstance warranting . . . release on bail").[3]

      Keith Yoo is not a risk of flight or a danger to the community. He has known since 2014 that Korea was likely to seek his extradition. It has prosecuted his mother, sister, brother and two uncles and publicly declared him a most wanted person. Yet he has lived openly with his family in Pound Ridge. He has now been incarcerated for three months. He should not be required to spend more time in jail while Korean authorities struggle to right their wrongs.

      Respectfully submitted,

      /s/ Paul Shechtman

      Paul Shechtman
      Partner

PS/wr

---

[3] Our motion to dismiss also raises a powerful statute of limitations claim. See In re Extradition of Porumb, 2018 WL 814568 at *5 (W.D. La.)(granting bail where crimes charged were likely barred by governing statute of limitations).