

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 28, 2020

**BY ECF and EMAIL**

The Honorable Judith C. McCarthy
United States Magistrate Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *In re Extradition of Hyuk Kee Yoo*, 20 Mag. 2252 (JCM)

Dear Judge McCarthy:

      The Government writes to oppose Hyuk Kee Yoo's request for release on bail. On July 22, 2020, Yoo was ordered detained pending an extradition hearing, because there were no special circumstances overriding the strong presumption against bail in extradition cases. To the extent the circumstances have changed at all, they still do not overcome the presumption. The Government therefore respectfully requests that the Court deny the motion.

**I.  Background**

      As the Court is aware, at the formal request of the Republic of Korea, the Government is seeking a certification that Hyuk Kee "Keith" Yoo is extraditable pursuant to the extradition treaty in force between that country and the United States. Korea is seeking Yoo's extradition so that he can stand trial on seven counts of embezzlement. Korea has alleged that Yoo leveraged his and his family's power as business and church leaders in Korea to pilfer the assets of several companies (the "Victim Companies"). Specifically, Yoo allegedly conspired with the executives of the Victim Companies to enter into sham contracts that served as vehicles for Yoo to embezzle more than $23 million, to the detriment of the Victim Companies and their respective public shareholders.

      On July 22, 2020, Yoo was arrested and presented before the Honorable Lisa Margaret Smith on an extradition complaint. Yoo sought bail. The Government opposed, arguing that he presented a flight risk and could not establish special circumstances sufficient to overcome the presumption against bail. Judge Smith ordered Yoo detained pending the extradition hearing.

      Yoo requested an expeditious briefing schedule on extradition, and Judge Smith set a schedule pursuant to which Yoo's opening brief opposing extradition would be due on August 17, 2020, with the Government's response due 18 days later. On August 10, 2020, Yoo requested, with the Government's consent, a five-week extension. (Dkt. 9.) On September 9, 2020, Yoo requested, again with the Government's consent, an additional two-week extension. (Dkt. 12.) And

on September 30, 2020, with the Government's consent, Yoo sought permission to file an oversized brief. (Dkt. 15.) Each of those requests were granted, and on October 5, 2020, Yoo filed his pending motion to dismiss (Dkts. 17 & 18.) Along with that motion, Yoo submitted hard-copy exhibits spanning four binders and a coffee table book. Yoo's motion alleges that Korea's extradition submission misconstrues and misquotes the statements of various witnesses who were interviewed by Korean authorities. In support of that allegation, Yoo has offered voluminous exhibits, including Korean-language transcripts of the underlying interviews and some partial translations of those transcripts, as well as new declarations by some potentially relevant witnesses.

The Government provided these materials to Korean officials, who—predictably, given the accusations leveled against them—wish to respond. But responding in the context of international relations takes time: materials submitted in English, including Yoo's brief, must be translated; Korean-to-English translations Yoo provided must be checked; Korea's response must then be translated back to English and formally submitted through diplomatic channels. Only then can the Government fully evaluate, and respond to, Yoo's allegations and Korea's responses. In order to accomplish this, the Government sought, with Yoo's consent, a six-week extension of the briefing schedule (Dkt. 19), which the Court granted.

Yoo now seeks release, arguing that the Government's request for a six-week extension is an extraordinary circumstance that overcomes the presumption against bail. (Dkt. 23.)

## II. Applicable Law

The Government provided an overview of the law applicable to bail in extradition proceedings in its original detention letter, which is not reproduced in full here. (*See* Dkt. 8.) In short, because the United States Government has an overriding interest in complying with its obligations under extradition treaties, release of an extradition defendant is "an unusual and extraordinary thing." *Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001). A fugitive cannot be released pending the extradition hearing unless he establishes *both* the absence of any risk of flight or danger to the community *and* that additional "special circumstances" warrant release. *E.g.*, *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam).

Courts have long recognized that extradition proceedings, by their nature, take time. That fact alone is not a "special circumstance" that warrants granting bail. As one court in this district noted long ago, when a fugitive contests extradition, the requesting foreign country often takes weeks to marshal evidence. If, because of that passage of time alone, a fugitive could be released on bail, "then there should be bail, when asked for, in practically every international extradition case." *In re Klein*, 46 F.2d 85, 85 (S.D.N.Y. 1930). But that is not the law, because if delay alone justified bail in extradition cases, our courts would create "grave risk of frustrating the efforts of the executive branch of the government to fulfill treaty obligations." *Id.* Courts therefore do not treat ordinary delays in extradition proceedings as special circumstances justifying bail. *See, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996) (reversing order granting bail where, among other things, "[t]o the extent that there has been some delay, [the fugitive] himself is partly responsible, having moved, for example, at the end of April, for a continuance…"); *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 169-70 (S.D.N.Y. 2009) (denying bail where fugitive

did not establish that the need for extensive documentation would "result in an unreasonable delay in his extradition proceedings").[1]

### III. Argument

As the Government argued in its detention letter at the time of arrest, Yoo is a substantial flight risk: he has vast financial resources and strong incentives to flee. (Dkt. 8 at 3-4.) What's more, the Government argued that Yoo—who is a Korean citizen—likely knew about the legal proceedings in Korea, yet had avoided returning there to face the charges. (*Id.* at 4 (citing case law holding that a defendant posed a substantial risk of flight given that he refused to return to the country where he faced charges).) Yoo has now confirmed that he has known that he was being prosecuted in Korea since 2014. (*See* Dkt. 23 at 5.) The risk of flight Yoo presents, which he has not rebutted, is an independently sufficient basis to detain him. *See, e.g.*, *In re Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290 (S.D.N.Y. 1993) (holding that risk of flight alone is "a basis for denial of bail").

Even if the Court concluded that Yoo was not a flight risk, he has not established "special circumstances" to overcome the strong presumption against bail. Neither the delay caused by the Government's request for additional time to respond to Yoo's motion, nor Yoo's claims that he is likely to prevail in the extradition hearing, are special circumstances.

*First*, the six-week delay the Government requested is far from the unusual or extraordinary delays that courts have found to constitute special circumstances. *Compare, e.g.*, *United States v. Taitz*, 130 F.R.D. 442, 445-46 (S.D. Cal. 1990) (in a case involving 434 separate fraud counts, where the court anticipated that ongoing extradition proceedings would last longer than two more years, expected delay constituted a special circumstance); *with, e.g.*, *In re Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1070 (C.D. Cal. 2017) (anticipated passage of four months between arrest and extradition hearing was not a special circumstance; "For delay to qualify, it would have to be something beyond what all defendants face in extradition.").

Yoo's claim that the delay attributable to the Government's adjournment request is a special circumstance particularly lacks credibility given that Yoo took a total of almost three months—with the Government's consent—to prepare and file an oversized brief introducing voluminous extrinsic evidence, to which the Government must now respond. Yoo is, of course, free to contest extradition in whatever manner he and his counsel decide. But the Government should not be effectively penalized for agreeing to Yoo's requests for delay and then seeking a commensurate and reasonable delay to respond. Where, as here, the delay is attributable even in part to the fugitive, courts have repeatedly recognized that delay is not a "special circumstance." *See, e.g.*, *Kin-Hong*, 83 F.3d at 525 (rejecting delay for which the fugitive himself was "partly responsible" as a special circumstance); *In re Extradition of Blasko*, No. 17 Mag. 67 (DAD) (SAB), 2018 WL 3691859, at *6 (E.D. Cal. Aug. 1, 2018) (rejecting delay as special circumstance where the fugitive had been in custody for ten months and it was possible proceedings would continue

---

[1] Yoo's submission cites *Kin-Hong*, which, as just noted, reversed a district court granting bail on the basis of delay. In the other case Yoo cites for the proposition that delay in an extradition proceeding can justify bail (*see* Dkt. 23 at 4), the fugitive had already been jailed for seven months and the court could not "see an end to the proceedings in the near future." *In re Extradition of Morales*, 906 F. Supp. 1368, 1375 (S.D. Cal. 1995).

for longer than a year, but where the delay was "in large part due to requests for continuances brought by counsel on Blasko's behalf").

*Second*, Yoo's brief argues that the Government's continuance request is somehow a concession of impropriety, or shows a likelihood of success on the merits. Not so. Yoo has accused Korea of "grossly distort[ing]" witnesses' statements. (Dkt. 23 at 2.) It is understandable that Korea wishes to respond to that allegation of impropriety, and providing a limited period of time in which to do so is entirely reasonable.

But that the Government and Korea took Yoo's allegations seriously, and are taking the appropriate time to respond to them, should not be understood to imply agreement with them. To the contrary, even without the benefit of Korea's response, it is far from clear that Yoo's allegations will withstand scrutiny. To take just one example, which was discussed both in Yoo's opening brief and in his bail letter: Yoo claims that Park Seung-il—an employee at Yoo's private consulting company who was referred to as "CC-1" in the Complaint—did not actually tell Korean authorities that certain contracts called for payments disguised as trademark royalties, but which were actually intended to transfer money from Victim Companies to Yoo. (*See* Dkt. 18 at 30-31 ("Park Seung-il <u>never</u> told the Korean prosecutors that the trademark payments were merely 'a means to transfer affiliates' funds to Yoo's family.'"); Dkt. 23 at 3 (raising same argument).) Yet Yoo's own motion-to-dismiss exhibits contradict his claim. In an interview Yoo obtained and had translated, Park admitted that he collected money for Yoo from the Victim Companies "under the pretext of trademark fees." Transcript of Park Seung-il Interview (May 8, 2014)[2] at 10. And at one point in the interview, Park was asked about trademarks for which Yoo received licensing fees even though the trademarks had little value—the Korean interviewer summed up by asking "All together, it seems that it was actually a way for the Yoo Byung-Eon family [*i.e.* Yoo's family] to take the funds of affiliates. What do you think?" Park answered "Yes, it seems so." *Id.* at 21. In other words, Park apparently admitted the *exact* substance that Yoo claims was invented: that purported trademark fees Yoo's private company collected were a mere "pretext," the actual purpose of which was to transfer funds to Yoo's family.

Nor is Yoo correct that he has a "powerful" statute-of-limitations argument justifying bail. (Dkt. 23 at 5 n.3.) He is unlikely to prevail on that issue. The Ninth Circuit and a judge from this district sitting by designation in the District of Connecticut have each rejected the exact statute-of-limitations argument Yoo now makes. Those courts held that where a treaty provides that extradition "may be denied" if claims are time-barred, the decision is to be made by the Secretary of State rather than the court. *Patterson v. Wagner*, 785 F.3d 1277, 1281 (9th Cir. 2015) (under the U.S.-Korea extradition treaty, "untimeliness is a discretionary factor for the Secretary of State to consider in deciding whether to grant extradition," but "there is no mandatory duty that a court may enforce"); *Mirela v. United States*, 416 F. Supp. 3d 98, 110-11 (D. Conn. 2019) (Haight, J.) (same, regarding similar provision in the U.S.-Romania extradition treaty). And Yoo does not appear to have identified a single court that has come out the other way in interpreting an extradition treaty.

\*\*\*

---

[2] This translated and excerpted interview transcript is Tab E in "Korean Interviews (Binder 1 of 4)" submitted in hard copy by Yoo in connection with his motion to dismiss.

In sum, Yoo should be detained pending extradition, both because he is a flight risk and because there are no special circumstances justifying his release.

        Respectfully submitted,

        AUDREY STRAUSS
        Acting United States Attorney

By:   /s/ Derek Wikstrom
      Derek Wikstrom
      Assistant United States Attorney
      Tel: (914) 993-1946

Cc:   Paul Shechtman, Esq.
      Shawn Naunton, Esq.